# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

RECEIVED

NOV 15 2007 *aw*

NOV 15 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel.                    )
                                                     )
**CHARLES DANIELS, N-63102**                         )
(Full name and prison number)                        )
(Include name under which convicted)                 )
                                                     )
PETITIONER                                           )     CASE NO: _____
                                                     )            (Supplied by Clerk of this Court)
         vs.                                         )
                                                     )     07CV6475
**DAN AUSTIN, WARDEN**                               )     JUDGE LEINENWEBER
                                                     )     MAG.JUDGE NOLAN
(Warden, Superintendent, or authorized               )
person having custody of petitioner)                 )
                                                     )
RESPONDENT, and                                      )
                                                     )
**(Fill in the following blank only if judgment**    )
**attacked imposes a sentence to commence**          )
**in the future)**                                   )
                                                     )
                                                     )
ATTORNEY GENERAL OF THE STATE OF                     )     Case Number of State Court Conviction:
                                                     )
                                                     )     **00-CR-07104**
_____            )
(State where judgment entered)                       )

## PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY

1.  Name and location of court where conviction entered: **COOK COUNTY CRIMINAL COURT BLDG.**

   **10220 S. 76TH AV., BRIDGEVIEW, ILLINOIS 60455**

2.  Date of judgment of conviction: **JULY 16,2002**

3.  Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

   **BURGLARY TO A BUILDING'S ' COMMON AREAS '; # 00-CR-07104**

4.  Sentence(s) imposed: **EIGHT YEARS (8)**

5.  What was your plea? (Check one)      (A) Not guilty        (★★★★)
                                          (B) Guilty            (   )
                                          (C) Nolo contendere   (   )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

   _____

## PART 1 -- TRIAL AND DIRECT REVIEW

1.  Kind of trial: (Check one):      Jury  (    )          Judge only  (★★)

2.  Did you testify at trial?    YES  (    )          NO        (★★★)

3.  Did you appeal from the conviction or the sentence imposed? YES  (★★)    NO (    )

    (A)  If you appealed, give the

         (1) Name of court:  **FIRST APPELLATE DIST. ILLINOIS**

         (2) Result:     **AFFIRMED; # 1-02-2905**

         (3) Date of ruling:    **DECEMBER 22,2003**

         (4) Issues raised:    **INSUFFICIENCY OF EVIDENCE AS TO BURGLARY TO COMMON AREAS**

         **OF APARTMENT BLDG. STRUCTURE, WHEN THIS OFFENSE WAS MUTUALLY EXCLUSIVE TO**

         **RESIDENTIAL BURGLARY AS A MATTER OF LAW, UNDER DUE PROCESS.**

    (B)  If you did not appeal, explain briefly why not:
         **N/A**

4.  Did you appeal, or seek leave to appeal, to the highest state court?  YES (★★★)      NO (    )

    (A)  If yes, give the

         (1) Result    **DISCRETIONARY REVIEW DENIED**

         (2) Date of ruling:    **JANUARY 27,2004 ; RE-HEARING DENIED ON JUNE 23,2004**

         (3) Issues raised:    **DUE PROCESS VIOLATION; INEFFECTIVE ASSSITANCE OF TRIAL**

         **AND APPELLATE ATTORNEY'S; EX POST FACTO VIOLATION THROUGH SUBSTANTIVE**

         **AMENDMENT BEING APPLIED RETROACTIVELY MATERIALLY DISADVANTAGING ACCUSED.**

    (B)  If no, why not:

5.  Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes (    )   No (★★)

    If yes, give (A) date of petition: _____ (B) date *certiorari* was denied: _____

## PART II -- COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES (**)   NO ( )

With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

A. Name of court: CRIMINAL COURT BLDG., BRIDGEVIEW IL., 10220 S. 76 TH AVE.

B. Date of filing: OCTOBER 5,2005; AMENDED  OCTOBER 26,2005

C. Issues raised: STATE'S FAILURE TO PROVE AN ESSENTIAL MATERIAL ELEMENT VIOLATING DUE PROCESS OF STATE AND FEDERAL LAW; TRIAL COUNSEL'S AIDING THE STATE TO PROVE ITS CASE DURING HIS CROSS-EXAMINATION; APPELLATE COUNSEL'S REFUSAL TO RAISE ERROR.

D. Did you receive an evidentiary hearing on your petition?     YES ( )   NO (**)

E. What was the court's ruling?   AFFIRMED

F. Date of court's ruling:      JULY 30,2007

G. Did you appeal from the ruling on your petition?     YES ( )   NO ( )

H. (a) If yes,    (1) what was the result?    _____

            (2) date of decision:    _____

   (b) If no, explain briefly why not: _____

I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES (**) NO ( )

   (a) If yes,    (1) what was the result?    _____

            (2) date of decision:    _____

   (b) If no, explain briefly why not: PURSUANT TO O'SULLIVAN V. BOERCKEL, 526 US 838,845(1999) HAVING ALREADY TAKEN THIS DUE PROCESS PLAIN ERROR CLAIM AND VIOLATION OF EX POST FACTO CLAIM        BEFORE THE STATE'S HIGHEST COURT UNDER # M-11790, ON FEB. 15,2007, AND BEEN DENIED, FURTHER EFFORTS ARE FRUTLESS AND TIME CONSUMING IN A " REPLAY " TO PERSUADE THE COURT, U.S.ex. rel. Buchana v. Lane, 787 F.2d 230,235-36 (7th cir.1986 )

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?  YES ( )        NO ( )

   A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

      1. Nature of proceeding    Discretionary review per IL. Sup. Ct. R. 381

      2. Date petition filed    February 15,2007-----# M-11790

      3. Ruling on the petition    Denied review

      3. Date of ruling    May 2007

      4. If you appealed, what was    N/A
         the ruling on appeal?

      5. Date of ruling on appeal    N/A

      6. If there was a further appeal,    N/A
         what was the ruling ?

      7. Date of ruling on appeal    N/A

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?
         YES ( )   NO (**)

   A. If yes, give name of court, case title and case number:    None

   B. Did the court rule on your petition?  If so, state

      (1) Ruling:    N/A

      (2) Date:    N/A

## 4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?

YES (**)   NO ( )

If yes, explain:    A SIXTH AMENDMENT (VI) ineffective assistance claim surrounding a
   formerly assigned State Appellate Defender's legal undertaking for cash payment,
while he was " conflicted-out" from any involvement whatsoever during review of
his direct appeal performance; including appellate counsel's response to the State's
legal pleading to dismiss the 2006 collateral petition, while petitioner unknowingly
thought privately retained attorney was representing him.

   Also, the State Appellate Court refusal to allow the petitioner to proceed pro se,
while allowing the State Defenders motion to withdraw, despite petitioner's production
of overwhelming inculpatory evidence,misconduct and substantial prejudice through
the Appellate defender deflecting and obscuring inquiry away from his performance.

# PART III -- PETITIONER'S CLAIMS

1.  State briefly every ground on which you claim that you are being held unlawfully.  Summarize briefly the facts supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A)  Ground one   DUE PROCESS CLAUSE VIOLATION IN PROOF UPON ELEMENT OF OFFENSE.
     Supporting facts (tell your story briefly without citing cases or law):

Petitioner Daniels, presented to Illinois Supreme Court, that in light of their

authoritative interpretation in PEOPLE v. ATKINS, 298 Ill.Dec.50,838 NE 2 943(2005),

clarifying inter alia, that " procedural ramifications of a Substantive Amendment to

a State statute do not make the amendment a procedural one that can be applied retroactively",

that petitioner's  Identical conviction be reviewed.  Petitioner asserted Ex Post facto

and Due process errors, under Case # M-11790, on Feb. 15,2007. Under IL. Sup. Ct. R.381,

any Constitutional or Federal Question of law can be presented. Petitioner denied review.

Petitioner presented the Instant Constitutional Questions of Federal law citing

that this conviction is  " CONTRARY TO " several United States Supreme Court precedents

as referenced below.  Specifically, petitioner raised (1) that the State prosecutor's

had totally failed to carry its burden of proof, to sustain the instant charge of Burglary,

as the law was statutorily in effect  on the date of his Feb.12, 2000 arrest. As the

material element " without authority" was never established as required, towards burglary;

(2) Petitioner further has presented that the intermediate and lower state courts have

applied  'during review of his appeals and collateral attacks against this judgment,

the Substantive new law, that became effective on June 1,2001, which allows the State

to receive " different evidence being admissable to convict than was required prior

to the Statutory Amendment to the law."

Petitioner argued as a matter of Federal Constitutional law this conviction runs

afoul and is " contrary to" U.S. SUPREME COURT PRECEDENTS, EX POST FACTO AND DUE PROCESS

STRICTURES, entitling him to immediate release.

Collins v. Youngblood, 497 U.S. 37,41,110 S.Ct.2715(1990)

Fiore v. White, 120 S. Ct. 469 (1999)

Bunkley v. Florida, 123 S.Ct. 2020 (2003)

5

(C) Ground, *Two:* Violation of Ex Post facto & Equal protection clause
Supporting facts: through Substantive Amendment of a Criminal law
being retroactively applied to affirm conviction.

The State courts to affirm this conviction correctly identified during review
the applicable legal authorities, However, objectively " unreasonably applied"
them , where the New Substantive Amendment which changed the standard of proof
to satisfy a conviction, allowed for different/less evidence as admissable;
thereby materially disadvantaging the petitioner to a legal defense that was
available as the law was in effect at the time of his arrest.

See MEMORANDUM OF LAW SUPPORTING HABEAS CORPUS RELIEF-Annexed

(D) Ground,
Supporting facts:

2.  Have all grounds raised in this petition been presented to the highest court having jurisdiction?

    YES (X)   NO ( )

3.  If you answered **"NO"** to question (2), state briefly what grounds were not so presented and why not:

6                                                           Revised: 7/20/05

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing   **Dennis H. Sherman, (**150 N. Wacker Dr. Chicago, IL. 60606

(B) At arraignment and plea _____ **same** _____ **Tel : 312-372-3757** _____

(C) At trial _____ **same** _____

(D) At sentencing _____ **same** _____

(E) On appeal  **Michael McDermott- state appellate defender- 1st Dist.**

(F) In any post-conviction proceeding  **David H. Norris**    **(deceased)**

(G) Other (state): _____

## PART V -- FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES (  )   NO (**∗∗**)

Name and location of the court which imposed the sentence: ____ **N/a** _____

Date and length of sentence to be served in the future ____ **n/a** _____


WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on:  *Nov 2, 2007*
        (Date)                    _____
                                        Signature of attorney (if any)


**I declare under penalty of perjury that the foregoing is true and correct.**

                    *Charles Daniels*
                    (Signature of petitioner) *N-63102*
                    _____
                    (I.D. Number)
                    *P.O. Box 999, Pickneyville, Illinois*
                    (Address)                    *62274*

REVISED 01/01/2001

# A P P E N D I X

### * * * * * * * * *

MEMORANDUM OF LAW                          1-12

FACTUAL BACKGROUND                         AP-"A"--"E"

APPELLATE STATE COURT ORDER
DEC.22,2003 # 1-02-2905                     AP-1-7


ILLINOIS SUPREME COURT
LEAVE TO APPEAL - DENIED                    AP-p.25

RE-HEARING PETITION DENIED IL. SUP. CT     AP-p.26

DISMISSAL OF POST-CONVICTION
                                           AP-p.27
AUG. 11,2006


ILLINOIS SUPREME COURT RULE 381 FILING     AP-p.28
# M-11790- FEB. 15,2007, SUBSEQUENTLY DENIED.


CERTIFICATION- PROOF OF SERVICE            AP-p.29

MEMORANDUM OF LAW SUPPORTING
HABEAS CORPUS PETITION

It has long remained sacrosant that the State prosecutor's Burden during a(any) criminal trial proceeding, is to prove beyond a reasonable doubt each and every element of a criminal offense as alleged in the charging instrument; otherwise, the accused is entitled to a not guilty finding. This burden of proof consists of both production of evidentiary proof and persuasion that each element has been meet. This burden is not overcome by speculation, conjecture, innuendo or probabilities of inference.

**In re Winship**, 397 U.S. 358, 364 (1970);

**Vachon v. New Hampshire,** 414 U.S. 478

**Jackson v. Virginia**, 443 U.S.307,316, 95 S.Ct.2781

**Fiore v. White,** 531 US 225, 121 S. Ct. 712 (1999)

In **reWinship,** the United States **Supreme Court** long ago held that the due process clause prohibited an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute a crime with which the accused was charged. Later, in **Vachon v. New Hampshire,** 414 US 478, the United States **Supreme Court,** specifically expressed the view that a conviction based on a record lacking any relevant evidence as to a " crucial element" of the offense charged violates due process. More recently, in **Fiore v. White,(supra)**, the United States **Supreme Court** held, that a conviction violated the due process clause, where the State presented no evidence whatsoever to prove a basic element of the crime in question.

GROUND I

**In the Instant matter Illinois courts have violated DUE PROCESS
FIFTH & FOURTEENTH AMENDMENTS(USCA), where the State record
is totally devoid of proof upon an essential element of offense**

In affirming petitioner Daniels conviction, Illinois State courts have arrived at a decision " **contrary to** "materially undistinguishable facts from United States **Supreme Court precedents,** reaching completely opposite results upon the Questions of

MOL-p.1

Law as to whether **Federal Due process** was violated. Particuarly, whether the State's failure to have proved an essential **material element** of the charged offense beyond a reasonable doubt violated the rudimentary demands for fairness and **Federal Due process as announced in** BUNKLEY v. FLORIDA, 535 U.S. 835,123 S.Ct.2020 (2003), (where the **U.S.SUPREME COURT,** held that the State court **PLAIN ERRED** in failing to have decided whether all the elements of the offense had been meet.)

### CONTENTION I

Petitioner Daniels, maintains that at all times relevant to reviewing this instant conviction, that the State of Illinois courts have rendered **meaningless** the critical Statutory intent of a unlawful entry into a building whose structural character type made it unoccupiable to live in and more applicable to business & public buildings or other building's open to the public as reflected in the plain language for simple burglary. **720 ILCS 5-19-1(a)(2000).**

Worst, the State courts have ignored the prohibition against using proof of a residential burglary offense to establish the instant offense of simple burglary under statutes in effect at time of offense on **February 12, 2000.**
The applicable statute's stated as follows:

(a) " A person commits burglary when without authority, he knowingly enters or without authority remains within a building****** with the intent to commit therein a felony or theft."

> This offense **SHALL NOT INCLUDE** **** the offense of residential burglary as defined in section **19-3** hereof."
>
> > **720 ILCS 5/19-1-(a) (West 2000)**

(a) Residential burglary:
" A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commmit therein a felony or theft. " **720 ILCS 5/19-3(a) (West 2000)**

**Moreover,** on February 12, 2000, the **Illinois supreme court's** controlling procedent was **People v. Childress,** 158 Ill.2d 275,198 Ill.Dec. 794,633 N.E. 2d 635 (1994), holding inter alia, that burglary and residential burglary were' **distinct' &** **" mutually exclusive "** offenses. Additionally, burglary was not a " lesser-included" offense of residential burglary, as evinced by the clear statutory language.

**MOL-p.2**

State Prosecutor:

Q: Was the **apartment** across the hall from you at 8234 S.Eberhart occupied at that time?

A: No, sir.

Q: What was the condition of that **apartment** across the hall?

A: The condition was that no one was there because the occupant had moved out, but I had moved some of my things across the hall because I was going to do some work in my building, I was trying to get them out of the way temporarily.

Q: Did anybody have **authority** to be inside your vacant **apartment** at that time & place?

A: No, sir.

Q: After you heard somebody inside your **vacant apartment** that afternoon what did you do next?

A: I went back & called the police again & I told them that I thought he was gone but he's in the apartment.

Q: Then what happened?

A: They came back.

Q: Did you see anybody leave that area?

A: Yes. I saw the gentlemen leave & he had some of my packages in his hands.

Q: Was this the same gentlemen you had seen earlier come up your walkway earlier?

A: Exactly the same person. yes.

Q: And he was leaving your premises with something?

A: Right.

. . . . . . . . . . . . . .

Q: And you never gave that person **permission** to enter that vacant apartment of yours.?

A: No.                         ( T.R.R. 118-119) [June 5,2002]


The above are the totality of direct " proof" by the State upon the charged offense of entry " **without authority** " into the ' common-areas' of the building as contained in the State's charging instrument against the petitioner. Certainly, the prosecutor's are aware that an **essential element** of proof to sustain a conviction cannot be **inferred** but must be established, beyond any reasonable doubt or that conviction cannot stand. The fact that this " proof" might have been elicited by a **Single question**, is besides the point. It was not done.

MOL-p.3

## SUMMARY OF CONTENTION I

Mrs Elston's direct examination is only approximately 10 pages in length ( T.R.R. 116-126 ). There is nothing contained in that brief direct examination which could have supported the notion that the petitioner entered into a " hallway or other common areas" of the building; that is until a motion for a Acquittal was made, followed by a lengthy conference between the relevant parties. Petitioner's defense counsel returned and told him **odiously** that he " had to cross-exam  Ms. Elston further", despite petitioner's adamant objection, **before** the trial court ruling upon the earlier motion for an acquittal.

Defense counsel's overall performance in **aiding the State prove its case is** succintly epitomized through the following irreparable and damaging testimony:

Defense counsel Sherman:

Q: How long would you say he (& petitioner) was in the **HALLWAY of your building?**
A: I'd say three minutes.
Q: Thirty minutes.
Q: **Three minutes.**                     ( T.R.R. 128 )


Aside from the fact that the complaining witness never said petitioner was in the **Hallway** of her building, the trial record was devoid of any such testimony prior to defense counsel's question cited above. The point is that this question arguably on the State's behalf and the Appellate Court, put the petitioner past the security door by the mailboxes and into the " common-areas" of the building. Second, incidentally this line of questioning directly contradicted Mrs. Elston's testimony on direct examination ( T.R.R. 118-119) that she **never heard or saw** anybody in the actual hallway of the apartment building. Third, it undercuts the other portions of the cross-examination testimony where she stated  clearly & unequivocally, that the doors to the vacant apartment were locked & that he must have come in through an open window ( see e.g. " one of them had to be open for him to get in " ( T.R.R. 135-136), **thereby circumventing** any entry into the " common areas" of the building.

MOL-p. 4

The above are a detailed aside to the Question of whether Defense counsel irreparably " prejudiced" petitioner Daniels thru "aiding" the State prosecutor & supplying an **otherwise missing** material element, that greatly benefitted the state by placing the **inculpatory statement** within the trial record.    Disingenuously, the state court in its affirming "ORDER", applied the statement as though the prosecution had elicited it during direct examination, and as though satisfying the state's entire burden of proof.( **T.R.R. 128**) [pg.6,7, ORDER-annexed ]

The element " without authority" as evinced by their Order was asserted based upon proof of an entry into the vacant apartment to affirm this judgment, eventhough under the statutes in effect at the relevant time of arrest, such was prohibited. Rather, burglary & residential burglary offense's were mutually exclusive and distinct, thereby, proof of residential entry without authority could not be used to support or establish the requisite proof for burglary to a building's " common-areas". **720 ILCS 5/19-1(a)& 5-19-3 (WEst 2000)**

The fact stands, as a matter of **Federal law**, the state of Illinois courts have violated **U**nited States Supreme Court precedents by failing to have **proved an essential material element,viz(without authority)**, to the **Charged area** against the petitio**ner** beyond a reasonable doubt. Moreover, the State has yet to **rebut** in any way meaningfully, **how** their failure to have. satisfied meeting this burden on this element does not automatically warrant reversal. Nor have they in affirming this conviction produced one iota of an analysis that is consistent with any of the following **United States Supreme Court precedents** that safeguard such conduct during proceedings.

**BUNKLEY v. FLORIDA, 535 U.S.835, 123 S.Ct.2020**

**COLLINS v. YOUNGBLOOD, 497 U.S.37,41,110 S.Ct.2715 (1990)**

**FIORE v. WHITE,528 U.S.23,120 S.Ct.469**

Synopsis re: Integrity of Federal Due process protects
and safeguards convictions lacking requisite
proof on all essential elements of Charged
offense which accused stands trial instanter.

The trial court record affirmatively shows that the State's
attorney **never asked** the complaining witness if anybody had authority
to be in the "common areas" of the building, on February 12,2000.
The State **never asked** if anybody had authority to enter or to remain
there. Rather, the State **ONLY ASKED** about " without authority"
regarding the vacant apartment which was statutorily prohibited to
meet or satisfy **Federal due process** upon proving each essential element
of the charged offense upon which the accused stands trial.(T.R.R.124)

As highlighted in **Contention I**, proof of residential burglary was
insufficient to have satisfied **Due process strictures** of burglary to
**another charged area** of the dwelling place building; Particulary,
where the State's **Theory** of the case was that entry without authority
into the vacant apartment established proof of simple burglary.(TRR.117)
As noted above, these two offenses were mutually exclusive at the
relevant time, and it remained the State's burden to have properly
charged an accused. The  State never charged the petitioner as conceded
with residential burglary.(T.R.R.177-179)  **Strikingly**, the State seeks
recovery and absolution from its error by arguing the other act proof
(residential burglary) to affirm. Specifically, the testimony from
entry into the vacant apartment without authority,**after** it recognized
by the trial court that the State erred in not charging properly the
accused. (T.R.R.174-177)

In short, the integrity of **Federal due process** must be maintained
by State court's, in light of their egregiousness of an effective
corrective appeal process, as reflected by the trial court judge whom
saw fit to divide the building into different sections in his findings
of fact. If the State decided **ONLY** to charge petitioner with entry
into one area ("common areas") then the State was required to have
proven all the essential elements so as not to run afoul and eviscerate
the integrity protections guaranteed to all accused.

Jackson v. Virginia,443 U.S.304,319;Bunkley v. Florida,535U.S.835,123 S.2020

GROUND II

> This conviction rests squarely in violation of the
> **EX POST FACTO** clause of the United States Constitution
> through the State announcing a New Substantive amendment
> that the State courts applied retroactively, materially
> to petitioner's disadvantage, despite Sec. 4 of Statute
> on Statutes and Federal Ex Post Facto prohibiting such
> to secure a conviction and term of imprisonment.

Despite the clear    language of the **EX POST FACTO** clause and

its bedrock significance under the **U.S.Constitution(U.S.Const.,**

**Art. 1  § 9, cl. 3 )** prohibiting:

> receiving  of less or different evidence or testimony
> being admissable to convict than was required prior
> to Statutory amendment to the law ."

**Collins v. Yongblood**, 497 U.S. 37,41, 110 S.Ct.2715,2718

**Weaver v. Graham**, 450 U.S. 24 ;  **Flores v. I.N.S.** 272 F.3d 433(7th Cir)

this State conviction rests solely upon " clear"  Federal prohibitions.

Federal review is necessary in light of the State intermediate

court(1st Dist.), error in having conducted its analysis and annexed

ORDER, " retroactively " applying the Substantive amendment that

became effective after June 1, 200¹, against petitioner's conduct

that happened  on February 12, 2000, without any legislative authority

to have done so.  The State court  **"ORDER"** failed to have rebutted

the " prospective " application of the amendment or to have recognized

that Section 4 of Statute on Statutes ( **5 ILCS 70/4 (West 2002),**

being the General savings clause of " every amended statute",

interpreted to mean that " procedural changes " to statutes may be

applied retroactively, while **substantive changes May NOT.**

**People v. Atkins**, 298 Ill. Dec. 50,838 N.E. 2d 943 (2005)[Il.Sup.Ct.]

## SUBSTANTIVE AMENDMENT OF STATUTE

Effective after June 1,2001- Burglary stated under Code section 19-1 of the Criminal Code of Illinois, that a:

" person commits burglary when without authority he knowingly enters or without authority remains within a building*** **or any part thereof,**with intent to commit therein a felony or the ft." **720 ILCS 5/19-1 (West 2002)**

Similarly, under code section 19-3, one:

" commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or **any part thereof**, with the intent to commit therein a felony or theft."

**720 ILCS 5/19-3 (West 2002)**        (emphasis supplied )


The intermediate court of appeals, in its effort to legitimize the petitioner's conviction, presumed that the trial judge's purported case on point accurately in deference had complied with due process compliance upon both separate offense's, viz, burglary and residential burglary as was done in **People v. Maskell**, 237 Ill.Dec. 820, 824(1999);

However, the State's reliance on **Maskell**, is misplaced. Rather, **Maskell**, is distinguishable to the petitioner's court proceedings, where a state witness testified that " nobody gave permission to that defendant to have entered the apartment to take a television." Further, and ipso facto, upon the petitioner's distinction of proof are that an additional witness, Mr. Thomas Preston, testified that " he never gave permission to that defendant to have entered the six-flat building." **Maskell**, 237 Ill. Dec. at 821.

Unlike, **Maskell**, where the trial court grants the State the election to have chose, which of these separate offense's (Burglary-res. burglary) they wanted to proceed upon, **only after** there was sufficient evidentiary testimony established beyond any reasonable doubt on **both** criminal charges, the case at bar, stands in marked contrast. As the State court's have yet to rebut why the prosecution's failure upon this point is not **reversible error**. Nor **How** the state met their burden as the **Maskell**, court case deemed dispositive.

To get around this Damming fact the state chose to "retroactively" apply the Amended version of the Criminal statute against petitioner's conduct to affirm this judgment. No fair reading of this "ORDER" in contrast to the testimony adduced at trial, can support this judgment otherwise. (See,pgs.6-7 )as the court stated:

> " The fact that the vacant unit was a dwelling and defendant's entry thereto was residential burglary, **THUS DID NOT PRECLUDE** defendant's conviction for burglary."

Clearly, this analysis applied the amended version language **(West 2002)** "**or any part thereof**", that became effective for offense's committed after June 1,2001, which was "objectively unreasonable" since that was absent from the pre-amended version of statute. **720 ILCS 5/19-1(a);**

Equally, compelling the state prosecutor's **know in principle** what should have been asked in hindsight by the assigned prosecutor, such as was done in **Maskell**, where the testifying witness specifically testifyied that " he never gave **permission** to enter the six-flat building." during direct examination.  Without, being redundant, the fact that such " proof" might have been elicited by a single question, is besides the point, since it was not done.

**ARGUMENT**

The State court prosecutor's Critical failure to show this
Honorable Federal court in practice, where in the record they
complied with the strict ures of **Federal due process** or that the
**Substantive Amendment** was not applied against the petitioner's
conduct  as the definition of the crime of burglary was altered,
remains ipso facto, of Constitutional violations of **Due process**
and **Ex post facto**, as a matter of law.

The State " ORDER"  was substantially swayed both from the
misplaced and distinguishable **Maskell,** case, and other acts proof
from the uncharged offense ( residential burglary), which was a
plain error. The petitioner was materially disadvantaged and remains
substantially " prejudiced " by the manifestly erroneous state
court process that applied the New criminal defintions against him
on the charged offense, thereby eliminating a viable defense which
was available under the law that was in effect at the time the
offense was charged against petitioner on February 12, 2000.

Accordingly, **Habeas corpus** relief must need by granted, as
such a State impropriety remains of U.S. **Constitutional magnitude**
as fundamentally Unfair.

**Lynce v. Mathis,** 117 S. Ct.891,519 U.S.433;

**U.S.v.Wells,** 177F.3d 603:

( Ex Post facto prohibits legislation that retroactively alters
   definition of a crime, or increases punishment for criminal acts
   or eliminates a defense available under the law that was in
   effect at the time the offense was committed.)

## SUMMARY

Habeas corpus relief per 28 U.S.C.§ 2254, should be granted
because reasonable judicial minds could differ as to whether the
**federal due process clause** protections and **Ex post facto** clause
have been violated by the State of Illinois courts.
A crucial issue affecting petitioner's substantial federally
guaranteed constitutional rights, was resolved by the state courts
in a manner " **contrary to** "  clearly established Federal Constitutional
law as per decisions of the **U.S. SUPREME COURT** and unsupported by
the state court record. Particuarly, where the state court correctly
identified the applicable statutes, but " **objectively unreasonably"**
applied the uncharged⸗ offense as proof in order to affirm,where
it was an " exception‼  at the time of instant arrest statute.
(see, 720 ILCS 5/19-1(a)(West 2000).

Worst, the state court record is totally devoid beyond any
reasonable doubt towards the required proof as to essential element
" without authority" to the common areas of the building towards
burglary charge.   This absence on a material crucial element **BEGS**
the question of whether the petitioner has demonstrated a Constitutional
depravation warranting Habeas corpus relief.
**Fiore v. White**, 120 S.Ct.469(1999):Bunkley v. Florida,123 S.Ct.2020;
Equally, compelling is that the state's highest court has passed
upon resolving what the aforementioned **U.S.SUPREME COURT** decisions
make perfectly clear which " forbids a state from convicting a
person of a crime without proving the elements of that crime beyond
a reasonable doubt."

Based upon the U.S SUPREME COURT precedents and propositions of the Law, it follows that the state of Illinois failed to produce any evidence at all with respect to an essential element of the crime charged ("Without authority to common areas" ) of the building to support charge of Burglary under statutes in effect at time of arrest on February 12,2000.

Upon this reasoning, furthermore under **Fiore v.White**, 528 US 23, 120 S.Ct.469 (1999), the Federal Constitution requires petitioner Daniels release, as he is being held **Unconstitutionally** and in violation of **Due process safeguard protection and guarantee.**

Finally, the state court's have applied the New substantive change in legislation that eliminated a defense available to the petitioner under the law that was in effect on February 12,2000, where the highest state court's authoritative interpretaion stated that under the amended version of the statute, an accused **both** commits burglary & residntial burglary when he commits a burglary in a dwelling. **People v. Atkins,** 298 Ill.Dec.50,838 N.E.2d 943 This was a **Substantive change** in the law, that the state court's instanter in affirming violated **Ex post facto** in order to affirm, warranting the grant of this petition for relief and immediate release. **U.S.v. Ristovski,** 312 F.3d 206,2002 Fed App 0141 P **Evans v. U.S. Parole Comm.** 78 F.3d 262; **U.S. Constitution Art. 1§ 9,cl.3;**

MOL-p.11

## CONCLUSION

Petitioner Daniels has made a substantial showing of denial of a Constitutional right, as to the substantive, Constitutional issues raised in this Motion for habeas corpus relief **per 28 USC 2254,(D)1-2**and reasonable judicial minds could differ as to the propriety of the State court's resolution thereof.
Accordingly, Habeas Corpus relief should issue.

*Charles Daniels*

CHARLES DANIELS
Reg. # N-63102
P.O. Box 999
Pickneyville, IL

MOL-p.12

## Factual Background

Defendant Charles Daniels was charged by information on March 10, 2000, with one count of burglary, in violation of 720 ILCS 5/19-1(a) (West 2000). (C.24-26)  A bench trial before the Honorable Judge Thomas Davy commenced on June 5, 2002 and was continued to July 16, 2002.  On those dates, the following testimony was adduced.

On February 12, 2000, the complainant, Nora Elston, was a 76 year old woman who lived  in one of the two first floor apartments at 8232 S. Eberhart Street in Chicago. (R.115-116). She owned the building, which was a three story six-flat, and had been living there for about 15 years. (R.116)  At approximately 3:40 p.m., she was at home alone. (R.117)  The apartment across the hall from hers was vacant because the tenant had moved out. (R.117)  Elston had been using the apartment to store some of her property. (R.117)  She kept both the back and front doors locked. (R.117, 135-136)  That vacant apartment was not being rehabbed, and was completely habitable. (R.125-126)  Elston had planned to

"A"

rent the apartment again in its present condition. (R.126)

From the apartment where she lived, Elston saw a man walk up to the front of the building and ring the bell for the vacant apartment. (R.118-119) Moments later she thought she heard a rattling at the mailbox. (R.118-119) Elston immediately called the police because she believed that individual to be "fool[ing]" with the mailbox. (R.118-119) Elston believed that the  man was at the front door of her building for about three minutes. (R.128) After about 10 or 15 minutes, the Chicago Police Officer William Meister and his partner arrived. (R.128, 156-157) They checked the back yard and looked around. (R.137, 157) At that time they also checked the door to the vacant apartment, found it locked and left because the man was gone and they could not find anything. (R.118-119, 137) After they had gone, Elston thought she heard a plastic bag being opened in the apartment across the hall, so she phoned the police again. (R.119, 128, 157)

While waiting for the police the second time, Elston saw a man proceed down the walkway of her building with a plastic bag filled with some of her belongings from the vacant apartment. (R.120, 129) She watched him walk away and decided to follow him so she could tell police where he fled to when they arrived. (R.121-122) Elston followed the man westbound down an alley just north of 83rd Street until he turned northbound in another alley. (R.130-131) She stopped following him because at one point, he

"B"

was no longer carrying the plastic bag with her belongings. (R.130-131)  She went back to her house to wait for police who arrived this time in about seven minutes. (R.129)  The police put her in their squad car and drove around the alley where Elston had followed the man. (R.123, 132-133, 157-158)  After a short time, the police and Elston located the suspect near 8240 S. Burnom. (R.124, 157-158)

When the police approached the man, he did not have any plastic bags on his person. (R.133-134)  Elston testified that the plastic bags were 2 1/2 by 3 1/2 feet, and could not be secreted on one's person. (R.134-135)  After the police spoke with the man, he briefly walked over to 510 W. 83rd Street, where police found two large plastic bags. (R.133-134, 159-160) Meister showed Elston the bags and she said that the items in the bags, consisting of some clothing, a clock radio, a discman, and some compact discs, were hers. (R.160-161)  Meister gave Elston some of her clothing and belongings back that day. (R.163-164)

When Elston returned to her building she made an inspection of the vacant apartment. (R.136)  The doors were still locked. (R.136)  Elston testified that she believed that all the windows had been locked, but admitted, "[o]ne of them had to be open for him to come in." (R.136)  Elston identified defendant in court as the man who she saw leave her building with her property. (R.125)

Chicago Police Detective James Carlassare, assigned to Area

"C"

2, testified regarding post-arrest events. (R.150-155)

The State then rested its case-in-chief and the defense motion for a directed finding was denied. (R.164-166). The defense then rested. (R.166)  The trial court then announced its ruling, finding defendant guilty of burglary, and entered a verdict on the finding. (R.166-167)

At the hearing on the motion for new trial, defense counsel argued that defendant should have been convicted of residential burglary, not burglary, and reminded the court that the two were mutually exclusive charges. (R.170-172)  The State responded by arguing that the common areas of the building at issue here were not a "dwelling," but merely a building for purposes of the simple burglary statute. (R.172-173)  Furthermore, the apartment was vacant, meaning no one intended to live in the apartment within a reasonable amount of time. (R.172-173)  The State also argued that the statute had already been corrected, so that the offenses are no longer mutually exclusive.  The defense again argued that the apartment building was a residence under the statute. (R.174)

The court found that defendant made two separate unauthorized entries, one into the apartment building and the other into the vacant apartment. (R.177-179)  The trial court stated, "[H]ad the defendant been charged with the entry into a specific apartment [Childress and the residential burglary

"D"

statute] would still apply since there are numerous cases that say a building is a dwelling if going to intent to be used as a dwelling regardless of who would be living there." (R.178)  The trial court then found, "In this particular case, the testimony of Ms. Elston was that she heard some noises at the entryway . . . Entry was apparently made through there and through that area the defendant then entered the particular vacant apartment. (R.178-179)  The judge then added:

> [U]nless the evidence would be that someone entered directly into a particular apartment through a window or a door leading directly from that apartment, from outside into the apartment that as long as there is a common area hallway, stairway, or whatever, that entry into that building into that common area would sustain the charge of burglary.

(R.179)

Finding that because the defendant entered the building on his way into the apartment, the court denied defendant's motion for a new trial and sustained the charge of burglary. (R.177-179)

The court sentenced defendant to a Class X sentence of eight years on the sole count of burglary based on his prior convictions. (R.182-183) Defendant's appeal followed.  The appellate court affirmed Defendant's conviction and sentence on December 22, 2003.  Subsequently, Defendant filed a Petition for Leave to Appeal to the Illinois Supreme Court, but that Court declined to hear this case. **A Amended Post-conviction petition was filed in October 2004, and summarily dismissed on August 11,2006. Petitioner presented the Instant Federal Question of law before the Illinois Supreme Court, in February 2007, but that court declined to review. This Habeas corpus relief petition follows.**

"E"

NOTICE
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

FIRST DIVISION
DECEMBER 22, 2003

No. 1-02-2905

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 7104 |
| | ) | |
| CHARLES DANIELS, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Following a bench trial, defendant Charles Daniels was
convicted of burglary and sentenced as a Class X offender to
eight years' imprisonment. Defendant contends on appeal that he
was not proven guilty of burglary beyond a reasonable doubt
because there was insufficient evidence that he entered the
common area of an apartment building. He argues that his
unauthorized entry was to a dwelling place and was thus
residential burglary rather than burglary, at a time when
burglary and residential burglary were considered mutually
exclusive offenses. Defendant also contends that mandatory Class
X sentencing under section 5-5-3(c)(8) of the Code of Corrections
(730 ILCS 5/5-5-3(c)(8) (West 2002)) violated his right to due
process and trial by jury because the State is not required to
give notice of its intent to sentence defendant as a Class X

1-02-2905

offender or to prove his convictions, the sequence of those
convictions, or his age to a jury beyond a reasonable doubt.

At trial, Nora Elston testified that she owned an apartment
building at 8232 and 8234 South Eberhart and lived in a first-
floor apartment at the 8232 address. On February 12, 2000, the
first-floor unit across from Elston's, at the 8234 address, was
vacant and the doors were locked. Elston intended to rent the
vacant unit again "eventually," but was storing some of her
belongings there. At about 3:40 p.m., Elston looked out the
window and saw defendant approach her building. She heard the
doorbell for the vacant unit and then "fumbling" with the
mailbox. Elston saw defendant enter the building; he was in the
hallway for about three minutes before she saw him leave. Elston
called the police. The police left after finding the door to the
vacant unit locked and searching outside the building.

Later, Elston heard noises from the vacant unit and called
the police again. She saw defendant leaving her building, by the
front door, with some of the large plastic bags she had stored in
the vacant unit. Elston followed defendant, but returned home
when she lost sight of him. When the police arrived, Elston
accompanied them and pointed out defendant. The officers
arrested defendant, who was not carrying any bags. Defendant
then "produced the bags from somewhere," and Elston identified
them as hers. When Elston checked the doors to the vacant unit,

- 2 -

1-02-2905

they were still locked. Elston had not given defendant
permission to be in the vacant unit or remove property from it.

Police detective James Carlassare testified that he
interviewed defendant on the evening of February 12, 2000.
Defendant told Detective Carlassare that he "was in a lot of
trouble" and "shouldn't have gone into that apartment."

Officer William Meister testified that he responded to
Elston's call. Elston met Officer Meister in front of her
building and accompanied him and his partner to search for
defendant. After a few minutes, Elston saw defendant. Officer
Meister arrested defendant, who showed him two large plastic bags
about 10 yards away. Officer Meister brought the bags back to
Elston, who identified the property in the bags as hers.

The trial court found defendant guilty of burglary. Based
on prior burglary and residential burglary convictions, defendant
was sentenced, as a mandatory Class X offender under section 5-5-
3(c)(8), to eight years' imprisonment.

Defendant contends that he was not proven guilty of burglary
beyond a reasonable doubt because there was insufficient evidence
that he entered the common area of an apartment building. He
also argues that his unauthorized entry was to a dwelling place
and was thus residential burglary rather than burglary. He notes
that, at the time of the offense, burglary and residential
burglary were considered mutually exclusive offenses. See <u>People</u>

- 3 -

1-02-2905

v. Childress, 158 Ill. 2d 275, 302 (1994).

In assessing the sufficiency of evidence, the relevant question is whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Pollock, 202 Ill. 2d 189, 217 (2002). It is the role of the trier of fact to determine the credibility of witnesses and the weight to give their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. People v. Tenney, 205 Ill. 2d 411, 428 (2002). It is not the function of this court to retry defendant or to substitute our judgment for that of the trier of fact regarding witness credibility or the weight of the evidence. Tenney, 205 Ill. 2d at 428. Thus, a conviction will be reversed only where the evidence is "so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." Pollock, 202 Ill. 2d at 217.

Under section 19-1 of the Criminal Code (Code), a "person commits burglary when without authority he knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft," 720 ILCS 5/19-1 (West 2002). Similarly, under Code section 19-3, one "commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the

- 4 -

1-02-2905

dwelling place of another, or any part thereof, with the intent
to commit therein a felony or theft." 720 ILCS 5/19-3 (West
2002).

Until June 1, 2001, section 19-1 provided that burglary
"shall not include *** the offense of residential burglary as
defined in Section 19-3 hereof." 720 ILCS 5/19-1 (West 2000).

> "As the defendant observes, the two offenses
> are mutually exclusive.  Residential burglary
> can be committed only in dwelling places,
> while simple burglary cannot occur in a
> dwelling place." People v. Childress, 158
> Ill. 2d 275, 302 (1994).

However, in People v. Maskell, 304 Ill. App. 3d 77 (1999), where
defendant entered an apartment from the stairway and corridor of
an apartment building and removed property from the apartment,
the evidence was deemed sufficient to show that he committed both
burglary and residential burglary, and thus his burglary
conviction was affirmed. Maskell, 304 Ill. App. 3d at 84.
"Unlike Childress, *** the evidence in this case would allow a
rational trier of fact to find that defendant made two
unauthorized entries *** (1) into the building and (2) into the
apartment." Maskell, 304 Ill. App. 3d at 84.

For purposes of section 19-3, a "dwelling" is an "apartment
*** or other living quarters in which at the time of the alleged

- 5 -

1-02-2905

offense the owners or occupants actually reside or in their
absence intend within a reasonable period of time to reside."
720 ILCS 5/2-6(b) (West 2002).  A person committed residential
burglary when he entered and took items from vacant first-floor
and basement apartments of a building in which the owner lived on
the second floor and was using the unoccupied units for storage.
People v. Silva, 256 Ill. App. 3d 414, 420-21 (1993).

    Here, Elston testified that she saw defendant enter and,
after three minutes in the hallway, leave her building.  Combined
with the facts that he later entered the vacant unit and removed
Elston's property and that Elston did not grant him permission to
be in the building, a reasonable person could conclude that
defendant entered a non-dwelling portion of a building without
authority and with the intent to commit theft.  As in Maskell,
the evidence is clear that defendant made two unauthorized
entries with intent to steal: into Elston's building and into the
vacant unit.  Maskell, 304 Ill. App. 3d at 84.  Indeed, if the
course of entry in Maskell -- through the common area of the
building to the dwelling unit -- constituted two entries, then
defendant's separate entries here -- into the building and out
again, then later into the vacant unit -- are even more clearly
two distinct entries and the basis of two distinct offenses.  The
fact that the vacant unit was a dwelling, and defendant's entry
thereto was residential burglary, thus did not preclude

- 6 -

1-02-2905

defendant's conviction for burglary. There was sufficient
evidence to convict defendant of burglary beyond a reasonable
doubt.

Defendant also contends that the mandatory Class X
sentencing provision of section 5-5-3(c)(8) violates the rights
of due process and trial by jury because the State was not
required to give defendant notice of its intent to sentence him
as a Class X offender or required to prove his convictions, the
timing or sequence of the convictions, or his age beyond a
reasonable doubt to a jury. However, this court has considered
and rejected precisely this contention. People v. Smith, 338
Ill. App. 3d 555, 564 (2003), citing Apprendi v. New Jersey, 530
U.S. 466, 494-96, 147 L. Ed. 2d 435, 457-58, 120 S. Ct. 2348,
2365-66 (2000); People v. Pittman, 326 Ill. App. 3d 297, 300-01
(2001); and People v. Lathon, 317 Ill. App. 3d 573, 587 (2000).

Accordingly, the judgment of the circuit court is affirmed.
Affirmed.

GORDON,J., with O'MALLEY,P.J. and McBRIDE,J., concurring.

- 7 -

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

97992

May 26, 2004


Mr. Charles Daniels
Reg. No. N-63102
P. O. Box 1700
Galesburg, IL 61401


No.  97992 - People State of Illinois, respondent, v. Charles
             Daniels, petitioner.  Leave to appeal, Appellate
             Court, First District.

     The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.


     The mandate of this Court will issue to the Appellate Court

on June 17, 2004.



## SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
SPRINGFIELD 62701

**JULEANN HORNYAK**
CLERK OF THE COURT
(217) 782-2035

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(217) 524-8132

August 10, 2004

**FIRST DISTRICT OFFICE**
20TH FLOOR
160 N. LASALLE ST
CHICAGO 60601
(312) 793-1332

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(312) 793-6185

Mr. Charles Daniels
Reg. No. N-63102
P. O. Box 1700
Galesburg, Illinois  61401

      Re:   No. 97992 -  People State of Illinois, respondent, v. Charles Daniels, petitioner.

Dear Mr. Daniels:

     This will acknowledge receipt of your letter regarding the above-referenced cause on August 9, 2004.

     Your petition for leave to appeal was filed on March 4, 2004, and denied by the Court on May 26, 2004. Your motion for reconsideration was filed on June 15, 2004, and was denied by the Court on June 23, 2004, thereby causing the mandate of this Court to issue that same day to the Appellate Court, First District.

      Very truly yours,

      *Juleann Hornyak*
      JULEANN HORNYAK, Clerk

JH:jak
Enclosure

STATE OF ILLINOIS

COUNTY OF KNOX

AFFIDAVIT

I, CHARLES DANIELS _____, Inst. No. N63102
_____, hereby declare under penalty of perjury that the
following is true and correct based upon my personal knowledge and
that I am competent to testify thereto if called upon as a witness.

THAT DURING THE CRIMINAL MATTER 00 CR 07104, MY SUBSTANTIVE

FEDERAL AND STATE OF ILLINOIS CONSTITUTIONAL 5th, 6th and 14th

AMENDMENTS WERE VIOLATED DURING THE BENCH TRIAL, THAT HAVE NOT

BEEN ADJUDICATED. THERE IS A REASONABLE PROBABILITY THAT THE OUTCOME

WOULD HAVE BEEN DIFFERENT, BUT FOR, TRIAL COUNSEL"S ERRORS,

CONSEQUENTLY THE STATE WAS PROVIDED WITH OTHERWISE UNPROVEN

ELEMENTS OF THIS OFFENSE.  ADDITIONALLY, APPELLATE COUNSEL WAS

UNREASONABLE IN NOT INCLUDING THE FOLLOWING ISSUES ON DIRECT

APPEAL WHERE THEY WERE MENTIONED IN A TIMELY FASHION PRIOR TO

THE DIRECT APPEAL BEING FILED : SUBSTANTIVE CHARGING INSTRUMENT

DEFECTS OF THE INDICTMENT: DUE PROCESS VIOLATIONS & EX POST FACTO

VIOLATIONS, WERE NOT INCLUDED. ALSO, SIXTH AMENDMENT FAILURE TO

HAVE BEEN PROVIDED NOTICE IN INDICTMENT OF ELIGIBILTY OF THE

EXTENDED TERM BEING IMPOSED, NOT AS A APPRENDI ISSUE, BUT 6th Amend.

_Charles Daniels_
AFFIANT

Signed before me on this 30 day of
June, 20 04.

_Lenard E. Palmer_
**NOTARY PUBLIC**

"OFFICIAL SEAL"
Lenard E. Palmer
Notary Public, State of Illinois
My Commission Exp. 09/29/2007

(Rev. 10 30 01) CCCR 0603

TO THE _Appellate_ COURT OF ILLINOIS
IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL BUREAU

~~F~~ OF THE STATE OF ILLINOIS

*Charles Daniels*

Case No. _00 CR 7104_
Trial Judge _DAVY_
Court Reporter ____
Attorney _DENNIS HUGH SHERMAN_
Appeal Check Date ____
Appeal Bond ____

### NOTICE OF APPEAL

~~ap~~peal is taken from the order or judgment described below:

~~llant~~'s Name: _Charles Daniels_
~~llant~~'s Address: _Ill D.O.C_
~~llant~~'s Attorney: ____
~~ress~~: ____
~~se~~: _BURGLARY_
~~ment~~: Guilty of _BURGLARY_ on a _bench trial_
_7-16-02_
~~ence~~: _8 YRS Ill D.O.C_
~~Notice~~ Filed: _9-9-2002_

_Charles Daniels by his trial Attorney_ Appellant
_Dennis Hugh Sherman_

### VERIFIED PETITION FOR REPORT OF PROCEEDINGS AND COMMON LAW RECORD

~~Und~~er Supreme Court Rules 605-608 Appellant ask the Court to order; (1) the Official Court Reporter to transcribe an
~~orig~~inal and the copy of the proceedings, file the original with the Clerk and deliver a copy to the Appellant, or upon
~~App~~ellant's written request to the Appellant's attorney of record, and (2) the Clerk to prepare the Record on Appeal.

~~The~~ Appellant, being duly sworn, says that at the time of his/her conviction he/she was and he/she now is unable to
~~pay~~ for the Record or an appeal lawyer.

_____ Appellant

~~SU~~BSCRIBED and SWORN TO before me this _____ day of _____, _____,

_____ Notary public

### ORDER

~~IT~~ IS ORDERED; 1. ____
~~is ap~~pointed as counsel on appeal, and 2. the record and Report of Proceedings be furnished appellant free.

| | | | | | |
|---|---|---|---|---|---|
| _6-5-0_ | , _2002_ | _9-5_ | , _2002_ | , | |
| _7-16_ | , _2002_ | | , | , | |
| _7-30_ | , _2002_ | | , | , | |

~~DA~~TE: _____, _____  ENTER: _____

Judge

Judge' No.

~~Ac~~knowledge receipt: ____

Court Reporter

  
STATE OF ILLINOIS   )
                             )   SS
COUNTY OF COOK      )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT - CRIMINAL DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   No.  00 CR 7104 |
| | ) |
| CHARLES DANIELS, | )   Honorable Judge |
| | )   Davy, Presiding. |
|     Defendant. | ) |

### NOTICE OF APPEAL

    Defendant hereby appeals from the following order of judgment:

Appellant's name:      CHARLES DANIELS

Appellant's address:   Reg. No. N63102
                         Taylorville Correctional Center
                         Route 29 South
                         P.O. Box 900
                         Taylorville, Illinois 62568

Appellant's attorney:  State Appellate Defender
                         203 N. LaSalle Street, 24th Floor
                         Chicago, Illinois 60601

Judgment:              Dismissal of post-conviction petition
                         without an evidentiary hearing.

Date of Judgment:      August 11, 2006

CHARLES DANIELS     by Ken Peters
Taylorville Correctional Center
Route 29 South
P.O. Box 900
Taylorville, Illinois 62568



# SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
SPRINGFIELD 62701

February 15, 2007

**JULEANN HORNYAK**
CLERK OF THE COURT
(217) 782-2035

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(217) 524-8132

**FIRST DISTRICT OFFICE**
20TH FLOOR
160 N. LASALLE ST.
CHICAGO 60601
(312) 793-1332

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(312) 793-6185

Mr. Charles Daniels
Reg. No. N-63102
Taylorville Correctional Center
P. O. Box 1000
Taylorville, Illinois  62568

      Re: M11790 - Charles Daniels, petitioner, v. People State of Illinois, respondent.

Dear Mr. Daniels:

      This office has today filed your motion for relief under Supreme Court Rule 381, styled as set forth above.  You are being permitted to proceed as a poor person.

      Your motion will be referred to the Court, and you will be advised as to the action taken.

      In accordance with your request, we are returning to you with this letter a file-stamped copy of your motion.

      Very truly yours,

      *Juleann Hornyak*
Clerk of the Supreme Court

JH/jak
Enclosure
cc:    AG CrMadigan

### PROOF/CERTICATE OF SERVICE

TO: CLERK OF THE U.S. DISTRICT COURT
    c/o- Prisoner Correspondent
    219  South Dearborn St.
    Chicago, Illinois 60604


Please take NOTICE that I have placed in the institutional mail

at Pickneyville Corr.Ctr., properly addressed to the Clerk of the

U.S. District Court-c/o- Prisoner  Correspondent, the enclosed

Habeas corpus petition and attached exhibits, with two copies

added to the original filing.

                                        _Charles Daniels_
                                        Charles Daniels N-63102

### DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 USC 1746, 18 USC 1621                    , I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: _NOV 2, 2007_

                                        /s/___ _Charles Daniels_
                                        NAME: _CHARLES DANIELS_
                                        IDOC#: _N-63102_
                                        _Pickneyville_ Correctional Center
                                        P.O. BOX _999_
                                        _Pickneyville_____, IL _62274_