**NOTICE**
The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

*McDermott*

FIRST DIVISION
DECEMBER 22, 2003

No. 1-02-2905

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 00 CR 7104 |
| CHARLES DANIELS, | ) ) | Honorable Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Following a bench trial, defendant Charles Daniels was convicted of burglary and sentenced as a Class X offender to eight years' imprisonment. Defendant contends on appeal that he was not proven guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he entered the common area of an apartment building. He argues that his unauthorized entry was to a dwelling place and was thus residential burglary rather than burglary, at a time when burglary and residential burglary were considered mutually exclusive offenses. Defendant also contends that mandatory Class X sentencing under section 5-5-3(c)(8) of the Code of Corrections (730 ILCS 5/5-5-3(c)(8) (West 2002)) violated his right to due process and trial by jury because the State is not required to give notice of its intent to sentence defendant as a Class X

EXHIBIT A

1-02-2905

offender or to prove his convictions, the sequence of those convictions, or his age to a jury beyond a reasonable doubt.

At trial, Nora Elston testified that she owned an apartment building at 8232 and 8234 South Eberhart and lived in a first-floor apartment at the 8232 address. On February 12, 2000, the first-floor unit across from Elston's, at the 8234 address, was vacant and the doors were locked. Elston intended to rent the vacant unit again "eventually," but was storing some of her belongings there. At about 3:40 p.m., Elston looked out the window and saw defendant approach her building. She heard the doorbell for the vacant unit and then "fumbling" with the mailbox. Elston saw defendant enter the building; he was in the hallway for about three minutes before she saw him leave. Elston called the police. The police left after finding the door to the vacant unit locked and searching outside the building.

Later, Elston heard noises from the vacant unit and called the police again. She saw defendant leaving her building, by the front door, with some of the large plastic bags she had stored in the vacant unit. Elston followed defendant, but returned home when she lost sight of him. When the police arrived, Elston accompanied them and pointed out defendant. The officers arrested defendant, who was not carrying any bags. Defendant then "produced the bags from somewhere," and Elston identified them as hers. When Elston checked the doors to the vacant unit,

1-02-2905

they were still locked. Elston had not given defendant permission to be in the vacant unit or remove property from it.

Police detective James Carlassare testified that he interviewed defendant on the evening of February 12, 2000. Defendant told Detective Carlassare that he "was in a lot of trouble" and "shouldn't have gone into that apartment."

Officer William Meister testified that he responded to Elston's call. Elston met Officer Meister in front of her building and accompanied him and his partner to search for defendant. After a few minutes, Elston saw defendant. Officer Meister arrested defendant, who showed him two large plastic bags about 10 yards away. Officer Meister brought the bags back to Elston, who identified the property in the bags as hers.

The trial court found defendant guilty of burglary. Based on prior burglary and residential burglary convictions, defendant was sentenced, as a mandatory Class X offender under section 5-5-3(c)(8), to eight years' imprisonment.

Defendant contends that he was not proven guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he entered the common area of an apartment building. He also argues that his unauthorized entry was to a dwelling place and was thus residential burglary rather than burglary. He notes that, at the time of the offense, burglary and residential burglary were considered mutually exclusive offenses. See People

1-02-2905

v. Childress, 158 Ill. 2d 275, 302 (1994).

In assessing the sufficiency of evidence, the relevant question is whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Pollock, 202 Ill. 2d 189, 217 (2002). It is the role of the trier of fact to determine the credibility of witnesses and the weight to give their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. People v. Tenney, 205 Ill. 2d 411, 428 (2002). It is not the function of this court to retry defendant or to substitute our judgment for that of the trier of fact regarding witness credibility or the weight of the evidence. Tenney, 205 Ill. 2d at 428. Thus, a conviction will be reversed only where the evidence is "so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." Pollock, 202 Ill. 2d at 217.

Under section 19-1 of the Criminal Code (Code), a "person commits burglary when without authority he knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft," 720 ILCS 5/19-1 (West 2002). Similarly, under Code section 19-3, one "commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the

1-02-2905

dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft." 720 ILCS 5/19-3 (West 2002).

Until June 1, 2001, section 19-1 provided that burglary "shall not include *** the offense of residential burglary as defined in Section 19-3 hereof." 720 ILCS 5/19-1 (West 2000).

> "As the defendant observes, the two offenses are mutually exclusive. Residential burglary can be committed only in dwelling places, while simple burglary cannot occur in a dwelling place." People v. Childress, 158 Ill. 2d 275, 302 (1994).

However, in People v. Maskell, 304 Ill. App. 3d 77 (1999), where defendant entered an apartment from the stairway and corridor of an apartment building and removed property from the apartment, the evidence was deemed sufficient to show that he committed both burglary and residential burglary, and thus his burglary conviction was affirmed. Maskell, 304 Ill. App. 3d at 84. "Unlike Childress, *** the evidence in this case would allow a rational trier of fact to find that defendant made two unauthorized entries *** (1) into the building and (2) into the apartment." Maskell, 304 Ill. App. 3d at 84.

For purposes of section 19-3, a "dwelling" is an "apartment *** or other living quarters in which at the time of the alleged

- 5 -

1-02-2905

offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." 720 ILCS 5/2-6(b) (West 2002). A person committed residential burglary when he entered and took items from vacant first-floor and basement apartments of a building in which the owner lived on the second floor and was using the unoccupied units for storage. People v. Silva, 256 Ill. App. 3d 414, 420-21 (1993).

    Here, Elston testified that she saw defendant enter and, after three minutes in the hallway, leave her building. Combined with the facts that he later entered the vacant unit and removed Elston's property and that Elston did not grant him permission to be in the building, a reasonable person could conclude that defendant entered a non-dwelling portion of a building without authority and with the intent to commit theft. As in Maskell, the evidence is clear that defendant made two unauthorized entries with intent to steal: into Elston's building and into the vacant unit. Maskell, 304 Ill. App. 3d at 84. Indeed, if the course of entry in Maskell -- through the common area of the building to the dwelling unit -- constituted two entries, then defendant's separate entries here -- into the building and out again, then later into the vacant unit -- are even more clearly two distinct entries and the basis of two distinct offenses. The fact that the vacant unit was a dwelling, and defendant's entry thereto was residential burglary, thus did not preclude

1-02-2905

defendant's conviction for burglary. There was sufficient evidence to convict defendant of burglary beyond a reasonable doubt.

Defendant also contends that the mandatory Class X sentencing provision of section 5-5-3(c)(8) violates the rights of due process and trial by jury because the State was not required to give defendant notice of its intent to sentence him as a Class X offender or required to prove his convictions, the timing or sequence of the convictions, or his age beyond a reasonable doubt to a jury. However, this court has considered and rejected precisely this contention. People v. Smith, 338 Ill. App. 3d 555, 564 (2003), citing Apprendi v. New Jersey, 530 U.S. 466, 494-96, 147 L. Ed. 2d 435, 457-58, 120 S. Ct. 2348, 2365-66 (2000); People v. Pittman, 326 Ill. App. 3d 297, 300-01 (2001); and People v. Lathon, 317 Ill. App. 3d 573, 587 (2000).

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

GORDON,J., with O'MALLEY,P.J. and McBRIDE,J., concurring.