IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| CHARLES DANIELS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 07 C 6475 |
| | ) | |
| DAN AUSTIN, Warden, | ) | |
| Pinckneyville Correctional Center, | ) | The Honorable |
| | ) | Harry D. Leinenweber, |
| Respondent. | ) | Judge Presiding. |

## ANSWER TO PETITIONER'S
## PETITION FOR WRIT OF HABEAS CORPUS

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and this Court's January 4, 2008 order, respondent DAN AUSTIN, Warden of the Pinckneyville Correctional Center, hereby files this Answer to the above-captioned Petition for Writ of Habeas Corpus, and states as follows:

1. Petitioner Charles Daniels, identified as prisoner N63102, is incarcerated at the Pinckneyville Correctional Center in Pinckneyville, Illinois, where he is in the custody of respondent Dan Austin, the warden of that facility.

2. Following a bench trial in the Circuit Court of Cook County, petitioner was convicted of burglary and was sentenced as a Class X offender to eight years' imprisonment. Exhibit A (Rule 23 Order, *People v. Daniels*, No. 1-02-2905 (Ill.App. 2003)); Exhibit B (Petitioner's Brief, *People v. Daniels*, No. 1-02-2905); Exhibit C

(State's Brief, *People v. Daniels*, No. 1-02-2905); Exhibit D (Petitioner's Reply,

*People v. Daniels*, No. 1-02-2905).

3.      The state appellate court affirmed his conviction and sentence on

December 22, 2003.  Exh. A.  The state appellate court set forth the facts of the case

as follows:

> At trial, Nora Elston testified that she owned an apartment building at 8232 and 8234 South Eberhart and lived in a first-floor unit at the 8232 address.  On February 12, 2000, the first-floor unit across from Elston's, at the 8234 address, was vacant and the doors were locked. Elston intended to rent the vacant unit again "eventually," but was storing some of her belongings there.  At about 3:40 p.m., Elston looked out the window and saw defendant approach her building.  She heard the doorbell for the vacant unit and then "fumbling" with the mailbox. Elston saw defendant enter the building; he was in the hallway for about three minutes before she saw him leave.  Elston called the police.  The police left after finding the door to the vacant unit locked and searching outside the building.
>
> Later, Elston heard noises from the vacant unit and called the police again.  She saw defendant leaving her building, by the front door, with some of the large plastic bags she had stored in the vacant unit. Elston followed defendant, but returned home when she lost sight of him.  When the police arrived, Elston accompanied them and pointed out defendant.  The officers arrested defendant, who was not carrying any bags.  Defendant then "produced the bags from somewhere," and Elston identified them as hers.  When Elston checked the doors to the vacant unit, they were still locked.  Elston had not given defendant permission to be in the vacant unit or remove property from it.
>
> Police detective James Carlassare testified that he interviewed defendant on the evening of February 12, 2000.  Defendant told Detective Carlassare that he "was in a lot of trouble" and "shouldn't have gone into that apartment."
>
> Office William Meister testified that he responded to Elston's call. Elston met Officer Meister in front of her building and accompanied him and his partner to search for defendant.  After a few minutes, Elston saw defendant.  Officer Meister arrested defendant, who showed him two large plastic bags about 10 yards away.  Officer

Meister brought the bags back to Elston, who identified the property in the bags as hers.

The trial court found defendant guilty of burglary. Based on prior burglary and residential burglary convictions, defendant was sentenced, as a mandatory Class X offender under section 5-5-3(c)(8), to eight years' imprisonment.

Exh. A at 2-3.

4.    Petitioner filed a petition for leave to appeal (PLA) that the Illinois Supreme Court denied on May 26, 2004. Exhibit E (PLA, *People v. Daniels*, No. 97992); Exhibit F (Order Denying PLA, *People v. Daniels*, No. 97992 (Ill. 2004)). Petitioner filed a petition for rehearing that the Illinois Supreme Court denied on June 23, 2004. Exhibit G (Petition for Rehearing, *People v. Daniels*, No. 97992); Exhibit H (Order Denying Petition for Rehearing, *People v. Daniels*, No. 97992 (Ill. 2004)). Petitioner did not file a petition for a writ of certiorari to the United States Supreme Court. Pet. at 2.

5.    On October 5, 2004, petitioner filed a pro se postconviction petition pursuant to 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County. Exhibit I (Postconviction petition, *People v. Daniels*, No. 00 CR 07104, Circuit Court of Cook County). On August 11, 2006, following a hearing on the State's motion to dismiss, the trial court dismissed the postconviction petition. On postconviction appeal, appellate counsel moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Exhibit J (Motion to Withdraw as Appellate Counsel, *People v. Daniels*, Nos. 1-06-2583 & 1-06-2769). The state appellate court granted the motion to withdraw and affirmed the judgment of the trial court. Exhibit K (Rule 23 Order,

*People v. Daniels*, Nos. 1-06-2583 & 1-06-2769 (Ill.App. 2007)).  Petitioner then

sought leave to file an original habeas action in the Illinois Supreme Court on

February 15, 2007; leave to file was denied in May 2007, prior to the appellate

court's July 30, 2007 affirmance of the trial court's dismissal of his postconviction

petition.  Exhibit L (Petitioner's Motion For Leave to File Original Habeas

Complaint, No. M11790); Exhibit M (Order Denying Leave to File Original Habeas

Complaint, No. M11790 (Ill. 2007)).  Petitioner did not file a postconviction PLA.

Pet. at 3.

      6.     The above-captioned petition for a writ of habeas corpus, filed under 28

U.S.C. § 2254(d), was signed by petitioner on November 2, 2007, the earliest date on

which petitioner could have mailed it from his correctional institution.[1]  Giving

petitioner the benefit of the doubt, the petition was "filed" on that date.  *See, e.g.,*

*Jones v. Bertrand*, 171 F.3d 499, 501 (7th Cir. 1999).

      7.     The instant petition raises the following claims:

      A.    the State failed to prove beyond a reasonable doubt that he entered the
              common area of the apartment building, Pet. at 5;

---

[1]  Respondent assumes, arguendo, that the petition was filed on November 2, 2007, the date that petitioner signed it.  *See* Pet., Proof/Certificate of Service.  Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts Codifies the "mailbox rule" applicable to pro se habeas filings.  Although the Proof of Service indicates the date petitioner deposited his habeas petition in Pickneyville Correctional Center's mailing system, it does not state whether postage was prepaid.  Accordingly, respondent cannot discern whether petitioner compiled with Ruled 3(d) and is therefore entitled to the benefit of the Rule.  *Cf. United States v. Craig*, 368 F.3d 738, 740-41 (7th Cir. 2004) (observing that §2255 petitioner is entitled to benefit of mailbox rule with respect to his notice of appeal only if petitioner complies with text of Fed. R. App. Proc. 4(c)(1)).

    B.   trial counsel was constitutionally ineffective for eliciting on cross-examination Elston's statement that petitioner entered the hallway and remained in the building for three minutes; and

    C.   petitioner's conviction violated the Ex Post Facto Clause because a new substantive amendment to the burglary statute was applied retroactively to him.  Pet. at 6.

8.      On January 4, 2008, this Court ordered respondent to "answer or otherwise plead" to the § 2254 petition.  (Doc. 8).  On January 23, 2008, respondent filed a motion to dismiss the instant federal habeas petition on the ground that it was untimely under AEDPA's limitations period.  (Doc 13).  Respondent withdrew his motion to dismiss on February 14, 2008 and requested leave to file an answer within thirty days of this Court's granting the motion to withdraw.  (Doc. 19).  On March 24, 2008, this Court granted respondent's motion to withdraw his motion dismiss and ordered respondent to file an answer no later than April 11, 2008. (Doc. 22).

9.      Petitioner has exhausted his state court remedies because no avenues remain available by which petitioner may present the constitutional claims raised in this habeas petition to the state courts.  *See* 725 ILCS 5/122-1, *et seq.*

10.     The following materials are being filed with this Court under separate cover:

| Exhibit A: | Rule 23 Order, *People v. Daniels*, No. 1-02-2905 (Ill.App. 2003); |
|---|---|
| Exhibit B: | Petitioner's Brief, *People v. Daniels*, No. 1-02-2905; |
| Exhibit C: | State's Brief, *People v. Daniels*, No. 1-02-2905; |
| Exhibit D: | Petitioner's Reply, *People v. Daniels*, No. 1-02-2905; |

Exhibit E:          PLA, *People v. Daniels*, No. 97992;

Exhibit F:          Order Denying PLA, *People v. Daniels*, No. 97992 (Ill. 2004);

Exhibit G:          Petition for Rehearing, *People v. Daniels*, No. 97992;

Exhibit H:          Order Denying Petition for Rehearing, *People v. Daniels*, No. 97992 (Ill. 2004);

Exhibit I:          Postconviction petition, *People v. Daniels*, No. 00 CR 07104, Circuit Court of Cook County;

Exhibit J:          Motion to Withdraw as Appellate Counsel, *People v. Daniels*, Nos. 1-06-2583 & 1-06-2769;

Exhibit K:          Rule 23 Order, *People v. Daniels*, Nos. 1-06-2583 & 1-06-2769 (Ill.App. 2007);

Exhibit L:          Petition for Leave to File Habeas Complaint in Illinois Supreme Court, No. M11790; and

Exhibit M:          Order Denying Leave to File Habeas Complaint, No. M11790 (Ill. 2007);

11.     Respondent has requested but has not yet received the state-court record in this case. Apparently, the lengthy delay is due to a disparity in the respective records of the Circuit Court of Cook County and the Illinois Appellate Court, First District, indicating the entity with possession of the record. Respondent will file the entire record when it becomes available. However, respondent believes that this matter can be settled without the benefit of the record because 28 U.S.C. § 2254(d)(2) and (e)(1) require deference to the state appellate court's factual findings, and petitioner has not offered any reason why those factual findings were clearly erroneous. *See Simental v. Matrisciano*, 363 F.3d 607, 612

(7th Cir. 2004) (decision of whether transcripts are necessary left to the discretion of the district court; review of state court transcripts in habeas proceedings is "rare.").

## STANDARD OF REVIEW

### Procedural Requirements

The federal habeas statute requires exhaustion of available state remedies before pursuing federal habeas relief.  *See* 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); *see also, e.g., Woodford v. Ngo*, 126 S. Ct. 2378, 2386-87 (2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

A claim is not exhausted for the purposes of Section 2254(b) unless it is "fully and fairly presented" to the state courts.  A fully presented claim is one that is invoked in "one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845-46.  In Illinois, a complete round of appellate review includes presenting a claim on appeal to the Illinois appellate court and in a PLA to the Illinois Supreme Court.  *See id.*  A fairly presented claim is one where the operative facts and legal principles were argued to the state court in accordance with state procedural rules.  *See Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

"In habeas, state-court remedies are described as having been 'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Ngo*, 126 S. Ct. at 2387 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). "[E]xhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court.  Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding."  *Ngo*, 126 S. Ct. at 2387.

A claim may be procedurally defaulted because a state court has determined that it is barred under state procedural law.  *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  A claim may also be procedurally defaulted, even when a state court has not issued a procedural ruling on the claim, if the claim could no longer be raised in state court because a state court would determine, if presented with the claim, that it is procedurally barred under state law.  *See id*. at 735 n.1; *accord Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).

Procedural default may be excused when there is cause for the default and prejudice as a result of the alleged violation of federal law, or where a refusal to consider the claim would result in a fundamental miscarriage of justice.  *See, e.g., Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002).

To show cause for a default, a petitioner must offer an "external" excuse, *i.e.*, one that cannot fairly be attributed to him.  *See, e.g., Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003).  To show prejudice, a petitioner must demonstrate that the alleged constitutional violation establishes a reasonable probability that the result

8

would have been different but for the violation.  *See Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (quoting *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

To establish a fundamental miscarriage of justice, a petitioner must adduce evidence making it "'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

## Adjudication of the Merits Under 28 U.S.C. § 2254(d)

Section 2254(d) provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided differently from the Supreme Court a case with "materially indistinguishable facts."  *Huynh v. Bowen*, 374 F.3d 546, 548 (7th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).

A state court decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Cossel v. Miller*, 229 F.3d 649, 654 (7th Cir. 2000) (citing *Williams*, 529 U.S. at 413). The Seventh Circuit has repeatedly instructed that the unreasonable application prong of Section 2254(d)(1) is "a difficult standard to meet." *See, e.g., Floyd v. Hanks*, 364 F.3d 847, 850 (7th Cir. 2003). A federal court is not permitted to substitute its independent judgment as to the correct outcome; it may only ask if the state court's decision was reasonable. *See Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000); *see also Huynh*, 374 F.3d at 548 ("An unreasonable application is not simply what we might deem to be an incorrect or erroneous application of federal law."). "Unreasonableness also serves as the touchstone against which state court decisions based upon determinations of fact in light of the evidence presented are evaluated." *Ward v. Sternes*, 334 F.3d 696, 703-704 (7th Cir. 2003) (citing 28 U.S.C. § 2254(d)(2)).

## CLAIMS RAISED BY PETITIONER

**I.      The State Did Not Prove Beyond A Reasonable Doubt That Petitioner Entered The Common Area Of The Apartment Building.**

### Merits

The state appellate court rejected petitioner's claim on the merits:

Defendant contents that he was not proven guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he entered the common area of an apartment building. He also argues that his unauthorized entry was to a dwelling place and was thus

residential burglary rather than burglary. He notes that, at the time of the offense, burglary and residential burglary were considered mutually exclusive offenses. See <u>People v. Childress</u>, 158 Ill. 2d 275, 302 (1994).

In assessing the sufficiency of the evidence, the relevant question is whether, considering the evidence in light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>People v. Pollock</u>, 202 Ill. 2d 189, 217 (2002). It is the role of the trier of fact to determine the credibility of witnesses and the weight to give their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. <u>People v. Tenney</u>, 205 Ill. 2d 411, 428 (2002). It is not the function of this court to retry defendant or to substitute our judgment for that of the trier of fact regarding witness credibility or the weight of the evidence. <u>Tenney</u>, 205 Ill. 2d at 428. Thus, a conviction will be reversed only where the evidence is "so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." <u>Pollock</u>, 202 Ill. 2d at 217.

Under section 19-1 of the Criminal Code (Code), a "person commits burglary when without authority he knowingly enters or without authority remains within a building, * * * or any part thereof, with intent to commit therein a felony or theft," 720 ILCS 5/19-1 (West 2002). Similarly, under Code section 19-3, one "commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft." 720 ILCS 5/19-3 (West 2002).

Until June 1, 2001, section 19-1 provided that burglary "shall not include * * * the offense of residential burglary as defined in Section 19-3 hereof." 720 ILCS 5/19-1 (West 2000).

> "As the defendant observes, the two offenses are mutually exclusive. Residential burglary can only be committed in dwelling places, while simple burglary cannot occur in a dwelling place." <u>People v. Childress</u>, 158 Ill. 2d 275, 302 (1994).

However, in <u>People v. Maskell</u>, 304 Ill. App. 3d 77 (1999), where defendant entered an apartment from the stairway and corridor of an apartment building and removed property from the apartment, the evidence was deemed sufficient to show that he committed both

burglary and residential burglary, and thus his burglary conviction
was affirmed. <u>Maskell</u>, 304 Ill. App. 3d at 84.  "Unlike <u>Childress</u>, * * *
the evidence in this case would allow a rational trier of fact to find that
defendant made two unauthorized entries * * * (1) into the building
and (2) into the apartment." <u>Maskell</u>, 304 Ill. App. 3d at 84.

For purposes of section 19-3, a "dwelling" is an "apartment * * * or
other living quarters in which at the time of the alleged offense the
owners or occupants actually reside or in their absence intend within a
reasonable period of time to reside." 720 ILCS 5/2-6(b) (West 2002).  A
person committed residential burglary when he entered and took items
from a vacant first-floor and basement apartments of a building in
which the owner lived on the second floor and was using the
unoccupied units for storage.  <u>People v. Silva</u>, 256 Ill. App. 3d 414, 420-
21 (1993).

Here, Elston testified that she saw defendant enter and, after three
minutes in the hallway, leave her building.  Combined with the facts
that he later entered the vacant unit and removed Elston's property
and that Elston did not grant him permission to be in the building, a
reasonable person could conclude that defendant entered a non-
dwelling portion of the building without authority and with the intent
to commit theft.  As in <u>Maskell</u>, the evidence is clear that defendant
made two unauthorized entries with intent to steal:  into Elston's
building and into the vacant unit.  <u>Maskell</u>, 304 Ill. App. 3d at 84.
Indeed, if the course of entry in <u>Maskell</u> — through the common area
of the building to the dwelling unit — constituted two entries, then
defendant's separate entries here — through the common area of the
building to the dwelling unit — are even more clearly two distinct
entries and the basis of two distinct offenses.  The fact that the vacant
unit was a dwelling, and defendant's entry thereto was residential
burglary, thus did not preclude defendant's conviction for burglary.
There was sufficient evidence to convict defendant of burglary beyond
a reasonable doubt.

Exh. A at 3-7.  Since the state appellate court resolved petitioner's claim on the

merits, 28 U.S.C. § 2254(d) bars habeas relief unless the state appellate court's

decision was contrary to or an unreasonable determination of clearly established

federal law, 28 U.S.C. § 2254(d)(1), or it was based on an unreasonable

determination of the facts.  28 U.S.C. § 2254(d)(2).  Here the state appellate court's

decision, the relevant decision for purposes section 2254(d), was not contrary to or an unreasonable application of federal law because that court applied a legal standard that was consistent with federal law.

Supreme Court precedent holds that the Due Process Clause requires the State to establish beyond a reasonable doubt that a defendant committed each element of the charged offense. *See, e.g., In re Winship*, 397 U.S. 358, 361-63 (1970). "[A] court examining the sufficiency of the evidence underlying a defendant's conviction must construe that evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The state appellate court applied a state-law standard that is consistent with *Winship* and *Jackson*. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (state court may rely upon state-law decisions in resolving federal claim "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent). In resolving petitioner's claim, the state appellate court applied *People v. Pollock*, 780 N.E.2d 669 (Ill. 2002), an Illinois case that faithfully applies *Jackson*. *See Pollock*, 780 N.E.2d at 685 (citing and discussing *Jackson*, 443 U.S. at 318-19). In addition, the legal principle applied by the appellate court — that a reviewing court should view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt — is perfectly consistent with *Jackson*. *See*

*McFowler*, 349 F.3d at 446 (citing *Jackson*, 443 U.S. at 319).  Thus, the state court applied the proper standard, even if it did not explicitly identify *Jackson*.  *See Early*, 537 U.S. at 8.

Petitioner does not meaningfully contend that the state court applied the wrong legal standard.  Instead, as couched in the language of § 2254(d), it appears that petitioner's claim is either:  (1) the state appellate court's decision is an unreasonable application of *Jackson* because no reasonable trier of fact would have determined that the State proved the second element of burglary beyond a reasonable doubt; or (2) the state appellate court's decision was based on an unreasonable determination of the facts in that it concluded, without support in the record, that petitioner entered the building's common areas without authority.  *See* Pet., Mem. at 4-6.  Regardless of how petitioner's claim is framed, it is meritless because the state appellate court's decision was reasonable.  *Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003) (reasonableness is the "touchstone" of analyzing the state court's opinion under both section 2254(d)(1)'s "unreasonable application' clause and section 2254(d)(2)).  And, even if section 2254(d) did not govern this Court's review of petitioner's due process claim, he would not be entitled to relief under *Jackson* because, construing the evidence in the light most favorable to the State, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt.  *See McFowler*, 349 F.3d at 446 (citing *Jackson*, 443 U.S. at 319).

At the time petitioner committed the offense, the elements of the offense of burglary were: (1) entry into one of the structures listed in the burglary statute,

such as a "building"; (2) without authority; and (3) "with the intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2000). Under Illinois law at that time, "residential burglary [could] be committed only in dwelling places, while simple burglary [could] not occur in a dwelling place." *Childress*, 633 N.E.2d at 647.

The State proved the first element of burglary — entry into a "building" — through Elston's testimony that petitioner entered the hallway, a common element of her apartment building, and remained there for approximately three minutes. Exh. A at 2. Petitioner maintains that he entered a "dwelling," not a "building" because he entered and exited the apartment through an unlocked window, rather than through a common element of the building. Pet., Mem. at 2-4. According to petitioner, the State's direct examination did not establish that petitioner entered the building through a common area and that Elston testified that he entered the apartment through the unlocked window. *Id.* This claim is without merit, as petitioner admits Elston testified on cross-examination that he was in the building's hallway for three minutes. *See* Pet., Mem. at 4 ("Q: How long would you say he (petitioner) was in the hallway of your building? A: I'd say three minutes") (citing Elston's cross-examination).

The state appellate court found that petitioner entered Elston's building and remained in the hallway for three minutes before leaving the building. Exh. A at 2 ("Elston saw defendant enter the building; he was in the hallway for about three minutes before she saw him leave."). Petitioner has not demonstrated that this finding was an unreasonable determination of the facts based on the record

evidence; to the contrary, he concedes that Elston testified on cross-examination that he was in the hallway of the building for three minutes.  *See* Pet., Mem. at 4.

Petitioner implies that the State failed to prove him guilty beyond a reasonable doubt because some of the facts that secured his conviction were elicited on cross-examination.  *See* Pet., Mem. at 4, 6.  This position has no support in Illinois or federal law — the trier of fact is permitted to consider the totality of the evidence presented at trial in reaching its verdict.  *See, e.g., People v. Smith*, 685 N.E.2d 880, 890 (Ill. 1997).

Petitioner also suggests that counsel's eliciting this information on cross-examination was ineffective assistance of counsel.  Pet., Mem. at 5.  This claim is separate from his due process claim and is addressed in greater detail in respondent's answer to Claim II, *infra* at 17-21.  For the purposes of this claim, the trier of fact was entitled to consider all of the evidence adduced at trial, regardless of the strategic wisdom of petitioner's attorney eliciting that information from Elston on cross-examination.

The State proved the second element of burglary — "without authority" — beyond a reasonable doubt by establishing that petitioner did not have authority to enter or remain in the building.  Exh. A at 3.  Elston called the police on multiple occasions to report an intruder, and petitioner has never maintained that Elston had given him permission to enter or remain on her property.  Thus, a reasonable trier of fact could conclude that the State proved the second element beyond a reasonable doubt.

The State proved the final element — that petitioner had the intent to commit a felony or theft — by showing that shortly after petitioner was in the hallway, he committed theft.  *See* Exh. A at 6; *see also* 720 ILCS 5/16-1 ("A person commits theft when he knowingly . . . . [o]btains or exerts unauthorized control over property of the owner . . . . and [i]ntends to deprive the owner permanently of the use or benefit of the property").  Given the proximity of petitioner's unlawful entry into the building's common areas and his theft of property from the apartment, the trier of fact reasonably determined that petitioner had the requisite "intent to steal" when he was in the hallway.  This inference is bolstered by Elston's testimony that she heard petitioner ring the doorbell to the vacant unit and saw him fumbling with the mailbox, which prompted her to call the police.  Exh. A at 2.

In summary, the state appellate court's decision was not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts.  A reasonable trier of fact could conclude, based on Elston's testimony, that petitioner entered the common elements of the apartment building without authority and with the intent of committing theft or a felony.

**II.    Petitioner's Counsel Was Constitutionally Ineffective For Establishing On Cross-Examination That Petitioner Was In The Hallway Of The Building.**

## Procedural Default

This claim is procedurally defaulted because petitioner did not raise it on a complete round of review in state court.  Petitioner did not raise this claim on direct appeal; he raised it for the first time in his postconviction proceedings.  *See* Exh. I.

However, petitioner did not file a postconviction PLA, and thus he failed to present this claim for a complete round of review. *See Boerckel*, 526 U.S. at 845-46; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (*Boerckel* applies to PLAs filed on state postconviction review). The petition suggests two possible means by which this claim was fairly presented for a complete round of review: (1) it was presented to the state appellate court in his brief on postconviction appeal and to the Illinois Supreme Court in his petition for leave to file an original habeas action; and (2) its presentation to the Illinois Supreme Court in a petition for leave to file an original habeas action is itself a complete round of review.

Petitioner's claim is not saved from procedural default by virtue of its piecemeal presentation on postconviction appeal and in his motion for leave to file an original habeas action in the Illinois Supreme Court. "Fair presentment in turn requires the petitioner to assert his federal claim through one *complete round* of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (emphasis added) (citing *Boerckel*, 526 U.S. at 845). Petitioner did not satisfy this requirement of a complete round of review by piecemeal presentation of his claim to the state appellate court on postconviction review and then in a separate original habeas action in the Illinois Supreme Court.

Furthermore, petitioner cannot argue that an original habeas action in the Illinois Supreme Court itself constitutes a complete round of review. The Illinois Constitution grants the Illinois Supreme Court discretionary original jurisdiction

over habeas corpus actions.  Ill. Const., art VI, § 4(a).  The Illinois Supreme Court requires that a person obtain leave to file an original habeas action.  *See* Ill. Sup. Ct. R. 381.  When the Illinois Supreme Court denies leave to file an original habeas action, it has no bearing on a plaintiff's ability to present the same claims in a habeas complaint in the state trial court.  *See Crump v. Lane*, 807 F.2d 1394, 1396 (7th Cir. 1986) (denial of leave to file an original action in the Illinois Supreme Court is without prejudice and does not preclude refiling in state trial court).  Thus, where the Illinois Supreme Court denies leave to file an original action, a complete round of review includes filing an action in the circuit court, an appeal in the state appellate court, and a PLA to the Illinois Supreme Court.  *See, e.g., Monroe v. Collins*, 66 N.E.2d 670, 672 (Ill. 1946) (denial of leave to file original action "was not an adjudication on the merits nor did it estop plaintiff from starting another action in the circuit court and perfecting an appeal to [the Illinois Supreme Court").

Finally, petitioner's claim was not fairly presented to the Illinois Supreme Court because that court did not have an opportunity to address the merits of petitioner's claim.  The Illinois Supreme Court's jurisdiction over original habeas actions is limited to two circumstances: (1) the trial court lacked jurisdiction (personal or subject matter); or (2) events subsequent to the conviction entitle the prisoner to immediate release.  *People v. Gosier*, 792 N.E.2d 1266, 1270 (Ill. 2001) (citing 735 ILCS 5/10-124).  Otherwise, a prisoner must seek relief pursuant to the state postconviction statute.  *Baker v. Ill. Dept. of Corr.*, 477 N.E.2d 686, 689 (Ill. 1985).  Petitioner did not fairly present his ineffective assistance of counsel claim

because it was plainly non-cognizable in a state habeas action, *see, e.g., People ex rel. Walker v. Twomey*, 291 N.E.2d 833, 835 (Ill.App. 1973) (collecting cases), and thus the Illinois Supreme Court did not have a fair opportunity to pass on the merits of petitioner's claim. *See Lewis*, 390 F.3d at 1025. The Illinois Supreme Court cannot be expected to ignore its own rulings on the limits of its original habeas jurisdiction in order to reach the merits of petitioner's claim. And, if this Court determined that presentation of a non-cognizable habeas claim satisfied fair presentment, it would eviscerate the federal statutory exhaustion requirement, *see* 28 U.S.C. § 2254(b)(1)(a), because the Illinois habeas statute does not contain a statute of limitations, nor does it restrict successive habeas complaints. *See* 735 ILCS 5/10-1, *et seq.*

Petitioner has not shown cause for failing to raise this claim in a complete round of state-court review. Petitioner maintains that he did not file a postconviction PLA because it was futile to do so in light of the Illinois Supreme Court's denial of leave to file an original habeas corpus action. Pet. at 3. However, as explained above, the denial of leave to file an original action had no bearing on petitioner's ability to present the same claims in his postconviction PLA or in a habeas complaint in the state trial court. *See, e.g., Norman v. Elrod*, 394 N.E.2d 1043, 1043 (Ill. 1979) (denying leave to file original habeas action in Illinois Supreme Court while recognizing plaintiff's right to present same claims in postconviction petition); *see generally Crump*, 807 F.2d at 1396. In addition, a claim of a substantial denial of a constitutional right such as ineffective assistance of

counsel is not cognizable under the habeas statute, but is cognizable under the postconviction statute, so presentation of this claim in a postconviction PLA following the denial of leave to file an original habeas action would not have been futile. *See, e.g., Gosier*, 792 N.E.2d at 1270 ("a petition for habeas corpus may not be used to review proceedings that do not exhibit one of these defects, even though the alleged error involves a denial of constitutional rights"); *see also id*. at 1268 (postconviction statute permits claims based on substantial deprivation of federal or state constitutional rights).

Petitioner's default should not be excused to avoid a fundamental miscarriage of justice because he has not established that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 126 S. Ct. at 2077. At best, petitioner has shown that, absent his attorney's eliciting information on cross-examination, there might have been insufficient proof that he was in the hallway of the building. But this is pure conjecture and not the type of credible evidence that gives rise to relief under this extremely narrow exception to procedural default. *Id.*

### III.    Petitioner's Conviction Violated The Ex Post Facto Clause Because A New Substantive Amendment To The Burglary Statute Was Applied Retroactively To Him.

## Procedural Default

This claim is procedurally defaulted because petitioner did not raise it on a complete round of review in state court. Petitioner raised this claim for the first time in his pro se PLA on direct appeal. Exh. E at ii. Petitioner failed to raise this

claim for a complete round of postconviction review because he did not file a postconviction PLA. *See Boerckel*, 526 U.S. at 845-46; *Godinez*, 192 F.3d at 608. And, as explained in respondent's answer to Claim II, *supra*, petitioner's presentation of this claim in a motion for leave to file an original habeas action in the Illinois Supreme Court does not constitute as a complete round of review for the purposes of the exhaustion requirement.

Petitioner has not shown cause for this default. This default is not excused on the ground that counsel on direct appeal was ineffective for failing to raise this claim. Petitioner defaulted any such excuse by not presenting it as a substantive claim for a complete round of collateral review in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (claim that ineffective assistance was "cause" for a procedural default can itself be procedurally defaulted).

Petitioner has also failed to show prejudice from this default. Petitioner was charged with and convicted of burglary, which was defined at the time he committed the offense, as follows:

> A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof with intent to commit therein a felony or theft. This offense shall not include the offenses set out in Section 4-102 of The Illinois Vehicle Code, nor the offense of residential burglary as defined in Section 19-3 hereof.

720 ILCS 5/19-1(a) (West 2000). This provision was amended, effective June 1, 2001, to remove the language "nor the offense of residential burglary as defined in Section 19-3 hereof." 720 ILCS 5/19-1(a) (West 2002).

Petitioner takes issue with the state appellate court's resolution of his claim on direct appeal, claiming that it "retroactively" applied the new statute to his conduct to legitimize his conviction. Pet. MOL at 8. Petitioner's argument appears to be either (1) the language "or any part thereof" was retroactively applied to him (*see id.*); or (2) that the statutory language of the old burglary provision precluded a "dual-act" theory where a person could commit both offenses through separate acts in a common series of events. *See id.* at 8-9.

The first claim is meritless because the language "or any part thereof" was in the burglary statute at the time petitioner committed the offense. The amendment effective June 1, 2001, deleted the phrase "nor the offense of residential burglary" but it did not add the language "or any part thereof" to the burglary statute. *Compare* 720 ILCS 5/19-1(a) (West 2000) *with* 720 ILCS 5/19-1(a) (West 2002).

The second claim is meritless because the State proved beyond a reasonable doubt each of the elements of the offense of burglary as it was defined when petitioner committed the offense in 2000. The statutory text makes it clear that a single act cannot constitute both burglary and residential burglary, but it does not preclude the possibility that, in a series of acts, a person may commit both offenses. That is what happened in the instant case — the crime of burglary was committed when petitioner entered the building's hallway and the crime of residential burglary was committed afterward when he entered the unoccupied apartment and stole Elston's property. The burglary statute at that time precluded the same act from constituting both burglary and residential burglary, but it was silent as to the

factual scenario in the instant case, where two separate acts constituted two separate crimes.

Petitioner's default should not be excused to avoid a fundamental miscarriage of justice because he has not established that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 537. To the contrary, the State proved each of the elements of the offense beyond a reasonable doubt.

**<u>Conclusion</u>**

This Court should deny the instant petition for writ of habeas corpus with prejudice because Claim I is without merit and Claims II and III are procedurally defaulted.

April 10, 2008                    Respectfully submitted,

                                 LISA MADIGAN
                                 Attorney General of Illinois

                        By:    s/Eric W. Truett
                               ERIC W. TRUETT, Bar # 6291213
                               Assistant Attorney General
                               100 W. Randolph Street, 12th Floor
                               Chicago, Illinois 60601-3218
                               PHONE: (312) 814-4684
                               FAX: (312) 814-2253
                               E-MAIL: etruett@atg.state.il.us

## CERTIFICATE OF SERVICE

I hereby certify than on April 10, 2008, I electronically filed respondent's **ANSWER** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system; and I hereby certify that on the same date, I mailed by United States Postal Service the above-referenced motion to the following non-registered party:

Charles Daniels, N63102
Pinckneyville Correctional Center
P.O. Box 999
Pinckneyville, IL 62274

LISA MADIGAN
Attorney General of Illinois

By:    s/Eric W. Truett
ERIC W. TRUETT, Bar # 6291213
Assistant Attorney General
100 W. Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
PHONE: (312) 814-4684
FAX: (312) 814-2253
E-MAIL: etruett@atg.state.il.us