

F I L E D
Apr 10, 2008
APR 1 0 2008 CM

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. CHARLES DANIELS | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 07 C 6475 |
| DAN AUSTIN, Warden, Pinckneyville Correctional Center, | ) ) ) ) | The Honorable Harry D. Leinenweber, |
| Respondent. | ) | Judge Presiding. |

## TO THE CLERK OF THE UNITED STATES DISTRICT COURT

In compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, the attached Exhibits to respondent's Answer to the above-captioned Petition for Writ of Habeas Corpus are hereby filed with this Court:

Exhibit A:      Rule 23 Order, *People v. Daniels*, No. 1-02-2905 (Ill.App. 2003);

Exhibit B:      Petitioner's Brief, *People v. Daniels*, No. 1-02-2905;

Exhibit C:      State's Brief, *People v. Daniels*, No. 1-02-2905;

Exhibit D:      Petitioner's Reply, *People v. Daniels*, No. 1-02-2905;

Exhibit E:      PLA, *People v. Daniels*, No. 97992;

Exhibit F:      Order Denying PLA, *People v. Daniels*, No. 97992 (Ill. 2004);

Exhibit G:      Petition for Rehearing, *People v. Daniels*, No. 97992;

Exhibit H:      Order Denying Petition for Rehearing, *People v. Daniels*, No. 97992 (Ill. 2004);



Exhibit I:    Postconviction petition, *People v. Daniels*, No. 00 CR 07104, Circuit Court of Cook County;

Exhibit J:    Motion to Withdraw as Appellate Counsel, *People v. Daniels*, Nos. 1-06-2583 & 1-06-2769;

Exhibit K:    Rule 23 Order, *People v. Daniels*, Nos. 1-06-2583 & 1-06-2769 (Ill.App. 2007);

Exhibit L:    Petitioner's Motion for Leave to File Original Habeas Complaint in Illinois Supreme Court, No. M11790; and

Exhibit M:    Order Denying Leave to File Original Habeas Complaint, No. M11790 (Ill. 2007);

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

By:    _____

ERIC W. TRUETT, Bar # 6291213
Assistant Attorney General
100 W. Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
PHONE: (312) 814-4684
FAX: (312) 814-2253
E-MAIL: etruett@atg.state.il.us

April 10, 2008

**NOTICE**
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

FIRST DIVISION
DECEMBER 22, 2003

No. 1-02-2905

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 7104 |
| | ) | |
| CHARLES DANIELS, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

## O R D E R

Following a bench trial, defendant Charles Daniels was convicted of burglary and sentenced as a Class X offender to eight years' imprisonment.  Defendant contends on appeal that he was not proven guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he entered the common area of an apartment building.  He argues that his unauthorized entry was to a dwelling place and was thus residential burglary rather than burglary, at a time when burglary and residential burglary were considered mutually exclusive offenses.  Defendant also contends that mandatory Class X sentencing under section 5-5-3(c)(8) of the Code of Corrections (730 ILCS 5/5-5-3(c)(8) (West 2002)) violated his right to due process and trial by jury because the State is not required to give notice of its intent to sentence defendant as a Class X

EXHIBIT A

1-02-2905

offender or to prove his convictions, the sequence of those convictions, or his age to a jury beyond a reasonable doubt.

At trial, Nora Elston testified that she owned an apartment building at 8232 and 8234 South Eberhart and lived in a first-floor apartment at the 8232 address. On February 12, 2000, the first-floor unit across from Elston's, at the 8234 address, was vacant and the doors were locked. Elston intended to rent the vacant unit again "eventually," but was storing some of her belongings there. At about 3:40 p.m., Elston looked out the window and saw defendant approach her building. She heard the doorbell for the vacant unit and then "fumbling" with the mailbox. Elston saw defendant enter the building; he was in the hallway for about three minutes before she saw him leave. Elston called the police. The police left after finding the door to the vacant unit locked and searching outside the building.

Later, Elston heard noises from the vacant unit and called the police again. She saw defendant leaving her building, by the front door, with some of the large plastic bags she had stored in the vacant unit. Elston followed defendant, but returned home when she lost sight of him. When the police arrived, Elston accompanied them and pointed out defendant. The officers arrested defendant, who was not carrying any bags. Defendant then "produced the bags from somewhere," and Elston identified them as hers. When Elston checked the doors to the vacant unit,

1-02-2905

they were still locked. Elston had not given defendant permission to be in the vacant unit or remove property from it.

Police detective James Carlassare testified that he interviewed defendant on the evening of February 12, 2000. Defendant told Detective Carlassare that he "was in a lot of trouble" and "shouldn't have gone into that apartment."

Officer William Meister testified that he responded to Elston's call. Elston met Officer Meister in front of her building and accompanied him and his partner to search for defendant. After a few minutes, Elston saw defendant. Officer Meister arrested defendant, who showed him two large plastic bags about 10 yards away. Officer Meister brought the bags back to Elston, who identified the property in the bags as hers.

The trial court found defendant guilty of burglary. Based on prior burglary and residential burglary convictions, defendant was sentenced, as a mandatory Class X offender under section 5-5-3(c)(8), to eight years' imprisonment.

Defendant contends that he was not proven guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he entered the common area of an apartment building. He also argues that his unauthorized entry was to a dwelling place and was thus residential burglary rather than burglary. He notes that, at the time of the offense, burglary and residential burglary were considered mutually exclusive offenses. See People

- 3 -

1-02-2905

v. Childress, 158 Ill. 2d 275, 302 (1994).

In assessing the sufficiency of evidence, the relevant question is whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Pollock, 202 Ill. 2d 189, 217 (2002). It is the role of the trier of fact to determine the credibility of witnesses and the weight to give their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. People v. Tenney, 205 Ill. 2d 411, 428 (2002). It is not the function of this court to retry defendant or to substitute our judgment for that of the trier of fact regarding witness credibility or the weight of the evidence. Tenney, 205 Ill. 2d at 428. Thus, a conviction will be reversed only where the evidence is "so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." Pollock, 202 Ill. 2d at 217.

Under section 19-1 of the Criminal Code (Code), a "person commits burglary when without authority he knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft," 720 ILCS 5/19-1 (West 2002). Similarly, under Code section 19-3, one "commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the

- 4 -

1-02-2905

dwelling place of another, or any part thereof, with the intent
to commit therein a felony or theft."  720 ILCS 5/19-3 (West
2002).

Until June 1, 2001, section 19-1 provided that burglary
"shall not include *** the offense of residential burglary as
defined in Section 19-3 hereof."  720 ILCS 5/19-1 (West 2000).

> "As the defendant observes, the two offenses
> are mutually exclusive.  Residential burglary
> can be committed only in dwelling places,
> while simple burglary cannot occur in a
> dwelling place."  People v. Childress, 158
> Ill. 2d 275, 302 (1994).

However, in People v. Maskell, 304 Ill. App. 3d 77 (1999), where
defendant entered an apartment from the stairway and corridor of
an apartment building and removed property from the apartment,
the evidence was deemed sufficient to show that he committed both
burglary and residential burglary, and thus his burglary
conviction was affirmed.  Maskell, 304 Ill. App. 3d at 84.
"Unlike Childress, *** the evidence in this case would allow a
rational trier of fact to find that defendant made two
unauthorized entries *** (1) into the building and (2) into the
apartment."  Maskell, 304 Ill. App. 3d at 84.

For purposes of section 19-3, a "dwelling" is an "apartment
*** or other living quarters in which at the time of the alleged

- 5 -

1-02-2905

offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." 720 ILCS 5/2-6(b) (West 2002). A person committed residential burglary when he entered and took items from vacant first-floor and basement apartments of a building in which the owner lived on the second floor and was using the unoccupied units for storage. People v. Silva, 256 Ill. App. 3d 414, 420-21 (1993).

Here, Elston testified that she saw defendant enter and, after three minutes in the hallway, leave her building. Combined with the facts that he later entered the vacant unit and removed Elston's property and that Elston did not grant him permission to be in the building, a reasonable person could conclude that defendant entered a non-dwelling portion of a building without authority and with the intent to commit theft. As in Maskell, the evidence is clear that defendant made two unauthorized entries with intent to steal: into Elston's building and into the vacant unit. Maskell, 304 Ill. App. 3d at 84. Indeed, if the course of entry in Maskell -- through the common area of the building to the dwelling unit -- constituted two entries, then defendant's separate entries here -- into the building and out again, then later into the vacant unit -- are even more clearly two distinct entries and the basis of two distinct offenses. The fact that the vacant unit was a dwelling, and defendant's entry thereto was residential burglary, thus did not preclude

- 6 -

1-02-2905

defendant's conviction for burglary. There was sufficient evidence to convict defendant of burglary beyond a reasonable doubt.

Defendant also contends that the mandatory Class X sentencing provision of section 5-5-3(c)(8) violates the rights of due process and trial by jury because the State was not required to give defendant notice of its intent to sentence him as a Class X offender or required to prove his convictions, the timing or sequence of the convictions, or his age beyond a reasonable doubt to a jury. However, this court has considered and rejected precisely this contention. People v. Smith, 338 Ill. App. 3d 555, 564 (2003), citing Apprendi v. New Jersey, 530 U.S. 466, 494-96, 147 L. Ed. 2d 435, 457-58, 120 S. Ct. 2348, 2365-66 (2000); People v. Pittman, 326 Ill. App. 3d 297, 300-01 (2001); and People v. Lathon, 317 Ill. App. 3d 573, 587 (2000).

Accordingly, the judgment of the circuit court is affirmed. Affirmed.

GORDON,J., with O'MALLEY,P.J. and McBRIDE,J., concurring.

No. 1-02-2905

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT



| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 7104. |
| | ) | |
| CHARLES DANIELS, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

MICHAEL J. PELLETIER
Deputy Defender

MICHAEL JAMES MCDERMOTT
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

ORAL ARGUMENT REQUESTED

EXHIBIT B

POINTS AND AUTHORITIES                                      Page

I.    **Charles Daniels's burglary conviction must be reversed because there was insufficient evidence for the trial court to find beyond a reasonable doubt that defendant entered and burglarized the "common areas" of the apartment building  8**

720 ILCS 5/19-1(a)  ............................................... 8

*People v. Lamborn*, 185 Ill. 2d 585, 708 N.E.2d 350 (1999) ................... 8, 9

*People v. Smith (Smith I)*, 185 Ill. 2d 532, 708 N.E.2d 365 (1999) ............... 8

*People v. Ash*, 102 Ill. 2d 485, 468 N.E.2d 1153 (1984) ........................ 8

*People v. Smith (Smith II)*, 191 Ill. 2d 408, 732 N.E.2d 513 (2000) .............. 9

*People v. Cooksey*, 309 Ill. App. 3d 839, 723 N.E.2d 784 (1st Dist. 1999) .......... 9

*People v. Hawkins*, 311 Ill. App. 3d 418, 723 N.E.2d 1222 (4th Dist. 2000) ......... 9

*People v. Maskell*, 304 Ill. App. 3d 77, 710 N.E.2d 449 (2nd Dist. 1999) .... 10, 11, 12

720 ILCS 5/19-1 (West 1998) .......................................... 11

*People v. Childress*, 158 Ill. 2d 275, 633 N.E.2d 635 (1994) ................... 11

*People v. Gambino*, ___ Ill. App. 3d ___, 2002 Ill. App. LEXIS 1173 (3rd Dist. December 4, 2002) .......................................... 11

II.   **Charles Daniels's burglary conviction must be reversed because there was insufficient evidence for the trial court to find defendant guilty of simple burglary where the unauthorized entry was to a dwelling place, as burglary and residential burglary were mutually exclusive offenses at the time of this offense ........... 16**

720 ILCS 5/19-1(a) ............................................... 16

*People v. Lamborn*, 185 Ill. 2d 585, 708 N.E.2d 350 (1999) ................. 16, 17

*People v. Smith (Smith I)*, 185 Ill. 2d 532, 708 N.E.2d 365 (1999) ............... 16

*People v. Ash*, 102 Ill. 2d 485, 468 N.E.2d 1153 (1984) ......................... 16

*People v. Smith (Smith II)*, 191 Ill. 2d 408, 732 N.E.2d 513 (2000) ............... 17

*People v. Cooksey*, 309 Ill. App. 3d 839, 723 N.E.2d 784 (1st Dist. 1999) ......... 17

*People v. Hawkins*, 311 Ill. App. 3d 418, 723 N.E.2d 1222 (4th Dist. 2000) ........ 17

*People v. Suane*, 164 Ill. App. 3d 997, 518 N.E.2d 458 (1st Dist. 1987) ........ 18, 24

*People v. Silva*, 256 Ill. App. 3d 414, 628 N.E.2d 948 (1st Dist. 1993) ...... 18, 23, 25

720 ILCS 5/19-1 (West 1998) ............................................. 19

*People v. Childress*, 158 Ill. 2d 275, 633 N.E.2d 635 (1994) ........... 19, 20, 21, 22

*People v. Gambino*, ___ Ill. App. 3d ___, 2002 Ill. App. LEXIS 1173 (3rd
Dist. December 4, 2002) ............................................... 19, 20

720 ILCS 5/19-1(a) ..................................................... 19

720 ILCS 5/19-3(a) ..................................................... 19

720 ILCS 5/2-6(b) ............................................... 20, 24, 26

*People v. Borgen*, 282 Ill. App. 3d 116, 668 N.E.2d 234 (2nd Dist. 1996) ...... 20, 21

*People v. Cunningham*, 265 Ill. App. 3d 3, 637 N.E.2d 1247 (2nd Dist. 1994) ...... 21

*People v. Maskell*, 304 Ill. App. 3d 77, 710 N.E.2d 449 (2nd Dist. 1999) ....... 21, 22

*People v. Sexton*, 118 Ill. App. 3d 998, 455 N.E.2d 884 (4th Dist. 1983) ..... 22, 24, 26

*People v. Torres*, 327 Ill. App. 3d 1106, 764 N.E.2d 1206 (5th Dist. 2002) ......... 24

*People v. Willard*, 303 Ill. App. 3d 231, 707 N.E.2d 1249 (2nd Dist. 1999) ... 24, 25, 26

*People v. Quiver*, 205 Ill. App. 3d 1067, 563 N.E.2d 991 (1st Dist. 1990) .......... 25

*People v. Edgeston*, 243 Ill. App.3d 1, 611 N.E.2d 49 (2nd Dist. 1993) ............ 25

III.  The mandatory Class X sentencing provision of 730 ILCS 5/5-5-3(c)(8) violates
      the right of a defendant to due process and trial by jury because it subjects the
      defendant to increased punishment without notice or a jury finding upon proof
      beyond a reasonable doubt of the facts qualifying defendant for sentencing as a
      Class X offender . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      730 ILCS 5/5-5-3(c)(8)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 29, 31

      720 ILCS 5/19-1(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      730 ILCS 5/5-8-1(a)(5)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      730 ILCS 5/5-8-1(a)(3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 33

      *People v. Jameson*, 162 Ill. 2d 282, 642 N.E.2d 1207 (1994) . . . . . . . . . . . . . . . . . . . 27

      *People v. Williams*, 149 Ill. 2d 467, 599 N.E.2d 913 (1992) . . . . . . . . . . . . . . . . . . 28, 32

      *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000)  . . . . . . . . . . 28, 29, 30

      *People v. Fisher*, 184 Ill. 2d 441, 705 N.E.2d 67 (1998) . . . . . . . . . . . . . . . . . . . . . . . 28

      *People v. Wagener*, 196 Ill. 2d 269, 752 N.E.2d 430 (2001) . . . . . . . . . . . . . . . . . . . . 28

      *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350 (1998) . . . . . . . 29

      *People v. Lathon*, 317 Ill. App. 3d 573, 740 N.E.2d 377 (1st Dist. 2000) . . . . . . . . . . 29

      *People v. Roberts*, 318 Ill. App. 3d 719, 743 N.E.2d 1025 (1st Dist. 2000) . . . . . . . . 29

      *People v. Pittman*, 326 Ill. App. 3d 297, 761 N.E.2d 171 (1st Dist. 2001)  . . . . . . . . 29

      *People v. Childress*, 321 Ill. App. 3d 13, 746 N.E.2d 783 (1st Dist. 2001) . . . . . . . . . 30

      *People v. Dillard*, 319 Ill. App. 3d 102, 745 N.E.2d 185 (4th Dist. 2001)  . . . . . . . . . 30

      *People v. Davis*, 319 Ill. App. 3d 572, 746 N.E.2d 758 (4th Dist. 2001)  . . . . . . . . . . . 30

      *People v. Smith*, 2003 Ill. App. LEXIS 482 (1st Dist. April 18, 2003) . . . . . . . . . . . . . 31

      *People v. Dixon*, 319 Ill. App. 3d 881, 747 N.E.2d 1 (4th Dist. 2001) . . . . . . . . . . . . . 32

730 ILCS 5/5-8-1(a)(4) ................................................. 33

## NATURE OF THE CASE

Charles Daniels was convicted of burglary after a bench trial and was sentenced to eight years in prison.

This is a direct appeal from the judgment of the court below. Defendant raises an issue regarding the charging instrument. (See Argument III)

## ISSUES PRESENTED FOR REVIEW

1.    Whether Charles Daniels's burglary conviction must be reversed because there was insufficient evidence for the trial court to find that defendant entered and burglarized the "common areas" of the apartment building.

2.    Whether Charles Daniels's burglary conviction must be reversed because there was insufficient evidence for the trial court to find defendant guilty of simple burglary where the unauthorized entry was to a dwelling place, as burglary and residential burglary were mutually exclusive offenses at the time of this offense.

3.    Whether the mandatory Class X sentencing provision of 730 ILCS 5/5-5-3(c)(8) violates the right of a defendant to due process and trial by jury because it subjects the defendant to increased punishment without notice or a jury finding upon proof beyond a reasonable doubt of the facts qualifying defendant for sentencing as a Class X offender.

## JURISDICTION

Charles Daniels appeals from a final judgment of conviction in a criminal case. He was sentenced on July 30, 2002. (Supp.22) Notice of appeal was timely filed on September 9, 2002. (C.125) Jurisdiction therefore lies in this Court pursuant to Article VI, Section 6, of the Illinois Constitution, and Supreme Court Rules 603 and 606.

## STATEMENT OF FACTS

Defendant Charles Daniels was charged by information on March 10, 2000, with one count of burglary, in violation of 720 ILCS 5/19-1(a) (West 2000). (C.24-26) A bench trial before the Honorable Judge Thomas Davy commenced on June 5, 2002 and was continued to July 16, 2002. On those dates, the following testimony was adduced.

On February 12, 2000, the complainant, Nora Elston, was a 76 year old woman who lived in one of the two first floor apartments at 8232 S. Eberhart Street in Chicago. (R.115-116). She owned the building, which was a three story six-flat, and had been living there for about 15 years. (R.116) At approximately 3:40 p.m., she was at home alone. (R.117) The apartment across the hall from hers was vacant because the tenant had moved out. (R.117) Elston had been using the apartment to store some of her property. (R.117) She kept both the back and front doors locked. (R.117, 135-136) That vacant apartment was not being rehabbed, and was completely habitable. (R.125-126) Elston had planned to rent the apartment again in its present condition. (R.126)

From the apartment where she lived, Elston saw a man walk up to the front of the building and ring the bell for the vacant apartment. (R.118-119) Moments later she thought she heard a rattling at the mailbox. (R.118-119) Elston immediately called the police because she believed that individual to be "fool[ing]" with the mailbox. (R.118-119) Elston believed that the man was at the front door of her building for about three minutes. (R.128) After about 10 or 15 minutes, the Chicago Police Officer William Meister and his partner arrived. (R.128, 156-157) They checked the back yard and looked around. (R.137, 157) At that time they also checked the door to the vacant apartment, found it locked and left because the man was gone and they could

-4-

not find anything. (R.118-119, 137)  After they had gone, Elston thought she heard a plastic bag being opened in the apartment across the hall, so she phoned the police again. (R.119, 128, 157)

While waiting for the police the second time, Elston saw a man proceed down the walkway of her building with a plastic bag filled with some of her belongings from the vacant apartment. (R.120, 129)  She watched him walk away and decided to follow him so she could tell police where he fled to when they arrived. (R.121-122)  Elston followed the man westbound down an alley just north of 83rd Street until he turned northbound in another alley. (R.130-131)  She stopped following him because at one point, he was no longer carrying the plastic bag with her belongings. (R.130-131)  She went back to her house to wait for police who arrived this time in about seven minutes. (R.129)  The police put her in their squad car and drove around the alley where Elston had followed the man. (R.123, 132-133, 157-158)  After a short time, the police and Elston located the suspect near 8240 S. Burnom. (R.124, 157-158)

When the police approached the man, he did not have any plastic bags on his person. (R.133-134)  Elston testified that the plastic bags were 2 1/2 by 3 1/2 feet, and could not be secreted on one's person. (R.134-135)  After the police spoke with the man, he briefly walked over to 510 W. 83rd Street, where police found two large plastic bags. (R.133-134, 159-160)  Meister showed Elston the bags and she said that the items in the bags, consisting of some clothing, a clock radio, a discman, and some compact discs, were hers. (R.160-161)  Meister gave Elston some of her clothing and belongings back that day. (R.163-164)

When Elston returned to her building she made an inspection of the vacant apartment. (R.136)  The doors were still locked. (R.136)  Elston testified that she believed that all the windows had been locked, but admitted, "[o]ne of them had to be open for him to come in."

-5-

(R.136)  Elston identified defendant in court as the man who she saw leave her building with her property. (R.125)

Chicago Police Detective James Carlassare, assigned to Area 2, testified that on February 12, 2000, he interviewed defendant. (R.151-152)  He read defendant his rights per Miranda. (R.152-153)  Defendant then told Carlassare that he knew he was in trouble and that he shouldn't have gone into the apartment. (R.154)  Defendant added that he was receiving help for his problem. (R.154)  Carlassare made a report about the interview, but did not submit it until July 10, 2000, almost 150 days later. (R.154-155)

The State then rested its case-in-chief and the defense motion for a directed finding was denied. (R.164-166).  The defense then rested. (R.166)  The State waived its opening argument and the defense waived all closing arguments. (R.166)  The trial court then announced its ruling, finding defendant guilty of burglary, and entered a verdict on the finding. (R.166-167)

At the hearing on the motion for new trial, defense counsel argued that defendant should have been convicted of residential burglary, not burglary, and reminded the court that the two were mutually exclusive charges. (R.170-172)  The State responded by arguing that the common areas of the building at issue here were not a "dwelling," but merely a building for purposes of the simple burglary statute. (R.172-173)  Furthermore, the apartment was vacant, meaning no one intended to live in the apartment within a reasonable amount of time. (R.172-173)  The State also argued that the statute had already been corrected, so that the offenses are no longer mutually exclusive.  The defense again argued that the apartment building was a residence under the statute. (R.174)

The court found that defendant made two separate unauthorized entries, one into the

apartment building and the other into the vacant apartment. (R.177-179) The trial court stated, "[H]ad the defendant been charged with the entry into a specific apartment [*Childress* and the residential burglary statute] would still apply since there are numerous cases that say a building is a dwelling if going to intent to be used as a dwelling regardless of who would be living there." (R.178) The trial court then found, "In this particular case, the testimony of Ms. Elston was that she heard some noises at the entryway . . . Entry was apparently made through there and through that area the defendant then entered the particular vacant apartment. (R.178-179) The judge then added:

> [U]nless the evidence would be that someone entered directly into a particular apartment through a window or a door leading directly from that apartment, from outside into the apartment that as long as there is a common area hallway, stairway, or whatever, that entry into that building into that common area would sustain the charge of burglary.

(R.179)

Finding that because the defendant entered the building on his way into the apartment, the court denied defendant's motion for a new trial and sustained the charge of burglary. (R.177-179)

The court sentenced defendant to a Class X sentence of eight years on the sole count of burglary based on his prior convictions. (182-183) Defendant filed a motion to reconsider sentence which was denied. (R.195-196) This appeal followed.

-7-

## ARGUMENT

I.   **Charles Daniels's burglary conviction must be reversed because there was insufficient evidence for the trial court to find beyond a reasonable doubt that defendant entered and burglarized the "common areas" of the apartment building.**

The trial court found Charles Daniels guilty of one count of burglary, in violation of 720 ILCS 5/19-1(a) (West 2000), based on allegations that he knowingly and without authority entered into the "common areas" of the building located at 8234 S. Eberhart in Chicago, with the intent to commit a theft. (C.24-26) However, the evidence at trial showed that defendant circumvented the "common areas" of the building and entered the apartment, a "dwelling" place, directly through an open window. Even assuming the State's theory was correct that the almost completely occupied residential apartment building in this case should be parsed into "common areas" and "dwelling" places (but see Argument II, *infra*), the State still failed to show beyond a reasonable doubt that Mr. Daniels entered any of those "common areas." As such, Mr. Daniels's burglary conviction must be reversed.

When reviewing the sufficiency of the evidence in a criminal case, the proper standard of review is usually whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, *People v. Lamborn*, 185 Ill. 2d 585, 590, 708 N.E.2d 350 (1999), *People v. Smith (Smith I)*, 185 Ill. 2d 532, 541, 708 N.E.2d 365 (1999), keeping in mind that it is the reviewing court's duty to "carefully consider the evidence [and] to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and is not sufficient to create an abiding conviction that he is guilty of the crime charged." *People v. Ash*, 102 Ill. 2d 485, 492-93,

-8-

468 N.E.2d 1153 (1984); see also *Smith I*, 185 Ill. 2d at 541.

However where, as here, a claim that the defendant was not proven guilty beyond a reasonable doubt does not entail any assessment of the credibility of witnesses, but only the question of whether a settled set of facts sufficed to meet the reasonable doubt standard, the standard of review is *de novo*, for the question is a purely legal one. See *People v. Smith (Smith II)*, 191 Ill. 2d 408, 411, 732 N.E.2d 513 (2000) (where facts are not in dispute, question of defendant's guilt is a legal question, reviewed *de novo*); *Lamborn*, 185 Ill. 2d at 590 (Supreme Court reviews *de novo* question of whether photographs, which Supreme Court could review itself, were "lewd" under the child pornography statute). See also *People v. Cooksey*, 309 Ill. App. 3d 839, 846, 723 N.E.2d 784 (1st Dist. 1999) (*de novo* standard of review applies to a sufficiency of the evidence claim that involves a question of whether the "immediate presence" element of vehicular hijacking was proven on an accepted set of facts); *People v. Hawkins*, 311 Ill. App. 3d 418, 423, 723 N.E.2d 1222 (4th Dist. 2000) (*de novo* standard of review applies to question of whether the "substantial step" element of attempt was proven on an uncontested set of facts). Here, the question of whether defendant entered the "common areas" of an occupied residential building, where the sole eyewitness testified he entered an apartment directly through a window, is a purely legal question as to which this Court is in the same position as was the circuit court with regard to assessing the sufficiency of the proof, and the judge's ruling should therefore be reviewed *de novo*. Under any standard of review, however, the State failed to prove the defendant guilty beyond a reasonable doubt.

In this case, the evidence showed that defendant entered the apartment through an open window. (R.136) Mrs. Elston testified that after defendant was apprehended, the vacant

-9-

apartment's front door was still locked, and that she believed that she left one of the windows open. (R.118-119, 136-137)  There was no evidence adduced at trial that showed defendant was ever in the common areas of the building.  In his post-trial motion, defendant argued that the testimony at trial showed that because he had entered a "dwelling" within the meaning of the residential burglary statute, he was not guilty of simple burglary.  At the hearing on the motion for a new trial, the defense argued that an entire apartment building was a "dwelling" within the meaning of the residential burglary statute. (R.170-172)  The State argued that the "common areas" were not part of the "dwelling" and that the residential burglary statute did not apply. (R.172-173)  Relying on *People v. Maskell*, 304 Ill. App. 3d 77, 710 N.E.2d 449 (2nd Dist. 1999), the court ruled that there were two illegal entries, the first into the apartment building, and the second into the actual living unit on the first floor of that building. (R.176-179)  The court said the entry into the actual apartment unit was a residential burglary, and that had never been charged. (R.176-179)  The trial court then held that defendant was guilty of burglary based on his entry into the "common areas" of building. (R.176-179)  However, because the trial court's ruling was incorrect, defendant could not be convicted of burglary.

The testimony and the evidence at trial showed that defendant never entered the "common areas" of the apartment building, but that he instead entered the apartment directly through a window.  Thus, there was insufficient evidence to sustain a burglary conviction under the trial court's rationale.  Rather, the evidence at trial showed that a residential burglary was committed because the unauthorized entry was to an apartment unit, a "dwelling" place within the meaning of the residential burglary statute.  Therefore, Daniels cannot be guilty of a burglary, as the offenses of burglary and residential burglary were mutually exclusive on the date of the

offense. 720 ILCS 5/19-1 (West 1998); *People v. Childress*, 158 Ill. 2d 275, 633 N. E.2d 635 (1994); *People v. Gambino*, ___ Ill. App. 3d ___, 2002 Ill. App. LEXIS 1173 (3rd Dist. December 4, 2002). Accordingly, Daniels' burglary conviction must be reversed.

One of the cases relied upon by the trial court in denying the motion for a new trial was *People v. Maskell*, 304 Ill. App. 3d 77, 710 N.E.2d 449 (2nd Dist. 1999). In *Maskell*, a defendant was charged with only simple burglary after he was seen leaving an apartment and pushing a television down the hallway as he attempted to flee. *Maskell*, 304 Ill. App. 3d at 83-84. On appeal in that case, the State made the novel argument that the facts supported a conviction for both residential burglary, for the entry into the apartment, as well as for simple burglary, for the entry into the apartment building. *Maskell*, 304 Ill. App. 3d at 83. The court there agreed with the State and said that defendant had in fact made two illegal entries, one into the apartment building and the other into the victim's apartment. *Maskell*, 304 Ill. App. 3d at 84. Finding that defendant there was found in the hallway with the victim's television, the court ruled that his presence in the hallway, a "common area" of the building, constituted simple burglary and affirmed his conviction. *Maskell*, 304 Ill. App. 3d at 84-85.

In this case, the court stated,

> In any case, the *Maskell* case, it involved an apartment building and one of the witnesses observed the Defendant taking the TV set, pushing the TV set down the stairs of the building that was entered through the front door and then into the families [sic] apartment.

> The *Maskell* case, page 84, unlike *Childress* and *Borgen*, the evidence in this case will allow the rational trier of the fact find the Defendant made two unauthorized entries.

> These unauthorized entries, one into the building, two in the apartment.

* * *

-11-

> In this particular case, the testimony of Ms. Elston was that she heard some noises at the entryway. The entryway, there was a common entryway into the apartment where the mailboxes were at.

> Entry was made apparently through there and through that area Defendant then entered the particular vacant apartment.

(R.178-179)

The court went on to state that *Maskell* would not however apply if a defendant "entered directly into a particular apartment through a window or a door leading directly from that apartment, from outside into the apartment . . . " (R.179) Finding that defendant entered the apartment through the "common areas" the court found *Maskell* applied and that defendant was guilty of simple burglary for the entrance into the "common areas" of the building.

Mr. Daniels would argue that *Maskell* was wrongly decided and, therefore, should not be followed by this Court. (See Argument II) However, even if this Court were to find some merit in *Maskell*, the facts of the instant case distinguish it from *Maskell* and dictate that a different result be reached. In *Maskell*, the defendant was seen in the building hallway and essentially admitted that he committed residential burglary in order to argue that he could not have committed simple burglary. *Maskell*, 304 Ill. App. 3d at 83. The *Maskell* court reasoned that the defendant there must have entered the building first, and thus committed the simple burglary. *Maskell*, 304 Ill. App. 3d at 83-84. In fact, the trial judge in Daniels' case specifically referenced this point when denying the motion for new trial,

> So, I think under *Maskell* case in an apartment building case unless the evidence would be that someone entered directly into a particular apartment through a window or a door leading directly from that apartment, from outside into the apartment that as long as there is a common area hallway, stairway, or whatever, that entry into that building into that common area would sustain the charge of burglary.

-12-

(R.179)

The trial court missed the fact that that is *exactly* what the complainant testified to in this case. During her cross-examination, defense counsel elicited testimony from Nora Elston about the vacant apartment that was burglarized, and the following colloquy occurred:

[Defense counsel]:    Was there a lock on the back door?

[Witness]:    Yes, sir.

Q.    Were there any -- were there windows in that apartment?

A.    Yes, sir.

Q.    Obviously windows.  Were they all shut and locked?

A.    No, sir.

Q.    Were they open?

A.    *One of them had to be open for him to come in.*

Q.    And when you made an inspection of that apartment the doors were still locked, correct?

A.    Correct.

Q.    You said one of the windows was open?

A.    I said one of the windows was not locked.

Q.    Was not locked, but all -- you locked all those windows inside that apartment?

A.    *I thought I did, but I guess I didn't.*

* * * *

Q.    So you never checked this first floor apartment next to you to see if anybody was in it and the police didn't the first time they arrived?

A.          Well, when the police arrived they went in my backyard and looked around. Now, as I said, *the door was locked, they looked at the door, tried it, it was locked*, so they left because we assumed the gentleman had gone.

(R.136-137) (emphasis supplied).

It is clear from this testimony that the complaining witness believed she left a window open in the vacant apartment and that is how defendant gained entry to the building. (R.136-137) Ms. Elston was the only eyewitness to the crime in this case and she offered the only testimony about the facts surrounding the crime. Her testimony showed that defendant gained entry through a window to the vacant apartment, thereby circumventing any "common areas," which by the lower court's ruling, supported a conviction for simple burglary. There was no testimony about the front door of the vacant apartment being damaged or forced open in any way. Indeed when the police arrived, the door to the vacant apartment was still locked. (R.136-137) The record thus indisputably shows that entry occurred through the window. While the complainant testified she heard a noise at the mailbox outside the front door that prompted her to phone the police initially, there was no testimony that supported a finding that defendant entered the front door of the building and then entered the vacant apartment by its locked door. Instead, the evidence supported the conclusion that defendant went to the front door and buzzed the vacant apartment, then once he determined no one was home, he forced open one of the unlocked apartment windows and climbed into the vacant apartment.

Additionally, there was no testimony at all dealing with how defendant may have exited the apartment. Ms. Elston testified that she saw defendant outside with some of her belongings and that he was the same person she saw walk up her front walkway earlier. (R.120) This is the

-14-

only reference in the record to defendant's exit and, unlike *Maskell*, it does not indicate that defendant walked though the hallway or "common area" to exit. According to her testimony, Ms. Elston neither saw nor heard defendant in the "common areas" of the apartment building at any time during his entrance or exit. As defendant never entered the hallway or "common areas" of the complainant's building, even if this Court follows *Maskell*'s flawed reasoning, there was absolutely no evidence that supported a finding of guilty of simple burglary, much less proof beyond a reasonable doubt. For these reasons, the trial court erred in relying on *Maskell*, a case which was decided squarely against the Supreme Court's holding in *Childress*, and in any case is factually inapposite to Charles Daniels's case.

Defendant's conviction must be reversed because there was insufficient evidence for the trial court to find beyond a reasonable doubt that defendant entered and burglarized the "common areas" of the apartment building. It is evident from the record that the trial judge erred in finding that defendant entered Ms. Elston's apartment building through a "common area" when the sole eyewitness testified that defendant must have come in through a window. Under the trial court's rationale that defendant was guilty of burglary for entering the "common areas" of a residence, there was no evidence adduced at trial that supported the conclusion that Mr. Daniels ever entered those areas. As such, defendant's burglary conviction must be reversed.

**II.**   **Charles Daniels's burglary conviction must be reversed because there was insufficient evidence for the trial court to find defendant guilty of simple burglary where the unauthorized entry was to a dwelling place, as burglary and residential burglary were mutually exclusive offenses at the time of this offense.**

Charles Daniels was convicted of one count of burglary, in violation of 720 ILCS 5/19-1(a) (West 2000), based on allegations that he knowingly and without authority entered into a building, the property of Nora Elston, located at 8234 S. Eberhart in Chicago, with the intent to commit a theft. (C.24-26)  However, the evidence adduced by the State does not support a burglary conviction because a residential apartment building, including the "common areas," is considered a to be a "dwelling" for purposes of the residential burglary statute.  As burglary and residential burglary were mutually exclusive offenses at the time Mr. Daniels was charged in this case, his burglary conviction must be reversed, even if this Court rejects Argument I and holds that the State proved beyond a reasonable doubt that defendant entered the common areas of the building.

When reviewing the sufficiency of the evidence in a criminal case, the proper standard of review is usually whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, *People v. Lamborn*, 185 Ill. 2d 585, 590, 708 N.E.2d 350 (1999), *People v. Smith (Smith I)*, 185 Ill. 2d 532, 541, 708 N.E.2d 365 (1999), keeping in mind that it is the reviewing court's duty to "carefully consider the evidence [and] to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and is not sufficient to create an abiding conviction that he is guilty of the crime charged." *People v. Ash*, 102 Ill. 2d 485, 492-93, 468 N.E.2d 1153 (1984); see also *Smith I*, 185 Ill. 2d at 541.

However where, as here, a claim that the defendant was not proven guilty beyond a reasonable doubt does not entail any assessment of the credibility of witnesses, but only the question of whether a settled set of facts sufficed to meet the reasonable doubt standard, the standard of review is *de novo*, for the question is a purely legal one. See *People v. Smith* (*Smith II*), 191 Ill. 2d 408, 411, 732 N.E.2d 513 (2000) (where facts are not in dispute, question of defendant's guilt is a legal question, reviewed *de novo*); *Lamborn*, 185 Ill. 2d at 590 (Supreme Court reviews *de novo* question of whether photographs, which Supreme Court could review itself, were "lewd" under the child pornography statute). See also *People v. Cooksey*, 309 Ill. App. 3d 839, 846, 723 N.E.2d 784 (1st Dist. 1999) (*de novo* standard of review applies to a sufficiency of the evidence claim that involves a question of whether the "immediate presence" element of vehicular hijacking was proven on an accepted set of facts); *People v. Hawkins*, 311 Ill. App. 3d 418, 423, 723 N.E.2d 1222 (4th Dist. 2000) (*de novo* standard of review applies to question of whether the "substantial step" element of attempt was proven on an uncontested set of facts). Here, the question of whether the "common areas" of an occupied residential building are part of a "dwelling" for purposes of the residential burglary statute is a purely legal question, as to which this Court is in the same position as was the circuit court with regard to assessing the sufficiency of the proof, and the judge's ruling should therefore be reviewed *de novo*. Under any standard of review, however, the State failed to prove the defendant guilty beyond a reasonable doubt.

The evidence in this case was that Mrs. Elston was the owner of a three story, six apartment building and, at the time of the burglary, the only vacant apartment was directly across the hall from where Elson lived in the first story. (R.117)   Elston testified that she intended to

-17-

rent out the apartment again in its current condition and that it was completely habitable. (R.125-126) Elston was using the vacant apartment as storage space for some of her belongings while it was vacant. (R.117) On the date of the offense, she witnessed someone walk up to the front door of her building and begin buzzing or knocking on it. (R.118-119) Elston then phoned the police, but the man disappeared before they arrived. (R.119, 128) At no time did Elston testify that she believed the individual she saw at the front door entered the building through the front door. In fact, she testified that that individual must have entered through a window that led directly into the vacant apartment across from hers. (R.136) Elston also could not testify as to how that individual exited the apartment building; the only thing she saw was him walking down the sidewalk that led to her building with a garbage bag full of her belongings. (R.120, 129)

In a post-trial motion, defense counsel challenged the conviction on the grounds that because defendant entered a dwelling, he was not guilty of simple burglary. At the hearing on the motion for a new trial, the defense argued that, under *People v. Suane*, 164 Ill. App. 3d 997, 518 N.E.2d 458 (1st Dist. 1987) and *People v. Silva*, 256 Ill. App. 3d 414, 415, 628 N.E. 2d 948 (1st Dist. 1993), an apartment building, the *entire* apartment building in question here, was a "dwelling" within the meaning of the residential burglary statute. (R.170-172) The State argued that the "common areas" of the building were not part of the "dwelling" within the meaning of the residential burglary statute, but instead that they were part of the building and covered by the simple burglary statute. (R.172-173) The State added that the apartment in question here was also vacant, and was therefore not a dwelling in and of itself either. (R.172-173)

The court found that there were two illegal entries, the first into the building at 8234 S. Eberhart, and the second into an apartment on the first floor of that building. (R.176-179) The

-18-

court ruled that the entry into the actual apartment unit was a residential burglary, which was never charged. (R. 176-179). The trial court then held that defendant was guilty of simple burglary based on his entry into the "common areas" of the building. (R.176-179) There was no legal basis for the trial court to make such a finding. The evidence at trial showed that a residential burglary was committed because the unauthorized entry was to an occupied residential building, which must be considered a "dwelling" place within the meaning of the residential burglary statute. Therefore, Mr. Daniels cannot be guilty of a burglary, as the offenses of burglary and residential burglary were mutually exclusive on the date of the offense. 720 ILCS 5/19-1 (West 1998); *People v. Childress*, 158 Ill. 2d 275, 633 N. E.2d 635 (1994); *People v. Gambino*, ___ Ill. App. 3d ___, 2002 Ill. App. LEXIS 1173 (3rd Dist. December 4, 2002). Accordingly, Daniels' burglary conviction must be reversed.

At the time this offense was committed, on February 12, 2000, the offense of burglary was defined as follows:

> (a) A person commits burglary when without authority he knowingly enters or without authority remains in a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. *This offense shall not include the offenses set out in Section 4-102 of the Illinois Vehicle Code, nor the offense of residential burglary as defined in Section 19-3 hereof.*

720 ILCS 5/19-1(a) (West 2000) (emphasis supplied). The residential burglary statute provided:

> (a) A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft.

720 ILCS 5/19-3(a) (West 2000). For the purposes of the residential burglary statute, a dwelling was defined as follows:

    (b) For the purposes of Section 19-3 of this Code, "dwelling" means a
house, apartment, mobile home, trailer, or other living quarters in which at the
time of the alleged offense the owners or occupants actually reside or in their
absence intend within a reasonable period of time to reside.

720 ILCS 5/2-6(b) (West 2000).

    In *People v. Childress*, the Illinois Supreme Court examined the language of the burglary

and residential burglary statutes and concluded that burglary and residential burglary were

"mutually exclusive" offenses. *Childress*, 158 Ill. 2d at 302. The Court explained that

residential burglary could be committed only in dwelling places, whereas simple burglary could

not occur in a dwelling place. *Id.* The Court found that since the defendant in *Childress*

committed the offense in the victim's home, he could not have been guilty of burglary. *Id.*

Accordingly, the Court, with the State's agreement, vacated the defendant's burglary conviction.

*Id.*

    Following *Childress*, appellate courts have reversed convictions for burglary where the

evidence showed that a defendant actually committed residential burglary. Recently, in *People v.*

*Gamino*, the Appellate Court reversed the defendant's burglary conviction where the evidence

showed that the defendant entered the dwelling place of another, was caught in the victim's

house, and admitted that he broke into the house to steal marijuana. *People v. Gambino*, ___ Ill.

App. 3d ___, 2002 Ill. App. LEXIS 1173, at *4 (3rd Dist. December 4, 2002). The Court

concluded that the defendant committed the offense of residential burglary and could not have

committed the mutually exclusive offense of burglary. *Id.* His burglary conviction was therefore

reversed. *Id.*

    Similarly, in *People v. Borgen*, 282 Ill. App. 3d 116, 121-122, 668 N.E.2d 234 (2nd Dist.

1996), the Appellate Court reversed the defendant's conviction for simple burglary, holding that where the evidence showed that he had entered the attached garage of a single family home, defendant had actually committed a residential burglary. As the *Borgen* Court explained, relying on *Childress*, 158 Ill. 2d at 302, and *People v. Cunningham*, 265 Ill. App. 3d 3, 9, 637 N.E.2d 1247 (2nd Dist. 1994), by entering the garage which connected to the laundry room of the house by another door, defendant entered a "dwelling place of another" for purposes of the residential burglary statute. *Borgen*, 282 Ill. App. 3d at 121-122. Because the offenses of residential burglary and burglary are mutually exclusive, as a matter of law, a rational trier of fact could not have found that defendant guilty of burglary. *Id.*

The Court in *Borgen* found that the garage entry was a residential burglary, at least in part, because the garage was attached to the house under one roof, one foundation, and had one connecting door. *Borgen*, 282 Ill. App. 3d at 121-122. This rationale applies with equal force in this case, because the entire apartment building was under the same roof, built on the same foundation, and had one common front door to the building. (R.117-118) The Court noted that the residential burglary statute was enacted to deter the unlawful entry into dwellings and thereby protect the privacy and sanctity of the home. *Borgen*, 282 Ill. App. 3d at 122.

The trial court relied on *People v. Maskell*, 304 Ill. App. 3d 77, 710 N.E.2d 449 (2nd Dist. 1999), in denying defendant's motion for a new trial. In *Maskell*, the defendant entered the apartment building, then a specific apartment, and was found in the hallway of the building pushing a television. *Maskell*, 304 Ill. App. 3d at 83-84. The Second District ruled that the evidence of that specific case warranted the finding that there were two illegal entries made, one into the building and the other into the actual apartment. *Maskell*, 304 Ill. App. 3d at 84. The

-21-

judge in this case found that defendant entered the apartment through the "common areas," that *Maskell* therefore applied, and defendant was guilty of simple burglary for the entrance into the "common areas" of the building.

However, the trial court's reliance on *Maskell* was incorrect because the *Maskell* Court erroneously interpreted the Supreme Court's decision in *Childress*, i.e. that burglary and residential burglary are mutually exclusive offenses. *People v. Childress*, 158 Ill. 2d 275, 302, 633 N. E.2d 635 (1994) (residential burglary can be committed only in dwelling places, whereas simple burglary cannot occur in a dwelling place); *People v. Sexton*, 118 Ill. App. 3d 998, 1000, 455 N.E.2d 884 (4th Dist. 1983) (residential burglary statute applies to burglaries of structures intended for use as residences, regardless of whether or not the structure was being used as a residence). *Maskell* is alone in its interpretation that the State essentially has an option in deciding to charge a defendant with residential burglary or simple burglary in a case like defendant's. *Childress* is crystal clear in its holding that residential burglary may only be committed in dwelling places, while simple burglary may not be committed in a dwelling place at all. *Childress*, 158 Ill. 2d at 302. There is no directive or even suggestion in *Childress* that courts parse out and segregate "common areas" from "dwelling areas" in every burglary/residential burglary case, as the trial court did here. *Childress* says that a structure is either a dwelling place or not. *Childress*, 158 Ill. 2d at 302. *Maskell* was an aberration in its interpretation that, "the mutual exclusiveness of burglary and residential burglary merely means that a defendant cannot be convicted of both burglary and residential burglary even if the facts would support convictions of both offenses." *Maskell*, 304 Ill. App. 3d at 82. For no other reason, this Court should decline to follow *Maskell*'s flawed reasoning.

-22-

The entire building at 8232 S. Eberhart was a dwelling within the meaning of the

residential burglary statute. In *People v. Silva,* a case cited by defense counsel during the hearing

on the post-trial motion, the defendant was convicted of residential burglary for burglarizing the

garden and first floor apartments in a three-flat building where the owners resided on the second

floor. 256 Ill. App. 3d 414, 415, 628 N.E. 2d 948 (1st Dist. 1993). In that case, the owners were

rehabbing the two vacant apartments, storing some personal belongings in them, and intended to

rent both of them out again once remodeling was complete. *Silva,* 256 Ill. App. 3d at 415-416.

There the defendant argued that because there were no actual renters or occupants at the time of

the burglary, the vacant apartments did not constitute a "dwelling" within the meaning of the

residential burglary statute. *Silva,* 256 Ill. App. 3d at 415.

In affirming the defendant's conviction for residential burglary, this Court said, regarding

the vacant apartment space:

> Also of significance is that the space was not part of an abandoned building; it was part of
> a structure which was serving as a dwelling place for complainant, who was using the
> space as storage. Therefore, the circuit court was entitled to find that the space was
> comparable to a closet. The space implicated the concerns for privacy, sanctity of the
> home, and the potential for serious harm which are addressed by the residential burglary
> statute.

*Silva,* 256 Ill. App. 3d at 420-421. The only factual difference between the apartment building in

*Silva* and the apartment building in the instant case, is that in *Silva,* the vacant apartments, in

addition to being vacant, were also being renovated and, therefore, were even less habitable than

the apartment in this case. Nevertheless this Court held that vacant apartments in the same

building as the complainant/owner's dwelling, when burglarized, are properly charged under the

residential burglary statute. *Silva,* 256 Ill. App. 3d at 420-421. Interestingly, there is no mention

in *Silva* of the three flat's common areas and the court there did not attempt to classify the hallway or stairway between the garden and first floor apartments as common areas. See also *People v. Suane*, 164 Ill. App. 3d 997, 518 N.E.2d 458 (1st Dist. 1987) (an entire multi-unit apartment building, including an uninhabited apartment in the midst of renovation, was a dwelling for purposes of the residential burglary statute).

In *People v. Torres*, the Fifth District stated, with respect to whether an entire structure was a "dwelling" or not, "if the evidence is sufficient for the finder of fact to determine that an occupant or owner *genuinely possessed the subjective intent* to reside on the premises in question within a reasonable period of time, the premises are a 'dwelling.' The statute does not require the intent to be realistic or even reasonable." 327 Ill. App. 3d 1106, 1111, 764 N.E.2d 1206 (5th Dist. 2002) (emphasis supplied). The *Torres* Court discussed the classification of the entire premises as dwelling or not, and made no mention of parsing out common areas from the dwellings in a building.

Mrs. Elston testified that she intended to rent the apartment again. (R.117, 135-136) Therefore, the vacant apartment—as well as the rest of the building—was a "dwelling" within the meaning of 720 ILCS 5/2-6(b), *Silva*, *Suane*, and *Torres*. *Silva*, 256 Ill. App. 3d at 420-421; *Suane*, 164 Ill. App. 3d at 1002; *Torres*, 327 Ill. App. 3d at 1111-1112; see also *People v. Willard*, 303 Ill. App. 3d 231, 233, 707 N.E.2d 1249 (2nd Dist. 1999) (noting that the definition of "dwelling" in 720 ILCS 5/2-6(b), implies habitability but may be "currently uninhabited with a return to habitation planned shortly"). The residential burglary statute applies to burglaries of *structures* intended for use as residences, regardless of whether the *structure* was being actively used as a residence at the time the burglary was committed. *People v. Sexton*, 118 Ill. App. 3d

998, 1000, 455 N.E.2d 884 (4th Dist. 1983); *People v. Quiver*, 205 Ill. App. 3d 1067, 1071-1072, 563 N.E.2d 991 (1st Dist. 1990).

Finally, the fact that Mrs. Elston stored her belongings in the apartment, which she kept locked, is a sign that she considered the apartment an extension of her home, and that is determinative of the "dwelling" issue. *See Torres*, 327 Ill. App. 3d at 1111-1112 (where fire-damaged trailer had doors locked and was otherwise secured, residential burglary was the proper charge notwithstanding the fact that the occupants never returned to the trailer after the fire and that it was subsequently determined to be beyond repair; it was the subjective intent of the occupying family to return that made it a "dwelling"); *Silva*, 256 Ill. App. 3d at 416, 420-421 (vacant apartment used for storage of personal belongings is considered a "large cluttered closet within [complainant's] home" with no classification of common areas in the multi-unit apartment building). The residential burglary statute was designed for *structures* intended to be used as residences, in order to "protect the sanctity and the privacy of the home and to avoid the 'greater danger and potential for serious harm from burglary of a home as opposed to burglary of a business.'" *Torres*, 327 Ill. App. 3d at 1111, *citing People v. Edgeston*, 243 Ill. App. 3d 1, 10, 611 N.E.2d 49 (2nd Dist. 1993).

In *People v. Willard*, a case relied upon by the State at trial, the Second District affirmed a burglary conviction where a defendant burglarized a six-flat. 303 Ill. App. 3d 231, 233, 707 N.E.2d 1249 (2nd Dist. 1999). However even a superficial analysis shows that that case is factually distinguishable from the instant case. In *Willard*, the entire structure in question was being rehabbed from a six-unit motel to a four-unit residential home. *Willard*, 303 Ill. App. 3d at 233. At the time of the burglary, no one was living in any of the units of the building and the

-25-

drywall had been removed from all of the walls, so one could see from one end of the building to the other on the inside. *Id.* Moreover, the owner of the building testified that the building was "really not a place to live in yet." *Id.* Given these facts, the court held that the entire building was clearly not a "dwelling" within the meaning of 720 ILCS 5/2-6(b) (West 2000). *Willard*, 303 Ill. App. 3d at 234. The structure in *Willard* bears no resemblance to the structure in the instant case. The building in *Willard* was "gutted" and clearly not fit for human habitation. *Willard*, 303 Ill. App. 3d at 233. Moreover, the *Willard* Court made no attempt to parse out dwellings from hallways and common areas, rather they held that the entire building was not a dwelling. *Id.* Ms. Elston testified that the apartment in this case was habitable in every way and that it was the only vacant unit in the building. (R.117, 126) For these reasons, the building in *Willard* is distinguishable from the building defendant's case, making the cases inapposite. *See People v. Sexton*, 118 Ill. App. 3d 998, 1000, 455 N.E.2d 884 (4th Dist. 1983).

In this case, the unauthorized entry was to a residential apartment building. The entire building, including the common areas, was a dwelling place for purposes of the residential burglary statute. Moreover, the offenses of burglary and residential burglary were mutually exclusive at the time of this offense. Therefore, even if defendant entered the common areas, the evidence presented at trial did not support a burglary conviction. Accordingly, defendant's burglary conviction should be reversed.

**III.** **The mandatory Class X sentencing provision of 730 ILCS 5/5-5-3(c)(8) violates the right of a defendant to due process and trial by jury because it subjects the defendant to increased punishment without notice or a jury finding upon proof beyond a reasonable doubt of the facts qualifying defendant for sentencing as a Class X offender.**

The circuit court found Charles Daniels guilty of the Class 2 offense of burglary, in violation of 720 ILCS 5/19-1(a). Conviction for a Class 2 offense exposes a defendant to a term of imprisonment of three to seven years. 730 ILCS 5/5-8-1(a)(5) (West 2000). The court determined that it was required to sentence Charles Daniels as a Class X offender, due to the timing, degree, and sequence of his prior convictions, which elevated his sentencing range to a minimum of six years and a maximum of 30 years. (R.179-180, 182-183); 730 ILCS 5/5-5-3(c)(8); 730 ILCS 5/5-8-1(a)(3). Based on this determination, Mr. Daniels was ultimately sentenced to eight years in the Department of Corrections. (C.59)

The Class X sentencing provision of 730 ILCS 5/5-5-3(c)(8) provides that when a defendant over the age of 21 is convicted of a Class 1 or Class 2 felony, after having been twice convicted of a Class 2 or greater Class felony in Illinois, and such charges are separately brought and tried and arise out of different series of acts, the court is required to sentence the defendant as a Class X offender if the first felony was committed after the effective date of the mandatory act, the second felony was committed after conviction of the first, and the third felony was committed after conviction of the second. 730 ILCS 5/5-5-3(c)(8) (West 2000).

The State is not required to give defendant notice that it is seeking to sentence him as a Class X offender. *People v. Jameson*, 162 Ill. 2d 282, 642 N.E.2d 1207 (1994). The statute contains no provision for a determination by the trier of fact as to whether the qualifying facts of § 5-5-3(c)(8) exist. Proof beyond a reasonable doubt of the qualifying convictions is not required

-27-

before the court can impose a Class X sentence on a defendant convicted of only a Class 1 or Class 2 offense. *People v. Williams*, 149 Ill.2d 467, 599 N.E.2d 913 (1992).

Because the statute pursuant to which Charles Daniels was sentenced increased the maximum penalty to which he was subject without any requirement of notice of the facts that subjected him to that increased penalty, and without a jury determination of whether those facts exist upon proof beyond a reasonable doubt, Daniels' Class X sentence must be vacated and the cause must be remanded for his sentencing as a Class 1 offender. *Apprendi v. New Jersey*, 530 U.S. 466, 147 L.Ed.2d 435 (2000).

The constitutionality of 730 ILCS 5/5-5-3(c)(8) is a question of law; therefore, it should be reviewed *de novo*. *People v. Fisher*, 184 Ill. 2d 441, 448, 705 N.E.2d 67 (1998). An *Apprendi* issue attacks the constitutionality of the statute and the trial court's authority to impose a sentence, so this issue may be raised at any time. (C.109); *People v. Wagener*, 196 Ill. 2d 269, 752 N.E.2d 430 (2001). Therefore, this argument has not been waived.

In *Apprendi*, the Supreme Court concluded that a New Jersey state statute subjecting a defendant to an increased penalty, based on a bench finding of the qualifying fact by a preponderance of the evidence, violated the defendant's right to due process and a jury trial. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L.Ed.2d 435 (2000). The Court recognized that it was permissible for judges to exercise discretion in imposing a sentence within the range prescribed by statute based on consideration of factors related both to the offense and the offender. *Apprendi*, 530 U.S. at 481. If, however, the defendant was to face punishment more severe than the statutory maximum he would receive if punished according to the facts reflected in the jury verdict alone, the fact behind the increased penalty must be submitted to the jury and

-28-

proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. Because the statute challenged in *Apprendi* did not contain these safeguards, the Court concluded that it was unconstitutional. *Id.*

The *Apprendi* Court declined to extend its decision to include enhanced sentences based on a defendant's prior convictions. *Apprendi*, 530 U.S. at 490. Although the Court limited itself to a narrow ruling based on the facts of the case, it called into question the *Almendarez-Torres* case which concluded that the failure of an indictment to allege a prior conviction that subjected the defendant to an increased punishment was not a violation of due process. *Apprendi*, 530 U.S. at 488-90; *Almendarez-Torres v. United States*, 523 U.S. 224, 227-230, 140 L. Ed. 2d 350 (1998). The Court attributed the *Almendarez-Torres* result to the fact that recidivism is probably the most traditional basis for a sentencing court to increase an offender's sentence, as well as the procedural safeguards attached to any fact of prior conviction, yet it articulated that *Apprendi* would require a different result if the recidivist issues were contested. *Apprendi*, 530 U.S. at 487-88. In his concurrence, Justice Thomas indicated that *Almendarez-Torres* was wrongly decided, stating that "one of the chief errors of *Almendarez-Torres* – an error to which I succumbed – was to attempt to discern whether a particular fact is traditionally (or typically) a basis for a sentencing court to increase an offender's sentence." *Apprendi*, 530 U.S. at 520 (*Thomas, J., concurring*). Despite the uncertainty which *Apprendi* placed on *Almendarez-Torres*, the Illinois Appellate Court has relied on the reasoning of that case in rejecting the application of *Apprendi* to 730 ILCS 5/5-5-3(c)(8). *See e.g. People v. Lathon*, 317 Ill. App. 3d 573, 740 N.E.2d 377 (1st Dist. 2000); *People v. Roberts*, 318 Ill. App. 3d 719, 743 N.E.2d 1025 (1st Dist. 2000).

This Court has also held that extended-term recidivism statutes are not unconstitutional because *Apprendi* excluded prior convictions. *People v. Pittman*, 326 Ill. App. 3d 297, 301, 761

N.E.2d 171 (1st Dist. 2001); *People v. Childress*, 321 Ill. App. 3d 13, 746 N.E.2d 783 (1st Dist. 2001). *See also People v. Dillard*, 319 Ill. App. 3d 102, 745 N.E.2d 185 (4th Dist. 2001); *People v. Davis*, 319 Ill. App. 3d 572, 746 N.E.2d 758 (4th Dist. 2001). Because the *Apprendi* Court declined to extend its rule in a case where the issue was not before it, these decisions incorrectly assumed that the *Apprendi* Court intended to rule that prior convictions do not require proof to a jury beyond a reasonable doubt. This interpretation of *Apprendi* is unsupported by the opinion.

Thus, while the Court limited the application of its holding, it never ruled that prior convictions used to increase the range of possible penalties need not be submitted to the jury and proven beyond a reasonable doubt. Indeed, in his concurrence, Justice Thomas stated that any fact that "is by law the basis for imposing or increasing punishment ... is an element." *Apprendi*, 530 U.S. at 521 (*Thomas, J., concurring*). Thus, the majority opinion and Justice Thomas' concurrence support the proposition that *Apprendi* requires that prior convictions be considered as an element of the offense. *Apprendi*, 530 U.S. at 489-90 ("a logical application of our reasoning today should apply if the recidivist issue were contested").

Because *Apprendi* calls into question whether *Almendarez-Torres* was correctly decided, this Court should conclude that the reasoning of *Apprendi* applies to sentencing enhancement factors even where based on prior convictions. Because § 5-5-3(c)(8) contains no provision for notice in the indictment, trial by jury, or proof beyond a reasonable doubt of the qualifying factors, this court should hold that the statute violates a defendant's right to trial by jury and due process.

Even if this Court declines to find that the authority of *Almendarez-Torres* is questionable, it should still find the statute unconstitutional because it violates Charles Daniels'

-30-

right to due process and trial by jury with respect to qualifying facts contained in § 5-5-3(c)(8) beyond the mere fact of the prior convictions. The public defender made no concession that Daniels' prior convictions qualified him for Class X sentencing. (R. 38-42) In addition, the indictment gave Daniels no notice that he qualified as a Class X offender. He was not afforded the right to have a jury decide if his prior convictions qualified him for Class X sentencing. The State was never required to prove beyond a reasonable doubt that the specific timing, degree, number, and sequence of Daniels' prior convictions, and the defendant's age, established his eligibility for a Class X sentence.

At the very least, if the State is not required to give notice of the prior convictions in the indictment and to prove them to a jury beyond a reasonable doubt, it should be required to prove beyond a reasonable doubt that the defendant's age and the sequence in which the convictions occurred qualified Daniels for Class X sentencing (e.g. that Daniels is over the age of 21, and the first felony was committed after the effective date of the amendatory act, the second felony was committed after conviction of the first, and the third felony was committed after the conviction of the second).

Some Illinois cases have held otherwise, but these cases contradict both the plain language of the statute and *Apprendi*. One case, for example, states that the ancillary components of 730 ILCS 5/5-5-3(c)(8) are sufficiently intertwined with recidivism, and sufficiently distinct from the elements of the instant offense, to fall under the exception recognized in *Apprendi. People v. Smith*, 2003 Ill. App. LEXIS 482, *8-14 (1st Dist. April 18, 2003). The age requirement, however, is not intertwined with recidivism. Both age and recidivism must be independently determined. The relevant age that must be established is the

age of the offender at the time of conviction of the instant offense, not at the time of past convictions. Furthermore, if the offender is under 21, no amount of recidivism can mandate an extended term. Age is a separate, distinct fact which, under the statute, is found by the judge, with neither notice in the indictment nor a requirement of proof beyond a reasonable doubt.

*People v. Dixon*, another case which does not lend support for differentiating the age requirement from the recidivism exception, did not provide any independent support for discounting the age requirement under *Apprendi*, but simply relied on this Court's decision in *People v. Lathon. People v. Dixon*, 319 Ill. App. 3d 881, 885, 747 N.E.2d 1 (4th Dist. 2001). *Dixon* conceded that it did not appear that *Lathon* argued that the age requirement "was a factor that removed § 5-5-3(c)(8) from the *Almendarez-Torres* exception and placed the statute squarely within the rule of *Apprendi*." *Id.* As *Lathon* did not address the age issue, it cannot serve as an authority on this issue. Accordingly, this Court should not follow the reasoning in *Dixon*.

Should this Court conclude that *Apprendi* does not require notice and a jury finding of proof beyond a reasonable doubt, it should nonetheless find the statute unconstitutional. As suggested by *Almendarez-Torres*, sentencing determinations which bear significantly on the severity of the sentence should be subject to a heightened standard of proof. As interpreted by the Illinois Supreme Court in *Williams*, § 5-5-3(c)(8) imposes no burden of proof beyond that existing in any ordinary sentencing proceeding, although the maximum penalty that the defendant faces is substantially increased if the court finds that he qualifies for sentencing as a Class X offender. *People v. Williams*, 149 Ill.2d 467, 599 N.E.2d 913 (1992).

A person convicted of a Class 2 offense faces a maximum sentence of seven years, whereas if he qualifies for sentencing as a Class X offender, the maximum penalty increases to

-32-

30 years. 730 ILCS 5/5-8-1(a)(4); 730 ILCS 5/5-8-1(a)(3). Because § 5-5-3(c)(8) subjects a defendant to a considerable increase in his sentence should he qualify for Class X sentencing, due process requires that the facts qualifying the defendant for sentencing as a Class X offender at least be proven by a standard of proof greater than that required at the routine sentencing hearing. Because the statute contains no requirement of a heightened standard of proof, it is unconstitutional.

For the reasons stated above, this Court should vacate defendant's Class X offender sentence and remand for resentencing.

## CONCLUSION

For the foregoing reasons, Charles Daniels, Defendant-Appellant, respectfully requests

that this Court reverse his conviction for burglary or, in the alternative, that this Court vacate his

sentence and remand to the circuit court for resentencing.


Respectfully submitted,


MICHAEL J. PELLETIER
Deputy Defender


MICHAEL JAMES MCDERMOTT
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

## **APPENDIX TO THE BRIEF**

Index to the Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Judgment Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-5

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-6

## INDEX TO THE RECORD

**Common Law Record ("C")**                                                    **Page**

Memorandum of Orders ("Half Sheet") ............................................... 1

Arrest Report (February 13, 2000) ................................................. 17

Appearance (January 13, 2000) ............................................. 20, 22, 27

Complaint for Preliminary Examination (February 13, 2000) ......................... 21

Information (March 10, 2000) ...................................................... 24

State's Motion for Discovery (April 3, 2000) ...................................... 28

State's Answer to Discovery (April 3, 2000) ....................................... 30

Circuit Court Order (November 29, 2000) ........................................... 32

Petition to Evaluate the Fitness of the Defendant (November 29, 2000) ............. 33

Presentence Investigation Report .................................................. 34

Letter in Mitigation (April 16, 2002) ............................................. 99

Defendant's Answer to Discovery (June 5, 2002) ................................... 103

Jury Waiver Form (June 5, 2002) .................................................. 104

Motion for New Trial (July 30, 2002) ............................................. 106

Motion to Reconsider Sentence (August 21, 2002) .................................. 109

Notice of Appeal and Request for Extension of Time to File Mandamus in Supreme
Court of Illinois (August 29, 2002) .............................................. 110

Notice to Supreme Court Regarding Petition (September 16, 2002) ................... 114

Petition for Report of Proceedings (September 16, 2002) .......................... 115

Petition for Report of Proceedings (September 24, 2002) .......................... 119

Letter from Supreme Court of Illinois Regarding Filing of Motion (September 24, 2002) .. 121

Notice of Appeal (September 9, 2002) ............................................. 123

**Supplemental Record (SC)**

Letter in Mitigation ............................................................... 2

Letter from Forensic Clinical Services Regarding Defendant's Fitness (October 25, 2000) .... 5

Circuit Court Order (January 17, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Circuit Court Order (March 12, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Letter from Jackson Park Hospital Regarding Psychiatric Evaluation (June 20, 2001) . . . . . . . 8

Letter from Jackson Park Hospital Regarding Psychiatric Evaluation . . . . . . . . . . . . . . . . . . . 13

Letter from Forensic Clinical Services Regarding Defendant Charles Daniels Fitness (July 24, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Forensic Clinical Services  Psychiatric Summary (September 13, 2001) . . . . . . . . . . . . . . . . 17

Sentencing Order (December 12, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Report of Proceedings ("R")**

|  | Direct | Cross | Redir. | Recr. |
| --- | --- | --- | --- | --- |
| April 3, 2000 - Continuance |  |  |  | 4 |
| May 22, 2000 - Continuance |  |  |  | 9 |
| August 15, 2000 - Continuance |  |  |  | 16 |
| October 2, 2000 - Continuance |  |  |  | 21 |
| November 14, 2000 - Continuance |  |  |  | 24 |
| November 29, 2000 - Continuance |  |  |  | 28 |
| January 17, 2001 - Continuance |  |  |  | 32 |
| February 14, 2001 - Continuance |  |  |  | 36 |
| March 21, 2001 - Continuance |  |  |  | 41 |
| June 20, 2001- Continuance |  |  |  | 47 |
| October 9, 2001- Continuance |  |  |  | 52 |
| October 23, 2001 - Continuance |  |  |  | 57 |
| November 5, 2001 - Continuance |  |  |  | 62 |
| November 29, 2001 - Continuance |  |  |  | 73 |
| December 17, 2001 - Continuance |  |  |  | 76 |
| January 17, 2002 - Continuance |  |  |  | 81 |



|  | Direct | Cross | Redir. | Recr. |  |
|---|---|---|---|---|---|
| March 5, 2002 - Continuance |  |  |  |  | 85 |
| March 26, 2002 - Continuance |  |  |  |  | 88 |
| April 10, 2002 - Continuance |  |  |  |  | 91 |
| April 16, 2002 - Continuance |  |  |  |  | 110 |
| June 5, 2002 |  |  |  |  |  |
| **Bench Trial** |  |  |  |  |  |
| Jury Waiver |  |  |  |  | 114 |
| State Witness |  |  |  |  |  |
| Nora Elston | 115 | 125 |  |  |  |
| June 19, 2002 - Continuance |  |  |  |  | 145 |
| July 16, 2002 |  |  |  |  |  |
| State Witnesses Continued |  |  |  |  |  |
| Det. James Carlassare | 151 | 154 |  |  |  |
| Officer William Meister | 156 | 162 |  |  |  |
| State Rests |  |  |  |  | 164 |
| Motion for Directed Finding |  |  |  |  | 164 |
| Defense Rests |  |  |  |  | 166 |
| Finding of Guilt |  |  |  |  | 167 |
| July 30, 2002 |  |  |  |  |  |
| Motion for New Trial - Denied |  |  |  |  | 179 |
| Sentencing Hearing |  |  |  |  |  |
| Argument in Aggravation |  |  |  |  | 179 |
| Argument in Mitigation |  |  |  |  | 180 |
| Allocution |  |  |  |  | 181 |
| Imposition of Sentence |  |  |  |  | 183 |

|  | Direct | Cross | Redir. | Recr. |  |
|---|---|---|---|---|---|
| September 5, 2002 |  |  |  |  |  |
| Motion to Reduce Sentence - Denied |  |  |  |  | 195 |
| **Supplemental Record ("SR")** |  |  |  |  |  |
| May 16, 2001 - Continuance |  |  |  |  | 4 |
| July 24, 2001 - Continuance |  |  |  |  | 9 |
| September 17, 2001 - Continuance |  |  |  |  | 12 |
| October 1, 2001 - Continuance |  |  |  |  | 18 |

10-2003 MON 12:29 PM H   CORRECTIONAL CENTER    FAX NO.    93433812          P. 03

## IN THE CIRCUIT COURT OF COOK COUNTY, ILINOIS

_____ _____ Sub 5 _____ DEPARTMENT _Crim_ _____

(Municipal)                    (Division)                    (District)

**People of the State of Illinois**

v.

Charles Daniels

**Defendant**

NO. _99 CR 09919-0_

L R. # _0486907_ ✓

S. I. D. # _018207540_

### ORDER OF SENTENCE AND COMMITMENT TO
### ILLINOIS DEPARTMENT OF CORRECTIONS

The defendant having been adjudged guilty of committing the offense(s) enumerated below,

IT IS ORDERED that the defendant _Charles Daniels_ be and is hereI
ed to the ILLINOIS DEPARTMENT OF CORRECTIONS AS FOLLOWS:

Λ Sentenced to 12 years, IDOC,
credit 1203 days, TCS as of 7-30-02
plus 135 days from 7-30-02 to
12-12-02 when mitt issued

Stay of

res bury

**Statntory Citation**

720 ILCS _5_ / _19-3_

_____ ILCS _____ / _____

_____ ILCS _____ / _____

_____ ILCS _____ / _____

IT IS FURTHER ORDERED that the Clerk of the Court shall deliver a copy of this order to the Sheriff of Cook Count

IT IS FURTHER ORDERED that the Sheriff of Cook County shall take the defendant into custody and deliver him/her to tI
Department of Corrections.

IT IS FURTHER ORDERED that the Illinois Department of Corrections shall take the defendant into custody and confine hi
the manner provided by law until the above sentence is fulfilled.

RED/BY

TY CLERK

CH COURT

_5_          _7-30-02_
             **DATE**

ENTER:

**JUDGE**

**JUDGE'S NO.** _155_

## ENTERED

JUL 3 0 2002

**DOROTHY BROWN**
CLERK OF CIRCUIT COURT

AURELIA PUCINSKI, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

(Rev. 10/30/01)  CCCR 0603

-TO THE **Appellate**_____ COURT OF ILLINOIS
IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL BUREAU

|  | |
|---|---|
| E OF THE STATE OF ILLINOIS | Case No. _OO CR 7104_ |
|  | Trial Judge _DAVY_ |
| Charles Daniels | Court Reporter _____ |
|  | Attorney _DENNIS HUGH SILERMAN_ |
|  | Appeal Check Date _____ |
|  | Appeal Bond _____ |

## NOTICE OF APPEAL

peal is taken from the order or judgment described below:

lant's Name: _Charles Daniels_

lant's Address: _111 D.O.C._

lant's Attorney: _____

ss: _____

se: _BURGLARY_

ment: Guilty of _BURGLARY_

on a _bench trial_

_7-16-02_

nce: _8 YRS 111 DOC_

Notice Filed: _9-9-2002_

_Charles Daniels by his truely Attorney_

**VERIFIED PETITION FOR REPORT OF PROCEEDINGS AND COMMON LAW RECORD**

er Supreme Court Rules 605-608 Appellant ask the Court to order; (1) the Official Court Reporter to transcribe an
nal and the copy of the proceedings, file the original with the Clerk and deliver a copy to the Appellant, or upon
ellant's written request to the Appellant's attorney of record, and (2) the Clerk to prepare the Record on Appeal.

Appellant, being duly sworn, says that at the time of his/her conviction he/she was and he/she now is unable to
for the Record or an appeal lawyer.

_____ Appellant

BSCRIBED and SWORN TO before me this _____ day of _____, _____

_____ Notary public

## ORDER

IS ORDERED; 1. _____

pointed as counsel on appeal, and 2. the record and Report of Proceedings be furnished appellant free.

| | | | | |
|---|---|---|---|---|
| 6-5-0 | , 2002 | 9-5 | , 2002 | _____ |
| 7-16 | , 2002 | _____ | , _____ | _____ |
| 7-30 | , 2002 | _____ | , _____ | _____ |

TE: _____, _____   ENTER: _____

Judge   Judge' No.

cknowledge receipt: _____   Court Reporter

NO. 02-2905

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

vs.

CHARLES DANIELS,

Defendant-Appellant.

Appeal from the Circuit Court of Cook County, Criminal Division.
Honorable **THOMAS DAVY**, Judge Presiding.

BRIEF AND ARGUMENT FOR
PLAINTIFF-APPELLEE

RICHARD A. DEVINE,
State's Attorney,
County of Cook,
Room 309 - Richard J. Daley Center,
Chicago, Illinois 60602

Attorney for Plaintiff-Appellee

RENEE GOLDFARB,
JON WALTERS,
Assistant State's Attorneys,
    Of Counsel.*

---

**\*TREVOR HAYES**, a first year law student at Northwestern University School of Law and a law clerk at the State's Attorney's Office, Criminal Appeals Division, assisted in the research and preparation of this brief.

EXHIBIT C

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

vs.

CHARLES DANIELS,

Defendant-Appellant.

## POINTS AND AUTHORITIES

### I.

### DEFENDANT WAS PROPERLY FOUND GUILTY OF BURGLARY ................................................... 8
#### (Response to Defendant's Arguments I & II)

People v. Mata, 243 Ill.App.3d 365,
611 N.E. 2d 1235 (1st Dist. 1993) ..................................... 8,18

Jackson v. Virginia, 443 U.S. 307,
99 S.Ct. 2781 (1979) ............................................. 8,9

People v. Collins, 106 Ill. 2d 237,
478 N.E.2d 267 (1985) ......................................... 9

People v. Borneman, 66 Ill. App. 3d. 251,
213 N.E.2d. 52 (2nd Dist. 1966) ............................. 9

People v. Huckaba, 23 Ill. App. 3d 555,
319 N.E. 2d 573 (4th Dist. 1974) ........................... 9

1

720 ILCS 5/19-1 ........................................................................ 9

720 ILCS 5/19-3 ........................................................................ 9

720 ILCS 5/2-6(b) ..................................................................... 9

## A.

Defendant Was Guilty Of Burglary For His
Unauthorized Entry Into The Building's Common
Areas ........................................................................ 10

People v. Maskell, 304 Ill. App. 3d. 77,
    710 N.E.2d 449 (2d Dist 1999) ........................................ 10,12

People v. Bales, 108 Ill. 2d. 182,
    483 N.E.2d 517 (1985) .................................................. 10

People v. Thomas, 137 Ill. 2d 500,
    561 N.E.2d 57 (1990) ................................................... 10

People v. Schneller, 69 Ill.App.2d. 50,
    216 N.E. 510 (1st Dist. 1966) ......................................... 11

People v. Niemoth, 409 Ill. 111,
    98 N.E.2d 733 (1951) ................................................... 11

People v. Childress, 158 Ill. 2d 275,
    633 N.E.2d 635 (1994) .................................................. 12

## B.

Defendant Was Guilty Of Burglary, Not
Residential Burglary, Because Both The Vacant
Apartment And The Common Areas Are
Buildings, Not Dwellings ............................................... 15

People v. Bales, 108 Ill. 2d. 182,
    483 N.E.2d 517 (1985) .................................................. 15

People v. Smith, 209 Ill. App. 3d. 1091,
    568 N.E.2d 417 (4th Dist. 1991) ....................................... 15,18

2

People v. Sexton, 118 Ill. App. 3d 998,
    455 N.E. 2d 884 (4th Dist. 1983).................................................... 16

People v. Suane, 164 Ill. App. 3d 997,
    518 N.E. 2d 458 (1st Dist. 1987)................................................... 16

People v. Silva, 256 Ill. App. 3d 414,
    628 N.E. 2d 948 (1st Dist. 1993)................................................... 16,17

People v. Borgen, 282 Ill. App. 3d 116,
    668 N.E.2d 234 (2d Dist. 1996)...................................................... 18

People v. Thomas, 137 Ill. 2d 500,
    561 N.E.2d 57 (1990) ...................................................................... 18

People v. Mata, 243 Ill.App.3d 365,
    611 N.E. 2d 1235 (1st Dist. 1993).................................................. 18

## II.

THE UNITED STATES SUPREME COURT
DECISION IN APPRENDI V. NEW JERSEY DOES
NOT APPLY TO THE INSTANT CASE BECAUSE
THE TRIAL COURT PROPERLY IMPOSED A
MANDATORY CLASS X SENTENCE BASED ON
DEFENDANT'S EXTENSIVE CRIMINAL
BACKGROUND WHICH INCLUDED AT LEAST
TWO PRIOR CONVICTIONS FOR CLASS 2 OR
GREATER FELONIES.................................................. **19**

**(Response to Defendant's Argument III)**

Apprendi v. New Jersey, 530 U.S. 466,
    120 S. Ct. 2348 (2000).................................................................... 19

People v. Reed, 177 Ill.2d 389,
    686 N.E.2d 584 (1997) .................................................................... 20

Almendarez-Torres v. United States, 523 U.S. 224,
    118 S.Ct. 1219 (1998)..................................................................... 20

Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533,
    103 S. Ct. 1343, 75 L. Ed. 2d 260 (1983)........................................ 20

Hutto v. Davis, 454 U.S. 370,
    102 S. Ct. 703, 70 L. Ed. 2d 556 (1982)............................................    20

People v. Lathon, 317 Ill. App. 3d 573,
    740 N.E.2d 377 (1st Dist. 2000).........................................................    21

People v. Ramos, 318 Ill. App. 3d 181,
    742 N.E.2d 763 (1st Dist. 2000).........................................................    22

People v. Roberts, 318 Ill. App. 3d 719,
    743 N.E.2d 1025 (1st Dist. 2000).......................................................    22

People v. Smith, ___ Ill. App. 3d ___,
    2003 Ill. App. LEXIS 482 (No. 1-01-4468 April 18, 2003) ..............    22

People v. Jones, 322 Ill. App. 3d 236,
    749 N.E.2d 466 (3d Dist. 2001).........................................................    22

People v. Dunn, 326 Ill. App. 3d 281,
    760 N.E.2d 511 (1st Dist. 2001).........................................................    22

People v. Wagener, 196 Ill. 2d 269,
    752 N.E.2d 430  (2001) ......................................................................    22

730 ILCS 5/5-5-3(c)(8)................................................................    19

730 ILCS 5-8-1(c) (1994) ...........................................................    20

## ISSUES PRESENTED FOR REVIEW

Whether the court properly found defendant guilty of burglary.

Whether the United States Supreme Court Decision in <u>Apprendi v. New Jersey</u> does not apply to the instant case.

## STATEMENT OF FACTS

Defendant, Charles Daniels, was charged by Information number 00 CR-7104 with burglary. (C.R. 24-26) After a bench trial before Judge Thomas Davy, defendant was convicted of burglary. (C.R. 167) Judge Davy sentenced defendant to eight years in the Illinois Department of Corrections. (C.R. 183) Defendant appeals his conviction.

On February 12, 2000, at about 3:40 p.m., Nora Elston was in her first-floor apartment, in a six-flat building she owns, at 8232 South Eberhart Street. (R. V5-6) Ms. Elston saw through her window, from a distance of about 10 feet, defendant walk up to the building and ring the bell of the unoccupied apartment across the hall, 8234 South Eberhart Street. (R. V7) The 8234 apartment was the only vacant one in the building, and Ms. Elston was storing in that unoccupied apartment some of her belongings, such as clothes in large plastic bags, a radio, and music tapes. (R. V6,8) She intended to eventually move in a tenant to the vacant apartment, but had not yet established any firm plans to do so. (R. V15) Ms. Elston saw defendant enter the building, and then lost sight of him. (R. V16) The victim called the police because she heard defendant "fumbling" with the mailbox, located at the common entrance to the building, as if trying to force it open. (R. V7-8)

5

When the officers arrived, Ms. Elston told them she believed defendant had left the premises. (R. V8) After checking the backyard, including the lock on the outside door to the vacant apartment, without checking the inside the apartment, the officers left Elton's property. (R. V8, 26)

Minutes after the police left, Ms. Elston decided to get her mail, and in passing the vacant apartment to get to the mailbox, she heard someone in the unoccupied apartment rustling through her belongings. (R. V-8) Ms. Elston called the police a second time, and notified them there was someone in the vacant apartment. (R. V9) About seven minutes later, Ms. Elston saw defendant leave the building carrying large plastic bags, about two-and-a-half feet by three-and-a-half feet in size. (R. V10). The victim then followed defendant on foot, from approximately 20 feet behind, in hopes of being able to tell the police where to find defendant. (R. V10-11) Ms. Elston followed defendant westward down an alley north of 83rd Street, which her building borders, until he turned north on another alley, which Ms. Elston did not follow him down. (R. V19-20) Ms. Elston saw defendant carrying the plastic bags down the first alley, but when she saw him on the northbound alley, he was no longer carrying the bags. (R. V11, 20)

Ms. Elston met the police as she was returning home, and after she recounted her story, the officers told her to get in the car to search for defendant, who they found a block away. (R. V12) Defendant was carrying a duffel bag when the police approached him. (R. X13) Defendant tried to exit through a gangway when the officers approached; upon following defendant, the officers located two large plastic bags within 10 feet to 15 yards of defendant. (R. X13-14) The officers showed the two plastic bags, the duffel bag, and the contents of each to Ms. Elston. (R. X14) Ms. Elston identified the items – clothing, a radio, and music tapes – as the property that she had stored in the vacant apartment. (R. V13) Ms. Elston said an inspection of the vacant apartment upon

6

returning home showed that the doors were locked, and though she thought she had locked all the windows, she speculated that she might not have. (R. V16).

Defendant told Chicago Police Detective James Carlassare that he entered the apartment. "He just stated that he knew he was in a lot of trouble, he said he knew he was in a lot of trouble, he said he shouldn't have gone into that apartment." (R. X8).

After the People rested, the judge denied the defense motion for a directed finding. (R. X20) The defense rested, and both the People and defense waived their respective arguments. (R. X20) The judge found defendant guilty on the charge of burglary. (R. X21)

The defense filed a motion for new trial, arguing the People actually proved defendant guilty of residential burglary rather than the burglary charge for which he was convicted. (R. Y2) The defense argued residential burglary was the only appropriate charge for a structure intended for use as a residence, regardless of whether it was actually used as a residence at the time of the burglary. (R. Y3).

The court ruled that defendant made two unauthorized entries, first to the common area of the building, which is not a dwelling, and second to the vacant apartment, which is a dwelling. (R. Y9) The court found the unauthorized entry into the common area sufficient to sustain the charge of burglary. (R. Y10).

7

## ARGUMENT

### I.

### DEFENDANT IS GUILTY OF BURGLARY CONVICTION FOR HIS UNAUTHORIZED ENTRY INTO THE BUILDING'S COMMON AREAS.
**(Response to Defendant's Arguments I & II)**

Residential burglary is the proper charge for burglary of a dwelling, while burglary is proper for a building. Defendant contends he was not guilty of burglary because, although the evidence proved he, without authority, entered the victim's apartment building with the intention to commit a felony or theft and removed the victim's property from a vacant apartment, he should have been charged with residential burglary. The law and the facts show burglary was a proper charge because defendant entered the building's common areas, and because no one lived in the vacant apartment or intended to do so in a reasonable amount of time, making it a building rather than a dwelling. Therefore, this Court should affirm defendant's burglary conviction.

This court must give deference to the trial court's findings and inferences based on the evidence presented. "The reviewing court must consider that the circuit court" ... was "in the best position to judge the witnesses' credibility, to determine the weight to be accorded the witnesses' testimony, to decide the inferences to be drawn from the evidence, and to resolve all conflicts in the evidence." People v. Mata, 243 Ill.App.3d 365, 611 N.E. 2d 1235 (1st Dist. 1993). When a reviewing court is presented with a challenge to the sufficiency of the evidence, the court is not required to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789 (1979) (emphasis in original). Rather, the only relevant question for the reviewing court is, after viewing the evidence in

8

the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 99 S.Ct. at 2788-89; People v. Collins, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985).

"A person commits a burglary when without authority he knowingly enters or without authority remains within a building ... with the intent to commit therein a felony or theft." 720 ILCS 5/19-1. The courts have previously defined a building using a three-prong test. "First, that it be a structure, edifice or fabric; second, that it be designated for the habitation or shelter of men, animals or property; and third, that it be permanent." People v. Borneman, 66 Ill. App. 3d. 251, 213 N.E. 2d. 52 (2d Dist. 1966). See also People v. Huckaba, 23 Ill. App. 3d 555, 319 N.E. 2d 573 (4th Dist. 1974). ("A building is defined as a permanent structure for the shelter and protection of property. A building has been defined as any stationary structure affixed to land.")

"A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony of theft." 720 ILCS 5/19-3[1]. For the purposes of the residential burglary, a dwelling "means a house, apartment ... or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." 720 ILCS 5/2-6(b).

Both the common area and the vacant apartment in the instant case meet the definition of a building because they are both permanent structures designed for the shelter of property or people. But neither the common area nor the vacant apartment meet the definition of a dwelling because both fail the second prong of that test, in that neither could be considered "the dwelling place of another" as required by Section 19-3.

---

[1] The statute has since been revised to render burglary and residential burglary no longer mutually exclusive.

9

## A.

### Defendant Was Guilty Of Burglary For His Unauthorized Entry Into The Building's Common Areas.

The common area of an apartment building, such as a hallway or common entrance, is not a dwelling as required by the residential burglary statute, because no one resides there. Defendant entered the common area of an apartment building. By entering a building without authorization, and then removing items belonging to another person, defendant was properly convicted of burglary.

When the circumstances are such that a defendant entered both a building and a dwelling in the commission of his crime, the People have the discretion to charge either residential burglary or burglary—although, until the subsequent revisions to the law, both could not be charged as they were deemed mutually exclusive. People v. Maskell, 304 Ill. App. 3d. 77, 82, 710 N.E.2d 449 (2d Dist 1999). "It is apparent that whether a structure is a dwelling place of another depends on the purpose for which it is used, rather than the nature of the structure." People v. Bales, 108 Ill. 2d. 182, 190, 483 N.E.2d 517 (1985). "The common sense construction of the phrase 'the dwelling place of another' as used in section 19 – 3 requires that the structure be one used by another as a residence or living quarters in which the owners or occupants actually reside or, if absent, intend within a reasonable period of time to reside." Id at 191. The Supreme Court built upon this distinction between a building and a dwelling in People v. Thomas, where it determined a garage used for storage and attached to various living units in a multi-unit building was not a residence or living quarters. People v. Thomas, 137 Ill. 2d. 500, 519, 561 N.E.2d 57 (1990).

10

A defendant need not actually remove property from a building to commit burglary. "The crime of burglary is complete when a person knowingly enters into or remains within a building 'without authority' with the intent to commit a felony or theft." People v. Schneller, 69 Ill.App.2d 50, 216 N.E. 510 (1st Dist. 1966). "The gravaman of the crime of burglary is the felonious intent with which the building of another is unlawfully entered." People v. Niemoth, 409 Ill. 111, 98 N.E.2d 733 (1951).

The common entrance and hallway in the instant case can no more be determined a dwelling than could the garage in People v. Thomas, because no one resides there or intends to reside there. The testimony in the instant case from the eyewitness unequivocally shows that defendant entered the common area of the building:

> [Defense counsel]: And you said you saw the man come into the building and you lose sight of the man when he comes inside the building, right?
> [Witness]: Of course.
> ****
> [Defense counsel]: You didn't see the person leave out the door?
> [Witness]: Yes, I saw him leave.
> Q. How long would you say he was in the hallway of your building?
> A. I'd say three minutes.

(R. V16-17)

The witness placed defendant in an area that was a building, not a dwelling, and defendant removed items from inside a vacant apartment. Even assuming, arguendo, that a vacant apartment is considered a dwelling, there were two unauthorized entries by defendant, one to the building and one to a dwelling, and People v. Maskell permits the People to charge burglary for the unauthorized entry into the common area.

11

The trial court in the instant case said <u>People v. Maskell</u> is "directly on point" with the instant case. (R. Y8-9) In <u>People v. Maskell</u>, the defendant was found pushing a television down the common stairway of a three-story, six-flat apartment building. <u>People v. Maskell</u>, 304 Ill. App. 3d at 78. The television had been removed from a third floor apartment that was only accessible through a common stairway. <u>People v. Maskell</u>, 403 Ill. App. 3d at 78. The <u>Maskell</u> court held that there were two separate unauthorized entries in that case, the first being the entry into the common area of the building, which was not a dwelling, and second into the inhabited apartment, which was a dwelling. <u>People v. Maskell</u>, 403 Ill. App. 3d at 84. The trial judge in the instant case said, as in <u>Maskell</u>, "the evidence in this case will allow the rational trier of the fact [to] find the defendant made two unauthorized enteries (sic)." The judge said the two entries were to the building and the apartment. He said in a case involving an apartment building that has common areas, such as hallways and stairways, which of the two charges to levy is left to the People's discretion, unless the evidence shows a defendant entered directly from outside.

Defendant claims <u>People v. Maskell</u> is wrong in light of <u>People v. Childress</u>, 158 Ill. 2d 275, 633 N.E.2d 635 (1994), but <u>People v. Childress</u> does not advance defendant's argument. Defendant misstates <u>People v. Childress</u> as holding that an entire building must be a residence or not. (D. 22) The Supreme Court's decision in <u>People v. Childress</u> merely states that burglary and residential burglary are mutually exclusive, which reflects the state of the governing statutes at that time. <u>People v. Childress</u>, 158 Ill. 2d at 302. In <u>People v. Childress</u>, the crimes clearly took place in a dwelling place; the case has nothing to say about a situation where a defendant enters both a dwelling place and non-dwelling area of a building. The <u>Childress</u> court in no way overruled <u>People v. Thomas</u>, which held a garage in a multiunit building, not used as a residence, was not a

dwelling. In fact, People v. Maskell accurately reflects the language of section 2-6(b), which requires a dwelling to be more than just a house, apartment, or other living quarters, it must be a place where someone actually resides. Since there is no intention to reside in the common hallway of an apartment building, People v. Maskell accurately reflects the law.

Defendant contends that the evidence shows he circumvented the common areas of the building. However, the defense misstates the evidence in its brief when it points to the victim's speculation as conclusive evidence about defendant's method of entry, while overlooking the above testimony. (D. 13) Defendant's brief quotes from the cross examination of Ms. Elston to claim she testified that defendant entered through the window. Id. But defendant mischaracterizes Ms. Elston's testimony.

> [Defense counsel]: Was there a lock on the back door?
> [Witness]: Yes, sir.
> Q. Were there any – were there windows in that apartment?
> A. Yes, sir.
> Q. Obviously windows. Were they all shut and locked?
> A. No, sir.
> Q. Were they open?
> A. One of them had to be open for him to come in.
> Q. And when you made an inspection of that apartment the doors were still locked, correct?
> A. Correct.
> Q. You said one of the windows was open?
> A. I said one of the windows was not locked.
> Q. Was not locked, but all – you locked all those windows inside that apartment?
> A. I thought I did, but I guess I didn't.

(R. V25)

13

The above testimony, which defendant contends is conclusive evidence that entry took place through a window, is simply the suppositions of a 76-year-old woman who is not an expert on breaking into apartments. Rather than conclusively proving a method of entry, Ms. Elston's testimony merely shows the thought process of a property owner confused about how someone broke into her apartment. She testified that she thought she locked all the windows, but since someone entered the apartment, she speculated: "One of them had to be open for him to come in." (R. V25)

The eyewitness saw defendant inside the common area of the building. No one resides in the common area of the apartment, so it is not a dwelling. Since defendant entered a common area of the apartment building, his burglary conviction is proper.

14

## B.

### Defendant Was Guilty Of Burglary, Not Residential Burglary, Because Both The Vacant Apartment And The Common Areas Are Buildings, Not Dwellings

A vacant apartment that is not occupied, and that no one intends to occupy in a reasonable period of time, is not a dwelling. Defendant, without authorization, entered a vacant apartment, where no one resided or had any intention to reside within a reasonable period of time. Therefore, defendant was properly convicted of burglary.

To determine if a building is a dwelling depends on how the structure is actually used instead of the structure's design. People v. Bales, 108 Ill. 2d 182, 190, 483 N.E.2d 517 (1985). "The key inquiry is the intent of the owner to reside in the building within a reasonable period of time after his absence." People v. Smith, 209 Ill. App. 3d. 1091, 1096, 568 N.E.2d 417 (4th Dist. 1991).

While the vacant apartment from which defendant removed Ms. Elston's property was designed as a residence, it was not currently being used as such, so it is not a dwelling for the purposes of the statute, as interpreted by the Supreme Court in Bales. The property owner testified the apartment was vacant and that she was storing personal items in it. There was no evidence that any specific person intended to reside in the apartment, within a reasonable period of time. When asked if she planned to rent the vacant apartment as a residence, the property owner replied, "Eventually, right." (R. V15) Since there was no specific person planning to move in, and no timeframe established for any specific person to occupy the apartment, the reasonable timeframe requirement was not met, and the vacant apartment was not a dwelling.

15

Defendant's reliance on People v. Sexton, 118 Ill. App. 3d 998, 999, 455 N.E. 2d 884 (4th Dist. 1983) is misplaced. In People v. Sexton, the burglary took place in the basement of a house, unlike the instant case where the burglary took place in the common area of an apartment building and a vacant apartment. Further, the owner in People v. Sexton, was actually residing in the house occasionally staying overnight and some weekends, People v. Sexton, 118 Ill. App. 3d at 999, unlike the vacant apartment in the instant, which was used only for storage.

Defendant also mistakenly relies on People v. Suane, 164 Ill. App. 3d 997, 1002, 518 N.E. 2d 458 (1st Dist. 1987), which is a case involving burglary of one floor of a two-story single family home, unlike the instant case where defendant burglarized a common area of a multi-unit building and a vacant apartment. In People v. Suane, the building owner, who was also a carpenter, occupied the first floor of the home with his wife, while he was renovating the second floor of the single-family home. People v. Suane, 164 Ill. App. 3d at 1000. In People v. Suane, the defendants removed tools from the second floor of the building, which was connected to the first floor by an internal stairway and there were no walls separating the second-floor room from the stairway. People v. Suane. 164 Ill. App. 3d at 1001-02. There was also evidence that the defendants in People v. Suane entered the inhabited portions of the building to take a power saw, unlike the instant case where there is no evidence defendant entered any area where someone resided at the time.

Defendant's reliance on People v Silva, 256 Ill. App. 3d 414, 420, 628 N.E. 2d 948 (1st Dist. 1993) is also misplaced. In People v. Silva, the victim owned a two-story apartment building, he resided in the second floor apartment, the first floor apartment was vacant, and the garden apartment in the basement was being remodeled and also vacant. People v Silva, 256 Ill. App. 3d at 415. The victim in People v Silva stored tools, stereo equipment, and personal items in the first

16

floor apartment and left in the garden apartment some power tools he was using for renovations. People v Silva, 256 Ill. App. 3d at 415. The defendant in People v. Silva removed the victim's property from both the garden apartment and the vacant first-floor apartment. People v Silva, 256 Ill. App. 3d at 415. The court in People v. Silva said that because the unit was only unoccupied to complete renovations and add decorations, the court could infer that the unit was intended to be a residence soon after the work was complete, a reasonable period of time. People v. Silva, 256 Ill. App. 3d at 421.

When a property owner is renovating, he or she is investing money and resources. The natural desire of someone investing money and resources is to recover that investment plus earnings. So it is reasonable for courts to infer an intent for someone to reside in the apartment within a reasonable period of time after the renovations are complete. It would be wholly illogical to renovate an apartment and then not attempt to recoup the investment of renovations. However, Ms. Elston, the property owner, took no such steps to have someone reside in the vacant apartment in a reasonable time. When asked at trial if she planned to rent out the vacant apartment, Ms. Elston replied: "Eventually, right". The absence of evidence to show an intent to rent out the vacant apartment in a reasonable time serves as a crucial distinction between the instant case and People v. Silva.

Defendant also contends that, since Ms. Elston stored personal items in the vacant apartment, the unit should be considered part of her residence. A storage unit, or garage, without a door directly linking to an occupied residence, is not a dwelling in Illinois. Some districts, but not the First District, have held that an attached garage can be a part of a dwelling, but in each case where a court has found that, there was a door directly to the living area from the garage. See

17

People v. Borgen, 282 Ill. App. 3d 116, 121-122, 668 N.E.2d 234 (2d Dist. 1996). The First District has never held a garage, attached or not, is a dwelling, and the Supreme Court concurs. See Thomas, 137 Ill. 2d 500, 519, 561 N.E.2d 57 (1990). See also People v. Smith, 209 Ill. App. 3d. 1091, 1095, 568 N.E.2d 417; People v. Mata, 243 Ill.App.3d 365, 368, 611 N.E. 2d 1235 (1st Dist. 1993).

The vacant apartment in this case was not a dwelling, and the conviction for burglary should be upheld since the apartment was not occupied. While the owner planned to rent it at some point in the future, there were no established plan for it to be occupied in any period of time, much less a reasonable period of time. Plus, a storage facility, especially one without direct access to a living area of an occupied residence is not a dwelling. In light of all the foregoing, this court should affirm defendant's conviction for burglary.

## II.

**THE UNITED STATES SUPREME COURT DECISION IN <u>APPRENDI V. NEW JERSEY</u> DOES NOT APPLY TO THE INSTANT CASE BECAUSE THE TRIAL COURT PROPERLY IMPOSED A MANDATORY CLASS X SENTENCE BASED ON DEFENDANT'S EXTENSIVE CRIMINAL BACKGROUND WHICH INCLUDED AT LEAST TWO PRIOR CONVICTIONS FOR CLASS 2 OR GREATER FELONIES.**
**(Response to Defendant's Argument III.)**

Defendant contends that pursuant to United States Supreme Court decision of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348 (2000), his eight-year sentence for burglary is unconstitutional and asks this Honorable Court to remand the matter for imposition of a Class X sentence. Specifically, defendant maintains that the mandatory Class X offender sentencing provision found in section 5-5-3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(8)) is unconstitutional because it requires a trial court to impose a sentence within the range for Class X offenses (6-30 years) whenever a 21-year-old or older defendant has been convicted of a Class 2 or greater offense and has been previously convicted of at least two prior Class 2 or greater offenses (provided the convictions were sequential and not simultaneous). He asserts that under <u>Apprendi</u>, such a procedure is improper because the statute does not require that the prior convictions be pled in the charging instrument or proven at trial.

In response, the People first maintain that defendant should not be permitted to raise this issue as he has never before challenged the imposition of a Class X sentence. Illinois law is clear that a defendant who wishes to challenge her sentence or any irregularities in the sentencing hearing must first file a timely post-sentencing motion in the trial court or the issue will be deemed

19

waived. See 730 ILCS 5-8-1(c) (1994); People v. Reed, 177 Ill.2d 389, 686 N.E.2d 584 (1997). Accordingly, the People maintain that defendant's challenge to his sentence is waived and should be summarily rejected.

Moreover, the People point out that even if the issue had not been waived, defendant's claims are entirely without merit as Apprendi does not apply to recidivist provisions such as section 5-5-3(c)(8). In Apprendi, the Court held that the United States Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. 120 S.Ct. at 2362-63 (emphasis added). In excepting recidivist statutes from this rule, the Apprendi majority noted that recidivism is a "'traditional if not the most traditional basis for a sentencing court's increasing an offender's sentence'" and that recidivism "'does not relate to the commission of the offense." Id. at 2361-62 (quoting Almendarez-Torres v. United States, 523 U.S. 224, 243-44, 118 S.Ct. 1219, 1230-31 (1998)). While it is true that the Apprendi majority stated that "it is arguable that Almendarez-Torres was incorrectly decided" (120 S.Ct. at 2362), the Court was clear that it was not overruling its prior decision.

Furthermore, "only [the Supreme Court] may overrule one of its precedents. Until that occurs [Almendarez-Torres] is the law." Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 103 S. Ct. 1343, 1344, 75 L. Ed. 2d 260 (1983). As the Court has recognized, "unless we wish anarchy to prevail within the federal judicial system, a precedent of this [C]ourt must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." Hutto v. Davis, 454 U.S. 370, 102 S. Ct. 703, 706, 70 L. Ed. 2d 556 (1982). Thus, since

20

Almendarez-Torres was expressly not overruled by the Supreme Court in Apprendi, this Court is obligated to apply it in this case.

Similarly, in People v. Lathon, 317 Ill. App. 3d 573, 740 N.E.2d 377 (1st Dist. 2000), this Honorable Court expressly held that section 5-5-3(c)(8) comported with the constitution. The Lathon court stated:

> "a defendant's recidivism is a narrow exception to the general rule articulated in Apprendi that the federal Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be alleged in the charging document, submitted to a jury, and proved beyond a reasonable doubt. The reasons recognized by Apprendi for applying the recidivism exception exist in this case and mitigate constitutional concerns regarding defendant's due process rights and jury trial guarantees. Here, procedural safeguards enhanced the validity of defendant's prior convictions. Moreover, defendant's prior convictions were not an essential element of the underlying offense and were not related to the commission of the underlying offense. Consequently, we hold that the mandatory Class X sentencing provision of section 5-5-3(c)(8), which provides for sentencing enhancement based on prior convictions, is constitutional and does not violate defendant's due process rights or jury trial guarantees. Under this mandatory Class X sentencing provision, a defendant's sentence is properly increased when the trial judge concludes at the sentencing hearing that evidence of the prior two convictions is accurate, reliable and satisfies the section 5-5-3(c)(8) statutory factors. When a defendant's punishment is increased based on prior convictions, the prior convictions need not be alleged in the charging document, submitted to the jury or proven beyond a reasonable doubt because the prior convictions were obtained as the result of proceedings which provided procedural safeguards, the prior convictions were not an essential element of the underlying offense and the prior convictions were unrelated to the commission of the offense."

21

Id. at 587, 740 N.E.2d at 386-87 (citations omitted). See also People v. Ramos, 318 Ill. App. 3d 181, 193, 742 N.E.2d 763, 774 (1st Dist. 2000) (holding that section 5-5-3(c)(8) is constitutional because "Apprendi clearly exempts recidivist statutes") and People v. Roberts, 318 Ill. App. 3d 719, 729, 743 N.E.2d 1025, 1033 (1st Dist. 2000) ("Because Almendarez-Torres is still good law, we reject defendant's assertion that Apprendi renders [section 5-5-3(c)(8)] unconstitutional.") Thus, any assertion that Almendarez-Torres is no longer good law or that Apprendi applies to recidivist provisions must be soundly rejected.

Moreover, in regard to defendant's claim that section 5-5-3(c)(8) is not simply a recidivist provision since it also requires a particular sequence of the convictions and applies only to those defendants who are at least 21 years old, the People point out that this Honorable Court has repeatedly rejected such an argument because those factors are "sufficiently intertwined with recidivism and distinct from the elements of the underlying offense to fall under the recidivism exception recognized in Apprendi." People v. Smith, ___ Ill. App. 3d ___, 788 N.E.2d 1204, 1209 (1st Dist. 2003). 2003 Ill. App. LEXIS 482 at *13-14 (No. 1-01-4468 April 18, 2003) (citing People v. Jones, 322 Ill. App. 3d 236, 243, 749 N.E.2d 466 (3d Dist. 2001); People v. Dunn, 326 Ill. App. 3d 281, 289, 760 N.E.2d 511 (1st Dist. 2001)).

Finally, in People v. Wagener, 196 Ill. 2d 269, 752 N.E.2d 430 (2001), wherein the court held that Apprendi is not implicated by Illinois consecutive sentencing provisions, the Illinois Supreme Court clearly stated that Apprendi must be read narrowly and should not be "extend[ed] . . . to arenas which it did not purport to address, which indeed it specifically disavowed addressing, in

order to find unconstitutional a law of this state. This is especially true where, as here, to do so would require us to overrule settled law in this state."Id. at 287.

Therefore, for all the foregoing reasons, the People respectfully request that this Honorable Court reject defendant's arguments and affirm his conviction and sentence.

23

## CONCLUSION

The People of the State of Illinois respectfully request that this Honorable Court affirm defendant's conviction and sentence for burglary.

Pursuant to People v. Nicholls, 71 Ill. 2d 166, 374 N.E.2d 194 (1998), and relevant statutory provisions, 725 ILCS 5/110-7(h) (2002); and 55 ILCS 5/4-2002.1 (2002), the People of the State of Illinois respectfully request that this Court grant the People costs and incorporate as part of its judgment and mandate a fee of $100.00 for defending this appeal. In addition, pursuant to People v. Agnew, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985), and 55 ILCS 5/4-2002.1 (2002), the People respectfully request that this Court also grant the People an additional fee of $50.00 in the event oral argument is held in this case.

Respectfully Submitted,

RICHARD A. DEVINE,
    State's Attorney,
    County of Cook,
    Room 309 - Richard J. Daley Center,
    Chicago, Illinois 60602

Attorney for Plaintiff-Appellee

RENEE GOLDFARB,
JON WALTERS,
Assistant State's Attorneys,
    Of Counsel.*

---

**\*TREVOR HAYES**, a first year law student at Northwestern University School of Law and a law clerk at the State's Attorney's Office, Criminal Appeals Division, assisted in the research and preparation of this brief.

24

No. 1-02-2905

## IN THE

## APPELLATE COURT OF ILLINOIS

## FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 7104. |
| | ) | |
| **CHARLES DANIELS,** | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

## REPLY BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

ORDER ENTERED

SEP 1 7 2003

APPELLATE COURT, FIRST DISTRICT

MICHAEL J. PELLETIER
Deputy Defender

MICHAEL JAMES MCDERMOTT
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

EXHIBIT D

No. 1-02-2905

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 7104. |
| | ) | |
| CHARLES DANIELS, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

## REPLY BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

I.    **Charles Daniels's burglary conviction must be reversed because there was insufficient evidence for the trial court to find beyond a reasonable doubt that defendant entered and burglarized the "common areas" of the apartment building.[1]**

The State argues in its brief that defendant was properly convicted of burglary, instead of

residential burglary, because defendant entered a vacant apartment in a residential apartment

building, and because he entered the "common areas" of that residential apartment building.

(State's Br., at 8-9) The State's argument lacks any factual or legal support and is meritless. For

_____

[1] The State consolidated defendant's Arguments I and II into one argument in its brief, and then divided that argument into two sub-parts. The State's Argument I-A responds to defendant's Argument I and pages 18-22 of defendant's Argument II. The State's Argument I-B raises a new argument and addresses pages 23-26 of defendant's Argument II. Defendant's Argument I of his reply brief is in response to the State's Argument I-A on pages 13-14 of the State's Brief. Defendant's Argument II of his reply brief is in response to the State's Argument I-A, pages 10-13 of the State's Brief, and the State's Argument I-B.

-1-

that reason, this Court should find that defendant was improperly charged with and convicted of simple burglary, and reverse defendant's conviction.

The State erroneously argues that the standard of review in this case is, " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.' *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. at 2788-2789 (1979); *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985)." (State's Br., at 8-9) This contention is without merit. Defendant concedes that in *most* sufficiency of evidence cases the proper standard of review is usually whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Lamborn*, 185 Ill. 2d 585, 590, 708 N.E.2d 350 (1999); *People v. Smith (Smith I)*, 185 Ill. 2d 532, 541, 708 N.E.2d 365 (1999). However, as argued in defendant's original brief, in some sufficiency cases, as here, the claim that the defendant was not proven guilty beyond a reasonable doubt does not entail any assessment of the credibility of witnesses. Therefore, the standard of review is *de novo*, for the question is a purely legal one. (Defendant's Br., at 8-9, 16-17); *People v. Smith (Smith II)*, 191 Ill. 2d 408, 411, 732 N.E.2d 513 (2000); *Lamborn*, 185 Ill. 2d at 590. However, under any standard of review, defendant's conviction must be reversed.

The State asserts that defendant was present in the "common areas" of the building and, therefore, was properly convicted of burglary. (State's Br., at 11) However, contrary to the State's argument, the evidence shows that defendant never entered the "common areas" of the building. Mrs. Elston testified that she saw defendant walk up the sidewalk leading to the front door, and that defendant then walked toward the building's outer door leading to the vestibule or

-2-

foyer, which is when Mrs. Elston admitted she lost sight of him. (R.118-119)  At that point, Mrs.

Elston heard someone "fooling" with the mailboxes and then someone ring the buzzer to the

vacant apartment. (R.118-119, 127)

Mrs. Elston remained at her living room window looking out into the front yard after she

lost sight of defendant.  About three minutes later he walked away from the area where the

buzzer and mailboxes are, which is when Mrs. Elston saw him leave. (R.127-128)  At that point,

defendant did not have any of Mrs. Elston's belongings. (R.128)  Mrs. Elston was very clear in

her testimony that while defendant was near the mailboxes and buzzers, she never heard him

come up the stairs, past the buzzers, to the area outside her door. (R.127-128)  After seeing

defendant leave, Mrs. Elston called the police. (R.127)  Mrs. Elston told police that she had seen

someone come around and mess with the mailboxes, but that he was gone before the police

arrived. (R.119)  The police looked around the yard, discovered that the front door of the vacant

apartment was locked, but could not find the suspect. (R.128, 137)

After the police left, Mrs. Elston went to check her mail and heard somebody in the

vacant apartment across from hers. (R.119, 128)  She phoned the police again. (R.128)  Before

the police arrived, she saw the same man leave the vicinity of her building with plastic bags in

his hands. (R.120)  Mrs. Elston never heard anybody in the area immediately outside her door.  In

fact, Mrs. Elston believed that she left a window open in the vacant apartment, and that is how

defendant gained access. (R.136-137)  Mrs. Elston added that upon the later inspection of the

doors of the vacant apartment, after police arrived the second time, she found that they were all

still locked. (R.136)

While the State argues that from Mrs. Elston's testimony defendant entered the "common

areas" of the building, and thereby committed simple burglary, this is clearly not the case. The foregoing testimony shows that defendant rang the front buzzer of the vacant apartment, left the vestibule area and then entered the apartment through the window that Mrs. Elston left open. Since defendant was never past the vestibule area of Mrs. Elston's apartment building, he circumvented the "common areas" of the building and, even under the State's mistaken theory of criminal liability (See Argument II), defendant could not have committed simple burglary based on the testimony in this case.

The State also asserts that Mrs. Elston's testimony was not reliable and, "merely shows the thought process of a property owner confused about how someone broke into her apartment." (State's Br., at 14) The State then concludes that defendant's reliance on her testimony was erroneous. (State's Br., at 14) However, it should be noted that Mrs. Elston was the State's key witness and the State relies mainly upon her testimony to support a conviction. The State should not be permitted to decide for this Court which portions of her testimony were reliable and which should be disregarded.

Defendant's conviction must be reversed because there was insufficient evidence for the trial court to find beyond a reasonable doubt that defendant entered and burglarized the "common areas" of Mrs. Elston's apartment building. The trial judge erred in finding that defendant entered Ms. Elston's apartment building through a "common area" when the sole eyewitness, Mrs. Elston, testified that she never heard anyone come up the stairs from the vestibule, the vacant apartment door was locked before and after defendant allegedly entered the "common areas" to the apartment door, and that she believed defendant came in through an open window. There was no evidence adduced at trial that supported the finding that Mr. Daniels ever entered

-4-

the so-called "common areas" of the apartment building. For all of the above reasons, defendant prays that this Honorable Court reverse his conviction for burglary.

**II.     Charles Daniels's burglary conviction must be reversed because there was insufficient evidence for the trial court to find defendant guilty of simple burglary where the unauthorized entry was to a dwelling place, as burglary and residential burglary were mutually exclusive offenses at the time of this offense.[2]**

The State argues in its brief that defendant was properly convicted of burglary because both the vacant apartment and the common areas of the building were not "dwellings" for purposes of the residential burglary statute. (State's Br., at 15-18)  The State simply fails to comprehend that the residential apartment building in this case was just that, a *residence*, rendering the vacant apartment a dwelling for purposes of the residential burglary statute.

Just as in defendant's Argument I, the State mistakenly believes the standard of review in this case to be, " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.' *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. at 2788-2789 (1979); *People v. Collins,* 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985)." (State's Br., at 8-9)  Again, this assertion is without merit.  As argued in defendant's original brief, in some sufficiency cases, as here, the claim that the defendant was not proven guilty beyond a reasonable doubt does not entail any assessment of the credibility of witnesses.  Therefore, the standard of review is *de novo*, for the question is a purely legal one. (Defendant's Br., at 8-9, 16-17); *People v. Smith (Smith II),* 191 Ill. 2d 408, 411, 732 N.E.2d 513 (2000); *Lamborn,* 185 Ill. 2d 585, 590, 708 N.E.2d 350 (1999).

---

[2] The State's response to defendant's Argument II is actually contained in its Argument I-A.  Within its Argument I-B, the State raises an argument rejected by the trial judge and a significant body of law, that the entry into the actual vacant apartment could be the basis for a simple burglary conviction.  Defendant still believes that this argument is without merit, but because the State raised it, defendant will reply in II-A of this brief.  In Argument II-B of this brief, defendant will reply to the State's argument that defendant's entry into the "common areas" could sustain a conviction for simple burglary.

The State asserts that, in order "To determine if a building is a dwelling depends on how the structure is actually used instead of the structure's design." (State's Br., at 15); citing *People v. Bales*, 108 Ill. 2d 182, 190, 483 N.E.2d 517 (1985). Even by the State's own authority, a building is a dwelling based on how the *structure* is used, not how individual pieces or units are used. Of course, the *structure* at 8234 S. Eberhart, in Chicago was used as an apartment building, a group of dwellings under one roof, inside one physical structure.

### A.     Entry into the vacant apartment.

The State first argues that defendant's entry into the vacant apartment constituted burglary, and not residential burglary, because the apartment was not being used as a dwelling. (State's Br., at 15-16) The State's argument is contrary to the trial judge's ruling below and all established case law. See *People v. Silva*, 256 Ill. App. 3d 414, 420, 628 N.E.2d 948 (1st Dist. 1993).

The State disputes defendant's reliance on *People v. Silva*, 256 Ill. App. 3d 414, 420, 628 N.E.2d 948 (1st Dist. 1993). (State's Br., at 16) In *Silva*, the defendant removed the victim's property from the garden apartment and first floor apartment of a two-story (three including the garden) building.  The State maintains that *Silva* is distinguishable both because the garden apartment of the building was being remodeled and was vacant at the time of the burglary, and because the first floor apartment was also vacant. (State's Br., at 16-17) In support of its argument that the garden apartment is distinguishable the State claims that because it was being remodeled, it was intended to be occupied in a reasonable amount of time, and was therefore a "dwelling" within the residential burglary statute. (State's Br., at 17) Not surprisingly, the State offers no support for its argument that the first floor apartment in *Silva*, which led to that

defendant's conviction of residential burglary, is distinguishable from the vacant first floor apartment in Mrs. Elston's apartment building. The State's assertions that the garden apartment and first floor apartments in *Silva* are distinguishable from the apartment in the instant case are clearly baseless.

The apartment building in *Silva* was a "two-flat apartment building" with two levels above ground and the garden apartment below ground. *People v. Silva*, 256 Ill. App. 3d at 415. Mrs. Elston's apartment building was a three-flat with six units, one story taller than the building in *Silva* and twice the number of units. (R.116) The owner of the building in *Silva* was storing his personal things in the vacant apartments, similar to Mrs. Elston keeping her personal things in the vacant apartment across the hall from her apartment. *Silva*, 256 Ill. App. 3d at 415; (R.117) Moreover, the building in *Silva* had a common stairwell from the first floor apartment to the second floor apartment, which, at least according to the State, are the very "common areas" the State argues this Court should designate in this case. *Silva*, 256 Ill. App. 3d at 415. Yet, there is no mention of these "common areas" in the *Silva* opinion, and similarly, there was no finding by this Court that the State could have charged defendant with simple burglary for entering the stairway between the apartments or for residential burglary for actual entry into the apartments— which is what the State argues in the case at bar.

The *Silva* Court went on to find that the vacant first floor apartment, as well as the garden apartment that was being rehabed, were essentially closets for the owner of the building. *Silva*, 256 Ill. App. 3d at 416. The vacant apartment in Mrs. Elston's building was being used in a similar fashion. Whether this Court finds Mrs. Elston's vacant apartment to be closer to the rehabed garden apartment or the simply vacant first floor apartment in *Silva* is unimportant,

-8-

regardless, they are both "dwellings" within the meaning of the residential burglary statute and support convictions for residential burglary not simple burglary.

The State also claims that because the apartment in Mrs. Elston's building was unoccupied, it could not be a "dwelling." (State's Br., at 18) In support of this contention, the State argues that Mrs. Elston had "no established plan" for renting or filling the vacancy in that apartment. (State's Br., at 18) Not surprisingly, the State cites no authority for this proposition. Mrs. Elston needed no "plan" to rent the property. Mrs. Elston testified that she intended to rent the apartment out again in the near future and that it was perfectly habitable at the time of the burglary. (R.126) It was Mrs. Elston's subjective intent to rent the property that is dispositive on this issue. See *People v. Torres*, 327 Ill. App. 3d 1106, 1111, 764 N.E.2d 1206 (5th Dist. 2002)(in determining whether a structure is a "dwelling" for purposes of the residential burglary statute, it is sufficient that the owner or occupier "genuinely possessed the subjective intent to reside on the premises in question within a reasonable period of time . . . The statute does not require the intent to be realistic or reasonable. 'Reasonable' as used in the statute, applies only to the period of time in which the owner-occupier intends to go and reside, not the intent itself."); *Silva*, 256 Ill. App. 3d at 419 (vacant rental property is still "dwelling" in spite of seven month period between tenants); *People v. Bonner*, 221 Ill. App. 3d 887, 889-890, 583 N.E.2d 56 (1st Dist. 1991) (home still a "dwelling" in spite of seven-year interval between when owners moved out and time of burglary).

The trial judge who found defendant guilty of simple burglary implicitly rejected this notion that the State now argues on appeal. (R.178-179) The trial court found that while there were two unauthorized entries, one into the "common areas" of the building and the other into

the vacant apartment, it was the former that supported the conviction for simple burglary. (R.178-179) In denying the motion for a new trial, the court specifically stated,

> unless the evidence would be that someone entered directly into a particular apartment through a window or a door leading directly from that apartment, from outside into the apartment as long as there is a common hallway, stairway, or whatever, that entry into the building into that common area would sustain the charge of burglary.

(R.179)

It is clear that there is no merit to the State's argument that defendant's unauthorized entry into the vacant apartment in this case could sustain a conviction for simple burglary. The prosecutor argued the "common areas" entry warranted the conviction, and the trial court never made any findings consistent with the argument the State now makes. Rather, the trial court found defendant guilty of simple burglary based on his unauthorized entry into the "common areas" of the residential apartment building, not the entry to the vacant apartment. If the State wanted to prosecute defendant for the unauthorized entry to the vacant apartment building, defendant should have been charged with residential burglary, not simple burglary. For all of the above reasons, defendant prays that this Honorable Court reverse his conviction.

**B.    Entry into the "common areas."**

Defendant was convicted of burglary based on his entry into the "common areas" of a residential apartment building. (R.178-179) The State erroneously argues that entry into the "common areas" constitutes burglary. However, under the relevant statutes in effect at the time the offense occurred, defendant should have been convicted of residential burglary. As such, this court should reverse his conviction for simple burglary.

The State cites to *People v. Thomas*, 137 Ill. 2d 500, 519, 561 N.E.2d 57 (1990), in

-10-

support of this argument. (State's Br., at 10-11) In *Thomas*, the Illinois Supreme Court decided that a garage attached to a multi-unit dwelling is not itself a dwelling within the meaning of the residential burglary statute. *Thomas*, 137 Ill. 2d at 519-520. The State's reliance is misplaced because the Court's decision in *Thomas* is not only factually distinguishable from the instant case, but the *Thomas* Court never intended to create a bright-line rule regarding garages as "dwellings" with respect to the residential burglary statute. First, the Supreme Court in *Thomas* made it clear that it was limiting its holding, stating that "an attached garage is *not necessarily* a 'dwelling' within the meaning of the residential burglary statute." *Thomas*, 137 Ill. 2d at 519 (emphasis supplied). The Court went on to further qualify its holding, stating "A garage, *at least in this instance*, whether attached to the various living units or not, cannot be deemed a residence or living quarters." *Thomas*, 137 Ill. 2d at 519 (emphasis supplied). It is clear from these statements, that the Court was not trying to make an absolute rule that all garages attached to a dwelling place are automatically non-dwellings for purposes of the residential burglary statute.

Moreover, the *Thomas* Court noted that its holding was seemingly contrary to *People v. Dawson*, 116 Ill. App. 3d 672, 452 N.E.2d 385 (4th Dist. 1983), a case which involved similar facts but reached a different conclusion, specifically that the entry into an attached garage is residential burglary and not simple burglary. *Thomas*, 137 Ill. 2d 520. In *Dawson*, the Fourth District decided that where a defendant enters a garage to steal a car and some tools, then enters the attached house to obtain the keys to the car, returns to the garage and removes the car, a residential burglary was committed for the entry into the house, holding, "entry into the garage and entry into the house constituted one entry." *Dawson*, 116 Ill. App. 3d at 675. Later, the *Thomas* Court specifically declined to overrule *Dawson*, stating that "Our decision today is not,

-11-

therefore, necessarily inconsistent with the reasoning in *Dawson.*" *Thomas,* 137 Ill. 2d at 520.

In addition to the fact that the *Thomas* Court was not announcing an absolute rule for attached garages being part of a "dwelling" for purposes of the residential burglary statute, *Thomas* is an attached garage case. The instant case does not deal with an attached garage. It deals with a vacant apartment and the hallway connecting that apartment to other apartments in the same residential building. It was defendant's alleged entry into the hallway or the "common areas" of the residential apartment building that led to his conviction for simple burglary.

The State also cites to *People v. Maskell,* 304 Ill. App. 3d 77, 710 N.E.2d 449 (2nd Dist. 1999), in support of its argument. (State's Br., at 10-14) First of all, *Maskell* does not apply to the instant case because defendant was never in the "common areas" of the building. (*Supra,* at 1-4; Defendant's Br., at 10-15) Secondly, as argued in defendant's original brief, *Maskell* was wrongly decided, as other case law has established that a residential building cannot be divided between "common areas" and "dwellings." (Defendant's Br., at 22); See *People v. Sexton,* 118 Ill. App. 3d 998, 999, 455 N.E.2d 884 (4th Dist. 1983); *People v. Suane,* 164 Ill. App. 3d 997, 1000-1001, 518 N.E.2d 458 (1st Dist. 1987); *People v. Silva,* 256 Ill. App. 3d at 415.

The State is unable to distinguish relevant case law cited in defendant's brief and argument. In an attempt to distinguish *People v. Sexton,* 118 Ill. App. 3d at 999, the State misrepresents the facts of that case to this Court. The State claims that the owner of the house in *Sexton,* "was actually residing in the house occasionally staying overnight and some weekends." (State's Br., at 16). The Court in *Sexton* clearly stated that the owner of that house, "*did not actually reside* in the house [that was burglarized] on Oakland Avenue," the Court gave the owner's actual address on Jayne Street, and added that the owner stopped by the Oakland house

-12-

to check the house, get the mail, and would spend an occasional night there. *People v. Sexton*,
118 Ill. App. 3d at 999 (emphasis supplied).

The State claims that *Sexton* does not apply to the case at bar because there, "the burglary
took place in the basement of a house, unlike the instant case where the burglary took place in the
common area of an apartment building and a vacant apartment." (State's Br., at 16)  First of all,
as argued in Argument I of defendant's original brief, there was no burglary to the "common
areas" of the building in this case. (Defendant's Br., at 10-15)  Secondly, as indicated above, the
owner of the home in *Sexton* was not living in the house at the time of the burglary. *Sexton*, 118
Ill. App. 3d at 999.  So *Sexton* was a case that involved the burglary of a house, obviously a
structure built for residential purposes, which was not occupied at the time of the burglary.
*Sexton*, 118 Ill. App. 3d at 999.  The intended use of the structure in *Sexton*, as well as the
vacancy of the home at the time of the burglary, are factually similar to the vacant apartment in
Mrs. Elston's residential apartment building that was burglarized in the instant case.  Both were
intended to be used as residences and both were unoccupied at the time of the burglary.
However, in *Sexton*, the Appellate Court affirmed a conviction for residential burglary, and
defendant Daniels was convicted of simple burglary.

Then the State disputes defendant's reliance on *People v. Suane*, 164 Ill. App. 3d at 1000-
1001, "which is a case involving burglary of one floor of a two-story single family home, unlike
the instant case where defendant burglarized a common area of a multi-unit building and a vacant
apartment." (State's Br., at 16)  Again, as argued in Argument I of defendant's original brief,
defendant never burglarized the "common areas" of the building in question. (Defendant's Br., at
10-15)  Moreover, at no point in the *Suane* opinion is the burglarized residence characterized as

-13-

"one floor of a two-story single family home." The structure is characterized as a "two-story building" several times throughout the opinion. *People v. Suane*, 164 Ill. App. 3d 997, 1000-1001, 518 N.E.2d 458 (1st Dist. 1987). It is also clear from the opinion that one could gain access to the second story apartment by coming from the first floor or by an outside porch and door at the rear of the unit. *Suane*, 164 Ill. App. 3d at 1000, 1002. Regardless of how defendant or the State would classify the second story of the building in *Suane*, the Court there seemed to intentionally refuse to classify the second story apartment as anything other than part of the residence. *Suane*, 164 Ill. App. 3d at 1002. The Court instead stated,

> Illinois courts have held that the residential burglary statute applies to burglaries of structures intended for use as residences, regardless of whether the structure was being actively used as a residence at the time the burglary was being committed . . . Accordingly, the mere fact that the [victims] were not actually or physically occupying the second floor of their home does not mean that that portion of the building was not a part of their residence.

*Suane*, 164 Ill. App. 3d at 1002. Because this Court found the defendant in *Suane* guilty of residential burglary for entry into an unoccupied portion of a residential building, this Court must reverse defendant's conviction for simple burglary based on entry into an unoccupied portion of Mrs. Elston's building.

Defendant's burglary conviction must be reversed because the unauthorized entry was to a residential apartment building. There is no legal basis to support the State's argument that the apartment building in this case should be cut up into pieces for purposes of the residential burglary statute. The "common areas" of a residential apartment building are still parts of that residence, and ergo are part of that dwelling. Defendant should have been charged with residential burglary, not simple burglary. For all of the above reasons, defendant prays that this

-14-

Honorable Court reverse his conviction.

III.    The mandatory Class X sentencing provision of 730 ILCS 5/5-5-3(c)(8) violates
       the right of a defendant to due process and trial by jury because it subjects the
       defendant to increased punishment without notice or a jury finding upon proof
       beyond a reasonable doubt of the facts qualifying defendant for sentencing as a
       Class X offender.

       Defendant relies on his original brief as to this issue.

## CONCLUSION

For the foregoing reasons, Charles Daniels, Defendant-Appellant, respectfully requests
that this Court reverse his conviction for burglary.



Respectfully submitted,




MICHAEL J. PELLETIER
Deputy Defender


MICHAEL JAMES MCDERMOTT
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

NO. _____

IN THE SUPREME COURT OF THE STATE OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | PETITION FOR LEAVE TO APPEAL FROM THE |
| Respondent. ) | APPELLATE COURT OF ILLINOIS, |
| ) | FIRST DISTRICT, |
| vs ) | NO. 1-02-2905 |
| ) | THERE HEARD ON APPEAL FROM |
| CHARLES DANIELS ) | THE CIRCUIT COURT OF COOK |
| ) | COUNTY, ILLINOIS. |
| Petitioner. ) | NO. 00CR 7104 |
| ) | HONORABLE |
| ) | THOMAS M. DAVY |
| ) | JUDGE PRESIDING. |

### PETITION FOR LEAVE TO APPEAL

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF THE STATE OF ILLINOIS;

MAY it Please the COURT:

I

### PRAYER FOR LEAVE TO APPEAL

Your Petitioner, Charles Daniels, Pro se, respectfully petitions this Honorable Court for Leave to appeal pursuant to Supreme Court Rule 315, from the judgement of the Appellate Court of Illinois, First District, which affirmed the judgment of my conviction entered by the Circuit Court of Cook County, Illinois upon the bench trial finding of guilty on one count of Burglary.

EXHIBIT E

II

## OPINION AND PROCEEDINGS BELOW

On July 30,2002, Petitioner Charles Daniels was found
guilty and sentenced to Eight years imprisonment for one count
of Burglary.  He appealed this conviction to the Illinois Appellate
Court First District on September 9,2002.  On December 22, 2003,
the Court delivered its opinion in said appeal, affirming the
judgment of conviction and sentence.  A Petition for Re-Hearing
was filed on January 12, 2004, and subsequently denied on the
27th of January 2004.  The Appellate Court clerk somehow has
delayed   Order from being mailed from their offices until the
11th of February 2004.  Petitioner has sought leave to appeal
through Notice filed on the 17th of February 2004.  This
petition for leave to the Illinois Supreme Court follows.
Annexed are documents of support regarding the lack of culpable
delay or negligence being attributable to the petitioner, AS
caused through the inordinate withholding of ORDER by the Clerk.

III.

## POINTS RELIEF UPON FOR REVERSAL

1.  WHETHER A VARIANCE AT TRIAL HAS VITIATED THIS CONVICTION
    WHERE THE FACTS IN QUESTION WERE ESSENTIAL ELEMENTS OF
    THE CHARGE.

2.  WHETHER THE TRIAL AND APPELLATE OPINION VIOLATE PETITIONER'S
    RIGHT OF DUE PROCESS OF LAW THROUGH THE ACCEPTANCE OF A
    DIFFERENT DEGREE OR PROOF OTHER THAN THAT WHICH WAS REQUIRED
    AT THE TIME THIS OFFENSE WAS COMMITTED.

3.  WHETHER THE APPELLATE COURT COMMITTED REVERSIBLE ERROR IN
    ITS RETROACTIVE APPLICATION OF PUBLIC ACT 91-928 RESULTING
    IN AN UNREASONABLE APPLICATION OF LAW WHERE PETITIONER'S
    CONDUCT FELL WITHIN PURVIEW OF P.A. 91-360, MANDATING
    APPLICATION TO SEC. 19-1, THAT BURGLARY SHALL NOT INCLUDE
    THE OFFENSE OF RESIDENTIAL BURGLARY AS DEFINED IN SEC. 19-3
    HEREOF, IN VIOLATION OF THE PETITIONER'S RIGHT TO DUE PROCESS
    OF LAW UNDER FOURTEENTH AMENDMENT, AND ARTICLE I, SEC.2 & 6,
    OF THE ILLINOIS CONSTITUTION.

3(A)WHETHER THE APPELLATE COURT'S RETROACTIVE APPLICATION OF
    P.A. # 91-928 RESULTED IN AN ABUSE OF DISCRETION AND AN
    UNREASONABLE APPLICATION OF LAW, IN LIGHT OF THE FACTS
    CONTRARY TO PEOPLE V. STOTHOFF, 208 ILL.APP.3D 500(1990),
    IN VIOLATION OF "SEPARATION OF POWERS DOCTRINE", THEREBY
    CIRCUMVENTING PETITIONER'S RIGHT TO DUE PROCESS AND EQUAL
    PROTECTION OF LAW, RESULTING IN A SEVERE PREJUDICE

IV.

## STATEMENT OF FACTS

Defendant Charles Daniels was charged by information on March 10, 2000, with one count of burglary, in violation of 720 ILCS 5/19-1(a) (West 2000). (C.24-26) A bench trial before the Honorable Judge Thomas Davy commenced on June 5, 2002 and was continued to July 16, 2002. On those dates, the following testimony was adduced.

On February 12, 2000, the complainant, Nora Elston, was a 76 year old woman who lived in one of the two first floor apartments at 8232 S. Eberhart Street in Chicago. (R.115-116). She owned the building, which was a three story six-flat, and had been living there for about 15 years. (R.116) At approximately 3:40 p.m., she was at home alone. (R.117) The apartment across the hall from hers was vacant because the tenant had moved out. (R.117) Elston had been using the apartment to store some of her property. (R.117) She kept both the back and front doors locked. (R.117, 135-136) That vacant apartment was not being rehabbed, and was completely habitable. (R.125-126) Elston had planned to rent the apartment again in its present condition. (R.126)

From the apartment where she lived, Elston saw a man walk up to the front of the building and ring the bell for the vacant apartment. (R.118-119) Moments later she thought she heard a rattling at the mailbox. (R.118-119) Elston immediately called the police because she believed that individual to be "fool[ing]" with the mailbox. (R.118-119) Elston believed that man was at the front door of her building for about three minutes. (R.128) After about 10 or 15 minutes, the Chicago Police Officer William Meister and his partner arrived. (R.128, 156-157) They checked the back yard and looked around. (R.137, 157) At that time they also checked the door to the vacant apartment, found it locked and left because the man was gone and they could

1

not find anything. (R.118-119, 137) After they had gone, Elston thought she heard a plastic bag

being opened in the apartment across the hall, so she phoned the police again. (R.119, 128, 157)

While waiting for the police the second time, Elston saw a man proceed down the

walkway of her building with a plastic bag filled with some of her belongings from the vacant

apartment. (R.120, 129) She watched him walk away and decided to follow him so she could tell

police where he fled to when they arrived. (R.121-122) Elston followed the man westbound

down an alley just north of 83rd Street until he turned northbound in another alley. (R.130-131)

She stopped following him because at one point, he was no longer carrying the plastic bag with

her belongings. (R.130-131) She went back to her house to wait for police who arrived this time

in about seven minutes. (R.129) The police put her in their squad car and drove around the alley

where Elston had followed the man. (R.123, 132-133, 157-158) After a short time, the police

and Elston located the suspect near 8240 S. Burnom. (R.124, 157-158)

When the police approached the man, he did not have any plastic bags on his person.

(R.133-134) Elston testified that the plastic bags were 2 1/2 by 3 1/2 feet, and could not be

secreted on one's person. (R.134-135) After the police spoke with the man, he briefly walked

over to 510 W. 83rd Street, where police found two large plastic bags. (R.133-134, 159-160)

Meister showed Elston the bags and she said that the items in the bags, some clothing, a clock

radio, a discman, and some compact discs, were hers. (R.160-161) Meister gave Elston some of

her clothing and belongings back that day. (R.163-164)

When Elston returned to her building she made an inspection of the vacant apartment.

(R.136) The doors were still locked. (R.136) Elston testified that she believed that all the

windows had been locked, but admitted, "[o]ne of them had to be open for him come in." (R.136)

2

Additionally, it is clear from trial testimony(R.136-137) that the complaining witness believed she left a window open in the vacant apartment and that is how the defendant gained entry to the building.(R.136-137). So, in fact, the defendant did gain entry through a window to the vacant apartment, thereby circumventing any " common areas," which by the lower court's ruling, supported a conviction for simple burglary. The record thus indisputably shows that entry occurred through the window. There was no testimony about the front door of the vacant apartment being forced open in any way, indeed when police arrived, the door to the vacant apartment was still locked.( R.136-136)

Chicago Police Detective James Carlassare, assigned to Area 2, testifed that on February 12, 2002, he interviewed defendant. He read defendant his rights per Miranda.( R.152-153) Defendant then told Carlassare that he knew he was in trouble and that he shouldn't have gone into the apartment. (R.154) Defendant added that he was receiving help for his problem.(R.154) Carlassare made a report about the interview, but did not submit it until July 10,2000 almost 150 days later.(R.154-155)

The State then rested its case-in-chief and the defense motion for a directed finding was denied.)R.164-166). The defense then rested.(R.166) The State waived its opening argument and the defense waived all closing arguments.(R.166)  The trial court then announced its ruling, finding defendant guilty of burglary, and entered a verdict on the finding.(R.166-167)

3

At the hearing on the motion for new trial, defense counsel
Dennis H. Sherman argued that the defendant should have been
convicted of residential burglary, not burglary, and reminded the
court that the two were mutually exclusive charges.( R.170-172)
The State responded by arguing that the common areas of the
building at issue here were not a " **dwelling**," but merely a
building for purposes of the simple b urglary statute.( R.172-173)
Furthermore, the apartment was vacant, meaning no one intended
to live in the apartment within a reasonable amount of time(R.173)
The State also argued that the statute had **already been corrected**
**so that the offenses are no longer mutually exclusive. The defense**
again argued that the apartment building was a residence under the
statute.(R.174)

The court found that defendant made two separate unauthorized
entries, one into the apartment building and the other into the
vacant apartment. ( R. 177-179)  The trial court stated, "[H]ad the
defendant been charged with the entry into a specific apartment
[**Childress** and the residential burglary statute] would still apply
since there are numerous cases that say a building is a dwelling
if going to intent to be used as a dwelling regardless of who
would be living there."(R.178-179) The trial court judge then added:

> [U]nless the evidence would be that someone entered
> directly into a particular apartment through a window
> or a door leading directly from that apartment, from
> outside into the apartment that as long as there is a
> common area hallway, stairway, or whatever, that entry
> into that building into that common area would sustain
> charge of burglary.(R.179)

Finding that because the defendant entered the building on his way into the apartment, the court denied defendant's motion for a new trial and sustained the charged of burglary (R.177-17 )

The court sentenced defendant to a Class X sentence of eight years on the sole count of burglary based on his prior convictions.( 182-183) Defendant filed a motion to reconsider sentence which was denied.( R.195-196)  Defendant direct appeal was affirmed by the Appellate First District on December 22,2003. A petition for Re-Hearing was filed on January 12, 2004 and denied on January 27,2004.  Somehow, copy of the Re-hearing ORDER was delayed within the Appellate Court office's. Petitioner received copy of ORDER three days after it left Chicago Clerk's office on February 11, 2004 and has immediately sought leave to appeal through proof of service on February 17,2004.  This petition to the Illinois Supreme Court follows.

ISSUE # 1

The Appellate Opinion allows the State to secure this conviction

through Variance, violative of Due process of law, Statutory Intent,

and this Supreme Court's Stare Decisis controlling the matter

under People v. Childress., 158 Ill.2d 275, 302 (1994)

The Appellate Opinion allows the State to retain a conviction

through a " variance " between the facts alleged in the information

and the crime proved, where the facts in question were essential

elements of the defense charge.

Petitioner-Charles Daniels, was charged by information on

March 10,2000, with one count of Burglary, in violation of

720 ILCS 5-19-1(a)(West 2000). The charge against the defendant

specifically alleged that he" without authority knowingly entered

into the "common areas" of the building located at 8232 S.Eberhart

Chicago,w/intent to commit a theft.(C.24-26)

At the time this offense was committed, on February 12, 2000

the offense of burglary was defined as follows:

(a) A person commits burglary when without authority he knowingly
    enters or without authority remains in a building, housetrailer,
    watercraft, aircraft, motor vehicle as defined in the Illinois
    Vehicle Code, railroad car, or any part thereof, with intent
    to commit therein a felony or theft.  This offense shall not
    include the offenses set out in Section 4-102 of the Illinois
    Vehicle Code, NOR THE OFFENSE OF RESIDENTIAL BURGLARY AS
    DEFINED IN Sec. 19-3 hereof.          [emphasis supplied]

720 ILCS 5/19-1 (A) (west 2000)

Residential Burglary statute provided:

(a) A person commits residential burglary who knowingly & without
    authority enters the dwelling place of another with the intent
    to commit therein a felony or theft. 720ILCS 5/19-3(West 2000)

6

For purposes of the residential burglary statute, a dwelling was defined as follows:

(b)   For the purposes of Section 19-3 of this Code, "dwelling" means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside.

720 ILCS 5/2-6(b) West 2000

## Contention

Petitioner Charles Daniels, maintains and asserts **Plain Error** has denied him a fair trial and has vitiated his conviction on the charge of burglary based on the matters outside of the trial record to support testimonial evidence for the charge. Specifically that " Essential allegations of a indictment must be proved without variance and cannot be inferred."

People v. Mosby, 185 N.E. 2d 152, 25 Ill. 2d 400 ( 1962)

People v. Jamison, 235 N.E. 2d 849, 92 Ill. App. 2d 28

People v. Johnson, 339 N.E. 325, 34 Ill App. 3d 38, reversed.

People v. Clark,  389 N.E. 2d 911, 71 Ill. App. 3d 381

( where essential allegation of an indictment must be proved without variance and an essential element of a crime cannot be inferred but must be established with positive proof.")

People v. Givens, '90 Ill. Dec. 504,482 N.E. 2d 211,135 IllApp 3d 810

In order to vitiate a conviction based on a faulty indictment there must be variance between the allegations in the charging instrument and proof at trial which is Material.

People v. Godina, 165 Ill.Dec. 344, 584 N.E. 2d 523

People v. Durdin, 244 Ill.Dec. 524,726 N.E.2d 120,312 Ill.App3d 4

**People v Daniel** , 219 Ill.Dec 183,670 N.E 2d 861,283 Ill.App 3 1003

**People v. Santiago**, 216 Ill.Dec 320,665 N.E.2d 381 ,279 Ill.App 749

**People v. Weber**, 201 Ill.Dec.470,636 N.E.2d 902,264 Ill.App.3d 457

### TESTIMONIAL EVIDENCE

A careful review of the trial testimony adduced from Nora Elston on June 5,2002 (V-6), demonstrates the petitioner's contention, that there is no direct testimony elicited that he Entered the building without authority or permission as contained in the indictment charge.

Q:  Was the **apartment** across the hall from you at 8234 S.Eberhart occupied at that time?

A:  No sir.

Q:  What was the condition of that apartment across the hall?

A:  The condition was that no one was there because the occupant had moved out, I had moved some of my things across the hall because I was going to do some work in my building, I was trying to get them out of the way temporarily.

Q:  Did anybody **have authority to be inside your vacant apartment** at that time and place?

A:  No sir.

Q:  After you heard somebody inside your vacant apartment that afternoon what did you do next?

A:  I went back and called the police again and I told them I thought he was gone but now he's in the apartment.

Page 13, Lines 21-24:

Q:  And you never gave that person permission to enter that vacant apartment of yours?

A:  No sir.

8

POINT # 1 ARGUMENT FOR REVERSAL

THE foregoing are the totality of proof on the material Element-authority and permission to enter the building, as alleged in the indictment.  There is however, no **direct** proof regarding the building so as to have comported with Illinois Statutory law as constructed at the time of this offense, where the offenses of burglary and residential burglary were deemed " mutually exclusive " offenses, under this **Illinois Supreme** Court's opinion <u>People v. Childress,</u> 158 Ill. 2d 275, but rather testimony only about a empty apartment.

Since the record cannot change, be taken from or added thereunto, then the Record at Trial stands that there is no direct testimonial proof pertaining to the " mutually exclusive" and/or " Distinct " offense of Burglary.  Ergo, it follows that where as here the record is unsatisfactory to support and is also totally devoid of testimonial proof on the **Material and Essential Element** such a conviction cannot stand and should be reversed.

As this Illinois Supreme Court has long ago stated in <u>People v. Mosby,</u> 185 N.E. 2d 152:

> " An essential element of proof to sustain a conviction
> cannot be Inferred but must be established. The fact
> that this proof might have been elicited by a **SINGLE**
> **QUESTION** is beside the point since it was not done.
> Because of the failure of the People to prove an
> Essential allegation the Judgment is reversed ."

9

ISSUE # 2

At the time of trial of petitioner Charles Daniels, the trial
court failed to recognize the distinguishing Linchpin that created
the reasonable doubt on the Essential element of this crime,
in contrast to <u>People v. Maskell,</u> 304 Ill/App. 3d 77( 1999),
which the trial judge specifically referenced.   In fact, neither
during any time prior to Trial attorneyDennis Hugh Sherman's [R164-66]
request for a <u>Directed Verdict</u>, nor at any time during the
entire subsequent proceedings did the State elicit testimony
or make a(any) inquiry as a matter reserved for the record, to
establish proof that the petitioner made a Unauthorized entry
into the building as was done in <u>Maskell</u>, 237 Ill.Dec. 821

        Rather, in <u>Maskell</u>, a State witness testified that nobody
gave permission or authority to the defendant to have entered
the apartment and taken a television set.   **FURTHER, a Mr.Thomas
Preston**, testified that he never gave permission or authority
to the defendant to have entered the six-flat building.
[237 Ill.Dec.at 821

        Herein, the petitioner's asserts lies the critical linchpin
without which the State's case loses its wheels and violates his
rights of due process of law. As demonstrated in (Argument I) the
State produced no witness to establish it burden or proof towards
permission or authority to have entered the building as is
necessary as a matter of State and Federal law towards essential
material elements of a criminal offense. The Rules of Evidence
prohibits a wide range of information from being considered by
the Trial court, and where as here a different degree or proof
other than which was required at the time of this offense was

was committed are substituted and allowed, such evidence

lacks the <u>Integrity necessary to sustain a conviction</u>.

Unlike in **Maskell**, where the Trial court made the State to
comply with required Due process considerations, towards the
burden's of production & persuasion upon each of these two
Distinct offenses, with direct testimony that nobody gave the
defendant permission to enter the apartment and take a television
and further testimonial proof from Mr. Thomas Preston that
nobody gave permission to the defendant to have entered the six-flat
building.

### CONTENTION

The State has shifted its burden and responsibility to
prove that the defendant" knowingly without authority entered
the building at 8 234 S. Eberhart with intent to commit a theft."
(C-24-26)  However, the evidence at trial showed that the defendant
committed a residential burglary because he entered the apartment
directly through a window (R.136)  Mrs. Elston testified that after
defendant was apprehended, the vacant apartment's front door was
still locked, and that she believed that she left one of the
windows open.( R. 118-119, 136-137)   There was no evidence
adduced at trial that showed defendant was without authority to
have entered the six-flat building. Rather the evidence and the
testimonies showed that a residential burglary was committed
and that nobody gave permission to the defendant to have entered
the vacant apartment at 8234 S. Eberhart St., Chicago, IL

## POINT # 2 ARGUMENT FOR REVERSAL

In a criminal trial it is the burden of the prosecution to prove beyond a reasonable doubt All material facts of the offense as charged by the indictment.

**People v. Weinstein**(1966), 35 Ill 2d 467,  220 N.E. 2d 432


By Utterly failing to have introduced proof to conform to the charge in the information, the State failed in its burden of proof at the trial.  Moreover, by the Appellate  opinion overlooking this missing proof as raised in the petition for Re-hearing, the Constitutional substantive violation against the petitioner's vested rights remains through the application to satisfy the material missing element >>>employing the present statutory language of the burglary offense, rather than the relevant one at the time of the commssion of this offense.

12

## I S S U E  III.

Whether the Appellate Court committed reversible error
through its retroactive application of Public Act 91-928
resulting in an unreasonable application of Law where
petitioner's criminal conduct fell within purview of P.A
91-360, mandating application to section 19-1 of the
criminal code (720 ILCS 5/19-1), provided that burglary
" shall NOT include****** the offense of residential
burglary as defined in sec. 19-3 hereof." in violation
of the Petitioner's right to due process of law under
Fourteenth Amendment, and Article I, sec. 2&6 of the
Illinois Constituion.

In this case, the petitioner Charles Daniels argued before
the intermediate appellate court that he was not proven guilty
of burglary beyond a reasonable doubt because there was insufficient
evidence that he entered the common area of an apartment building
(Exhibit I, at 3)

Contrary to language enuciated under **People v.Childress**,
158 Ill.2d 275,302(1994),the appellate court erroneously concluded
that " unlike Childress,**** the evidence in this case would
allow a rational. trier of fact to find that defendant made two
unauthorized entries*****(1) into the building and (2)into the
apartment,"citing, **People v. Maskell**, 304 Ill.App.3d 77 (1999)

Inapposite to **Maskell**, distinguishing this case; eventhough
the evidence demonstrated that the petitioner' entered into
Elston's building, any unlawful entry into a vacant unit is not
tantamount to " two distinct entries and the basis of two distinct
offense" (Exhibit I, at 6) as erroneously reasoned by the Appellate
court. In addition, the court CONCEDED that " the fact that the

13

vacant unit was a dwelling and defendant's entry thereto
was residential burglary, thus did not preclude defendant's
conviction for burglary" ( Id. at 7).

The petitioner maintains that this conclusion was a very
Unreasonable application of Law, more fully explicated in next
argument, however, suffice it to state a Statutory amendment
" cannot be given retroactive effect in the absence of a clear
expression of legislative intent." **Commonwealth Edison Co. v.**
**Will County Collector**, 196 Ill.2d 27, 38-39, 255 Ill.Dec. 482,
749 N.E. 2d 964 (2001)

At this point however, it is clear from the appellate record
that the court's discretionary reasoning is derived from a
**Retroactive application of Public Act 928** (effective June 1,2001)
section 5/19-1 (**720 ILCS 5/19**-1(West 2002),Criminal Code, as noted
by the Appellate court's documented applicable language:

> " under sec. 19-1 of the Criminal Code (code), a " person
> commits burglary when without authority he knowingly enters
> or without authority remains within a building,***********
> or any part thereof,with intent to commit therein a felony
> or theft," 720ILCS 5/19-1 **(West 2002)**
>
> **[Exhibit I, at p.4)**

The Appellate court's departure from Public Act **91-360**,
**IGNORES** the essential language, that residential burglary and
burglary are " **mutually exclusive** " offense, as postulated under
both**Maskell** and **Childress**, supporting rationale that intermediate
appellate court's abrogation of P.A. **91-360** ( which was effective
at the time of the petitioner's arrest and conviction), **contravene**'s
his right to due process of law, under the Fourteenth Amendment(XIV).

14

All of the above are a detailed aside towards the critical reality that when the Illinois General assembly legislated these statutory changes through Public Act # **91=928**, effective June 1,2001 they applied **prospectively** and **not** **retroactively.**

" In Illinois  Amendatory acts are construed  prospectively' and Not 'retroactively."

**People v. Holmes**, 292 Ill.App.3d 855, 227 Ill.Dec.53, 686 N.E. 2d 1209

**First America Trust Co. v. Armstead**, 171 Ill.2d 282, 215 Ill.Dec. 639, 664 N.E. 2d 36 (1996) (Under the vested rights approach, the legislative is largely ignored, and instead the law is applied as it exists at the time of the appeal unless to do so would interfere with a vested right, i.e. an interest protected from legislative interference by the due process clause of the Illinois Constitution (Ill.Const. 1970, art. I, § 2). ibid at 289

The crux of the petitioner's argument as shall be explicated in part A of this Issue are that the amendatory change in the statute 720 ILCS 5/19-1, eff. June 2001, made a SUBSTANTIAL change to the Law, and was not a clarification of the General Assembly's intent to interpret the original act 91-360. Ergo,change is not retroactive.

## STANDARD OF REVIEW

This Illinois Supreme Court has declared that " in the exercise of statutory construction, our primary task is to ascertain and effectuate the intent of the legislature."

**People v. Pullen**, 192 Ill.2d 36, 42, 248 Ill.Dec. 237,733 NE 2d 1235 (2000)

15

The most reliable indicator of legislative intent is the
language of the statute itself." <u>People v. Robinson,</u> 172 Ill.2d
452, 457, 217 Ill.Dec. 729, 667 N.E. 2d 1305 ( 1996)
Because the construction of any statute is a Question of Law,
Illinois Supreme Court's review is <u>de novo.</u>
<u>Robinson,</u> 172 Ill. 2d at 457

CONTENTION

In this case, Public Act 91-928 aimed at alleviating burglary
included the offense of residential burglary as defined in Section
19-3 thereof, of Criminal Code (720 **ILCS** 5/19-1 (West 2002),
formerly Public Act 91-360. Rather, the effective date of Public
Act 91- 928 ( June 2001) was after the relevant conduct herein
and the petitioner's subsequent conviction.     Equally, when an
Act has been passed, it and the amendments it contained are legally
applicable, and the State of the Law is the act as passed, becoming
effective on the date assigned.

ARGUMENT

In the instant case, the appellate court had no **discretion**
to election and interpretation of Public Act #  91-928, where the
terms set out were not ambiguous prior to the legislative dismantling
of both residential burglary and burglary >>>being" mutually exclusive"
offense's. Petitioner, Daniels was charged by information on March
10,2000, with one count of burglary,  Eventhough the charging
instrument did not include residential burglary, the " intent"
language of the statute directly lessened the criminal conduct as

16

a   included offense to residential burglary as guided by the legislative intent of Public Act 91-360.

As stated within **Sagittarius Inc, v. Village of Arlington Heights**, 90 Ill. App. 3d 401, 404 ( 1980)

> " as a general rule, a legislative  body has a continuing right to amend a statute or ordinace, even while litigation is pending involving the legislator.  However, the court must decide the case in accordance with the law in effect at the time of decision."

Assuming arguendo, as stated within **People ex. rel. Sklodowski v. State of Illinois** 182 Ill. 2d 220, 231 ( 1998),

> " the presumption is that laws do not create private contractual or vested rights, but merely declare a policy to be pursued until the legislature ordains otherwise ", however, " it presumed that the legislature, in enacting various statutes, acts rationally and with full knowledge of previous enactments."

**State of Illinois v. Mikosch**, 138 Ill 2d 242, 248 **(1990)**

In addition, " when construing a statute a court should also consider the purpose to be achieved by the law." **In re Callahan** , 144 Ill. 2d 32, 43 (1991)

### ARGUMENT

In the matter of Charles Daniel's appeal the court failed to consider the **purposes** set forth by Public Act 91-360, which was **CONTROLLING** at all times material herein, where the primary purpose of section 19-1 clarified " mutually exclusive" offenses, residential burglary and burglary, which lessened the degree of culpability.

17

Pursuant to Public Act 91-928, the amendment to section 19-1, of the Criminal Code ( 720 ILCS 5/19-1(West 2002),that created a new obligation or duty, in the deleting " offense of residential burglary as defined in sec. 19-3 hereof", petitioner Charles Daniels, asserts Should NOT BE RETROACTVELY applied to his instant case. It is further maintained that the appellate court's retroactive application of Public Act 91-928, violate the United State and Illinois Constitution's protections of Due process of law and EX post facto prohibitions as enunciated in the holdings of: Collins v. Youngblood, 497 U.S. 37, 41, 110 S.Ct.2715,2718, 111 L.Ed 30; Barger v. Peters, 163 Ill.2d 357,206 Ill.Dec. 170, 645 N.E. 2d 175 (1994)

Hence, at the time that the criminal code was being amended to section 19-1, petitioner Daniel's trial proceedings had ended, thereby the retroactive application of P.A. # 91-928 , was not applicable.  Assuming arguendo, that P.A. 91-360, is established authority in Illinois at the time that petitioner's trial was proceeding, then any contrary interpretation by the Appellate court resulted in an Unreasonable application of Law in light of the facts herein.  It follows," it is true that an amendment creates a presumption that it was intended to change the law as it formerly existed" Schribner v. Sachs, 181 Ill.2d 400,411(1960), yet to avoid absurd consequences, the construction is that Public Act 91-360, sec. 19-1 of the Code, explicitly translates that residential burglary and simple burglary are " mutually exclusive" offenses, thereby it should not have been superceded by Public Act

# 91-928, (Sec. 19-1, of the Criminal Code), as P.A. 91-360 and P.A. # 91-928, were not enacted in the same year, thereby the discretionary judgment applied by the recent Appellate court's opinion against petitioner Charles Daniels case should not have abrogated P.A. 91-360, but maintained its clear affect during the Appellate court's review of this matter.

### PART III A

**WHETHER THE APPELLATE COURT'S RETROACTIVE APPLICATION OF P.A. 91-928 RESULTED IN AN ABUSE OF DISCRETION; AND AN UNREASONABLE APPLICATION OF LAW, IN LIGHT OF THE FACTS ,AND WAS CONTRARY TO PEOPLE V. STOTHOFF, 208 ILL. APP. 3D 500(1990), IN VIOLATION OF "SEPARATION OF POWER DOCTRINE " , CIRCUMVENTING PETITIONER'S RIGHT TO DUE PROCESS AND EQUAL PROTECTION OF LAW, RESULTING IN A SEVERE PREJUDICE.**

A **DE NOVO REVIEW** of statutory construction demonstrates that the appellate court failed to rebut the **presumption of prospectivity**, having erroneously relied upon P.A. 91-928("deleting residential burglary, thereto section 19-3"), eventhough the lower court did concede that "the fact that the vacant unit was a dwelling, and defendant's entry thereto was residential burglary."..... ( Exhibit I, at 6). Consequently the intermediate appellate court's reasoning confirmed that Petitioner's conduct warranted conviction and sentence for residential burglary where on page 6 of Exhibit 1, it specifically referenced:

> " The fact that the vacant unit was a dwelling, and
>    defendant's entry thereto was residential burglary,
>    thus did not preclude defendant's conviction for burglary."

19

The Appellate court's finding improperly deleted the Legislative intent distinguishing the " Mutually exclusive " character for each criminal offense, residential burglary and burglary, as grafted by P.A. 91-360, in that the court said/ reasoned "

> thus did not preclude defendant's conviction for burglary." Id.

The appellate court's reliance upon P.A. 91-928 should not have been construed retroactively but prospectively, see People v. Stothoff, 208 Ill.App. 3d 500(1990) ( Generally, amendment apply prospectively rather than retroactively.)

The crux of petitioner's argument here is that the appellate court's failure to have rebutted the presumption of prospectvity has resulted in an abuse of discretion, and greatly prejudiced him.  In support of this contention are the fact that under Illinois law:

> "amendments may be applied retroactively but only if the the legislative intent is clear and the proponent rebuts the  presumption of prospectivity by showing:
>
> (1) the express language of the amendment makes it retroactve;
> (2) the retroactivity is necessary implied;
> (3) the amendment merely affects the remedy;
> (4) the amendment affects procedural matters rather than substantive rights[citations]; or (5) the amendment clarifies existing law."

Stothoff, 208 Ill.App. 3d at 504, citing People v. Clemons, 275 Ill.App. 3d at 1119,212 Ill.Dec. 408, 657 N.E. 2d 388.

Here, in the instant matter, the Appellate court failed to make a (any) showing without first **rebutting the presumption of prospectivity** and the relevant criteria being **set forth in** its opinion, as to why it felt that retroactive application governed Daniels petition, as was demonstrated under **holding in Holmes, Clemons, Stothoff,** ibid cites

In Addition, the appellate court had a **Fiduciary obligation** to construe Public Act 91-360, so as to have given reasonable meaning to all the words and sentences, so that no part is/was rendered superflous.  Assuming arguendo, that courts can apply retroactive statutory changes to procedural or remedial provisions, whether they are outright repeals or amendments. The **GENERAL SAVINGS CLAUSE** would necessarily prohibit retroactive application of statutory changes that affected **SUBSTANTIVE PROVISIONS** or **VESTED RIGHTS.** Petitioner's vested rights were violated here. **People v. Glisson,** 202 Ill.2d 499, 452-53 (2002)

Hence, the appellate court's affirmation of the trial court's discretionary judgment **DEFEATED** the obvious intent of the State Legislature pursuant to Public Act 91-360, along with the Illinois **Supreme Court's Stare Decisis,** holding relevant at the time of this offense under **People v. Childress,** 158 Ill.2d 275, 302(1994) thereby depriving Peitioner of his rights to due process of law, resulting in a severe prejudice.

For the **Foregoing** reasons, Petitioner prays that this Honorable Supreme Court of Illinois reverse the discretionary judgment of the appellate court and remand this cause consistent with P.A. 91-360 and grant any other relief deemed just and fair.

NO._____

## IN THE SUPREME COURT OF THE STATE OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) PETITION FOR LEAVE TO |
| | ) APPEAL FROM THE |
| Plaintiff-Appellee, | ) APPELLATE COURT OF |
| | ) ILLINOIS, *FIRST* |
| | ) DISTRICT, |
| | ) No. *1-02-2905* |
| | ) |
| vs. | ) THERE HEARD ON APPEAL |
| | ) FROM THE CIRCUIT COURT |
| | ) FOR THE *FIRST* |
| | ) JUDICIAL CIRCUIT, |
| *CHARLES DANIELS* | ) *COOK* COUNTY, |
| | ) ILLINOIS. |
| | ) |
| Defendant-Appellant, Pro Se. | ) HONORABLE *THOMAS M.* |
| | ) *DAVY* , PRESIDING. |

### MOTION FOR LEAVE TO FILE AND PROCEED IN FORMA PAUPERIS

Now comes the petitioner, *Charles Daniels* , pro se
before this Honorable Court, and moves this Court to enter
an order granting him leave to file in forma pauperis on
the attached intent to file and leave to appeal to the
Illinois Supreme Court, and for reasons in support thereof,
petitioner states the following, to wit:

1.    That the petitioner is in custody of the State of
Illinois, under the Department of Corrections of said State,
pursuant to an order entered on *July 30* , *2002*
under indictment number *00 CR 7104* in the Circuit Court

of the ___FIRST___ Judicial Circuit, ___COOK___

County, Illinois.

2.    That the petitioner is without funds, assets,
personal, or real property to defray the costs of the
proceedings on the attached intent to file and leave to
appeal to the Illinois Supreme Court.

WHEREFORE, the petitioner prays that this Honorable
Court will enter an order granting his intent to file
and proceed in forma pauperis on the attached intent to
file and leave to appeal to the Illinois Supreme Court.

Respectfully  submitted,

_Charles Daniels N63102_
Pro se.

APPENDIX