CASE NO. _07cv6475_

ATTACHMENT NO. _1_

EXHIBIT _E-N_

TAB (DESCRIPTION) _____

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

97992

May 26, 2004

Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No.   97992 - People State of Illinois, respondent, v. Charles
              Daniels, petitioner.  Leave to appeal, Appellate
              Court, First District.

The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on June 17, 2004.

EXHIBIT F

No. 97992

IN THE SUPREME COURT OF THE STATE OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the First Judicial District, |
| Respondent ) | No. 1-02-2905 |
| ) | |
| vs. ) | There Heard on Appeal from the Circuit Court Cook County, Illinois. |
| ) | |
| CHARLES DANIELS, ) | No. 00 CR 7104 |
| ) | THOMAS M. DAVY |
| Petitioner. ) | Honorable Presiding Judge. |

## MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF THE DENIAL OF THE PETITION FOR LEAVE TO APPEAL

TO THE HONORABLE JUSTICES OF THE SUPREME COURT
OF THE STATE OF ILLINOIS:

May it please the Court:

## PRAYER FOR LEAVE UPON RECONSIDERATION OF THE PETITION FOR LEAVE TO APPEAL

Your Petitioner, CHARLES DANIELS, pro se, respectfully prays for this Honorable Court to grant him leave to file for reconsideration of the denial of petition for leave to appeal, predicated upon the Constituional magnitude and legal significance upon this Issue of Federal and State **Ex Post Facto law violation**, through the lower intermediate appellate court's misapprehension of the **Substantive rights violation,** in its **Retrospectively applying a** State of Illinois statute repealed earlier, which had prohibited certain conduct from being considered as evidence prior to its Enactment and where the petitioner had reasonably relied upon the statute as it existed before the amendment to his detriment as defense.

EXHIBIT G

<u>OPINION AND PROCEEDINGS BELOW</u>

On July 30, 2002, Petitioner Charles Daniels was found
guilty and sentenced to Eight(8) years imprisonment for one
count of Burglary. He appealed this conviction to the Illinois
Appellate Court First District on September 9,2002. On December
22,2003, the Court delivered its opinion in said appeal, affirming
judgment of conviction and sentence. This petition for leave
to appeal follows this Honrorable Court on March 4,2002, granting
petitioner leave to file in the above-entitled cause.
This Supreme Court on May 26,2004, subsequently denied the petition
for leave to appeal. This petition for Leave for Re-hearing
follows.

ISSUE OF LAW RELIED UPON FOR REVERSAL

APPLICATION OF A STATUTORY  AMENDMENT THAT AFFECTS
SUBSTANTIVE RATHER THAN PROCEDURAL RIGHTS WITHOUT
REBUTTING THE PRESUMPTION OF PROSPECTIVITY VIOLATES
BOTH FEDERAL AND STATE EX POST FACTO LAWS WHERE THE
PETITIONER HAD REASONABLY RELIED UPON THE STATUTE AS
IT EXISTED BEFORE THE AMENDMENT AS HIS DEFENSE AGAINST
THE NEW LEGAL CONSEQUENCES.

## ISSUE OF LAW

WHETHER APPLICATION OF A STATUTORY AMENDMENT APPLIED
RETROSPECTIVELY VIOLATES EX POST FACTO LAWS OF BOTH
FEDERAL AND STATE CONSTITUTIONS, WHEN THE LOWER COURT'S
FAIL AS REQUIRED TO REBUT PRESUMPTION OF PROSPECTIVITY
UPON SUBSTANTIVE RATHER THAN PROCEDURAL CHANGES, ESPECIALLY
WHERE THE PETITIONER TO HIS DETRIMENT HAD REASONABLY
RELIED UPON THE STATUTE AS IT EXISTED BEFORE THE
AMENDMENT AS HIS DEFENSE AGAINST NEW LEGAL CONSEQUENCES

Petitioner Charles Daniels, pro se, respectfully asserts
that the lower court has violated his protections against
**Ex post facto**, where under the Legislative construction of
Public Act 91-360, regarding the criminal offense of burglary
720 ILCS 5/19-1(West 2000), that the statute's Legislative Intent
was clear and unambiguous as to the fact that the prosecution
along with adherence to due process basic notions " **shall not
include the offense of residential burglary."** in establishing its
Burden of proof against the petitioner.

Inspite of this succint prohibition against the inclusion
of material elements of residential burglary, the State has
utilized the proscribed evidentiary proof to sustain this conviction
which violated the petitioner's Constitutional guarantee through
the new amendment provision attaching new legal consequences to
events completed before its enactment.
U.S.C.A. Const. Art. 1§9,cl 3; S.H.A. Const. Art. 1§ 16

The lower court's reasoning violates the petitioner's
protéction against ex post facto laws, by allowing the trial court
to have received **less & different testimony & evidence** than the
law required at the time of the commission of this offense to
affirm as shall be demonstrated in the following pages.

Testimony elicited by the State prosecutor from its chief witness, Nora Elston, on June 5,2002 (V-6)

Q: Was the **apartment** across the hall from you at 8234 S.Eberhart occupied at that time?

A: No sir.

Q: What was the condition of that **apartment** across the hall?

A: The condition was that no one was there because the occupant had moved out, I had moved some of my things across the hall because I was going to do some work in my building, I was trying to get them out of the way temporarily.

Q: Did anybody have **authority** to be inside your vacant **apartment** at that time and place?

A: No sir.

Q: After you heard somebody inside your vacant apartment that afternoon what did you do next?

A: I went back and called the police again and I told them I thought he was gone but now he's in the apartment.

page13, Line 21-24:

Q: And you **never gave that person permission to enter that vacant apartment of yours?**

A: **No sir.**

                    ********************

     As reflected from the testimony there is no proof on the **distinct material elements** of authority and permission to have entered " not" the apartment or dwelling place of another, but rather the building as alleged in the indictment.

**People v. Mosby,** 185 N.E. 2d 152

( an essential element of proof to sustain a conviction cannot be inferred but must be established.  The fact that this proof might have been established by a single question is besides the point since it was not done.)

Petitioner asserts on February 12, 2000, date of the
this event, that burglary was defined as follows:

> (a) a person commits burglary when without authority he
> knowingly enters or without authority remains in a
> building, housetrailer, watercraft, aircraft, motor
> vehicle as defined in the Illinois Vehicle code,
> railroad car, or any part thereof, with intent to commit
> therein a felony or theft. This offense shall not include
> the offense set out in sec. 4-102 of the Illinois
> Vehicle Code, nor the offense of residential burglary
> as defined in Section 19-3 hereof. 720 ILCS 5/19-1(West 2000)

However, as of JUNE 1, 2001, under section 19-1, of the criminal

code a "person commits burglary when without authority he

> knowingly enters or without authority remains within
> a building,*******or any part thereof, with intent to
> commit therein a felony or theft." 720 ILCS 5/19-1(2002)

Similarly, under Code section 19-3, a SUBSTANTIVE CHANGE was made,

through the new amendment including additional area that was not

apart of the repealed statute *******ANY PART THEREOF.........

> " one commits residential burglary who knowingly & without
> authority enters or knowingly & without authority remains
> within the dwelling place of another, or any part thereof,
> with the intent to commit therein a felony or theft."
>
>                     720 ILCS 5/19-3(West 2002)


Petitioner Daniels, maintains that the lower court's

reasoning as confirmed by its language     conceded" the fact

that the vacant unit was a dwelling, and defendant's entry

thereto was residential burglary, thus did not preclude

defendant's conviction for burglary."( Exhibit I, at p.6)

### ARGUMENT

Petitioner's argument is that a state statute repealing an

earlier statute that prohibited the entry into a dwelling place

in establishing  the separate and distinct burglary offense is

unconstitution⬤ as a ex post facto law, ⬤re its applied
to one whose conduct was inadmissible as proof before the trier
of fact prior to the new statute.   Moreover, where as here the
State elicits **different**, **less and prohibited** testimonial evidence,
yet is allowed to employ the current statute which punishes the
conduct that previously was less culpable, such action by the
State prosecutor and lower court is violative of the petitioner's
**SUBSTANTIVE RIGHTS** and analytically runs afoul of fundamental
fairness.

        Hence, as the record reflects, the testimonial evidence
is **"Totally Devoid"** in supporting any other offense than residential
burglary as a matter of law, while they were "mutually exclusive".
However, because residential burglary was not charged against the
petitioner, the only escape available for the state was to argue
" that the Law had been changed to support his position since
the arrest of the defendant." **(July 30,2002,-Y-7, Y-8)**

State Asst. **MR. RONKOWSKI:** Took out the offending language that
        Counsel quotes about the charges being mutually exclusive.
        Under current statute, specifically, the statute now
        reads under residential burglary, **this offense includes
        the offense of burglary as defined under 19-1 that is
        currently in the statute.**

        THE COURT: When did that take affect?
        MR. RONKOWSKI:  Makes no difference because ···········

[ Completed text is annexed-  **emphasis added** ]

## EX POST FACTO PROHIBITION STANDARD

Under State or Federal Constitutional prohibitions against ex post facto laws found in the Illinois Constitution, a criminal law will be considered ex post facto where it:(1) is retrospective in that it applied to events occurring prior to its enactment, and (2) falls into one of the traditional categories of prohibited criminal laws, (3) laws that alter the legal rules of evidence and receive less, or different, testimony than the law required at the time of the commission of the offense in order to convict the offender; (4) eliminates a defense available under the law that was in effect at the time the offense was committed.
U.S.C.A. Const. Art. !§9,cl.3; S.H.A. Const.Art.1,§16

Petitioner asserts that the securing of this conviction through violations of both numbers three and four(3&4) respectively requires either reversal, remand or a rebuttal of the presumption of prospective application of a enacted amendment.

Weaver v. Graham, 450 US 24,29, 101 S.Ct.960,964

Fiore v. White, 531 US 225, 121 S.Ct.. 712

Vachon v. New Hampshire., 414 US 478

People v. Stothoff, 208 Ill.App.3d 500

People v. Holmes, 292 Ill.App. 3d 855

### CONTENTION

The petitioner's Substantive Constitutional rights were abrogated through his reliance on the (91-360)statute in effect at the time of his arrest, as the Standard for review during the trial and especially Appellate review, that stated burglary " shall not include the offense of res. burglary as defined in Section 19-3 hereof." ( 720 ILCS 5/19-1 (2000)_

Consequently the petitioner has been **irreparably disadvantaged** through elimination of his **viable** defense, that MUTUALLY EXCLUSIVE offense's require distinct and separate proof by the prosecution where as here the prohibited offense was used as substantive evidence of culpability.  Rather, after June 1,2001, a conviction could be sustained for simple burglary upon proof that the " person without authority, knowingly entered or remained within a building**********or any part thereof**...with intent to commit therein a felony or theft."  720 ILCS 5/19-1(West 2002)

### SUMMARY

The Appellate Court's decision to **retrospectively apply Public Act 91-928(eff.June 1,2001)**, towards conduct that happened before its enactment and which abrogates Public Act 91-360, and its clear legislative intent is unconstitutional, especially where the lower court allows Less and Different testimonial **Evidentiary proof than the law required** at the time of the commission of this offense in order to affirm this conviction,

## REQUESTED RELIEF

Based upon the foregoing the petitioner's respectfully
prays for the following suggestive relief:

a) As a matter of Illinois Law for a lower court's rebuttal
   of the presumption of prospectivity for its application
   of Public Act 91-928, rather than Public Act 91-360 which
   was in force and full effect on date of incident, in placing
   a more onerous burden upon the petitioner than was the
   law at the time of commission of this offense;

b) remand with instructions for review consistent with
   statutory construction for burglary offense in effect
   on February 12, 2000;

c) reversal and/or any other relief deemed fair and applicable.


Respectfully submitted,

*Charles L. Daniels*

Charles L. Daniels, pro se

1       Defense Counsel could not make that argument today

2 because the statute has been changed so that in affect calls

3 into question the Childress decision.

4       THE COURT:  What, the residential?

5       MR. RONKOWSKI:  Took out the offending language that

6 Counsel quotes about the charges being mutually exclusive.

7       Under current statute, specifically, the statute now

8 reads under residential burglary, this offense includes

9 the offense of burglary as defined under 19-1 that is

10 currently in the statute.

11      THE COURT:  When did that take affect?

12      MR. RONKOWSKI:  Makes no difference because--

13      THE COURT:  Why doesn't it make a difference, you can't

14 be charged with something in the statute in affect is the

15 one that was in affect on the date of the incident?

16      MR. RONKOWSKI:  What the Illinois legislature is

17 saying, if the Illinois Supreme Court misinterpretes are

18 intent, we're going to make it quite clear what our intent

19 was, but you don't even get to Childress.  It is strictly

20 what the law was at the time.

21      THE COURT:  What was the law at the time?

22      MR. RONKOWSKI:  The law at the time was if I could have

23 these back, if no owner intended to occupy that apartment

24 within a reasonable period of time, it is not a dwelling.

1 It is not a dwelling.  It is a building and the owner of the
2 building did not intend to occupy that apartment.  She lives
3 next door.  It is an issue of statutory interpretation.
4      If she had leased that apartment out and the people
5 weren't home at the time, Counsel may have an argument, but
6 the owner testified I own the building, nobody was living in
7 that apartment.
8      It was vacant.  It is being renovated and falls clearly
9 within the provision where there is no owner intending to
10 occupy that vacant unit at the time.
11      So, you don't even get to the Childress decision.
12      MR. SHERMAN:  Judge, the charge against the Defendant
13 is that he without authority knowingly entered into the
14 building the property of Nora Elston, not an empty
15 apartment, but a building.  A building in which Nora Elston
16 owned and lived.
17      I find it hard to believe that is not a dwelling.  The
18 fact is there maybe a vacant apartment in that building
19 doesn't mean that if the Defendant goes inside that
20 building, it is owned with the intent to commit a theft.
21 That is residential burglary if somebody lives there and
22 Nora Elston did live there.
23      THE COURT:  Well, the case I think is directly on point
24 is People vs. Maskell, 304, Ill.App.3rd, 877, 1999 2nd

97992

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

May 26, 2004

Mr. Charles Daniels
Reg. No. N-63102
P. O. Box 1700
Galesburg, IL 61401

No.   97992 - People State of Illinois, respondent, v. Charles
             Daniels, petitioner.  Leave to appeal, Appellate
             Court, First District.

The Supreme Court today DENIED the petition for leave to
appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court
on June 17, 2004.

(Rev. 10/30/01) CCCR 0603

TO THE *Appellate* COURT OF ILLINOIS
IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL BUREAU

E OF THE STATE OF ILLINOIS

*Charles Daniels*

| | |
|---|---|
| Case No. | *00CR 7104* |
| Trial Judge | *DAVY* |
| Court Reporter | |
| Attorney | *DENNIS HUGH SHERMAN* |
| Appeal Check Date | |
| Appeal Bond | |

## NOTICE OF APPEAL

eal is taken from the order or judgment described below:

lant's Name: *Charles Daniels*

lant's Address: *111 D.O.C.*

lant's Attorney:

ess:

se: *BURGLARY*

ment: Guilty of *BURGLARY* on a *bench trial*

*7-16-02*

nce: *8 YRS 111 D.O.C.*

Notice Filed: *9-9-2002*

*Charles Daniels by his trial Attorney*

**VERIFIED PETITION FOR REPORT OF PROCEEDINGS AND COMMON LAW RECORD**

*Dennis Hugh Sherman*

er Supreme Court Rules 605-608 Appellant ask the Court to order; (1) the Official Court Reporter to transcribe an
inal and the copy of the proceedings, file the original with the Clerk and deliver a copy to the Appellant, or upon
ellant's written request to the Appellant's attorney of record, and (2) the Clerk to prepare the Record on Appeal.

Appellant, being duly sworn, says that at the time of his/her conviction he/she was and he/she now is unable to
for the Record or an appeal lawyer.

_____ Appellant

BSCRIBED and SWORN TO before me this _____ day of _____, _____

_____ Notary public

## ORDER

IS ORDERED; 1. _____

pointed as counsel on appeal, and 2. the record and Report of Proceedings be furnished appellant free.

| | | | | |
|---|---|---|---|---|
| *6-5-0* , *2002* | *9- 5* , *2002* | | | |
| *7-16* , *2002* | | , | | , |
| *7-30* , *2002* | | , | | , |

TE: _____, _____      ENTER: _____

                                          **Judge**                    Judge' No.

cknowledge receipt: _____      **Court Reporter**

... part of this order may be
... time for filing of a Petition for
Rehearing or the disposition of
the same.

FIRST DIVISION
DECEMBER 22, 2003

No. 1-02-2905

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 7104 |
| | ) | |
| CHARLES DANIELS, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

### O R D E R

Following a bench trial, defendant Charles Daniels was
convicted of burglary and sentenced as a Class X offender to
eight years' imprisonment. Defendant contends on appeal that he
was not proven guilty of burglary beyond a reasonable doubt
because there was insufficient evidence that he entered the
common area of an apartment building. He argues that his
unauthorized entry was to a dwelling place and was thus
residential burglary rather than burglary, at a time when
burglary and residential burglary were considered mutually
exclusive offenses. Defendant also contends that mandatory Class
X sentencing under section 5-5-3(c)(8) of the Code of Corrections
(730 ILCS 5/5-5-3(c)(8) (West 2002)) violated his right to due
process and trial by jury because the State is not required to
give notice of its intent to sentence defendant as a Class X

1-02-2905

offender or to prove his convictions, the sequence of those
convictions, or his age to a jury beyond a reasonable doubt.

At trial, Nora Elston testified that she owned an apartment
building at 8232 and 8234 South Eberhart and lived in a first-
floor apartment at the 8232 address. On February 12, 2000, the
first-floor unit across from Elston's, at the 8234 address, was
vacant and the doors were locked. Elston intended to rent the
vacant unit again "eventually," but was storing some of her
belongings there. At about 3:40 p.m., Elston looked out the
window and saw defendant approach her building. She heard the
doorbell for the vacant unit and then "fumbling" with the
mailbox. Elston saw defendant enter the building; he was in the
hallway for about three minutes before she saw him leave. Elston
called the police. The police left after finding the door to the
vacant unit locked and searching outside the building.

Later, Elston heard noises from the vacant unit and called
the police again. She saw defendant leaving her building, by the
front door, with some of the large plastic bags she had stored in
the vacant unit. Elston followed defendant, but returned home
when she lost sight of him. When the police arrived, Elston
accompanied them and pointed out defendant. The officers
arrested defendant, who was not carrying any bags. Defendant
then "produced the bags from somewhere," and Elston identified
them as hers. When Elston checked the doors to the vacant unit,

- 2 -

1-02-2905

they were still locked. Elston had not given defendant permission to be in the vacant unit or remove property from it.

Police detective James Carlassare testified that he interviewed defendant on the evening of February 12, 2000. Defendant told Detective Carlassare that he "was in a lot of trouble" and "shouldn't have gone into that apartment."

Officer William Meister testified that he responded to Elston's call. Elston met Officer Meister in front of her building and accompanied him and his partner to search for defendant. After a few minutes, Elston saw defendant. Officer Meister arrested defendant, who showed him two large plastic bags about 10 yards away. Officer Meister brought the bags back to Elston, who identified the property in the bags as hers.

The trial court found defendant guilty of burglary. Based on prior burglary and residential burglary convictions, defendant was sentenced, as a mandatory Class X offender under section 5-5-3(c)(8), to eight years' imprisonment.

Defendant contends that he was not proven guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he entered the common area of an apartment building. He also argues that his unauthorized entry was to a dwelling place and was thus residential burglary rather than burglary. He notes that, at the time of the offense, burglary and residential burglary were considered mutually exclusive offenses. See People

- 3 -

1-02-2905

v. Childress, 158 Ill. 2d 275, 302 (1994).

In assessing the sufficiency of evidence, the relevant question is whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Pollock, 202 Ill. 2d 189, 217 (2002). It is the role of the trier of fact to determine the credibility of witnesses and the weight to give their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. People v. Tenney, 205 Ill. 2d 411, 428 (2002). It is not the function of this court to retry defendant or to substitute our judgment for that of the trier of fact regarding witness credibility or the weight of the evidence. Tenney, 205 Ill. 2d at 428. Thus, a conviction will be reversed only where the evidence is "so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." Pollock, 202 Ill. 2d at 217.

Under section 19-1 of the Criminal Code (Code), a "person commits burglary when without authority he knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft," 720 ILCS 5/19-1 (West 2002). Similarly, under Code section 19-3, one "commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the

1-02-2905

dwelling place of another, or any part thereof, with the intent
to commit therein a felony or theft." 720 ILCS 5/19-3 (West
2002).

Until June 1, 2001, section 19-1 provided that burglary
"shall not include *** the offense of residential burglary as
defined in Section 19-3 hereof." 720 ILCS 5/19-1 (West 2000).

> "As the defendant observes, the two offenses
> are mutually exclusive. Residential burglary
> can be committed only in dwelling places,
> while simple burglary cannot occur in a
> dwelling place." People v. Childress, 158
> Ill. 2d 275, 302 (1994).

However, in People v. Maskell, 304 Ill. App. 3d 77 (1999), where
defendant entered an apartment from the stairway and corridor of
an apartment building and removed property from the apartment,
the evidence was deemed sufficient to show that he committed both
burglary and residential burglary, and thus his burglary
conviction was affirmed. Maskell, 304 Ill. App. 3d at 84.
"Unlike Childress, *** the evidence in this case would allow a
rational trier of fact to find that defendant made two
unauthorized entries *** (1) into the building and (2) into the
apartment." Maskell, 304 Ill. App. 3d at 84.

For purposes of section 19-3, a "dwelling" is an "apartment
*** or other living quarters in which at the time of the alleged

1-02-2905

offense the owners or occupants actually reside or in their
absence intend within a reasonable period of time to reside."
720 ILCS 5/2-6(b) (West 2002). A person committed residential
burglary when he entered and took items from vacant first-floor
and basement apartments of a building in which the owner lived on
the second floor and was using the unoccupied units for storage.
People v. Silva, 256 Ill. App. 3d 414, 420-21 (1993).

Here, Elston testified that she saw defendant enter and,
after three minutes in the hallway, leave her building. Combined
with the facts that he later entered the vacant unit and removed
Elston's property and that Elston did not grant him permission to
be in the building, a reasonable person could conclude that
defendant entered a non-dwelling portion of a building without
authority and with the intent to commit theft. As in Maskell,
the evidence is clear that defendant made two unauthorized
entries with intent to steal: into Elston's building and into the
vacant unit. Maskell, 304 Ill. App. 3d at 84. Indeed, if the
course of entry in Maskell -- through the common area of the
building to the dwelling unit -- constituted two entries, then
defendant's separate entries here -- into the building and out
again, then later into the vacant unit -- are even more clearly
two distinct entries and the basis of two distinct offenses. The
fact that the vacant unit was a dwelling, and defendant's entry
thereto was residential burglary, thus did not preclude

- 6 -

1-02-2905

defendant's conviction for burglary. There was sufficient evidence to convict defendant of burglary beyond a reasonable doubt.

Defendant also contends that the mandatory Class X sentencing provision of section 5-5-3(c)(8) violates the rights of due process and trial by jury because the State was not required to give defendant notice of its intent to sentence him as a Class X offender or required to prove his convictions, the timing or sequence of the convictions, or his age beyond a reasonable doubt to a jury. However, this court has considered and rejected precisely this contention. People v. Smith, 338 Ill. App. 3d 555, 564 (2003), citing Apprendi v. New Jersey, 530 U.S. 466, 494-96, 147 L. Ed. 2d 435, 457-58, 120 S. Ct. 2348, 2365-66 (2000); People v. Pittman, 326 Ill. App. 3d 297, 300-01 (2001); and People v. Lathon, 317 Ill. App. 3d 573, 587 (2000).

Accordingly, the judgment of the circuit court is affirmed. Affirmed.

GORDON,J., with O'MALLEY,P.J. and McBRIDE,J., concurring.

## AFFIDAVIT

I, _CHARLES DANIELS_, being duly sworn do repose and state that the attached _RECONSIDERATION PETITION_ is true and correct in substance and fact to the best of my knowledge.

/s/ _Charles Daniels_
Petitioner

Subscribed and sworn to before me this
_11_ day of _June_, 20_04_.

_Lenard E Parmer_
Notary Public

# _N63102_
_HILL_ Correctional Center
P.O. Box _1700_

_GALESBURG_, Illinois _61401_

"OFFICIAL SEAL"
Expiration of Commission _Lenard Palmer_
Notary Public, State of Illinois
My Commission Exp. 09/29/2007

## NOTICE OF FILING

TO: _ILLINOIS SUPREME COURT_ TO: _ATTY GEN. STATE ILLINOIS_ TO: _STATE ATTORNEY - BRIDGEVIEW_

_C/O CLERK OF COURT_     _CRIMINAL APPEALS DIV._     _SIXTH DISTRICT_

_SUPREME COURT BIDING_     _100 WEST RANDOLPH_     _16501 S. KEDZIE PKWY_

_SPRINGFIELD, ILLINOIS_     _CHICAGO, ILLINOIS 60601_     _MARKHAM, ILLINOIS 60455_

Please take notice on _JUNE 11_, 20_04_, I filed with _____
County Court the attached _MOTION FOR RECONSIDERATION_, _1_
copy(ies) of which are served on you.

/s/ _Charles Daniels_

## AFFIDAVIT OF SERVICE

STATE OF ILLINOIS )
                   )
COUNTY OF _KNOX_ )

I, _CHARLES DANIELS_, being sworn state that I served the attached notice on the above named person(s) by placing a true and correct copy in an envelope(s), addressed as shown above, with the proper U.S. postage on each and deposited the envelope(s) in the U.S. Mail at _HILL CORR., GALESBURG_ Illinois, _61401_, on or about the hour of _JUNE 11_, on _____, 20_04_

/s/ _Charles_

**Revised Jan 2002**



## SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
SPRINGFIELD 62701

**JULEANN HORNYAK**
CLERK OF THE COURT
(217) 782-2035

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(217) 524-8132

**FIRST DISTRICT OFFICE**
20TH FLOOR
160 NO. LASALLE ST.
CHICAGO 60601
(312) 793-1332

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(312) 793-1333

June 23, 2004

Mr. Charles Daniels
Reg. No. N-63102
P. O. Box 1700
Galesburg, IL 61401

        In re: People State of Illinois, respondent, v. Charles
        Daniels, petitioner.
        No. 97992

Today the following order was entered in the captioned case:

    Motion by petitioner, pro se, for leave to file a motion for
    reconsideration of the order denying petition for leave to
    appeal. Motion Denied.

    Order entered by the Court.

                    Very truly yours,

                *Juleann Hornyak*

             Clerk of the Supreme Court

cc: Hon. Lisa Madigan
    Hon. Richard A. Devine

EXHIBIT H

STATE OF ILLINOIS)

COUNTY OF COOK    )

IN THE CIRCUIT COURT OF COOK COUNTY

COUNTY DEPARTMENT—CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS)

        Respondent      )    P.C. NO. 00 CR 07104

vs.                  )    HONORABLE THOMAS DAVY

CHARLES DANIELS       )    Judge Presiding.

        DEFENDANT

### DEFENDANT'S REBUTTAL TO THE PEOPLE'S RESPONSE
### TOWARDS AMENDED POST-CONVICTION PETITION

**NOW COMES CHARLES DANIELS,** pro se, and respectfully moves this Honorable Court to grant him the relief of a Evidentiary Hearing on the merits of the Amended petition instanter, and to deny the State response to dismiss for the reasons contained within the Defendant's reply to Respondent's motion to dismiss and herein, for the following additional reasons:

1. Defendant admits and accepts as true this allegation.

2. Defendant denies this allegation based upon the failure of the State to elicit a(any) testimony from the victim Nora Elston during her direct testimony regarding whether or not she did or did not give authority or permission to the defendan t to have entered or remained within the building, especially in light and contrast to the State having  asked and had answered affirmatively the requisite questions towards the material and essential elements of the crime so as to satisfy **DUE PROCESS** with regard to residential burglary.**(R.124;177—179)**

3. Petitioner denies this allegation based on the fact that on **JULY 16th 2002,** trial counsel Dennis Sherman stated his recent receipt on that July 9th 2002, of a report, allegedly authored on **date of arrest,** after a interview/interrogation. Trial counsel Sherman stated receiving the July 9th report during Court proceedings of July 16th 2002 as " **the FIRST NOTICE** that I had been given." Through counsel's statement the State's contention is misplaced that the purpose of said questioning

EXHIBIT I

Of Mrs. Elston was a trial strategy, where trial counsel's Direct examination

of this witness had already been completed when he first came to have knowledge

about a report prepared from the Detective Caralisse. Ergo, the State's contention

that trial counsel was " attacking the credibility " of Ms. Elston through the

questions that elicited the inculpatory testimony against his client is a

**Specious argument.**

In fact a careful review of the annexed transcripts of these proceedings

shows that trial counsel contemporaneously seems to have objected to the report's

admission and his concerns as to whether this document had been " **SECRETED** "

where trial counsel to no avail for over two years (2) leading up to trial and

the officer's testimony had been unable to receive the complete discovery.

It remains that the State simply admitted to its culpability in having witheld this

**Material and Admitting** its failure to have avoided surprising defense counsel

by their late presentment in the middle of Trial. Now,to attempt to utilize

material that was questionable in its presentment to the defense without sanctions

calls into question, whether of not this document is authentic and reliable.

Defendant Daniels, asserts that the State's delayed disclosure constitutes "

" Cause " **for Suppression** under **Brady v. Maryland** 373 US 83, 83 S.Ct.1194(1963);

where the defend:ant is prejudiced by the late disclosure in it being submitted

**AFTER** he had already wiaved his right not to testify. Moreover the added portion of

the statement had no particularized guarantee of its trustworthiness or sufficient

reliability for it being admitted or deemed credible, where it was not corroborated.

Also, the Statement was " non-verbatim "; Neither was the aspect of the statement

" when the defendant was asked how he gained entrance to the building, Charles Daniels

told the detective that the front door was unlocked" ever subjected to cross-examination.

Hence, the portion of the statement not testified to, must be excluded.

4. Defendant denies this allegation.

5. Defendant incorporates paragraph #3 above herein, and states that Ms. Elston

had already testified on June 5, 2002, when trial counsel Dennis Sherman

first learned about this purported report that had been authored on the date

of the arrest, but had inadvertently become lossed until the middle of trial.


6.  Defendant denies this allegation as repetitious of earlier contentions

raised in paragraph's # 3 and 4.



                                    Respectfully replied to by

                                    *Charles Daniels*

                                    Charles Daniels, pro se

STATE OF ILLINOIS          )
                           )  §
COUNTY OF COOK             )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT – CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS      )
                   Respondent        )
                                     )
          vs                         )      P.C. NO. 00CR 07104
                                     )      HONORABLE THOMAS DAVY
CHARLES DANIELS                      )      Judge Presiding
                   Defendant         )

### PEOPLES RESPONSE TO AMENDED POST-CONVICTION PETITION

JAN 17 2006

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Now comes the People of the State of Illinois, by and through their attorney, Richard A. Devine, State's Attorney of Cook County, through his assistant, John Haskins, and respectfully moves this Honorable Court to dismiss the petition for post-conviction relief for the following reasons:

1. The respondent incorporates the original motion to dismiss into this response.

2. In the Amended Post-Conviction Petition, the petitioner argues ineffective assistance of trial and appellate counsel's. This allegation is based on hindsight rather than counsel's perspective at the time of counsel's conduct. Petitioner's argument is based on the erroneous assumption that based on the victim Nora Elston's direct examination, the State would be unable to prove the crime of burglary.

3. The petitioner's trial attorney Dennis Sherman was aware that the petitioner Charles Daniels had given an incriminating statement to police detective James Carlassare on the evening of February 12, 2000. At the time that Mr. Sherman cross-

1

examined Ms. Elston he was aware that his client had made that incriminating statement to the police concerning the crime. This was definitely a matter of trial strategy not subject to judicial review in post-conviction cases.

4. The factual scenario in the appellate opinion, (Respondent's Exhibit 1, in the original Motion To Dismiss), is more accurate and less biased than the Petitioner's statement of facts which is self-serving.

5. In the Amended Petition the petitioner alleged that his appellate counsel was ineffective where he filed a brief in which he argued that the burglary conviction must be reversed because there was insufficient evidence for the trial court to find beyond reasonable doubt that defendant entered and burglarized the "common areas" of the apartment building.

The petitioner further alleges the acts and omissions of appellate counsel prejudiced defendant because, but for trial consul's errors, defendant was plausibly looking at a directed verdict on the sole count of the indictment, burglary of Nora Elston's home.

In presenting this argument petitioner ignores the fact that he himself had made an incriminating statement to the detective after receiving the Miranda warnings on the evening the crime was committed.

Dennis Sherman was cross-examining the victim Ms. Elston because he felt it necessary to attack her credibility.

2

On pg. 5 of the Appellate Court opinion <u>People v. Daniels</u>, No. 1-02-2905, the Appellate Court held:

> "Here, Elston testified that she saw defendant enter and, after three minutes in the hallway, leave her building. Combined with the facts that he later entered the vacant unit and removed Elston's property and the Elston did not grant him permission to be in the building, a reasonable person could conclude that defendant entered a non-dwelling portion of the building without authority and with the intent to commit theft."
> As in <u>Maskell</u> the evidence is clear that defendant made two unauthorized entries with intent to steal: into Elston's building and into the vacant unit. <u>Maskell</u> 304 Ill. App. 3rd at 84.

This issue is res judicata.

Since the petitioner's trial attorney was not ineffective but exercising trial tactics he was not ineffective pursuant to <u>Barfield</u> 187 Ill. App. 3d 190, 543 N.E. 2 812 (1989).

Appellate counsel was not ineffective for not raising ineffective assistance of trial counsel, since the trial counsel was not ineffective.

6.    In the case supplemental report, Detective James Carlasse star No. 21210 stated that on February 12, 2000 he interviewed the petitioner. After reading the petitioner his constitutional rights, the petitioner related he wanted to proceed with the interview. When the petitioner was asked how he gained entrance to the building, Charles Daniels told the detective that the front door was unlocked.

This entrance would have placed petitioner in the common area of the building where the burglary occurred.

Peoples Exhibit One – Case Supplemental Report July 9, 2002

WHEREFORE, the respondent prays that an order be entered by this Honorable Court, in dismissing the Post-Conviction Petition.

Respectfully submitted

RICHARD A. DEVINE
State's Attorney of Cook County, IL

By:  _____

John Haskins
Assistant State's Attorney

4

STATE OF ILLINOIS    )
                          ) SS:
COUNTY OF C O K    )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE      )
STATE OF ILLINOIS,     )
                     )
      Plaintiff,    )
                     )
  vs.               )    No. 99 CR 9919
                     )       00 CR 7104
CHARLES DANIELS,      )
                     )
      Defendant.    )

REPORT OF PROCEEDINGS of the hearing of the above-entitled cause, before the Honorable THOMAS DAVY, one of the Judges of said District, on the 16th day of July, 2002.

APPEARANCES:

    HON. RICHARD A. DEVINE,
    State's Attorney of Cook County, by:
    MR. EDWARD RONKOWSKI,
    Assistant State's Attorney,
        appeared for the People;

    MR. DENNIS SHERMAN,
        appeared for the Defendant.

THOMAS E. LIEF, CSR #084-000501
Official Court Reporter
10220 S. 76th Avenue
Bridgeview, Il.  60455

1          THE COURT:   Charles Daniels.

2                   (The following proceedings

3                   were had in the presence

4                   of the defendant:)

5          THE COURT:   All right. This is a commenced and

6     continued matter.  Both sides are ready to resume at

7     this time.

8          MR. RONKOWSKI:  I'd like to call Detective

9     Carlasasare.

10         MR. SHERMAN:  Prior to calling the detective,

11    Judge, I would advise the Court that just -- I did

12    receive discovery, additional discovery, if I may

13    just get it -- actually when I went to talk to the

14    defendant I gave it to him.

15                (Short pause.)

16         MR. SHERMAN: Judge, on July the 9th I was faxed

17    a copy of a police report that had been made on July

18    10th, years 2000, first notice that I had been

19    given.   We have been asking for a police report, as

20    you can see the case is two years old already and

21    this matter's on trial.  State has advised me,

22    however, that they are only going to introduce

23    testimony that was available on the felony review

24    notes as to the statement of the defendant.

1           I certainly don't believe that Mr.

2    Ronkowski in any way, shape or form hid this,

3    knowing Mr. Ronkowski, and even though I know he is

4    a wealthy man with certain problems, Judge, he's

5    still a State's Attorney and I know that he would

6    not secrete this.  It just seems to me there's

7    something going on that I can't get a police report

8    two years -- for two years until finally when the

9    officer's getting ready to testify I get a copy of

10   his police report.

11        THE COURT:   The Record should not, if the case

12   goes up on appeal, that the comment as to Mr.

13   Ronkowski's wealth were made tongue in cheek.

14        MR. SHERMAN:   Sorry, I shouldn't say anything

15   about him being wealthy, that's not right.

16        THE COURT:   On the cold Record it might look

17   like something, the comments about his wealth --

18        MR. RONKOWSKI:   It's somewhat inaccurate

19   because the way the State's Attorney pays me, I have

20   no personal wealth in income.

21        THE COURT:   Mr. Ronkowski --

22        MR. RONKOWSKI:   If I can respond with less

23   editorializing --

24        THE COURT:   Yes.

X-3

1          MR. RONKOWSKI:    (Continuing) -- on the

2     arraignment date counsel was given a copy of the

3     felony review notes.  Within an hour of me receiving

4     the detective sup that both of us wanted on the last

5     date, I faxed it to counsel, which fleshed out other

6     areas which the detective did.  All I'm seeking to

7     do is question the detective concerning his

8     conversations with the defendant.

9               Counsel has both the felony review notes

10    that shows sum and substance the conversation and

11    now the detective sup.  So while he may be surprised

12    at some of the other stuff, there should be no

13    surprise as to the defendant's statement.

14               Ask to proceed accordingly.

15         THE COURT:    And as far as you described it,

16    "the other stuff," you are not going into that, is

17    that correct?

18         MR. RONKOWSKI:    No.  If counsel wants to go

19    into it, he's free to --

20         THE COURT:    No, you, Mr. Ronkowski.

21         MR. RONKOWSKI:    No.

22         THE COURT:    Are you going to go into it on

23    direct?

24         MR. RONKOWSKI:    No.

                              X-4

1          THE COURT:    Thank you.    And I suppose that in

2     an intellectual exercise, any idea why the detective

3     supplement was, 2000 case, was not received until

4     the middle of 2002?

5          MR. RONKOWSKI:    It was ordered up the day after

6     the arraignment and for some reason we never got it,

7     and with the delay involved with the defendant's BCX

8     we did not catch the mistake, either side, until

9     after the trial had started.    My culpability.

10          THE COURT:    With the representation by the

11     State they will not go into "other stuff," in

12     parenthesis, does that resolve the issue?

13          MR. SHERMAN:    Sup being a very generic term,

14     Judge, yeah, until we find out that there is

15     anything of "that stuff" that gets in, we would

16     include the objection.

17          THE COURT:    Very well.    State may proceed.

18                    (Witness sworn.)

19          THE COURT:    You may proceed, Mr. Ronkowski.

20          MR. RONKOWSKI:    Thank you.

21                    DETECTIVE JAMES CARLASSARE,

22     called as a witness on behalf of the People, having

23     been first duly sworn, was examined and testified

24     as follows:

X-5

STATE OF ILLINOIS )
COUNTY OF CHRISTIAN)

## A F F I D A V I T

I, **CHARLES DANIELS, N-63102,** hereby declare under penalty of perjury that the
following information is true and correct based on my personal knowledge and that
I am competent to testify thereto if called on as a witness. Further affainth states:

That I am the petitioner- defendant in the collateral attack-- cause# 00 CR-07104,
a post-conviction petition filed under the provisions of the Post-Conviction Hearing
Act, **725 ILCS 5/122-1,** at the Bridgeview courthouse, before the Honorable Judge
**Thomas Davy,** having been previously represented by Attorney DAVID H. **Norris**
407 So. Dearborn St., Chicago, Illinois, due herein state and declare that due to
the **UNTIMELY DEATH** of Attorney DAVID H. NORRIS, that I be allowed to proceed.
Since, there is no Constitutional right to counsel other than that which is
provided by the Post Conviction Hearing Act, or at the discretion of this trial
court Judge, the petitioner Charles Daniels, fully cognizant of the ramifications
and potential legal pitfalls attenauted thereto, moves that his reply brief and
responses attached and filed herein, to the State's filing's to dismiss his post
conviction petition be ENTERED in the record, reviewed and that afterwards this
Honorable Court decided whether the defendant-petitioner has made the necessary
" showing " of Constitutional depravations sufficient to warrant further proceedings
into those issues.

Petitioner-Affianth Daniels, also states that the **Illinois Supreme Court** has
long allowed criminal defendant's their right to proceed **PRO SE** in post appeals in
filing petitions. See, **People v. Southwood,** 49 Ill.2d228, 274 NE 2d 41;
**People v. Harrison,** 46 Ill.2d 159,263 NE 2d 87 (1970);also see, **People v. Korcycki**
45 Ill.2d 87, 256 NE 2d 798.
Additionally, both the **Illinois Supreme Court Rule 607(a) and Section 121-13(a)
Code of Criminal** procedures contemplates pro se filing's of brief & motions.
Finally, affiant prays that this Honorable Court after review of his attached
replies to the State's contentions and argument, will make a favorable ruling that
he has shown violations **of DUE PROCESS** and ineffective assistance of counsel and
allow this case to proceed according to the provisions of the Post-conviction ACT.

SIGNED BEFORE ME THIS 19th DAY OF

APRIL 2006

_____                          _____
NOTARY PUBLIC                                      **CHARLES DANIELS**
                                                   **N-63102**
"OFFICIAL SEAL"                                    **TAYLORVILLE CORR.CENTER**
Lana Wildman                                       **P.O. BOX 900**
Notary Public, State of Illinois                   **TAYLORVILLE, ILLINOIS**
My Commission Exp. 04/27/2008                                        **62568**
                                                   **217-824-4004**

STATE OF ILLINOIS )
COUNTY OF KNOX )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT   - CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )

Plaintiff-Respondent )     Case # 00 CR 7104

vs. )
                                     HONORABLE THOMAS DAVY

CHARLES DANIELS, )     Judge Presiding.

Defendant-Petitioner )

---

## DEFENDANT'S REPLY   TO RESPONDENT'S MOTION TO
## DISMISS PETITION FOR POST-CONVICTION RELIEF

NOW COMES, CHARLES DANIELS, pro se, Defendant-Petitioner and
moves this Honorable Court to DENY the respondent's motion to dismiss
his petition for post-conviction relief, for the following reasons:

1. Petitioner admits this allegation as true.

2. Petitioner can neither admit or deny as there is no #2

3. Petitioner denies this allegation as set forth, it is
speculative, conclusory and unsupported by the trial record that
" most of the allegations are barred by the doctrines of **res judicata**,
and waiver." As shall be fully explicated, petitioner maintains
that his issues raised have not been **adjudicated on Direct appeal**
and any contention that his Issues are " like" or " similar " is
not the **same**, unless the issue has been **actually decided** by the
reviewing Court, as held by the **Supreme Court of Illinois** decision
**People v. Harris**, 276 Ill.Dec.419,794 N.E.2d 314, **with** regard to
**res judicata** matters under consideration.

**People v. Towns**, 182 Ill.2d at 502,231 Ill.Dec.557,696 N.E.2d 1128



Additionally, when new facts come to life or when counsel
failed to raise those argument at a previous stage, such claims
are not barred by **res judicata.**
**Statler v. Catalaho,** 293 Ill.App.3d 483,487,691 N.E.3d 384, citing
**City of Des Plaines v. The Metropolitan Sanitary Dist. Chicago,**
16 Ill.App.3d 23,24-25,305 N.E.2d 639 (1st Dist.1973)
However, the doctine of waiver is relaxed where the alleged
waiver stems from the incompetence of appellate counsel.
**People v. Mahaffey,** 194 Ill.2d 154,171,252 Ill.Dec 1,742 NE 2 1304
**People v. Whitehead,** 169 Ill 2d 355,371,215 Ill.Dec.164,662 NE 1304

### CONTENTION

Petitioner Daniels, maintains that prior to **May 12 2003,**and
the Filing deadline for his direct appeal petition, Appellate counsel
had obtained an extension of time because of **"conflict " attempting**
to reconcile the perfunctory draft copy that had been submitted.
Petitioner asserted that appellate counsel was incompetent in his
failure to raise during appellate review, trial counsel's conceding
his client's guilt through" supplying an otherwise missing material
element of the criminal offense" which subsequently ushered the
conviction, albeit assisting the State prove its case. Furthermore,
petitioner challenged why appellate counsel was not raising a basic
**DUE PROCESS** argument regarding the absence of "proof" towards
satisfying the criminal offense charged, specifically the part of the
statute " permission or authority "

Attached are exhibits of counsel's misapprehension of the
Appellate Court ORDER and also his reasoning for having excluded
on direct appeal or during a petition for Re-heaing the claims
that are now included within the petitioner's instant petition
for post-conviction relief.

On Direct appeal counsel argued that the State had not met

its burden in proving Defendant guilty beyond a reasonable doubt.

Such an argument, strictly speaking, is an attack on whether the

State proved all of the essential elements of the offense.

**However**, appellate counsel never made the argument with respect to

the **"without authority "** element of the offense of burglary.

Appellate counsel was unreasonable in failing to realize the **Obvious**

issue, that the State had not proven the essential elements of the

offense of burglary · of the " common area" of the building, but

rather residential burglary, which was never charged.**(R.176-179)**

Defendant was charged with burglary of the common area of the building.

Burglary has several essential elements, for purposes of this

argument herein, the relevant element is that the entry into the

building **must be " without authority." See , 720 ILCS 5/19-1(West 200 )**

**People v. Meeker**, 86 Ill.App.3d 162,407 N.E.2d 1058

( conviction  reversed because the evidence failed to prove **entry**
  **was unauthorized.**There was no testimony limiting the defendant's
  authority to enter.)

**People v. Baker**, 59 Ill.App.3d 100,375 N.E.2d 176

( holding the fact of any **unauthorized** entry must be proven
  **separately** from the fact of any entry with wrongful intent.)

**BUNKLEY v.FLORIDA,** 538 U.S.835,123 S.Ct.2020,15 5 L.Ed 1046 **(2003)**

( where **Supreme Court of United States**, held that a state court
  erred in failing to have decided in a burglary conviction,
  whether **all** the elements of the offense had been met, in denial
  of a post-conviction relief petition.)  [emphasis supplied]

## ARGUMENT

The petitioner maintains in support of denial of the State's

request to dismiss, that the State Attorney **never asked** Mrs. Elston

if anybody had authority to be in the " common areas" of her building.

The State never asked if anybody had authority to enter those

premises or to remain there. Rather the State asked the question

about **"permission or authority "**  to enter during direct examination

-3-

with respect to the vacant apartment.( R.124)  This as a matter
of Illinois statutory law of Burglary offense at the time of this
offense, was insufficient to prove defendant guilty of burglary
of another area of the building. **Childress**, **633 NE 2d 635,158 IL 2d 275**

The trial court was clear in its finding of fact. The Court
found that Defendant made two separate unauthorized entries, **one**
into the apartment building and the other into the vacant apartment.
( R.177-79)  The residential burglary to the apartment was never
charged. ( R.176-179), so it stands that the testimony regarding
**"without authority or permission "** as to the vacant apartment is
irrelevant to the offense of Simple burglary to the "common areas".

The Court saw fit to divide the building into different sections
in its finding of fact. If the State decided to only charge Defendant
with entry into one of those areas(the "common areas"),then the
State was required as a matter of **DUE PROCESS** of State & Federal law
under **14th U.S.C.A. Amend**, to prove all the essential elements of
the offense with respect to that charged area.
**Jackson v. Virginia**, 443 U.S.307,316,99 S.Ct.2781
**People v. Bowman**,293 Ill.Dec.181,827 N.E.2d 1062

Had the trier of fact been aware of the absence of Evidence
in this matter, and that the State had failed to prove all essential
elements of the offense of burglary to the "common-area", there is
a reasonable probability that the outcome of the trial would have
been different. Viewed in its entirety and context the trial record
is devoid of legal sufficiency under due process,and any effort to
afford the petitioner opportunity to demonstrate this **insufficiency**
should be denied. For that reason, both trial & appellate counsel were
ineffective in failing to argue this at trial and on direct appeal,
respectively.

-4-

4. Petitioner asserts as follows regarding the **Strickland v. Washington**,
standard evaluating ineffective assistance under the **U.S.SUPRME COURT**
holding( 1984),466 U.S.668,686,80 L.ED.2d 674,104 S.Ct.2052,2064,
that the analysis does involve a two step inquiry. Also that an
accused has a due process right to the effective assistance of counsel
in a criminal prosecution.**People v. Albanes**e, **104** Ill.2d 504,473
N.E.2d 1246, 1255(1984) (adopting **Strickland standard**);**People v.
Perez**, 148 Ill.2d 168,186, 592 N.E.2d 984 (1992)
The purpose of the post-conviction proceeding is to permit inquiry
into constitutional issues involved in the conviction and sentence
that were not, and in some cases could not have been, adjudicated
previously on direct appeal. **People v. Haynes**, 192 Ill.2d 437, 464,
737 N.E.2d 169(2000). A claim that could have been presented on direct
appeal, but was not, is waived. **Haynes**, 192 Ill.2d at 465. By **contrast**
where the facts relating to the claim appear in the record but
appellate counsel neglected to raise them, the application of the
waiver doctrine has been relaxed. **People v. Mahaffey**, 194 Ill.2d 154,
170, 742 N.E.2d 251 (2000).

In this case, the claims raised in the post-conviction petition
are based on **facts which were of record at the time of the direct
appeal.** Because Defendant's appellate counsel failed to raise,
or **even consider**, these arguments in the direct appeal( see appendix),
appellate counsel was likewise constitutionally ineffective. **Ergo,**
the claims raised in Defendant's petition are neither barred by waiver
nor res judicata.

-5-

In order to demonstrate ineffectiveness of appellate counsel,
a defendant must show that counsel's decision not to raise an issue
was objectively unreasonable and that a reasonable probability
exists that the defendant would have been granted relief had the
issue been raised. People v. Caballero,126 Ill.2d 248,533 NE 2d
1089,1096 (1989) (applying ineffectiveness test set forth in
Strickland to appellate representation).

   In the present case, Defendant's appellate counsel on direct
appeal filed a brief which argued: 1) the burglary conviction must
be reversed because there was insufficient evidence for the trial
court to find beyond a reasonable doubt that defendant entered
and burglarized the " common areas" of the apartment building;
Additionally, counsel raised issue regarding the " mutual exclusive "
distinctions of burglary & residential burglary at the time the
offense in this case was committed, and a irrelevant Apprendi v.
New Jersey, issue.

### ARGUMENT

   The acts and omissions of appellate counsel prejudiced Defendant
because but for trial counsel's errors Defendant was plausibly
looking at a directed verdict on the sole count of the indictment
burglary of Nora Elston's home. At least that was the case until
trial counsel elicted harmful testimony which helped the State
prove essential elements of its case. On direct appeal, appellate
counsel would have had a better chance to obtain relief for Defendant.
Now, because appellate counsel declined to raise this issue, Defendant
must attempt to get relief through the post-conviction process.
The issue Defendant now raised was clearly found in the Record.

[ R. 115-125]

6

During trial, the State failed to elicit any testimony regarding Defendant's alleged entry into the "common areas" of the apartment building. (R.115-125) Mrs. Elston's direct examination testimony is only approximately 10 pages in length. There is nothing contained in that brief examination which supports the notion that Defendant entered into the hallway or any other "common area " of the building. Mrs. Elston heard him ring the bell on the front porch and " fumble[ ] with the mailbox" but that is all(R.118) According to the direct examination, Mrs. Elston never heard or saw anybody in the hallway or "common areas " of the building past the mailboxes. (R.118-119) Mrs. Elston called the police but the individual was **gone** before the police arrived. (R.119)  On the way to get her mail after the police left, Mrs. Elston heard some plastic bags rattling in the apartment across from hers which she knew to be vacant.(R.119) Later, from her apartment window she saw the same individual as earlier walk down her front walk way and leave her property. ( R.120)  That is all that was contained in the relevant portions of Mrs. Elston's testimony on direct examination.

To be sure, defense counsel was able to clear up Mrs.Elston's somewhat muddled testimony on cross-examination. Through cross-exam, Mrs.Elston was actually looking out a window when she saw the man walk up the front walkway and onto the porch before she heard the noise at the mailboxes.(R.126) Mrs. Elston, was clear that she **never** heard him come up the stairs, and thereby, enter the hallway outside of her adjacent first-floor apartment door.( R.127-128)

-7-

Then counsel elicited the following damaging testimony:
* * * * *

Q: How long would you say he was in the **HALLWAY** of your
   building?

A: I'd say three minutes.

Q: Thirty minutes?

A: Three minutes.

**(R.128; emphasis supplied )**


This testimony is prejudicial and irreparably damaging in
several ways. **First,** Mrs. Elston **never** said that Defendant was in
the hallway of her building. The Record is devoid of any such
testimony **prior** to defense counsel's question cited above. This
arguably puts Defendant past the security door by the mailboxes
and in the " common areas" of the building. This line of questioning
incidentally, directly contradicts Mrs. Elston's testimony on direct
examination where she never stated that she saw or heard anybody
in the actual hallway of the apartment building.(R.118-119)
**Second,** it undercuts the other portions of the cross-examination
testimony of Mrs. Elston where she states, clearly and unequivocally
that the doors to the vacant apartment were locked and that Defendant
must have come in through an open window. (See e.g. " one of them
had to be open for him to get in" ) ( R.135-136)

This issue of the lock on the doors of the vacant apartment
inures to the benefit of Defendant. The vacant apartment had a lock
on the front door. (R.135 )  When the police arrived the first time
they checked the front and back door to the vacant apartment and
both doors were locked.(R.137)  As for the window in the vacant
apartment, they were all shut but not all locked.( R.136)

-8-



How do we know this? Because Elston testified that " one of them [the windows] had to be open for him to come in."(R.136) And, incidentally, when police arrived the second time, the vacant apartment doors were still locked.(R.136)  The testimony of the complaining witness was clear: whoever burglarized her vacant apartment must have come through the window. This would mean, by necessity, that the burglar circumvented the "common-area" of the building.

Based on this evidence it is unclear how this Honorable Court could have convicted Defendant of burglary of the "common-area" of the building where the State's complaining witness clearly testified that she believed the Defendant came into the apartment through an open window----thus never even stepping foot in the " common areas."  That said, the **ONLY TESTIMONY** at all regarding the " Common-areas" **was elicited by defense counsel NOT** by the State.

> **The damaging testimony elicited by defense counsel in**
> **this case was relevant to the State's case and was**
> **non-cumulative to other testimony elicited on direct exam.**

Contrary to what the State argue's in this petition to dismiss, this testimony elicited by defense counsel was not cumulative or a trial tactic against the State's case. " Claiming evidence is cumulative involves a determination that such evidence adds nothing to what is already before the jury." People v. Molstad, 101 Ill.2d 128,135, 461 N.E.2d 398 (1984).  Defense counsel should have simply highlighted the fact that the state could not have proven Defendant guilty of a burglary of the "common areas " of the building based only on the direct examination of the complaining witness.  A conviction for burglary to the "common areas" was simply not possible based on Mrs. Elston's direct examination. Mrs Elston did

not see or hear the Defendant in the hallway or anywhere beyond the mailboxes.
Even when she heard the plastic bags rustling in the vacant apartment, Mrs. Elston
still could not **see** who it was that was inside. The inference that Defendant was
inside the apartment came from the fact that he had her belongings after she saw the
defendant walk down the sidewalk.   It is **HOW** the defendant came to *be* in the vacant
apartment that is now at issue before this Honorable Court.   Since no evidence was
offered to that end in the direct examination of Mrs. Elston, the testimony elicited
by defense counsel Sherman on cross-examination, that damaged the defendant's
chance of a acquittal, could not have been **cumulative or tactical.**

In fact, the State asks this Honorable Court to contemplate that it was
trial strategy to ask the line of questions which elicited the **irreparable inculpatory**
testimony within its motion(St. brief @ pgs. 3-4, Motion to Dismiss petition)
This is a **specious argument.  Webster Dictionary** defines " strategy " as a
" careful plan or stratagem"; the art of devising or employing plans or stratagems
towards a goal." **Webster 9th Collegiate Dictionary** @ **pg. 1165.**
The Hallmark of a trial strategy would be to obtain some sort of relief or goal for
a defendant.  And what was the goal in this case on the part of defense counsel
Dennis Sherman?  Was it assisting the State prosecutor to prove the missing and
essential elements of its case against his client?  In truth, there could have
been no viable strategy for defense counsel to have elicited the " common-area"
testimony, that placed his client in a area that previously had not been stated
his having been or established by the State. The same hold true equally for Appellate
counsel for failing to have raised this clearly viable issue on direct appeal,
when  it would have been easier to do.  In short, Appellate counsel did not argue
the fact that trial counsel assisted the State in proving its case against the
defendant, which was a objectively unreasonable oversight that prejudiced Defendant
Daniels.  Because this omission prejudiced Mr. Daniels, the **STRICKLAND test is
satisified.** See for Example the First District Appellate Court holding in:
**People v. Jackson,** 251 Ill.Dec.848,741 N.E.2d 1026 (2000), (where counsel held to
be ineffective through his supplying a missing and otherwise unnproven material and
essential element of the State's case through his cross-examination.)

5. Petitioner admits as true.

6. Petitioner admits as true.

7. Petitioner admits as true.

8. Petitioner denies this allegation and assertion as explicated
herein, and believes that appellate counsel's failure to raise
an obvious issue regarding the absence of essential and material
elements being proven by the State during the trial along with
a trial attorney supplying an otherwise missing material element
of the criminal offense his client is charged with having comitted
that was not cumulative, are both issues sufficient to meet the
Ineffective assistance prejudice prong of Strickland test enunciated.

**WHEREFORE**, the petitioner prays that the respondent's motion
to dismiss the post-conviction petition seeking relief be denied,
and that this matter proceed consistent with the Post-Conviction
Hearing Act, that a Evidentiary hearing be set, and that writ
Ad Testificandum be issued for the petitioner to attend.

Respectfully submitted,

*Charles Daniels*

Charles Daniels N-63102

Nos. 1-06-2583 and 1-06-2769 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 7104. |
| | ) | |
| **CHARLES DANIELS,** | ) | Honorable |
| | ) | Thomas M. Davy, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## MOTION TO WITHDRAW AS COUNSEL ON APPEAL PURSUANT TO *PENNSYLVANIA V. FINLEY*

The Office of the State Appellate Defender, by Michael J. Pelletier, Deputy Defender, and Tiffany Green, Assistant Appellate Defender, moves for leave to withdraw as counsel for Appellant, Charles Daniels, in this cause.

In support of this motion Tiffany Green, Assistant Appellate Defender, states:

1.     Petitioner-Appellant, Charles Daniels, was sentenced to eight years in prison for burglary on July 30, 2002.  Appellant is currently incarcerated.  His conviction and sentence were affirmed on direct appeal in appellate court number 1-02-2905. (Unpublished order, December 22, 2003).

2.     On December 17, 2004, Petitioner-Appellant filed a petition for post-conviction relief, at which time the court appointed counsel to represent Charles Daniels.  The amended petition was denied by the Circuit Court on August 11, 2006.

3.     Notice of appeal was filed on August 21, 2006.  The Office of the State Appellate

EXHIBIT J

Defender was appointed on August 25, 2006.

4.    After an examination of the record on appeal, and after discussing the case with another attorney in the office who also read the record on appeal, counsel has concluded that an appeal in this cause would be frivolous. Counsel has informed petitioner of this conclusion and that counsel intends to file the motion to withdraw. Therefore, counsel hereby moves to withdraw as counsel on appeal pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). A memorandum supporting this motion is attached.

WHEREFORE, the Office of the State Appellate Defender respectfully moves to withdraw as counsel on appeal in this cause.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

TIFFANY GREEN
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

STATE OF ILLINOIS )
                  )  SS
COUNTY OF COOK    )

## AFFIDAVIT

Tiffany Green, being first duly sworn on oath, deposes and says that she has read the foregoing Motion by her subscribed and the facts stated therein are true and correct to the best of her knowledge and belief.

_____
TIFFANY GREEN
Assistant Appellate Defender

SUBSCRIBED AND SWORN TO BEFORE ME
on April 16, 2007.

_____
NOTARY PUBLIC

Official Seal
Dora Eason
Notary Public State of Illinois
My Commission Expires 06/14/2010

Nos. 1-06-2583 and 1-06-2769 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 7104. |
| | ) | |
| CHARLES DANIELS, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO WITHDRAW AS COUNSEL ON APPEAL

### I.

### STATEMENT OF FACTS

**_Trial Proceedings_**

Charles Daniels, Petitioner-Appellant, was charged by information with burglary based on allegations that on February 12, 2000, he entered a building, located at 8234 South Eberhart, in Chicago, which was the property of Nora Elston, with the intent to commit a theft. (TR. C. 25)[1]

---

[1] The record in this case consists of the trial record: the common law record ("TR. C."), the report of proceedings ("TR. R."), and one supplemental volume ("TR. SR."). Additionally, there are three volumes from appeal number 06-2583: a common law record ("C.") and two supplemental volumes ("SRI." and "SRII."). The record in appeal number 06-2769 consists of a common law record ("CII."), a report of proceedings, ("R."), and a supplemental volume ("SRIII."). Appeal numbers 06-3583 and 06-2769 were consolidated by this Court on October 16, 2006. (SR.III 35)

At trial, Nora Elston testified that she owned the six-flat apartment building located at 8232 and 8234 South Eberhart, and that she lived in one of the first-floor apartment units in February 2000. (TR. R. 116)  The other first-floor apartment unit, which was directly across the hall from her apartment, was vacant at the time. (TR. R. 117) Elston planned to rent the apartment again, but in the meantime, was storing some of her belongings in there. (TR. R. 117, 126)

On the afternoon of the incident, Elston was at home in her apartment. (TR. R. 118) She looked out her living room window and saw a man walk up the street and turn into her walkway. (TR. R. 118) She could hear the person ringing the buzzer to the vacant unit, and then she heard him "fumbling" with the mailbox. (TR. R. 118) Elston called the police. (TR. R. 119) She watched the individual then come out of the building, and when the police arrived, Elston told them that the person had left. (TR. R. 119) The police officers looked around the building, and checked the back door to the vacant apartment unit, which was still locked. (TR. R. 137)

After the police left, Elston decided to get her mail, and when she walked out of her apartment, she could hear someone inside the vacant unit. (TR. R. 119) She could tell someone was in the apartment because she could hear plastic bags "rattling" around. (TR. R. 119) Elston called the police a second time, and told them that the individual was inside the vacant apartment. (TR. R. 120) While Elston was waiting for the police to arrive a second time, she saw this person leave her building again. (TR. R. 120) He was carrying some of the plastic bags she had stored in the vacant unit. (TR. R. 121)  Elston speculated that the individual had entered the vacant unit through a window that she had left unlocked, because the front and back doors to the vacant unit had been locked. (TR. R. 136)

Elston decided to follow this person so she could tell police where he went. (TR. R. 121-

2

22) She followed him as he went westward in the alley carrying her belongings. (TR. R. 122) The person turned and went north, and when she got to the corner, she saw him standing on the street, but he no longer had her bags with him. (TR. R. 131)

Elston returned home to wait for the police. (TR. R. 122) When the police arrived, Elston drove with them in the squad car down the same alley until they saw the individual about a block away. (TR. R. 123) Elston identified the individual, Charles Daniels, as the person she had seen enter and exit her building. (TR. R. 124) Daniels was not carrying her bags when the police stopped him, but after talking to police, he walked away and retrieved the bags from an area that Elston could not see. (TR. R. 134-35) She identified the bags and the contents, which included tapes, a radio, and clothing, as hers. (TR. R. 124) Elston also identified Charles Daniels in court. (TR. R. 125) She testified that she had not given him permission to enter the vacant apartment or to remove her property. (TR. R. 125)

On cross-examination, Elston clarified that after hearing this person, Daniels, at the mailbox initially, she did not hear him come up the stairs. (TR. R. 128) Rather, she saw him exit the building. (TR. R. 128) Defense counsel asked Elston how long this person was in the "hallway," and she said for about three minutes. (TR. R. 128)

Additionally, the State presented the testimony of Officer William Meister, one of the officers who responded to Elston's calls to the police on February 12, 2000. (TR. R. 156) Upon arriving at Elston's building the first time, Meister and his partner checked the yard and the back door to the apartment unit, which was still locked, and because they did not see anyone, the officers left. (TR. R. 157) About five minutes later, the officers received a call to return, so Meister returned to the building and met with Elston again. (TR. R. 158) They drove with her in the squad car until the found the defendant, Charles Daniels, exit a gangway at 8240 Burnham.

3

(TR. R. 159-60)  In the gangway, Meister found two large bags and a duffle bag containing clothing, CDs, and a radio, which Elston identified as hers. (TR. R. 160-61)

Detective James Carlassare further testified that he interviewed Charles Daniels on February 12, 2000, at 6:30 p.m., and that Daniels said that he knew he was in a lot of trouble, that he should not have gone into the apartment, and that he was receiving help for his problem. (TR. R. 154)

Defense counsel's motion for a directed finding was denied. (TR. R. 166)  The defense did not present any evidence, and defense counsel waived closing argument. (TR. R. 166)  The court found Charles Daniels guilty of burglary. (TR. R. 166-67)

Defense counsel filed a motion for a new trial, arguing that the State had proven that defendant committed a residential burglary, rather than burglary, and that the two were separate offenses. (TR. R. 171)  The trial court rejected defense counsel's argument, reasoning that under *People v. Maskell*, 320 Ill.App.3d 877 (2nd Dist. 1999), defendant's entry into a common area of the building was sufficient to sustain the charge of burglary, and noted that Elston had testified that she heard defendant at the mailboxes, which were in a common area of the apartment, and through that area, defendant entered a particular apartment. (TR. R. 177-78)  The court imposed a sentence of 8 years. (TR. SR. 22)[2]

### *Direct Appeal*

Charles Daniels filed a direct appeal, arguing that the State did not prove him guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he entered a common area of the apartment building. (C. 64)  Daniels argued that the evidence showed that

---

[2] Based on his prior convictions, the Court was required to sentence Daniels as a Class X offender. (TR. C. 36); 730 ILCS 5/5-5-3(c)(8)(West 2000).

4

the unauthorized entry was to a dwelling place, constituting residential burglary, rather than burglary, and that the two offenses were mutually exclusive at the time of the incident. (C. 64) In an unpublished order, the Appellate Court affirmed the conviction, finding that the evidence at Daniels' trial established that Daniels made two distinct entries: one into and out of the building, and then another into the vacant unit, forming the basis for two distinct offenses. (C. 69); *People v. Charles Daniels*, (No. 1-02-2905, December 22, 2003). Defendant's petition for leave to appeal was denied on May 26, 2004. *People v. Charles Daniels*, 209 Ill.2d 587, 813 N.E.2d 224 (2004).

### *Post-Conviction Proceedings*

Daniels filed a *pro se* post-conviction petition alleging that trial counsel was ineffective where he elicited an unproven element of the offense of burglary during his cross-examination when the following exchange occurred:

Defense counsel:     How long would you say he [Daniels] was in the hallway of your building?

Elston:     I'd say three minutes.

(TR. R. 128; SRIII. 5-6) Daniels alleged that prior to defense counsel's question, there had been no evidence presented by the State that he had entered into the building in an area that was a non-dwelling part of the building, and that without this evidence elicited by defense counsel, the State could not have proven the offense of burglary. (SRIII. 6)

In his *pro se* post-conviction petition, Daniels further alleged that the indictment was void because it did not specify which entry was the basis for the burglary, because the evidence at trial showed entry into both the vacant apartment unit and into the common areas of the building. (SRIII. 10) Daniels asserted that appellate counsel was ineffective for failing to raise this issue on direct appeal.

Daniels additionally argued in his petition that the "trial court demonstrated partiality by its ruling and advocation that neither the State nor Defense had raised" when the court relied on *People v. Maskell*, 304 Ill. App. 3d 77 (2nd Dist. 1999), which allowed it to infer an essential evidence element of the offense. (SRIII. 13-16)

Additionally Daniels argued that the State and the trial court retroactively applied a statutory amendment, which was effective on June 1, 2001, violating the "[e]x post facto laws, in light of the petitioner's reliance on the law as it existed prior to his irreparable detriment." (SRIII. 18) Defendant argued that at the time of his offense, statutory construction mandated, under *People v. Childress*, 158 Ill.2d 275 (1994), that a building was either a dwelling residence or one which was "unoccupiable to live in," and that the trial court violated the law set forth in *Childress* when, in its ruling, it "parsed out and segregated common areas from dwelling areas." (SRIII. 19)

On December 17, 2004, the trial court docketed Daniels' *pro se* petition and appointed the Public Defender's Office to represent Daniels. (R. B3) On March 18, 2005, attorney David Norris filed an appearance to represent Daniels in post-conviction proceedings. (TR. C2)

On August 23, 2005, Charles Daniels filed a *pro se* amended post-conviction petition asserting, in addition to the other claims previously included in his petition, that his constitutional rights were violated when, during sentencing, the trial court failed to admonish him that he would need to serve a term of mandatory supervised release. (C. 14) The State filed a motion in response to Defendant's *pro se* amended petition, arguing that because Daniels was found guilty following a bench trial, he was not entitled to Rule 402 admonishments before being sentenced. (C. 213) The State argued that Daniels' other claims were barred by the doctrines of waiver and *res judicata*. (C. 209)

On October 26, 2005, counsel filed an amended post-conviction petition asserting that Daniels' trial counsel was ineffective for eliciting testimony about Daniels' entry into the common area of the building, where the State failed to elicit any testimony that Daniels had entered a common area of the apartment building during the direct examination of Nora Elston. (C. 231-234) Counsel cited to the portion of the record that Daniels had cited to in his *pro se* petition in which defense counsel asked Elston "How long would you say he was in the hallway of your building?" (C. 234) In the amended petition, counsel further argued that appellate counsel was ineffective for failing to raise this issue on direct appeal. (C. 230)

Additionally, the amended petition included a claim that trial counsel was ineffective for failing to argue that the State had not proven the "without authority" element of the charge of burglary because Nora Elston was never asked whether Daniels had permission to enter the common areas of the apartment building. (C. 237-38) Rather, Elston was asked only whether Daniels had permission to enter the vacant apartment unit. (C. 238) Counsel argued that appellate counsel was also ineffective for failing to raise this issue on appeal. (C. 240)

The State filed a response to the amended post-conviction petition on January 17, 2006, asserting that trial counsel was aware that Daniels had made an incriminating statement to Detective Carlassare in which Daniels told Carlassare that he gained entrance to the building because the front door was unlocked, which would have placed him in the common areas of the building. (C. 243) The State asserted that trial counsel was aware, at the time he cross-examined Elston, that Daniels had made this statement, and that he cross-examined Elston to attack her credibility. (C. 248) The State attached a copy of the supplemental police report detailing Daniels' statement. (C. 248-49)

Counsel filed a reply to the State's motion in which counsel argued that the supplemental

police report was inadmissible as a matter of law, and that accordingly, it could not be used to support the State's argument. (SRII. 2)  Counsel's Reply to the State's Motion also argued that if the court did choose to rely on the supplemental police report, the report contained inconsistencies with Elston's trial testimony, and that defense counsel was further ineffective for failing to utilize the report to cross-examine Elston. (SRII. 5)

On August 11, 2006, the parties appeared in court for argument.[3]  Following arguments of the parties, the court noted that trial counsel did not have the copy of the supplemental police report at the time he cross-examined Nora Elston. (R. L8; TR. R. 148) However, the court found that defense counsel's cross-examination was not the first time that evidence was elicited that Daniels was in the common areas of the apartment building because Elston testified on direct examination that she saw Daniels leaving the building. (R. L10-11)  The court also found that because Elston testified that she called police when she heard Daniels fumbling with the mailbox, it could be inferred that he did not have permission to be in the building. (R. L10)  For these reasons, the court granted the State's motion to dismiss Daniels' post-conviction petition. (R. L11)  Defendant filed a notice of appeal. (CII. 53)

---

[3] Defendant's original attorney, David Norris, who drafted the counseled petition and response to the State's motion, died on April 1, 2006.  Attorney Kevin Peters entered an appearance on May 26, 2006, and adopted the arguments set forth in the documents filed by David Norris. (R. I4, J3, L2)

II.

## LEGAL ANALYSIS

Counsel has considered raising the following issues on Mr. Daniels' behalf:

(1)  Whether trial counsel was ineffective for eliciting testimony on cross-examination of the complaining witness that Daniels had entered the "hallway" of the apartment building, allowing the trial court to find Daniels guilty of burglary based on his entry into a common area of the apartment building, and whether appellate counsel was ineffective for failing to raise this issue on direct appeal.

(2)  Whether trial counsel was ineffective for failing to argue that the State had not proven that Daniels entered the common areas of the building "without authority," and whether appellate counsel was ineffective for failing to raise the issue on direct appeal.

(3)  Whether post-conviction counsel was ineffective for failing to pursue any of the other issues raised in Daniels' *pro se* post-conviction petition and Daniels' *pro se* amended post-conviction petition.

### Trial Counsel's Cross-Examination of the Complaining Witness

Appellate counsel considered raising trial counsel's ineffectiveness for eliciting

information on cross-examination of the complaining witness, Nora Elston, that Charles Daniels

had entered into a common area of the apartment building. (C. 231-34)  It was Daniels' entry into

the common area of the apartment building, rather than into the vacant apartment unit, which

formed the basis for the trial court's finding of guilty of the offense of burglary. (TR. R. 177-78)

The amended petition asserted that the State failed to elicit any information during the direct

examination of Nora Elston that Daniels had entered a common area of the apartment building,

and that but for defense counsel's questions on cross-examination, the trial court could not have

found Daniels guilty of the offense of burglary. (C. 233)

Charles Daniels was charged with committing the offense of burglary in that on February

12, 2000, he knowingly entered into a building, which was the property of Nora Elston, located at

9

8234 Eberhart, in Chicago, with the intent to commit a theft, in violation of 720 ILCS 5/19-1(a). (TR. C. 25) At the time of the offense, the burglary statute provided that burglary "shall not include the offense of residential burglary as defined in Section 19-3 hereof." 720 ILCS 5/19-1(a) (West 2000).

In *People v. Childress*, 158 Ill. 2d 275, 302, 633 N.E.2d 635 (1994), the Illinois Supreme Court held that the offenses of residential burglary and burglary were mutually exclusive, and that residential burglary could be committed only in dwelling places, while simple burglary could not occur in a dwelling place. At trial, the State's evidence showed that Charles Daniels had entered a vacant apartment unit in a six-flat apartment building owned by Nora Elston and taken some of Elston's belongings she was temporarily storing in the unit. (TR. R. 118-20) A vacant apartment unit is considered a "dwelling place" for purposes of the residential burglary statute. *People v. Silva*, 256 Ill.App.3d 414, 628 N.E.2d 948 (1st Dist. 1993). However, evidence that an accused had entered a common area of an apartment building to take belongings from an individual apartment is sufficient to sustain a burglary conviction. *People v. Maskell*, 304 Ill. App. 3d 77, 84-85, 710 N.E.2d 449 (2nd Dist. 1999). Because Charles Daniels was charged with burglary, rather than residential burglary, trial counsel could be ineffective if it was his cross-examination which elicited the only evidence that Charles Daniels had entered a common area of the apartment building. *See People v. Phillips*, 227 Ill. App. 3d 581, 590, 592 N.E.2d 233, (1st Dist. 1992) (defense counsel ineffective where he elicited hearsay testimony identifying the defendant as the offender during cross-examination of State's witness).

However, a reading of defense counsel's cross-examination, when reviewed in context of the evidence presented during the direct examination and during the entire cross-examination, shows that defense counsel's questions refer to Daniels' entry into the area by the mailboxes,

10

which was evidence the State had already elicited during Elston's direct examination. During

direct examination, Elston testified that while looking out her living room window, she saw

defendant walk up the street and turn into the walkway of her apartment building. (TR. R. 118)

She saw him go into her building. (TR. R. 124) She heard this person ringing the doorbell of the

vacant apartment unit and "fumbling" with the mailboxes. (TR. R. 118) Then he walked out of

the building and Elston thought he was gone. (TR. R. 119) However, when Elston went to get

her mail a few minutes later, she heard him in the vacant apartment unit, which was directly

across from her unit. (TR. R. 119) Elston went back to her apartment, and from there, she saw

him leave the building carrying some of her belongings. (TR. R. 120)

During cross-examination, the following exchange took place:

Defense counsel:     And on the date it just so happened that you were looking out the
                     window and you saw this man, correct?

Elston:              Exactly.

Defense counsel:     Just happenstance, you weren't checking the window or anything?

Elston:              Right.

Defense counsel:     And you said that you saw the man come into the building and you
                     lose sight of him when he comes inside your building, right?

Elston:              Of course.

Defense counsel:     That's when you called the police?

Elston:              When I heard him at the mailbox, yes.

Defense counsel:     At the mail box, which was right after he came into the –

Elston:              Exactly.

\*        \*        \*

11

| | |
|---|---|
| Defense counsel: | And the ten to fifteen minutes [it took the police to arrive], where were you? |
| Elston: | Inside my building. |
| Defense counsel: | At the same spot where you had been in your living room looking out the window? |
| Elston: | Well I didn't stay at the window all the time. |
| Defense counsel: | But you didn't hear this person come up the stairs, did you? |
| Elston: | No. |
| Defense counsel: | You didn't see this person leave out the door? |
| Elston: | Yes, I saw him leave. |
| **Defense counsel:** | **How long would you say he was in the hallway of your building?** |
| **Elston:** | **I'd say three minutes.** |
| **Defense counsel:** | **Thirty minutes?** |
| **Elston:** | **Three minutes.** |

(TR. R. 126-128)(emphasis added).

Daniels asserts in his amended petition, filed by counsel, that when trial counsel asked Elston how long Daniels was in the "hallway of [her] building," "the question arguably put[ ] Defendant past the security door by the mailboxes and in the 'common areas' of the building." (C. 235) A common sense reading of the question, when taken in context of the information elicited on direct examination and during the prior cross-examination questions, dictates that defense counsel used the term "hallway" to refer to the area by the mailboxes. Elston testified she saw defendant enter her building, then heard him ringing the doorbell and "fumbling" with

12

the mailboxes before seeing him exit the building. There was no testimony about a "security door" leading into a separate hallway; all of the testimony was about the common area by the mailboxes. When defense counsel then asked how long defendant was in the "hallway," the only reasonable interpretation of that question is that counsel was referring to the time defendant was by the mailboxes.

Morever, even assuming that defense counsel was referring to an area other than the area by the mailboxes, for example, beyond a security door and into a hallway, the question would not constitute ineffective assistance of counsel because evidence that Daniels had entered the building and was in the area by the mailboxes, elicited by the State on direct examination, would be sufficient evidence of a "common area" to sustain a burglary conviction. Even if the front area of the apartment buildings by the mailboxes was in an area accessible to the public, for example, because the outside door to that area was unlocked, Daniels entry into the area of the building by the mailboxes, with intent to commit a theft, would constitute an entry into the building for purposes of the burglary statute. *People v. Davis*, 54 Ill. App. 3d 517, 522, 369 N.E.2d 1376 (4th Dist. 1977) (finding defendant guilty of burglary where he entered building and went into office through an open door; "the key to the crime is entry into the prohibited space, not whether entry was made by turning a handle, cracking a lock or walking through an open portal... [L]ogic demands that entry into a 'part' of a building through an open doorway with the requisite intent is prohibited under the burglary statute); *See also People v. Blair*, 52 Ill. 2d 371, 374, 288 N.E.2d 399 (1972) (defendant's entry into a carwash, which was a public place with an open entry and exit, was "without authority" for purposes of the burglary statute; authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open); *People v. Shannon*, 28 Ill. App.

3d 873, 882, 329 N.E.2d 399 (1st Dist. 1975) (entry through a loading dock door, which was

open, sufficient entry for purposes of burglary statute).

Daniels does not assert that he had a legitimate purpose for entering the area by the

mailboxes, nor does he deny that he took items from the vacant unit, establishing his intent to

commit a theft as his basis for entering the building. *People v. Johnson*, 28 Ill. 2d 441, 192

N.E.2d 864 (1963). Because he possessed the requisite intent to commit a theft, his entry into the

area of the building by the mailboxes was sufficient to sustain a burglary conviction. *Davis*, 54

Ill. App. 3d at 522; *Blair*, 52 Ill. 2d at 374;. *Shannon*, 28 Ill. App. 3d at 882. Accordingly, even

if Daniels' interpretation of defense counsel's question of Elston, asking how long Daniels was

in the "hallway" referred to a common area "past the security door," there was already sufficient

evidence that defendant entered a common area of the apartment building sufficient to sustain a

conviction for burglary under the statute.

Finally, even if Daniels' initial entry into the area by the mailboxes was not considered an

"entry" for purposes of the burglary statute, the State presented sufficient evidence during

Elston's direct examination that Daniels utilized a common area beyond the mailbox area of the

apartment building in order to effectuate his robbery. On direct examination, Elston testified that

she initially saw defendant enter her building, heard him "fumble" with the mailboxes, and then

leave again. (TR. R. 118-19) A few moments later, Elston heard Daniels in the empty apartment

building, and after she returned to own apartment unit, saw him exit the building carrying her

belongings. (TR. R. 119-21, 123-24) In order to exit through the front door of the apartment

building, Daniels would have needed to carry the items from the vacant unit through the

"hallway" or whatever common area existed outside of the vacant unit. The use of this common

area, upon leaving the vacant unit, is sufficient to sustain a burglary conviction. *Maskell*, 304 Ill.

14

App. 3d at 84-85. Accordingly, even if Daniels entered the vacant unit through an open window, as he asserted in his petition, the State's direct examination of Elston provided sufficient evidence of Daniel's presence in a common area after he entered the vacant unit to support the trial court's finding of guilt for the offense of robbery.

For the above reasons, appellate counsel has concluded that it would be frivolous to argue that trial counsel was ineffective during his cross-examination of Elston, or that appellate counsel was ineffective for failing to raise this non-meritorious issue.

### Sufficient Evidence of Unauthorized Entry into the Apartment Building

Appellate counsel has also considered raising the issue, set forth in the amended post-conviction petition filed by counsel, that defense counsel was ineffective for failing to argue that the State had not proven that Daniels entered the apartment building "without authority," because Nora Elston was asked only if Daniels had permission to be in the vacant unit, and not whether defendant had permission to be in the apartment building itself. (C. 237-38) Elston testified that she saw Daniels enter the apartment building and that when she heard him "fumbling" with the mailboxes, she called the police. (TR. R. 119) By calling the police, Elston demonstrated that Daniels was not authorized to be in her building. Moreover, even absent testimony that Elston had called the police when she heard Daniels by the mailboxes, entry of a protected area under the burglary statute with the intent to commit a theft implies that the entry was without authority. *People v. Bailey*, 188 Ill. App. 3d 278, 284-85, 543 N.E.2d 1338 (5th Dist. 1989).

For this reason, appellate counsel has concluded that she cannot raise an issue based on trial counsel's ineffectiveness for failure to argue that the State did not prove that Daniels entered the building without authority, or that appellate counsel was ineffective for failing to raise this issue on direct appeal.

15

## Post-Conviction Counsel's Ineffectiveness for Failure to Raise Other Claims Asserted in Daniels' *Pro se* Post-Conviction Petition or *Pro se* Amended Post Conviction Petition

Appellate counsel has also considered raising an issue that post-conviction counsel was ineffective for failing to raise other claims asserted in Daniels' *pro se* petition and *pro se* amended petition. However, a review of those claims shows that none of them were meritorious, and that post-conviction counsel was not ineffective for failing to include them in his amended petition.

In his *pro se* petition, Daniels argued that the indictment was void because it did not specify which entry was the basis for the burglary. (SRIII. 11)  Charles Daniels was charged by information with the offense of burglary in that, on or about February 12, 2000:

> he, without authority, knowingly entered into a building, property of Nora Elston, located at 8234 S. Eberhart, in Chicago, Cook County, Illinois, with the intent to commit the offense of theft, therein, in violation of Chapter 720, Act 5 Section 19-1(A)....

(TR. C.25) When an indictment or information is attacked for the first time on appeal, it is sufficient that the indictment or information apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. *People v. Thingvold*, 145 Ill. 2d 441, 448, 584 N.E.2d 89 (1991). In other words, the question on appeal is whether the defect in the information or indictment prejudiced the defendant in preparing his defense. *Id.* at 448.

Here, Daniels first challenges the sufficiency of the charging instrument in his *pro se* petition. In his petition, he argues that the indictment was deficient because it did not specify which entry was the basis for the burglary conviction, and that, therefore, the indictment lacked specificity necessary to bar a subsequent prosecution for the same conduct and denied him notice of the cause and nature of which entry into the building – the entry into the common area or into

the vacant apartment– formed the basis for the burglary conviction. (C. 30-31)  The indictment

specified that Daniels committed the offense of burglary when he, without authority, entered a

Appellate counsel has also considered raising an issue that prior conviction counsel was

building at 8234 S. Eberhart, with the intent to commit a theft. (TR. C. 25)  This count

ineffective for failing to raise other claims asserted in Daniels' pro se petition and any on

adequately sets forth the statutory elements for the offense of burglary so that Daniels was

informed of the offense with which he was charged and enabled him to prepare his defense, and

further, that he is protected against being later prosecuted for the same crime. 720 ILCS 5/19-1(a)

(West 2000); *People v. Gregory*, 59 Ill.2d 111, 114, 319 N.E.2d 483 (1974).

Daniels' argument is based on the fact that the State's evidence proved both an entry into

the vacant apartment and another into the common area of the building. (C. 30-31) However, the

fact that the State's evidence at trial proved that Daniels entered a vacant apartment unit, in

addition to proving that he entered a common area of the building, does not render the

information for the offense of burglary insufficient, so long as Daniels was apprised that the basis

for the charge he was defending against was his entry into the building.  Because the information

adequately informed Daniels of the nature and basis for the charge against him, appellate counsel

has determined that any issue related to this claim would be frivolous.

As support for his argument that the indictment was insufficient, Daniels cites to *People*

*v. Walker*, 61 Ill.App.3d 891, 896, 378 N.E.2d 607  (2nd Dist. 1978), and *People v. Thingvold*,

145 Ill.2d 441, 448, 584 N.E.2d 89 (1991).  In *Walker*, the evidence at trial established that the

defendant entered the home of the victim one time, took her purse, left and then returned a

second time and entered the home with the intent to rape the victim. 61 Ill.App.3d at 894.  The

reviewing court found that because the evidence at trial established two separate and distinct

unauthorized entries into her home – one with the intent to commit a theft and the other with the

intent to commit a rape – there were two separate and distinct burglaries. *Id.* at 896. The

17

indictment for the burglary count alleged that defendant entered the home of the victim with "the intent to commit therein a theft or felony." *Id.* at 894. The reviewing court held that the indictment was defective because it did not specify which entry was the basis for the burglary count. *Id.* at 896.

Unlike *Walker*, there were not multiple entries which could sustain multiple convictions for burglary in Daniels' case. Rather, entry into the building supported a charge of burglary, and entry into the vacant apartment unit supported a charge of residential burglary. *Childress*, 158 Ill. 2d at 302; *Maskell*, 304 Ill. App. 3d at 84-85. Daniels was not charged with residential burglary; the State elected to file an information alleging that Daniels had committed the offense of burglary. Only entry into the building could support a conviction for that charge, and therefore *Walker* is not applicable to Daniels' case.

Daniels' reliance on *People v. Thingvold* is similarly misplaced. In *Thingvold*, 145 Ill.2d 441, 449 (1991), the Court held that the information was deficient because it failed to allege that any of defendant's actions occurred within the requisite period of limitation. However, there is no question about when the alleged offense occurred in Daniels' case, and his reliance on its holding is misplaced.

Daniels also asserted in his *pro se* petition that the trial court violated the law set forth in *People v. Childress*, 158 Ill. 2d 275 (1994) when it distinguished between the portions of the apartment building which were common areas, and those which were dwelling areas. (SRIII. 19) Contrary to Daniels' assertions, nothing in *Childress* prohibited the trial court from finding that Daniels' entrance into the common area of the apartment building was sufficient to sustain a burglary conviction. As detailed above, *Childress* sets forth that burglary and residential burglary are mutually exclusive offenses, and that residential burglary can only take place in a dwelling

place, and that burglary cannot occur in a dwelling place. *Childress*, 158 Ill.2d at 302. Where the evidence at trial showed both an entry into the common area of the apartment building, which Daniels does not assert was a dwelling place, and into an apartment unit, the trial court did not the burglary violate *Childress* by finding sufficient evidence to support a conviction for burglary.

Finally, in his *pro se* amended post-conviction petition, Daniels asserted that his constitutional rights were violated when the trial court failed to admonish him at sentencing that he would need to serve a term of mandatory supervised release, citing to *People v. Day*, 311 Ill. App. 3d 271, 724 N.E.2d 994 (2nd Dist. 2000). (C. 14) In *Day*, the Court held that the trial court's failed to properly admonish defendant under Rule 402 about the nature of the charge, of the minimum and maximum sentences prescribed by law, or of the three-year mandatory supervised release that would attach to the sentence. 311 Ill. App. 3d at 273-74. The court also did not advise defendant that he had a right to plead not guilty and that defendant was giving up his right to be confronted with the witnesses against him. *Id.* However, Daniels did not enter a guilty plea; he elected a bench trial. (TR. R. 113) Rule 402 admonishments only apply to guilty plea proceedings. 134 Ill. 2d Rs 402(a) and (b) (2000).

While Daniels entered into a guilty plea to the charge of residential burglary in Case No. 99 CR 9919, that conviction is not the subject of his *pro se* amended post-conviction petition. (C. 14-16) Moreover, even if that conviction were being challenged on the basis that the trial court did not comply with Rule 402, the record indicates that prior to accepting Daniels' plea in that matter, the trial court informed Daniels of the nature of the charge, the minimum and maximum sentence for that offense, including the applicable range as a result of prior convictions, and that he would be subject to a period of mandatory supervised release of three years and that by pleading guilty, he would be giving up the right to a trial and to confront witnesses against him.

19

(TR. R. 96-99) For these reasons, appellate counsel has concluded that it would be frivolous to raise an issue related to the claim that Daniels was not informed of a term of mandatory supervised release.

Because appellate counsel reviewed the claims raised in Daniels' *pro se* post-conviction petition and *pro se* amended post-conviction petition, and determined that those claims were non-meritorious, she concluded that any claim that post-conviction counsel was ineffective for failing to include them in his amended petition would be frivolous.

Accordingly, for the reasons stated herein, counsel has concluded that the above issues would be frivolous. Therefore, counsel should be permitted to withdraw.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

TIFFANY GREEN
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

20

Nos. 1-06-2583 and 1-06-2769 cons.

IN THE

*unpublished release.*    APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| -vs- | ) | No. 00 CR 7104. |
| CHARLES DANIELS, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## PROOF OF SERVICE

TO:  Richard A. Devine  
     Cook County State's Attorney  
     300 Daley Center  
     Chicago, Illinois  60602

     Mr. Charles Daniels  
     Register No. N-63102  
     Taylorville Correctional Center  
     P.O. Box 900  
     Taylorville, IL  62568

     You are hereby notified that on April 16, 2007, we personally delivered the original and three copies of the attached Motion to Withdraw as Counsel on Appeal Pursuant to *Pennsylvania v. Finley,* 481 U.S. 551 (1987) in the above-entitled cause to the Clerk of the above Court, a copy of which is hereby served on you.

TIFFANY GREEN  
Assistant Appellate Defender

STATE OF ILLINOIS  )  
               ) SS  
COUNTY OF COOK  )

     The undersigned, being first duly sworn on oath, deposes and says that he personally delivered the required number of copies of the attached Motion to the Clerk of the above Court and to the State's Attorney of Cook County on April 16, 2007.

CLERK

SUBSCRIBED AND SWORN TO BEFORE ME  
on April 16, 2007

NOTARY PUBLIC

Official Seal  
Dora Eason  
Notary Public State of Illinois  
My Commission Expires 06/14/2010

Nos. 1*06*2583 & 1*06*2769    Final Response    Kujaun Del mailed

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

**FILED**
APPELLATE COURT 1st DIST.

MAY 2 4 2007

STEVEN M. RAVID
CLERK

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the Circuit |
| Respondent* Appellee, ) | Court of Cook County, Illinois. |
| vs. ) | |
| CHARLES DANIELS, N*63102 ) | No. 00 CR 7104 |
| Petitioner L.* Appellant. ) | Honorable |
| ) | THOMAS M. DAVY |
| ) | JUDGE PRESIDING. |

MOTION IN OPPOSITION TO FINLEY BRIEF
FILED BY APPOINTED STATE APPELLATE DEFENDER

NOW COMES, CHARLES DANIELS, N 63102, pro se, moving that this
Honorable Court review the Memorandum in support of his contentions,
**contrary** to the assertions of appointed State Appellate Defender,
Tiffany Green, et.al., and find that both appellant's Issues have
merit including the Question of whether the Circuit court applied
the wrong legal standard under the Post conviction Hearing act **(PCHA)**
725 ILCS 5/122*1,et.seq., **People v. Bouzidi**, 265 Ill.Dec.935,
773 N.E.2d 699 ( Appellate review of Hearing/determination of a
Second stage dismissal of post conviction petition.)

Specifically, where the Circuit court rather than rule on the Legal
**sufficiency** of the State's **Motion to Dismiss,&** its bases of support,
instead resolved **FACTUAL DISPUTES &** made " credibility determinations"
raised by the pleadings. Rather, under the **(PCHA)**, " **operative stages**"
review of collateral petitions, fact finding and credibility are
to be made at the Evidentiary Hearing ( 3rd stage) of the **PCHA process,**
**NOT at the dismissal stage. People v. Etherely,** 801 N.E.2d 99

**People v. Broughton**, 279 Ill.Dec.149,799 N.E.2d 952;

**People v. Fair,** 250 Ill. Dec.284,738 N.E.2d 500,193 Ill.2d 256;


In support thereof the appellant states as follows:

1. Petitioner*Appellant, ADMITS AS TRUE.

2.    " "          " "    , ADMITS AS TRUE.

3.    " "          " "    , ADMITS AS TRUE.

4. Petitioner Daniels, DENIES, this allegation in as much as
counsel's assertion that the " appeal in this cause would be frivolous."
Moreover, as shall be explicated within the Memorandum of support
attached, this post conviction petition stated DUE PROCESS (XIV),
issues of law and were not rebutted as to the trial record, along
with the fact that the Circuit Court plain erred in applying the
wrong standard of review during this second stage argument proceedings
on the State's Motion to Dismiss based on a supplemental police
report, that is inadmissable as a matter of law.

**People v. Morris** , 65 Ill.App.3d 155,382 N.E.2d 383 (1st Dist.1978)


    **WHEREFORE,** petitioner*appellant Daniels, respectfully moves
that after careful review of his attached Memorandum of Law supporting
his contentions, that this matter be remanded for further proceedings
consistent with the provisions of the **PCHA process, 725 ILCS 5/122*1,**
and for any other  relief deemed fundamentally fair and just.


                              Respectfully,

                              _____

**MEMORANDUM IN SUPPORT OF MOTION IN OPPOSITION TO <u>FINLEY</u>
<u>ASSERTIONS AND</u> <u>DISMISSAL OF PETITION DURING SECOND STAGE</u>**

In support thereof the questions raised are as flow:

At the outset, petitioner*appellant, states that the Questions
raised before this Honorable Court are solely one's of Law, Accordingly,
review is **de novo**. **People v. Breedlove**, 213 Ill.2d 509,512,290 Ill.
Dec.602, 821 N.E.2d 1176 (2004 ).

Here, **de novo**, standard of review applies as to whether the Circuit
Court during the second stage of the **Post Conviction Hearing Act(PCHA)**
725 ILCS 5/122*1 et.seq., improperly granted the State's **Motion to**
**Dismiss**, on **August 11,2006**, through making " credibility determinations"
and resolving factual disputes without   calling either the trial
attorney or appellant Daniels, to testify as to the truth or falsity
of the **People's Motion to Dismiss**, petition.

Specifically,**whether** the State knew as does this Honorable Court
that police reports are inadmissible as a matter of law, yet by
raising such a specious motion, it would allow the circuit court
opportunity to dismiss the appellant's entire post conviction petition
without a(any) Evidentiary hearing. **People v. Gagliani**, 210 Ill.App.
3d 617, 629, 569 N.E.2d 534 (1st Dist.1991).

Rather, the State's contention hinges, almost entirely upon a
supplemental police report and speculation as to " what defense counsel
was AWARE of during his cross examination of Ms.Elston." (C.248)
(**Finley** Br. **Statement of Facts** (SOF),**pg.7** ), The State claimed that
trial counsel " was aware petitioner Daniels had given an incriminating
statement to police detective James Carlassare on the evening of
February 12, 2000." The State attempted to use the **supplemental,**

asserting, that petitioner Daniels made the incriminating
statement : " that he had ' entered into the <u>common areas of the</u>
<u>building through an unlocked front door.</u>" Of course, this
is completely **improper**. The State's only purpose in presenting this
inadmissible and inflammatory police report was to prejudice
Petitioner and his post conviction petition in the eyes of the Court.
Nonetheless, the State asserted that because trial counsel was
supposedly aware of his client's incriminating statement that it, was
"strategy" that he cross examined the State witness Ms. Elston,
in such a way that it aided the State prove its case through the
eliciting of a material element of its case. ( C.248*249 )
Strikingly, Detective Carlassare's testimony ( TR. R.154*155),
is absently devoid of any reference or indication of Mr. Daniels
having told him that " he gained entrance to the building because
the front door was unlocked." ( C.243; **Finley Br.**(SOF),**pg.4** )
At no time did Det. Carlassare mention that he interviewed Ms. Elston.
Notably, Carlassare did not submit his report for about 150 days
after the arrest of petitioner. (R.154*155) Significantly, Carlassare
was not even questioned about this report. Most interesting however,
is the fact that this same supplemental police report was deemed
during trial as Inadmissable since it was a Late disclosure that
violated **Supreme Court Discovery Rules.** The State attempted during
proceedings on a motion for Directed verdict to introduce this
report **AFTER** the June 5, 2002 direct testimony of Ms. Elston was
completed. Moreover on July 16th 2002, defense counsel told the
Court that he had just received on July 9th 2002, **"FIRST NOTICE"**
that such a report had ever existed. **THEN & THERE** <u>the State admitted</u>
" culpability" <u>in the report's sudden surface</u> and the Question arose
as to whether the document had been **SECRETED** or worst???

2

In the <u>State's Motion to Dismiss</u>/Response to Amended Post **conviction** and the contention that defense counsel's performance dur**ing** the cross examination was a matter of " **trial strategy**" not subject to review in post conviction cases, citing **Barfield**, 187 Ill.App.3d 190,543 N.E.2d 812, <u>pages **2** & **3**</u>, the State claimed that counsel was not ineffective but exercising trial tactics.

Not only is this is a **specious** argument, but it was asserted in bad faith. Webster's Dictionary defines " strategy" as " careful plan or method; a clever stratagem; the art of devising or employing plans or stratagems **towards a goal.**" See Webster's 9th New college Dictionary, at 1165(emphasis supplied).  The hallmark of a trial " strategy" would be to obtain some sort of goal or relief for a defendant. And what was that relief or goal in this case on the part of defense counsel??? It was **assisting** the State **prove** the **essential elements of its case.** In truth, there could have been **NO VIABLE** strategy for defense counsel to elicit the " common areas" testimony in this case. ( TR R.128) The complaining witness had not prior to defense counsel's cross examination stated during direct that the appellant was inside the building's **hallway** nor that he had been inside that area for **three minutes(R.127,128) PRIOR** to defense counsel's irreparable examination that elicited the necessary testimonial proof that the State had failed to do during its direct examination.

All of the above are a detailed aside to the fact that the State's delayed **Disclosure amounted** to " cause" for suppression **per <u>Brady v. Maryland</u>,** 373 US 83,83 S.Ct.1194(1963), as the appellant was **prejudiced** by the Supplemental report's " sudden" appearance after the State realized its deficient examination and after the appellant had already waived his right not to testify.

More **egregious** however, is that the State rather than to
have Answered the appellant's pleading's of Ineffective assistance
of defense counsel in light of whether he ¸"¸ aided"¸ the State
in establishing a missing element of the charged offense, through
his cross examination, chose to submit this **disingenuous**, at best
supplemental report **AFTER** Nora Elston had already testified on
June 5th 2002, and which also had been limit'₄d by the trial court
during the bench trial. Obviously, this is the precise reason that
**ASA Haskins**, chose to **surreptiously** file this report at the Chicago
Criminal Court's Bldg., rather than before the Honorable Judge Davy,
in Bridgeview, IL., where these proceeding were held.

### SUMMARY

The fact remains that once the Circuit Court found that trial
counsel did **NOT** have a copy of this supplemental police report at
the time that he cross examined Nora Elston(R.L.8;TR R.148), and
**ASA HASKINS " admitting "** on August 11,2006, pg.8, that he did
" know " that this report was not timely given to defense counsel,
he implied therein, that the entire basis and motive for filing
this **Motion to Dismiss**, was **Fraudulent & in Bad Faith**. There was
but one objective? to make it appear that the actions and performance
of defense counsel were " trial strategy", so that this instant
post conviction petition would get dismissed without the State having
to answer the truth upon the Constitutional Question of law as
asserted within the Appellant's Amended post conviction pleadings.
Appellate counsel did not argue the fact that trial counsel assisted
the State in proving its case, which was a objectively unreasonable
oversight that prejudiced Appellant Daniels. Because the omission
prejudiced, the **STRICKLAND** (citation), test is satsified.

Just as the State " knew" after the examination of Nora Elston was completed on June 5,2002 ( R.115*125), that it failed to elicit each and every material element necessary regarding a(any) " entry into the Building without permission or authority", it had to produce something to hopefully in desperation fill in the gaps. On July 16,2002, miracuously, the State produce's a police report after over 2 and half years and in the middle of trial. NOW,.The State once again is/has influenced the Circuit Court (**Aug.11,2006** in bad faith and <u>admits doing so</u>, without being sanctioned or having to answer. The Circuit Court should have **DENIED** the State's **Motion to Dismiss**, under these unusual circumstance as a matter of law. No dispositive conclusion as to trial counsel's **state of mind vis*a*vis strategy**, ought to be drawn on the basis of mere speculation without a Evidentiary Hearing. Collateral proceedings, including evidentiary Hearings, are frequently necessary in order to delve into counsel's litigation decisions for purposes of determining whether or not appellant was deprived of effective assistance of counsel. This is so, because the issue of ineffective assistance of counsel is peculiarily suited for determination, not on direct appeal, but rather, in collateral proceedings such as here, that involve proof of extra record facts and the opportunity to actually develop a factual record. See, e.g. **Beaulieu v. United States**, 930 F.2d 805,806; <u>United States v.Griffin,</u> **699** F.2d 1102,1108,09; Indeed, " collateral review will frequently be the only means through which an accused can effectuate the right to counsel........." **Kimmelman v. Morrison**, 477 U.S.365,378,91 L.Ed 2d 305,321 (1986) Also, an evidentiary hearing would be the only available vehicle to present evidence from trial lawyer as to his state of mind in asking questions that aided the State.

**THE TRIAL COURT    ERRONEOUSLY APPLIED THE WRONG**
**STANDARD DURING THIS SECOND STAGE PROCEEDING TO DISMISS**
**UNDER THE STATUTORY CONSTRUCTION OF THE P.C.H.A. (ACT)**

Appellant Daniels is fully cognizant that the "operative stages"
for reviewing post conviction petitions and Dismissal's are most
readily familiar before this Honorable Court, and hence only the
applicable standard of review will be discussed briefly and only
then where pertinent to the context of **Analysis** employed within
this supporting Memorandum.

Appellant maintains that Dismissal of a post conviction petition
is warranted **ONLY** when the allegations of fact liberally construed
in defendant's favor and in light of the original record, fails
to make a substantial showing of a violation of an important State
or Federal Constitutional right. **People v. Coleman**, 183 Ill.2d 366,
381, 233 Ill.Dec.at 797*98, 710 N.E.2d 1062 (1998).
Factual disputes raised by the pleadings that require determination
of the **truth or falsity of** supporting documents, **CANNOT** be made at
the Dismissal Hearings at the second stage of the **P.C.H.A.**, but **MUST**
be resolved by a Evidentiary hearing. **Coleman**, 183 Ill.2d ñ 381,
citing, **People v. Caballero**, 126 Ill.2d 248,259,533 N.E.2d 1089 (1989),
**People v. Wegner,** 40 Ill.2d 28,31ᴸ32,237 N.E.2d 486(1968 );
**People v. Holiday**, 313 Ill.App.3d 1046, 732 N.E.2d 1,247 Ill.Dec. 285
( reversing denial of post conviction petition, expressly following
**Coleman**. )
Appellant maintains that by the State filing its motion to **Dismiss**,
on January 17,2006, as **opposed** to Answering   :, the State conceded

the TRUTH of the factually supported post conviction allegations atleast, for purposes of that motion. It thus eliminated all factual issues from the inquiry, and the sole question remaining was whether any of the petitioner's allegations in the petition were sufficient, as a matter of Law. **People v. Harris**, 794 N.E.2d 314, 206 Ill.2d 1, 276 Ill.Dec.419

The right to a Evidentiary hearing on a contested set of facts is not just a State procedural right, it is a **Due process right**, perhaps the single most fundamental and important component of due process law. The right of Notice and the opportunity to be heard. **Davis v. Lane**, 814 F.2d 397 (7th Cir.1987); **Castillo v. United States**, 34 F.3d 443 (7th Cir.1994)

———

The Post conviction proceedings process are not meant to be resolved by the pleadings, where such Factual issues exist, such as here, a Evidentiary Hearing is **Mandatory. Coleman**, (citations) 701 N.E.2d at 1071-72; **People v. Wegner**, 40 Ill.2d 28, 237 NE 2d 486 The **PCHA does not permit** a Circuit court to read into the Statute **725 ILCS 5/122  1, et.seq.**, a Dismissal procedure that is beyond the Legislative or statutory scope of the process. Rather, it is the province of the Legislature and not the Circuit court to change the procedural provisions, and make Amendatory changes to the law, so that fact finding and credibility determination can be made at a argument proceedings on a State's motion to dismiss, rather than at the 3rd stage of the Evidentiary process.

**Accordingly,** this cause must be remanded for further proceedings consistent with the clear legislative and Statutory intent of **PCHA.**

PART II

## INTRODUCTION TO

Aided by the benefit of hindsight, this **Finley** brief is full
of legal analysis beyond the facts that the evidence adduced at trial.
It is not the task nor the responsibility of defense counsel nor
this Honorable Appellate Court to assist the State in carrying its
Burden of proof on each & every material element of a criminal charge.
Neither, should Appellate Defense counsel because of a deficient
examination of a State witness during a criminal trial, attempt to
" **speculate & conjecture"** what the witness could, should or might
have meant to say, five years afterwards. The Record stands as to
what the entire 10 pages of Nora Elston's testimony were. **(R.115*125).**

**The Law** in Illinois is perfectly clear that the Burden of proof
rests on the State in both **production & persuasion** of evidence that's
sufficient to sustain a finding of guilt beyond a reasonable doubt.
**People v. Adams**, 281 Ill.App.3d 339,669 N.E.2d 769 (1st Dist.1996)
This burden is not overcome by speculation, conjecture, innuendo or
**probabilities of inference. People v. Ortiz**, 196 Ill.2d 236 (2001)

> " What is involved here is the standard of proof which is
> applicable to all crime. That is to say, conviction beyond
> a reasonable doubt. Whether the crime charged be trespass,
> shoplifting, armed robbery, or Murder, the **test** is the same.
> The burden of meeting this standard falls solely on the
> prosecution. If it fails to meet this burden, a defendant
> is entitled to a finding of not guilty. No defendant is
> required to prove his innocence.*****It is no help to
> **speculate** that the defendant may (be guilty).
> **Smith**, 185 Ill.2d at 545 46,236 Ill.Dec.779,708 NE 2d 365 .

## BACKGROUND ANALYSIS AGAINST FINLEY

What Appellant assigned counsel has ignored is the fact that
there is certifiable proof that appellant proceeded to trial having
reviewed and fully discussed with defense counsel the applicable
case laws regarding apartment building structures and the Law as
constructed prior to trial under **People v.Childress**, 158 Ill.2d 275,302,
prior to the Amendatory change of June 1,2001. Specifically, that
residential burglary can be committed only in dwelling places, whereas
simple burglary cannot occur in a dwelling place.
**People v. Sexton**,118 Ill App.3d 998,1000,455 NE 2d 884 (4th Dist.1983)

( residential burglary statute applied to Burglaries of structures
   intended for use as residences, regardless of whether or not the
   structure was being used as a residence.)


   **Based** on these cases, inclusive to but not limited to also
**People v. Silva**, 256 Ill.App.3d 414,415,628 N.E.2d 948(1st Dist.1993),
Defense counsel advised appellant repeatedly that in substance
**Childress**, was crystal clear in its holding that res. burglary may
only be committed in dwelling places, while simple burglary may not
be committed in a dwelling place building at all.


   It was the understanding between the appellant and counsel
after Nora Elston testified on direct, not to cross exam her.
Counsel submitted a number of relevant case's supporting our
belief that an acquittal was forthcoming based on the direct exam.
A short continuance was held, after the side bar discussion.
Nearly, an hour later, Defense counsel told appellant that he **odiously**:
" HAD TO CROSS EXAM NORA ELSTON." Counsel, left the holding cell
and the **review** of his performance are the question before this Court.
( See, **Affidavit** of Oct.6th 2004, )

8

Prior to the irreparably damaging cross*examination by
defense counsel as demonstrated within the short 10 pages (R.115 to
R.125 ), the scenario was in no way sufficient to have linked the
appellant as having been " inside" of the building's " common area,
as Elston's direct testimony had placed the appellant at the
front door outside the building where the mailboxes & buzzers
were located, that is all. ( R.118 119; 128 )

Moreover, Asst. Appellate Defender Tiffany Green's assertion,
notwithstanding, she has no proof by Affidavit from Mrs. Elston or police,
the mailboxes/buzzers **were ever inside the building**, **nor** that at the
relevant time herein, that **there was no " security door"** (**Finley** pg.13)
for her self-serving meticulous mind to try and fit this muddled
testimony of Nora Elston's into plausibility to hopefully persuaded
this Honorable Court to accept, eventhough its nothing but **speculation,**
see, e.g., **Finley** at pages 12, 13 & 14

Actually, there is nothing stated or explained anywhere within
this trial record and testimony that supports the notion or establishes
that the mailboxes were " inside the building " as opposed to being
in the front of the building where the buzzers were located. (**R.128**)
Tiffany Green as many people are with ledgerlike minds, when it
comes to weighing evidence, .......likes things that add up at the
bottom of every column, regardless of whether or not they are correct.
Because of the deficiency of the ASA Ronkowski and ASA Haskins to
have established proof upon this missing material element of burglary
with the same testimonial proof as required in **People v. Maskell** (citation)
Tiffany Green is through filing this **Finley** brief, seeking to
impose her own sense of order, filling in gaps of reasonable doubt
with assumptions based on probabilities.

**9**



**Strangely,** Tiffany Green seems not to want this Honorable Appellate Court to potentially answer the Constitutional **Due process Questions of law (XIV)**, nor the **Sixth Amendment(VI),** violation against either defense counsel or especially Appellate assigned counsel. It appears through the guise of her filing this **Finley** brief, that echoes many of the objections of her counterpart & particuarly the State prosecutor's office, that she has simply in an effort to minimize and obviate the significance of the claims of the appellant presented a smorgorbord of inferences and speculative assertions as though they are factual.

The fact remains that there can be no viable strategy for a defense counsel to supply through his cross examination an otherwise missing material and essential element of the case, regardless of what this **Finley** attempts to state otherwise, especially, where the record attests that prior to that cross examination the State could not have meet its evidentiary burden of proof of burglary as a matter of law. See,eg., **People v. Jackson**, 251 Ill.Dec.848 (1st Dist.2001)( counsel deemed ineffective from his cross examination that elicited an otherwise unproven and essential element of the crime, not established in the State's direct examination of that witness.)
**United States v. Swanson**, 943 F.2d 1070:
**BUNLKLEY v. FLORIDA**, 535 U.S.835,123 S.Ct.2020,155 L.Ed 1046(2005)
( where the **United States SUPREME COURT**, held that a State court **plain erred** in failing to have decided whether all the **elements** of the offense had been met, in the denial of a post conviction petition.)

Hopefully, appellant prays, that the filing of this **Finley**, as a **GAMBIT,** will be rejected by this Honorable Court and that resolution of the Questions of Law contained herein will be answered through the exercise of **de novo** review.

## INSUFFICIENT EVIDENCE OF UNAUTHORIZED ENTRY
## INTO THE COMMON AREAS OF BUILDING

The **Finley**, at pg.15, references:

" Elston testified that she saw Daniels enter the building
and that when she heard him " fumbling" with the mailboxes
she called the police(TR.R.119) By calling the police,
Elston demonstrated that Daniels was not authorized to
be in her building.

Once again the **Finley** writer's enjoined are mischaracterizing
the direct testimony in its proper context and entirety, for its
absence of proof that Daniels entered the apartment building's
" common areas" as alleged in the indictment, through conjecture.
The question put to Mrs. Elston regarded whether she saw the same
man leaving her property walkway that she had earlier seen walking
up her walkway area.

State Prosecutor Ronkowski: ( TR.R 119) to Mrs. Elston:

Q: Did anybody have authority to be inside your **vacant apartment**
   at that time & place?

A: No, sir.

Q: After you heard somebody inside your **vacant apartment** that
afternoon what did you do next?

A: I went back and called the police again and I told them that
   I thought he was gone but he's in the **apartment**.

Q: Then what happened?

A: They came back.

Q: Did you **see anybody leave that <u>area</u>?**

A: Yes, I saw the gentlemen leave & he had some of my packages
   in his hands.

Q: Was this the same gentlemen **you had seen earlier come up your
   walkway earlier?**

A: Exactly the same person, yes.

Q: And he was leaving your premises with something.

A: Right.

The trial court's ruling on August 11,2006, which is what
the **Finley**, writer's are incorporating as its basis to dismiss
Appellate counsel's ineffectiveness, is beyond the clear testimony
of the witness, that by her statement and use of the word **premises**
that she must have been meaning her building's common areas?
As is the case in court way apartment building structures that
such as here are six flat or more, there is generally a walkway
that leads to and away from the building. Seeing from the front
window of the apartment as Nora Elston testified she was at when
asked this question. (R.120,129)she later from her apartment window
saw the individual as earlier walk down her front walkway and leave
her property.( R.120) That is all that was contained in the relevant
portions of Mrs. Elston's testimony on direct examination.

Appellant maintains that since the trial court deemed **Maskell**
304 Ill.App.3d at 82,237 Ill.Dec.at 821, as **dispositive**, and which
coincidentally, this Appellate Court relied upon as though **DUE PROCESS**
had been established by the State prosecutor, rather than by the
defense counsel in **Appellate OPINION 1 02 2905**, the State cannot
try as it is herein through the **Finley** brief, to simply assert
that an " INFERENCE" upon the missing and essential element of
the charged offense should be acceptable.

Appellant maintains that the failure to satisfactorily comply
with **proof on each & every material element** of each " distinct"
offense, is a violation of State and Federal law towards the State's
burden of **proof** and **persuasion** beyond a reasonable doubt. Specifically,
in **Maskell**, **eventhough the police were called**, a State witness
testified that " nobody gave permission" to that defendant to have

12

entered the **apartment** and take a television set. **Furthermore,**
and **ipso facto** , towards the relevant DUE PROCESS (XIV) **Constitutional**
question of law, are that witness, Mr. Thomas Preston **testified**,
that he " never gave permission to that defendant to have entered
the six **flat** building." **Maskell**, 237 Ill.Dec.at 821

The State was **NOT allowed to INFER** as the Circuit Court herein
did in dismissing Mr.Daniels' instant post conviction petition,
on August 11,2006, the **essential element " permission/authority"**
but was allowed by the Circuit Court Judge the " discretion"
to elect which charge it wanted to prosecute having gone forward
with its case in chief, since the required **testimonial proof** was **BOTH**
affirmatively shown as to the apartment where the T.V.set was taken,
and as to the " distinct" entry into the Six flat building being
without permission or authority as a matter of Law.
**Maskell**, 304 Ill.App.3d at 82, 237 Ill.Dec. at 821


This remains the absence of proof during   all times relevant that
Herculian effort continues to be made to prevent this Honorable
Court from squarely addressing as a matter of law. In short,
the trial record is absently devoid of proof of this element.

13

## ANALYSIS

The damaging testimony elicited by defense counsel in this case was relevant to the State's case and was **non cumulative** to other testimony elicted by the State on direct examination. Contrary to this **Finley**, brief, which asserts a novel contention heretofore, never even asserted by the State prosecutor's office' enjoined that:

> " A reading of defense counsel's cross examination when reviewed in context of the evidence presented during the entire cross examination shows that defense counsel's questions refer to Daniels entry into the area by the mailboxes which was evidence the State had already elicited during Elston's direct examination."

**Finley**, pgs. 10,11,12,13;

Notwithstanding, the State's assertion filed herein through this **Finley brief**, the testimony elicited by defense counsel was not **cumulative** to the State's case. " Claiming evidence is cumulative involves a determination that **such evidence adds nothing to what is already** before the jury."

**People v. Molstad**, 101 Ill.2d 128,135,461 N.E.2d 398(1984)

The trial court, during trial, observed defense counsel poke holes in the State's **theory of the case**; that since the apartment was vacant, meaning no one intended to live in the apartment within a reasonable amount of time(**TR 172;73**) that the burglary statute applied. The State also, argued that the statute **had** already been corrected, so that the offenses are no longer " mutually exclusive"( TR.172,173) The defense argued that the apartment building was a residence under the statute.(TR.R.174)

14

Defense counsel should have simply **highlighted** the fact that
the State could not have proven Appellant guilty of a burglary of
the " common areas" of the building based **ONLY** on the direct examination
of the complaining witness.

Mrs. Elston did not see or hear Appellant in the " **hallway**"
or anywhere beyond the front of the building by the mailboxes.(TR.118,119)
Even when she heard the plastic bags rustling in the vacant apartment,
Mrs. Elston still could not see that it was appellant inside.(TR.R.119)
The thought that appellant was inside the apartment came from the
fact that she had seen "**plastic bags**" after appellant was walking down the
sidewalk away from her property ( TR.R.120 , R.129)
That is all that was contained in the relevant portions of Mrs.
Elston's testimony on **direct** examination. Whether defense counsel
merely chose the **Wrong word** when he used the term " hallway"
is unclear. However, in appellant's case, defense counsel elicited
**harmful irreparable testimony** during cross examination of the State's
complaining witness. Appellant does not wish to disparge trial counsel
but a **mistake** was made and defense counsel is the one who made it.
Defense counsel can be the most competent attorney in this jurisdiction
and still make a **mistake** during a bench trial which **helped** the State
prove its case. Moreover, defense counsel's line of questioning that
clarified the deficient State direct examination .... could have been
well intended, but the fact remains that **but for** defense counsel
eliciting the trial testimony regarding the " common areas" the
trial court could not, as a matter of law, have made a finding of
guilty for the burglary of those areas.

15

The testimony of Nora Elston was clear, whoever burglarized
her vacant apart ment must have come in through the **window.(TR.R.136)**
How do we know this? Because Elston testified that "one of them examination
( windows) had to be open for him to come in." (TR.R.136) and
incidentally, when police arrived the vacant apartment doors were
locked.( TR.R.136 )
This would mean, by necessity, that the burglar circumvented the
" common areas" of the building, **unlike in Maskell**, that the trial
court rule applied in this case.  It is how appellant came to be
in the vacant apart ment, and if the evidence established by
Nora Elston proved beyond a reasonable doubt on direct examination
that the " entry" was made through the building's " common areas"
and thereby into the apart ment, that is again at issue before
this Honorable Court, based on the **INFERENCE** supplied by the
August 11,2006, proceedings instanter. (see,**OPINION,pg.5**)

Since, no evidence was offered to that end in the direct
examination of Mrs. Elston, the testimony elicited by defense
counsel on cross examination that irreparably damaged the appellant's
case could not have been cumulative as asserted within this **Finley**.
The Appellant seeks resolution here, if possible, upon this
**Due process Constitutional Question of law**, and hence, **de novo**,review.
As Burglary has several essential elements, for purpose however,
in this **Finley Analysis**, the relevant element is that the entry
to the building must be " without authority." See generally,
**720 ILCS 5/19-1 (West 2004)**; **People v. Meeker**,86 Ill.App.3d 162,
407 N.E.2d 1058; **People v. Baker**, 59 Ill.App.3d 100,375 N.E.2d 176;

16

## CONCLUSION

The FACT remains that the State attorney **never asked** Mrs. Elston
if anybody had authority to be in the " common areas" of her building.
The State never asked if anybody had authority to enter those "areas"
or remain there. Rather, the State attorney **ONLY Asked** about the
**permission or authority** with respect to the **vacant apartment**(TR.R124)
The trial court was clear in its finding of fact. The Court found
that appellant made two separate unauthorized entries, one into the
apartment building & the other into the vacant apartment.(TR.R.177,179)
The residential burglary to the apartment was never charged.
The trial court then found, " In this particular case, the testimony
of Ms. Elston was that she heard some noises at the entryway...
Entry was **apparently** made through there and through that area the
defendant then entered the particular vacant apartment."( TR.R.178,179)
The judge then added:

> (U)nless the evidence would be that someone entered directly
> into a particular apartment through a **window** or a door leading
> directly from that apartment, from outside into the apartment
> that as long as there is a common area hallway, stairway or
> whatever, that entry into that building into that common
> area would sustain the charge of burglary. ( TR.R.179)

Finding that because the appellant entered the building on his
way into the apartment, the court sustained the charge of burglary.
The point here however, is that the testimony regarding" without
**authority or permission** as to the vacant apartment is irrelevant to
the offense of simple burglary to the " common areas."
The Court saw fit to divide the building into different sections
in its finding of facts. **IF**, the State decided to only charge appellant
with entry into one of those areas (viz., the"common areas" )
then the State was required to prove **all essential elements of the offense**
with respect to that charged area.

17

Had the trier of fact or this Honorable Appellate Court during the Direct review of this appeal **known** that the State had failed to prove **all the essential elements** of the offense of burglary to the " common areas", as was done in __Maskell__, there is a reasonable probability that the outcome would have been different. For these reasons, both trial and appellate counsel were ineffective in failing to argue this **Due process** point at trial and on direct appeal,as a **Fourteenth Amend. Const., (XIV) violation** and Appellate Counsel for specifically failing to have argued that trial counsel made a mistake and " aided" the State prove an otherwise missing essential element of the charged offense that had otherwise not been established by the State during its direct examination of the complaining witness, that irreparably prejudiced and violated appellant's **SIXTH Amend, U.S.Const. (VI)** guarantee of effective assistance of counsel.

Based on the above reasons, appellant Daniels prayer of relief are that it be deemed that he has successfully demonstrated a Constitutional depravation of his right to effective assistance of counsel, and **further that** the Circuit Court applied the wrong standard during the dismissal of this instant petition without requiring that the State answer the Due process questions as a matter of law and that the **Finley** motion be DENIED

STATE OF ILLINOIS    )
    ) SS
COUNTY OF _KNOX_    )

**AFFIDAVIT**

I, _CHARLES DANIELS_ , Inst. No. _N-63102,_
_#CCCR7104_ , hereby declare under penalty of perjury that the
following is true and correct based upon my personal knowledge and
that I am competent to testify thereto if called upon as a witness.

IN the Months prior to TRIAL in criminal # 00CR 7104,
ATTORNEY DENNIS H SHERMAN, STATED that A plea offer OF
(15) YEARS had BEEN offered ON BOTH 99CR 9919 AND
00CR 7104. I elected ONLY TO TAKE (12) YEARS ON 99CR9919,
proceeding TO TRIAL ON other, BECAUSE OF THE ANTICIPATED
TESTIMONY OF THE COMPLAINANT. ON JUNE 5, 2002, I
explained MY REASON And BELIEF that the TESTIMONY
HAD FAILED TO PLACE ME INSIDE BUILDING AS ALLEGED
IN INDICTMENT. I WAS SHOCKED AFTERWARDS WHY
MY ATTORNEY CROSS-EXAMED AS HE DID THIS WITNESS.
THERE WAS ONLY ONE REASON TO HAVE ELICITED
THIS INCULPATORY EVIDENCE, WHICH THE STATE HAD
FAILED TO DO SO AS TO SATISFY THE INDICTMENT'S
ALLEGATION. MY LAWYER WAS INEFFECTIVE FOR THIS ACTION

_Charles Daniels_
**AFFIANT**

**Signed before me on this** 6th **day of**
Oct. **, 20** 04 .

**NOTARY PUBLIC**

"OFFICIAL SEAL"
Mark G. Spencer
Notary Public, State of Illinois
My Commission Exp. 06/08/2008

STATE OF ILLINOIS      )
                         )   SS:
COUNTY OF C O K      )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE       )
STATE OF ILLINOIS,      )
                        )
       Plaintiff,      )
                        )
   vs.                )    No. 99 CR 9919
                        )        00 CR 7104
CHARLES DANIELS,      )
                        )
       Defendant.      )

REPORT OF PROCEEDINGS of the hearing of the above-entitled cause, before the Honorable THOMAS DAVY, one of the Judges of said District, on the 16th day of July, 2002.

APPEARANCES:

        HON. RICHARD A. DEVINE,
        State's Attorney of Cook County, by:
        MR. EDWARD RONKOWSKI,
        Assistant State's Attorney,
            appeared for the People;

        MR. DENNIS SHERMAN,
            appeared for the Defendant.

THOMAS E. LIEF, CSR #084-000501
Official Court Reporter
10220 S. 76th Avenue
Bridgeview, Il. 60455

X-1

1           THE COURT:   Charles Daniels.

2                        (The following proceedings

3                        were had in the presence

4                        of the defendant:)

5           THE COURT:   All right. This is a commenced and

6      continued matter.  Both sides are ready to resume at

7      this time.

8           MR. RONKOWSKI:  I'd like to call Detective

9      Carlasasare.

10          MR. SHERMAN:  Prior to calling the detective,

11     Judge, I would advise the Court that just -- I did

12     receive discovery, additional discovery, if I may

13     just get it -- actually when I went to talk to the

14     defendant I gave it to him.

15                        (Short pause.)

16          MR. SHERMAN: Judge, on July the 9th I was faxed

17     a copy of a police report that had been made on July

18     10th, years 2000, first notice that I had been

19     given.   We have been asking for a police report, as

20     you can see the case is two years old already and

21     this matter's on trial.  State has advised me,

22     however, that they are only going to introduce

23     testimony that was available on the felony review

24     notes as to the statement of the defendant.

                            X-2

1            I certainly don't believe that Mr.

2      Ronkowski in any way, shape or form hid this,

3      knowing Mr. Ronkowski, and even though I know he is

4      a wealthy man with certain problems, Judge, he's

5      still a State's Attorney and I know that he would

6      not secrete this.  It just seems to me there's

7      something going on that I can't get a police report

8      two years -- for two years until finally when the

9      officer's getting ready to testify I get a copy of

10     his police report.

11          THE COURT:   The Record should not, if the case

12     goes up on appeal, that the comment as to Mr.

13     Ronkowski's wealth were made tongue in cheek.

14          MR. SHERMAN:   Sorry, I shouldn't say anything

15     about him being wealthy, that's not right.

16          THE COURT:   On the cold Record it might look

17     like something, the comments about his wealth --

18          MR. RONKOWSKI:   It's somewhat inaccurate

19     because the way the State's Attorney pays me, I have

20     no personal wealth in income.

21          THE COURT:   Mr. Ronkowski --

22          MR. RONKOWSKI:   If I can respond with less

23     editorializing --

24          THE COURT:   Yes.

                            X-3

1          MR. RONKOWSKI:   (Continuing) -- on the

2     arraignment date counsel was given a copy of the

3     felony review notes.  Within an hour of me receiving

4     the detective sup that both of us wanted on the last

5     date, I faxed it to counsel, which fleshed out other

6     areas which the detective did.  All I'm seeking to

7     do is question the detective concerning his

8     conversations with the defendant.

9               Counsel has both the felony review notes

10    that shows sum and substance the conversation and

11    now the detective sup.  So while he may be surprised

12    at some of the other stuff, there should be no

13    surprise as to the defendant's statement.

14               Ask to proceed accordingly.

15         THE COURT:   And as far as you described it,

16    "the other stuff," you are not going into that, is

17    that correct?

18         MR. RONKOWSKI:   No.  If counsel wants to go

19    into it, he's free to --

20         THE COURT:   No, you, Mr. Ronkowski.

21         MR. RONKOWSKI:   No.

22         THE COURT:   Are you going to go into it on

23    direct?

24         MR. RONKOWSKI:   No.

1          THE COURT:    Thank you.    And I suppose that in

2     an intellectual exercise, any idea why the detective

3     supplement was, 2000 case, was not received until

4     the middle of 2002?

5          MR. RONKOWSKI:    It was ordered up the day after

6     the arraignment and for some reason we never got it,

7     and with the delay involved with the defendant's BCX

8     we did not catch the mistake, either side, until

9     after the trial had started.    My culpability.

10         THE COURT:    With the representatIon by the

11    State they will not go into "other stuff," in

12    parenthesis, does that resolve the issue?

13         MR. SHERMAN:    Sup being a very generic term,

14    Judge, yeah, until we find out that there is

15    anything of "that stuff" that gets in, we would

16    include the objection.

17         THE COURT:    Very well.    State may proceed.

18                   (Witness sworn.)

19         THE COURT:    You may proceed, Mr. Ronkowski.

20         MR. RONKOWSKI:    Thank you.

21              DETECTIVE JAMES CARLASSARE,

22    called as a witness on behalf of the People, having

23    been first duly sworn, was examined and testified

24    as follows:

                         X-5

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, _CHARLES DANIELS_, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109, 28 USC 1746 or 18 USC 1621 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing document(s) is/are known to me and is/are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this _11th_ day of_____MAY_____,
200_7_.

_Charles Daniels_
                                                Affiant

IN THE

APPELLATE COURT
FIRST DISTRICT - 6th DIV.

People of State of Illinois
**PLAINTIFF**

v.

CHARLES DANIELS
**DEFENDANT**

)
)
)
)
)
)
)
)
)

CASE NO. 06-2583
06-2769

FINLEY

### PROOF/CERTIFICATE OF SERVICE

TO: CLERK OF THE COURT          TO: _____

160 North Lasalle St
14th Floor
Chicago, Illinois 60601

_____
_____
_____
_____

**PLEASE TAKE NOTICE** that on MAY 11 ,20 07 , I have placed the
attached document(s) in the institutional mail at Taylorville C.C.
properly addressed to the parties listed above for mailing through
the United States Postal Service at: _____

RESPONSE IN OPPOSITION TO FINLEY BRIEF

I swear that I mailed the attached document(s) as above addressed
under penalty of law.

So Sworn, Charles Daniels

PRO SE, # N-63102,
P.O. Box 900,
TAYLORVILLE IL, 62568.

Nos. 1-06-2583 & 1-06-2769

**IN THE**
**APPELLATE COURT OF ILLINOIS**
**FIRST DISTRICT**

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from Circuit Court of Cook County, Illinois |
| VS. | ) | No. 00 CR 7104 **FILED** |
| CHARLES DANIELS, N-63102, PRO SE. | ) | THOMAS M. DAVY  APPELLATE COURT 1st DIST. |
| | ) | Honorable Judge. JUN 0 1 2007 |

**ADDENDUM IN OPPOSITION TO FINLEY BRIEF**    STEVEN M. RAVID
                                                                          CLERK

On page 12 of this Motion appellant stated that both this
Honorable Appellate Court and the Circuit Court had deemed the
**Maskell**, 304 Ill.App.3d at 82,237 Ill.Dec. at 821, case as **dispositive**
as the evidence showed        two unauthorized entries with intent
to steal: into Elston's building & into the vacant unit.
However, as is made perfectly clear throughout the appellant's
**Sixth Amendment (VI)** claim of ineffective assistance of counsel,
it was appellant's defense counsel whom supplied the **evidence**.
The State Attorney had only asked on **direct** about permission or
authority with respect to the vacant apartment.(TR.R.124) There is
nothing contained in that brief exam which supported the notion
that appellant entered into the **hallway or other common areas** of
the building, that is until **defense counsel** elicited the following
testimony that even this Honorable Court **presumed** had been established
from the State prosecutor.

    Q: How long would you say he was in the HALLWAY of your building?
    A:  I'd say THREE MINUTES.
    Q: Thirty minutes?
    A:  THREE MINUTES.                    ( TR.R.128)

THE Appellate opinion **People v. Daniels**, 1-02-2905, strikingly,
in Misapprehension either **presumed** that the stricture's of **due process ##**
was satisfied upon positive testimony on each and every element
necessary for burglary as it was constructed at the time relevant
to the instant charge or **retroactively** mis-applied the Amended
burglary statutory construction presently that allows a conviction
to be sustained as a " **lesser-included** " offense based on proof of
residential burglary.  As the Appellate Court held:

> " Here, Elston testified that she saw defendant enter
>   and after three minutes in the hallway, leave her building.
>   Combined with the facts that he later entered the vacant
>   unit & removed Elston's property & that **Elston did not
>   grant him permission to be in the building**...............
>   a reasonable person could conclude that defendant entered a
>   non-dwelling portion of a building without authority &
>   with the intent to commit theft.  As in **Maskell**, the evidence
>   is clear that defendant made two unauthorized entries with
>   intent to steal: into Elston's building & into the vacant unit.
>
> **Maskell,**   304 Ill.App.3d at 84;
>
> [ Appellate Opinion-1-02-2905, December 22,2003 ]

## Due process, as found in  **Jackson v. Virginia**, 443 US 307,
                              99 S.Ct.2781;
  and in Illinois in, **People v. Bowman,** 293 Ill.Dec.181,827 NE 2 1062
  **People v. Adams,** 281 Ill.App.3d 339,669 NE 2d 769 (1st Dist.1996)

As this Honorable Appellate Court deemed in the similar case **People v. Jackson** , 251 Ill.Dec.848 (1st Dist.2001) 741 NE 2 1026, regarding defense counsel eliciting an otherwise unproven element of the state's case-in-chief, and determining that defense counsel was ineffective in his performance, the appellant Daniels, maintains that regardless of whether it was defense counsel's objective to **amplify or clarify**, his cross-examination remains the basis of **evidence** on which this Honorable Court ruled established the State had meet its burden for the charged offense of burglary, as referenced above from the Appellate OPINION **1-02-2905**.

Finally, appellant maintains that the right to counsel plays a crucial role in the adversarial system embodied in the **SIXTH (VI) AMENDMENT**, since access to counsel's skill & knowledge is necessary. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair... For that reason the **COURT** has recognized that the " right to counsel is the right to the effective assistance of counsel." **Cuyler v. Sullivan**, 446 U.S. 335,344 (1980) **Strickland v. Washington**, ·( 1984) 466 U.S.668,685-686 The fact remains that the mistake of defense counsel that aided the State prove its burden amounts to an unreasonable ˙performance as has been demonstrated above and for which reasons both this **Finley** brief must be denied, and **de novo review** employed in light of this new factual basis of evidence.

**NOTICE**

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

FIRST DIVISION
JULY 30, 2007

No. 1-06-2583 and 1-06-2769
(Consolidated)

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 00 CR 7104 |
| | ) | |
| CHARLES DANIELS, | ) | Honorable Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Defendant Charles Daniels appeals the trial court's order granting the State's motion to dismiss his post-conviction petition.

Following a bench trial, defendant was convicted of burglary and sentenced as a Class X offender to eight years' imprisonment. The judgment was affirmed on direct appeal. <u>People v. Daniels</u>, 1-02-2905 (2003) (unpublished order under Supreme Court Rule 23).

Defendant filed a *pro se* post-conviction petition and counsel was appointed for defendant on December 17, 2004. Subsequently, defendant filed a *pro se* amended post-conviction petition and the State filed a motion to dismiss. On October 26, 2005, post-conviction counsel filed an amended post-conviction petition and in turn, the State filed a response. Following a

EXHIBIT L

1-06-2583 and 1-06-2769 cons.

hearing on August 11, 2006, the trial court granted the State's

motion to dismiss defendant's petition.

The State Appellate Defender, who represents defendant on appeal, has filed a motion for leave to withdraw as appellate counsel. A memorandum in support of the motion has been submitted pursuant to <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), in which counsel stated that an appeal of this case would be frivolous. Defendant filed a response.

We have carefully reviewed the record in this case, the aforesaid memorandum and defendant's response in compliance with the mandate of the <u>Finley</u> decision. We agree with counsel's assessment. Therefore, the motion of the State Appellate Defender for leave to withdraw as counsel is allowed.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GARCIA, J., with McBRIDE, P.J., and R. GORDON, J., concurring.

11790

NO. _____

IN THE

SUPREME COURT OF ILLINOIS

Charles Daniels,                              )
                                              )
    Petitioner                          )
                                              )
    v.                                  )
                                              )
People State of Illinois,                     )
                                              )
    Respondent                          )

MOTION BY PETITIONER FOR RELIEF
UNDER SUPREME COURT RULE 381

FILED

FEB 1 5 2007

SUPREME COURT
CLERK

Charles Daniels
Reg. No. N-63102
Taylorville Correctional Center
P. O. Box 1000
Taylorville, Illinois  62568

EXHIBIT M

IN THE
SUPREME COURT OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | Petition for Leave to File a |
| RESPONDENT-APPELLEE,             ) | Original Action per Article VI, |
| VS.                              ) | Section 4(a), of the Illinois |
| CHARLES DANIELS,                 ) | Constitution. |
| PETITIONER-APPELLANT.            ) | |

## MOTION FOR LEAVE TO FILE PER RULE 381

NOW COMES, CHARLES DANIELS, PRO SE, pursuant Illinois Supreme Court Rule 381, filing an original action in the Supreme Court per Article VI, Sec. 4(a), of the Illinois Constitution,  raising as a Issue of Law the Question of whether " a change in the Law that materially disadvantage's  a accused is violative of Ex Post Facto, when Section 4- Statute on Statutes, does not save it nor allow for its retroactive application, where the Amendment is a Substantive change in the Law, rather than a procedural change.

Specifically, where two criminal offense's are/were deemed Mutually exclusive, at the time of the accused's arrest, whether proof of one offense can be translated or be used to infer as proof the absence of each and every material and essential element of the other offense, without running afoul of Due process strictures. People v. Atkins,  298 Ill.Dec.50, 838 N.E.2d 943 (Ill.Sup.Ct.2005)

## PROCEEDINGS BELOW

This matter arose out of the Criminal Court of Cook County, under # **00-CR-7104**,following a bench trial on July 16,2002.

The Appellate First District Court affirmed this burglary conviction under # **02-2905, on December 22,2003**. Petition for Leave to appeal based on the same evidence and issues decided on direct review, was denied on **June 23,2004**, with the exception that herein the petitioner raises the absence of any direct testimonial proof on a material element of the charged offense and a violation of **EX POST FACTO** in the OPINION of the Appellate Court decision of December 22,2003.

A pro se post-conviction petition was filed in November of 2004, that leave to amend was granted to counsel. Subsequently said petition which was dismissed without a Evidentiary hearing in the Circuit Court, raised  both trial & Appellate ineffective assistance of counsel claims, on **August 11,2006.**

Copies of the relevant Appellate Court's Opinion affirming, and other pertinent materials and documents are included.

**COMPELLING REASONS FOR GRANTING REVIEW**

This Honorable Court should grant review of Charles Daniel's case, because both the Circuit Court and intermediate Appellate Court have failed to recognize the prohibition of **EX POST FACTO**, under either the United States Federal or Illinois Constitutions, **or** to apply this Court's controlling precedent's regarding **Substantive statutory Amendments** against criminal offense's; viz the fact that " procedural ramifications of a **substantive** amendment to a statute do not make the amendment a procedural one that can be applied retroactively." People v. Glisson, 292 Ill.2d 499,507,270 Ill.Dec. 57, 782 N.E.2d 251 (2002); Carney v. Bower, 207 Ill.2d 82, 278 Ill.Dec. 1, 797 N.E.2d 596 (2003).

Additionally, this Honorable Court should grant review in order to clarify its holding in People v. Atkins, 298 Ill.Dec.50,838 N.E. 2d 943 Ill.2005), where this Court after careful & extensive analysis, affirmed the First District Appellate court 348 Ill.App.3d 126, 284 Ill.Dec.30, 809 N.E.2d 152, and the fact that the trial court plain erred, in convicting defendant of burglary as a **"lesser-included"** offense of residential burglary,when at the time of that offense, burglary was **NOT** a lesser-included offense of residential burglary, amounting to **reversible error, as Childress,** was the controlling precedent, 158 Ill.2d 275,198 Ill.Dec.794,633 N.E.2d 635 (1994).

-2-

EXPLANATORY SUGGESTION SUPPORTING RELIEF ON THE QUESTION OF
WHETHER THE STATE HAS SECURED THIS CONVICTION THROUGH A
ERRONEOUS & UNREASONABLE APPLICATION OF THE LAW VIOLATING
EX POST FACTO CLAUSES OF BOTH FEDERAL & STATE CONSTITUTIONS

Despite the clear language of the **EX POST FACTO** clause and
its bedrock significance under both the Federal and State of Illinois
Constitutions ( **U.S Const. Art 1 § 9,cl.3; Art.1§10; & Illinois
Illinois Const. 1970 , art.1§ 8   )**

**prohibiting** the " receiving of **less or different** evidence or
                        testimony being Admissable to convict than
                        was required prior to a Statutory amendment
                        to the law."

**WEAVER v GRAHAM**, 450 US 24; **COLLINS v YONGBLOOD**, 497 US 37,41,

110 S.Ct.2715,2718; Barger v. Peters, 163 Ill.2d 357,206 Ill.Dec.

170, 645 N.E.2d 175 (1994); **Flores v. I.N.S.**, 272 F3d 433(7th Cir 2001)

this present case rests solely upon the violation of **EX POST FACTO.**

This Honorable Supreme Court's review is particuarly necessary
based on the egregiousness of the First Dist. Appellate Opinion,
that has in misapprehension Plain erred, through its analysis and
ORDER, " **retroactively** " applying **Public Act 91-928** ( eff.after
June 1,2001 )   against the petitioner's criminal conduct that happened
on **February 12,2000**, which of necessity fell under the purview of
**Public Act 91-360's** construction of the Burglary statute. Specifically
said statute **720 ILCS 5/19-1 (West 2000)** stated inter alia, that
" this offense **SHALL NOT INCLUDE ****** the offense of residential
 burglary as defined in sec. 19-3 hereof."

 The Instant Appellate OPINION **rather than** employing the applicable
law at the time the defendant was arrested to review his case, applied
the amended version of the statute that became effective for

—3—

offense's ₃ committed after **June 1,2001**, without any Legislative
authority to have done so. **720 ILCS 5/19-1 (West 2002)** 5/19-3(West 2002)

Petitioner Daniels maintains that contrary to the clear language
enunciated by this **Supreme Court of Illinois**, under **People v. Childress**,
158 Ill.2d 275, 198 Ill.Dec.794,633 N.E.2d 635 (1994) which was the
controlling legal precedent and the applicable standard of review
of the law on the charge of Burglary to a building on the date of
petitioner's arrest on **February 12,2000**, the Appellate opinion
ignored this stare decisis holding. Specifically, that burglary
was **NOT** a " lesser-included " offense of residential burglary, as
the burglary & residential burglary statutes were **mutually exclusive**
offense's.

Because **CHILDRESS**, had proved to be problematic between the
Appellate Districts of the State of Illinois, the Legislature fixed
the problem by amending the residential burglary statute to provide
that burglary is Now a " lesser-included " offense of residential
burglary, that became effective after **June 1,2001**.  Relevant to this
discussion and this **EX POST FACTO** question the petitioner maintains
that this was a **SUBSTANTIVE** change in the meaning of both statutes.
Rather, substantive amendments alter the scope or the elements of
a crime, hence they **cannot be applied retroactively.**
**Caveney v. Bower**, 207 Ill. d 82,94,278 Ill.Dec. 1, 797 NE 2d 596
**Landgraf v. USI Film Products**, 511 U.S. 244,114 S.Ct.1483, 128 L.
Ed 2d 229 (1994)

- 4

Moreover, this OPINION failed to have rebutted the "prospective" application of the amendment or to recognize that **Section 4 of** the **Statute on Statutes ( 5 ILCS 70/4 (West 2002) ),** being the General Savings Clause of " every amended statute" which this Supreme Court of Illinois has interpreted to mean that " procedural changes" to statutes may be applied retroactively, **while substantive changes MAY NOT."** **Caveney,** 207 Ill.2d at 92; But cf see: **People v. Holme,** 292 Ill.App.3d 855,860-61,227 Ill.Dec.53, 686 NE 2 1209(1997 );

**People v. Jennings,** 181 Ill.App.3d 439,442,130 Ill.Dec.185 (1989)

This instant Appellate OPINION treated this case as though it involved a general amendment to the Criminal Code concerning lesser include offenses, as clearly denoted in its comments in affirming.


### ARGUMENT

Here in the instant matter, the Illinois Legislature **DID NOT** **indicate that the amendment should be applied retroactvely.** Ergo, the Illinois Appellate Court had no authority to have done so against Mr. Daniels case, during its direct review of case # **1-02-2905:**

" Here, Elston testified that she saw defendant enter and after three minutes in the hallway, leave her building. Combined with the facts that he later entered the vacant unit and removed Elston's propery and that Elston **did not grant him permission to be in the building,** a reasonable person could conclude that defendant entered a non-dwelling portion of a building **without authority** and with the intent to commit theft. As in **Maskell,** the evidence is clear that defendant MADE two unauthorized entries with intent to steal: into Elston's building and into the vacant unit. **Maskell,** 304 Ill.App.3d at 84. Indeed, if the course of entry in **Maskell,** ---through the common area of the building to the dwelling unit--constituted two entries, then defendant's separate entries here---into the building and out again, then later into the vacant unit--are even more clearly two distinct entries and the basis of two distinct offense. **The fact that the vacant unit was a dwelling, and defendant's entry was residential burglary , THUS DID NOT PRECLUDE defendant's conviction for burglary."**

[ App. Op. pg. 6,7, Dec. 22,2003- 1-02-2905 ]

The Appellate OPINION accurately quoted in its remarks the before and after correct statutory constructions of sections **720 ILCS 5/19-1** and **720 ILCS 5/19-3 (West 2002)**, where under the Amended version of the Statute, a defendant commits BOTH burglary and residential burglary when he commits a burglary in a dwelling. However, the Appellate OPINION, in an effort to bring Mr. Daniels case within orbit, assumes, unlike in **People v. Maskell**, 304 Ill.App.3 77 that direct testimonial proof was received at the trial upon each " distinct " entry, so as to have satisified and comported with DUE PROCESS strictures of Law.

Rather, **Maskell**, is distinguishable, as a State witness testified that " nobody gave permission to that defendant to have entered the apartment to take a television. " Further, and **ipso facto** upon this case's distinction of the proof received, are that an **additional** witness, Mr. Thomas Preston, testified that " he never gave permission to that defendant to have entered the six-flat building."
**Maskell**, 237 Ill.Dec. at 821.
The State's Attorney never asked Mrs. Elston if anybody had authority to be in the "common areas " of her building. The State never asked if anybody had authority to enter those premises or to remain there. Rather the State's Attorney only asked about permission or authority with respect to the **vacant apartment ( R.124)** The State was required to prove all essential elements of the offense with respect to the charged area.

**No fair reading** of the Appellate OPINION in light of the evidence adduced at trial can support its interpretation that the State proved from any witness that the entry into the building was without authority or permission as was done in **Maskell**.

**TRIAL**

Appellant Daniels was charged with the burglary of Nora Elston's apartment building located at 8232 and 8234 S.Eberhart, in Chicago, Illinois.  The State's theory of the case was that defendant entered one of the apartments on the ground floor of that building & took the belongings of Mrs. Elston ( R.117)  The direct examination of Mrs. Elston by the State's attorney assigned to the case reveals as much. ( R.116-125)  This contention is also supported by the fact that the State's attorney never asked Mrs. Elston if anybody had permission or authority to enter the " common areas " of the building. Rather the State's attorney only asked about permission or authority with respect to the vacant apartment( R.124)  During cross-examination, defense counsel elicited testimony that the unlawful entry into the building could have included an unlawful entry into the "common-areas" despite the fact that there was nothing in the direct examination of the complaining witness which could have been used to support such a finding.  (R.128)

Subsequently, the trial court ruled that there were two illegal entries, the first into the apartment building, and the second into the actual living unit on the first floor of that building.(R.176-179) The court said the entry into the actual apartment unit was residential burglary, and that offense had never been charged. ( R.176-179 ) The trial court then held that appellant Daniels was guilty of burglary based on his entry into the " common areas " of building. ( R.176-179 )

Because the trial court found appellant guilty of the burglary of the "common areas " of the building, and it was defense counsel who supplied the trial court with the testimony (R.128) regarding

-7-

those " **common area's** " , defense counsel essentially helped to prove the State's case against his client.

See, **People v. Jackson** , 251 Ill.Dec.848,741 N.E.2d 1026 (Il.App.1st.

( where defense counsel's cross-examination of a witness elicited entered proof of essential and material element of crime charged; and took that the State prosecutor had not established in case-in-chief.)

It **Stands,** without controversy that the State attorney **ONLY ASKED about authority with** respect to the vacant apartment ( R.124 )

Mrs. Elston's direct examination is only **10 pages** in length. There is nothing contained within that brief exam which supports the notion that defendant entered into the **Hallway or other portion of " common areas "** of the building, **That is until** defense counsel elicited the follwing **inculpatory** and damaging testimony:

Q: How long would you say he was in the **HALLWAY of your building?**
A: I'd say **three minutes.**
Q: Thirty minutes.
A: Three minutes. ( R.128 )

Aside from the fact that Mrs. Elston had never said defendant was in the **HALLWAY** of her building, the record is totally devoid of any such testimony prior to defense counsel's quesiton cited above. The point is this question arguably puts defendant past the security door by the mailboxes and into the " common-areas" of the building. Second, incidentally this line of questioning directly contradicts Mrs. Elston's testimony on direct examination ( R.118-119) that she never saw or heard anybody in the actual hallway of the apartment building. Third, it undercuts the other portions of the cross-exam testimony where she stated clearly & unequivocally, that the doors to the vacant apartment were locked & that defendant must have come in through an open window ( see e.g. " one of them had to be open for him to get in " ) ( R.135-136) In short, Defense counsel aided the State to prove its case by supplying missing material element.

-8-

**WHETHER THIS CONVICTION MUST BE REVERSED SINCE THE STATE
RECORD IS DEVOID OF ANY PROOF UPON A MATERIAL ELEMENT AND
THE TRIAL COURT HAS INFERRED ITS ABSENCE IN LIEU OF PROOF**

Under both Federal and State of Illinois Constitution's

regarding **DUE PROCESS (XIV),** the prosecutor has a burden to prove

every element of the crime the accused is charged with beyond a

reasonable doubt on the record as alleged in the indictment.

**Jackson v. Virginia**, 443 US 307,316,99 S.Ct.2781; **In re Winship**,

397 US 358,364 (1970); **Sullivan v. Louisiana**, 508 US 275,278;

This burden of proof upon **each & every Element** of the crime remains

in a criminal matter on the prosecution, consisting of both **production**

**& persuasion. People v. Adams**, 281 Ill.App.3d 339,666 N.E.2d 769

The defendant must be acquitted if the government fails to sustain

its burden of proof. **Lafave & Scott, Crim. Law; McCormick, Evidence**

        In this matter instanter, " **authority or permission"** to have

entered or remained within the common area of the building as alleged

in the indictment was never established as a matter of Law.

**People v. Heper,** 132 Ill.App.3d 705,477 N.E.2d 768;
**People v. Baker,** 59 Ill. App.3d 100,375 N.E.2d 176;
( holding that the fact of an unauthorized entry must be proven
  separately from the fact of any entry  with wrongful intent.)

**BUNKLEY v.FLORIDA** 538 US 835,155 L.Ed 1046,123 S.Ct.2020;
(where State statute classified burglary with a dangerous weapon
as a burglary in first degree, and (2) **Supreme Court** held that the
state court had plain erred in upholding denial of post-conviction
relief to burglary against defendant before deciding whether all
the requisite elements had been proven.)

Additionally, in Illinois, it has long been held that each

" essential allegation of a indictment must be proved without variance
and **cannot be Inferred.**

          **People v. Clark**-389 N.E 2d 911,71 Ill.App.3d 381
( holding that essential allegations of an indictment must be
  proven without variance and a essential element of a crime
  **cannot be inferred but must be established with positive proof.**)

-9-

The Question of Constitutional law is whether a conviction must be reversed when the trial record is totally devoid of proof on the relevant essential element of Burglary as the statute was constructed in Illinois on February 12, 2000. Rather, can a conviction be affirmed for the charge of burglary to the building's " common areas" beyond a reasonable doubt, where the State **never elicits any affirmative answer** to the question as to whether the entry was **without authority or permission. ( R.124 )**

In applying this question, appellant Daniel's maintains that long since the seminal case of **People v. Mosby, 185 N.E.2d 152,** the fact has remained that **each & every material element** of a criminal offense need be met, as a matter of Illinois law.

**People v. Jamison**, 235 N.E.2d 849, 92 Ill.App.2,28 ( Essential allegations of an indictment must be proved without variance and cannot be inferred.)

As the **Illinois Supreme Court** long ago stated in **Mosby,** and followed by Appellate District Court's since then, an essential material element of a crime cannot be inferred  but must be established with positive proof, to sustain a conviction.

> " The fact that this proof might have been elicited by a
>   **single question** is beside the point since it was not done.
>   Because of the failure of the People to prove a essential
>   allegation of burglary in this case, cause **reversed.**"
>
>                                       **Mosby, 185 N.E.2d 153**

In the **instant matter,** Mrs. Elston on direct examination **NEVER stated** she saw or heard anybody in the actual hallway " common-area's" of the apartment building.( R.118-119)  Mrs. Elston clearly stated that she never heard anybody come up the stairs & thereby, enter the **hallway** outside of her apartment door.( R.127-128)  The State's theory of this case was that the defendant had entered one of the

-10-

apartments on the ground floor of that building & took the belonging of Mrs. Elston ( R.117)  The **ENTIRE** direct examination by the State's attorney assigned to the case reveals as much. ( R.116-125)   This contention is best supported by the fact that the State's attorney **NEVER ASKED** Mrs. Elston if anybody had the permission or authority to enter the " common-area's" of the building. building. ( R.124 )

What remains fundamental under the strictures of **DUE PROCESS LAW**, is the fact that the State **never asked this critical question,** that's necessary to prove beyond a reasonable doubt from Mrs. Elston, the essentialelement as alleged within the indictment, regarding the common-area's. ( R.124 ) This **fatal omission** has yet to be answered or countered with one iota or scintilla of proof as to why this omission is not a **reversible error.**

Additionally, noteworthy in **People v. Maskell,**304 Ill.App.3d 77, which was deemed dispositive, by the trial & Appellate OPINION, a State witness testified that " nobody gave permission to that defendant to ⟨h⟩Ave entered the apartment & take a television. **Further, & ipso facto** upon the instant crux are that a witness **Mr. Thomas** Preston testified that he " never gave permission " to that defendant to have entered the six-flat building. **Maskell, 237 Ill.Dec.at 821**

### ARGUMENT

The law in Illinois is perfectly clear that the burden of proof in a criminal matter remains on the State in both **production & persuasion** of evidence sufficient to sustain a finding of guilt beyond a reasonable doubt. **People v.Adams**, 281 Ill.App.3d 339, 669 N.E.2d 769 ( 1st Dist.1996)

This burden is not overcome by speculation, conjecture, innuendo, or by probabilities of inference.

**People v. Ortiz**, 196 Ill.2d 236,752 N.E.2d 410 ( 2001)

" What is involved here is the standard of proof which is applicable to all crime. That is to say, conviction beyond a reasonable doubt. Whether the crime charged be trespass, shoplifting, armed robbery, or murder, the test is the same. The burden of meeting this standard falls solely on the prosecution. If it fails to meet this burden, a defendant is entitled to a finding of not guilty. No defendant is required to prove his innocence.*** It is no help to speculate that the defendant may[be guilty]. **Smith**, 185 Ill.2d at 545-46, 236 Ill.Dec. 779, 708 N.E.2d 365

A fatal deficiency in the proof is clearly shown in this case. In order to have shown appellant's guilt, the State had to prove the absence of " authority or permission " to enter or remain in common areas of the building on February 12, 2000. The State's theory at trial focused on the lack of permission to have entered the **vacant** apartment, ( residential burglary ) which was uncharged. The reliance of this evidentiary proof as a " lesser-included " offense to convict for burglary is **misplaced** & the **retroactive** application of the Amended burglary statute under **Public Act 91-928**, effective after **June 1, 2001,** has also been recently declared **Unconstitutional** by **Supreme Court of Illinois** in **People v.Atkins**, 298 Ill.Dec.50, 838 N.E.2d 943 ( 2005 )

**WHEREFORE,** based on the foregoing, that the State record is totally devoid of direct testimonial proof beyond a reasonable doubt as is required as a matter of law, appellant prays that his motion for leave to file per **Rule 381, be granted**, so that an end can be made to finally determine the substantive rights regarding the relevant Amendatory change and Due process question of law.

12

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, _Charles Daniels, N-63102_ , affiant, do hereby
declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109 that
everything contained herein is true and accurate to the best of my knowledge and belief.
I further declare and affirm that the contents of the foregoing documents are known to me
and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm
that the matter at hand is not taken either frivolously or maliciously and that I believe the
foregoing matter is taken in good faith.

Signed on this _1ST_ day of _FEBRUARY_ , 20_07_.

_Charles Daniels_
                                                    Affiant

## APPENDIX TO THE BRIEF

Index to the Record.......                          A-1

Notice of Appeal.........                           A-7

Appellate ORDER- Dec. 22,2003......                A-8

## INDEX TO THE RECORD

**Common Law Record ("C")**                                                                    **Page**

Memorandum of Orders ("Half Sheet") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Arrest Report (February 13, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Appearance (January 13, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22, 27

Complaint for Preliminary Examination (February 13, 2000) . . . . . . . . . . . . . . . . . . . . . 21

Information (March 10, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

State's Motion for Discovery (April 3, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

State's Answer to Discovery (April 3, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Circuit Court Order (November 29, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Petition to Evaluate the Fitness of the Defendant (November 29, 2000) . . . . . . . . . . . . . . . 33

Presentence Investigation Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Letter in Mitigation (April 16, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99

Defendant's Answer to Discovery (June 5, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103

Jury Waiver Form (June 5, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104

Motion for New Trial (July 30, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106

Motion to Reconsider Sentence (August 21, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109

Notice of Appeal and Request for Extension of Time to File Mandamus in Supreme
Court of Illinois (August 29, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110

Notice to Supreme Court Regarding Petition (September 16, 2002) . . . . . . . . . . . . . . . . . . 114

Petition for Report of Proceedings (September 16, 2002) . . . . . . . . . . . . . . . . . . . . . . . . 115

Petition for Report of Proceedings (September 24, 2002) . . . . . . . . . . . . . . . . . . . . . . . . 119

Letter from Supreme Court of Illinois Regarding Filing of Motion (September 24, 2002) . . 121

Notice of Appeal (September 9, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

**Supplemental Record (SC)**

Letter in Mitigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Letter from Forensic Clinical Services Regarding Defendant's Fitness (October 25, 2000) . . . . 5

Circuit Court Order (January 17, 2001) ........................................... 6

Circuit Court Order (March 12, 2001) ............................................ 7

Letter from Jackson Park Hospital Regarding Psychiatric Evaluation (June 20, 2001) ....... 8

Letter from Jackson Park Hospital Regarding Psychiatric Evaluation ................... 13

Letter from Forensic Clinical Services Regarding Defendant Charles Daniels Fitness (July 24, 2001) ............................................................... 16

Forensic Clinical Services  Psychiatric Summary (September 13, 2001) ................ 17

Sentencing Order (December 12, 2002) .......................................... 22

## Report of Proceedings ("R")

|                                          | Direct | Cross | Redir. | Recr. |
|------------------------------------------|--------|-------|--------|-------|
| April 3, 2000 - Continuance              |        |       |        | 4     |
| May 22, 2000 - Continuance               |        |       |        | 9     |
| August 15, 2000 - Continuance            |        |       |        | 16    |
| October 2, 2000 - Continuance            |        |       |        | 21    |
| November 14, 2000 - Continuance          |        |       |        | 24    |
| November 29, 2000 - Continuance          |        |       |        | 28    |
| January 17, 2001 - Continuance           |        |       |        | 32    |
| February 14, 2001 - Continuance          |        |       |        | 36    |
| March 21, 2001 - Continuance             |        |       |        | 41    |
| June 20, 2001 - Continuance              |        |       |        | 47    |
| October 9, 2001 - Continuance            |        |       |        | 52    |
| October 23, 2001 - Continuance           |        |       |        | 57    |
| November 5, 2001 - Continuance           |        |       |        | 62    |
| November 29, 2001 - Continuance          |        |       |        | 73    |
| December 17, 2001 - Continuance          |        |       |        | 76    |
| January 17, 2002 - Continuance           |        |       |        | 81    |

|  | Direct | Cross | Redir. | Recr. |  |
|---|---|---|---|---|---|
| March 5, 2002 - Continuance |  |  |  |  | 85 |
| March 26, 2002 - Continuance |  |  |  |  | 88 |
| April 10, 2002 - Continuance |  |  |  |  | 91 |
| April 16, 2002 - Continuance |  |  |  |  | 110 |
| June 5, 2002 |  |  |  |  |  |
| **Bench Trial** |  |  |  |  |  |
| Jury Waiver |  |  |  |  | 114 |
| State Witness |  |  |  |  |  |
| Nora Elston | 115 | 125 |  |  |  |
| June 19, 2002 - Continuance |  |  |  |  | 145 |
| July 16, 2002 |  |  |  |  |  |
| State Witnesses Continued |  |  |  |  |  |
| Det. James Carlassare | 151 | 154 |  |  |  |
| Officer William Meister | 156 | 162 |  |  |  |
| State Rests |  |  |  |  | 164 |
| Motion for Directed Finding |  |  |  |  | 164 |
| Defense Rests |  |  |  |  | 166 |
| Finding of Guilt |  |  |  |  | 167 |
| July 30, 2002 |  |  |  |  |  |
| Motion for New Trial - Denied |  |  |  |  | 179 |
| Sentencing Hearing |  |  |  |  |  |
| Argument in Aggravation |  |  |  |  | 179 |
| Argument in Mitigation |  |  |  |  | 180 |
| Allocution |  |  |  |  | 181 |
| Imposition of Sentence |  |  |  |  | 183 |

|  | Direct | Cross | Redir. | Recr. |  |
|---|---|---|---|---|---|
| September 5, 2002 |  |  |  |  |  |
| Motion to Reduce Sentence - Denied |  |  |  |  | 195 |
| **Supplemental Record ("SR")** |  |  |  |  |  |
| May 16, 2001 - Continuance |  |  |  |  | 4 |
| July 24, 2001 - Continuance |  |  |  |  | 9 |
| September 17, 2001 - Continuance |  |  |  |  | 12 |
| October 1, 2001 - Continuance |  |  |  |  | 18 |

(Rev. 10/30/01) CCCR 0603

TO THE _Appellate_ COURT OF ILLINOIS
IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL BUREAU

E OF THE STATE OF ILLINOIS
Motion to Reduce Sentence - Denie

_Charles Daniel_

Case No. _00 CR 7104_
Trial Judge _DAVY_
Court Reporter _____
Attorney _DENNIS HIGH SHERMAN_
Appeal Check Date _____
Appeal Bond _____

NOTICE OF APPEAL

peal is taken from the order or judgment described below:

lant's Name: _Charles Daniels_
lant's Address: _111 D.O.C._
lant's Attorney: _____
ess: _____
se: _BURGLARY_
ment: Guilty of _BURGLARY_ on a _bench trial_
_7-16-02_
nce: _8 YRS 111 D.O.C._
Notice Filed: _9-9-2002_

_Charles Daniels by his truck Attorney_    Appellant

VERIFIED PETITION FOR REPORT OF PROCEEDINGS AND COMMON LAW RECORD

er Supreme Court Rules 605-608 Appellant ask the Court to order; (1) the Official Court Reporter to transcribe an
inal and the copy of the proceedings, file the original with the Clerk and deliver a copy to the Appellant, or upon
ellant's written request to the Appellant's attorney of record, and (2) the Clerk to prepare the Record on Appeal.

Appellant, being duly sworn, says that at the time of his/her conviction he/she was and he/she now is unable to
for the Record or an appeal lawyer.

_____ Appellant

BSCRIBED and SWORN TO before me this _____ day of _____, _____

_____ Notary public

ORDER

IS ORDERED; 1. _____
pointed as counsel on appeal, and 2. the record and Report of Proceedings be furnished appellant free.

| | | | |
|---|---|---|---|
| 6-5-0 , 2002 | 9. 5 , 2002 | , |
| 7-16 , 2002 | , | , |
| 7-30 , 2002 | , | , |
| | , | , |

TE: _____, _____    ENTER: _____
                              Judge                    Judge' No.
cknowledge receipt:                                   Court Reporter

**NOTICE**

The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

FIRST DIVISION
DECEMBER 22, 2003

No. 1-02-2905

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 7104 |
| | ) | |
| CHARLES DANIELS, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Following a bench trial, defendant Charles Daniels was
convicted of burglary and sentenced as a Class X offender to
eight years' imprisonment. Defendant contends on appeal that he
was not proven guilty of burglary beyond a reasonable doubt
because there was insufficient evidence that he entered the
common area of an apartment building. He argues that his
unauthorized entry was to a dwelling place and was thus
residential burglary rather than burglary, at a time when
burglary and residential burglary were considered mutually
exclusive offenses. Defendant also contends that mandatory Class
X sentencing under section 5-5-3(c)(8) of the Code of Corrections
(730 ILCS 5/5-5-3(c)(8) (West 2002)) violated his right to due
process and trial by jury because the State is not required to
give notice of its intent to sentence defendant as a Class X

1-02-2905

offender or to prove his convictions, the sequence of those
convictions, or his age to a jury beyond a reasonable doubt.

At trial, Nora Elston testified that she owned an apartment
building at 8232 and 8234 South Eberhart and lived in a first-
floor apartment at the 8232 address.  On February 12, 2000, the
first-floor unit across from Elston's, at the 8234 address, was
vacant and the doors were locked.  Elston intended to rent the
vacant unit again "eventually," but was storing some of her
belongings there.  At about 3:40 p.m., Elston looked out the
window and saw defendant approach her building.  She heard the
doorbell for the vacant unit and then "fumbling" with the
mailbox.  Elston saw defendant enter the building; he was in the
hallway for about three minutes before she saw him leave.  Elston
called the police.  The police left after finding the door to the
vacant unit locked and searching outside the building.

Later, Elston heard noises from the vacant unit and called
the police again.  She saw defendant leaving her building, by the
front door, with some of the large plastic bags she had stored in
the vacant unit.  Elston followed defendant, but returned home
when she lost sight of him.  When the police arrived, Elston
accompanied them and pointed out defendant.  The officers
arrested defendant, who was not carrying any bags.  Defendant
then "produced the bags from somewhere," and Elston identified
them as hers.  When Elston checked the doors to the vacant unit,

1-02-2905

they were still locked. Elston had not given defendant
permission to be in the vacant unit or remove property from it.

Police detective James Carlassare testified that he
interviewed defendant on the evening of February 12, 2000.
Defendant told Detective Carlassare that he "was in a lot of
trouble" and "shouldn't have gone into that apartment."

Officer William Meister testified that he responded to
Elston's call. Elston met Officer Meister in front of her
building and accompanied him and his partner to search for
defendant. After a few minutes, Elston saw defendant. Officer
Meister arrested defendant, who showed him two large plastic bags
about 10 yards away. Officer Meister brought the bags back to
Elston, who identified the property in the bags as hers.

The trial court found defendant guilty of burglary. Based
on prior burglary and residential burglary convictions, defendant
was sentenced, as a mandatory Class X offender under section 5-5-
3(c)(8), to eight years' imprisonment.

Defendant contends that he was not proven guilty of burglary
beyond a reasonable doubt because there was insufficient evidence
that he entered the common area of an apartment building. He
also argues that his unauthorized entry was to a dwelling place
and was thus residential burglary rather than burglary. He notes
that, at the time of the offense, burglary and residential
burglary were considered mutually exclusive offenses. See People

1-02-2905

<u>v. Childress</u>, 158 Ill. 2d 275, 302 (1994).

In assessing the sufficiency of evidence, the relevant question is whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>People v. Pollock</u>, 202 Ill. 2d 189, 217 (2002). It is the role of the trier of fact to determine the credibility of witnesses and the weight to give their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. <u>People v. Tenney</u>, 205 Ill. 2d 411, 428 (2002). It is not the function of this court to retry defendant or to substitute our judgment for that of the trier of fact regarding witness credibility or the weight of the evidence. <u>Tenney</u>, 205 Ill. 2d at 428. Thus, a conviction will be reversed only where the evidence is "so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." <u>Pollock</u>, 202 Ill. 2d at 217.

Under section 19-1 of the Criminal Code (Code), a "person commits burglary when without authority he knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft," 720 ILCS 5/19-1 (West 2002). Similarly, under Code section 19-3, one "commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the

1-02-2905

dwelling place of another, or any part thereof, with the intent
to commit therein a felony or theft."  720 ILCS 5/19-3 (West
2002).

Until June 1, 2001, section 19-1 provided that burglary
"shall not include *** the offense of residential burglary as
defined in Section 19-3 hereof."  720 ILCS 5/19-1 (West 2000).

> "As the defendant observes, the two offenses
> are mutually exclusive.  Residential burglary
> can be committed only in dwelling places,
> while simple burglary cannot occur in a
> dwelling place."  People v. Childress, 158
> Ill. 2d 275, 302 (1994).

However, in People v. Maskell, 304 Ill. App. 3d 77 (1999), where
defendant entered an apartment from the stairway and corridor of
an apartment building and removed property from the apartment,
the evidence was deemed sufficient to show that he committed both
burglary and residential burglary, and thus his burglary
conviction was affirmed.  Maskell, 304 Ill. App. 3d at 84.
"Unlike Childress, *** the evidence in this case would allow a
rational trier of fact to find that defendant made two
unauthorized entries *** (1) into the building and (2) into the
apartment."  Maskell, 304 Ill. App. 3d at 84.

For purposes of section 19-3, a "dwelling" is an "apartment
*** or other living quarters in which at the time of the alleged

1-02-2905

offense the owners or occupants actually reside or in their
absence intend within a reasonable period of time to reside."
720 ILCS 5/2-6(b) (West 2002).  A person committed residential
burglary when he entered and took items from vacant first-floor
and basement apartments of a building in which the owner lived on
the second floor and was using the unoccupied units for storage.
People v. Silva, 256 Ill. App. 3d 414, 420-21 (1993).

Here, Elston testified that she saw defendant enter and,
after three minutes in the hallway, leave her building.  Combined
with the facts that he later entered the vacant unit and removed
Elston's property and that Elston did not grant him permission to
be in the building, a reasonable person could conclude that
defendant entered a non-dwelling portion of a building without
authority and with the intent to commit theft.  As in Maskell,
the evidence is clear that defendant made two unauthorized
entries with intent to steal: into Elston's building and into the
vacant unit.  Maskell, 304 Ill. App. 3d at 84.  Indeed, if the
course of entry in Maskell -- through the common area of the
building to the dwelling unit -- constituted two entries, then
defendant's separate entries here -- into the building and out
again, then later into the vacant unit -- are even more clearly
two distinct entries and the basis of two distinct offenses.  The
fact that the vacant unit was a dwelling, and defendant's entry
thereto was residential burglary, thus did not preclude



1-02-2905

defendant's conviction for burglary. There was sufficient
evidence to convict defendant of burglary beyond a reasonable
doubt.

Defendant also contends that the mandatory Class X
sentencing provision of section 5-5-3(c)(8) violates the rights
of due process and trial by jury because the State was not
required to give defendant notice of its intent to sentence him
as a Class X offender or required to prove his convictions, the
timing or sequence of the convictions, or his age beyond a
reasonable doubt to a jury.  However, this court has considered
and rejected precisely this contention.  People v. Smith, 338
Ill. App. 3d 555, 564 (2003), citing Apprendi v. New Jersey, 530
U.S. 466, 494-96, 147 L. Ed. 2d 435, 457-58, 120 S. Ct. 2348,
2365-66 (2000); People v. Pittman, 326 Ill. App. 3d 297, 300-01
(2001); and People v. Lathon, 317 Ill. App. 3d 573, 587 (2000).

Accordingly, the judgment of the circuit court is affirmed.
Affirmed.

GORDON,J., with O'MALLEY,P.J. and McBRIDE,J., concurring.

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

March 23, 2007

Mr. Charles Daniels
Reg. No. N-63102
Taylorville Correctional Center
P. O. Box 1000
Taylorville, IL 62568


THE COURT HAS TODAY ENTERED THE FOLLOWING ORDER IN THE CASE OF:


No. 11790 - Charles Daniels, petitioner, v. People State of
            Illinois, respondent.

            The motion by petitioner for relief under
            Supreme Court Rule 381 is <u>denied</u>.


cc: Hon. Lisa Madigan

EXHIBIT N