IN THE

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT, ILLINOIS EASTERN DIVISION

**FILED**

MAY - 9 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex.rel. | ) | |
| CHARLES DANIELS, | ) | no. 07 c 6475 |
| Petitioner, | ) | THE HONORABLE |
| vs. | ) | HARRY D. LEINENWEBER |
| DAN AUSTIN- WARDEN, | ) | JUDGE PRESIDING. |
| PINCKNEYVILLE CORRECTIONAL CENTER | ) | |
| Respondent. | ) | |

PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER
TO PETITION FOR WRIT OF HABEAS CORPUS RELIEF

NOW COMES, petitioner, **CHARLES DANIELS**, pro se., in traverse to the return captioned: ANSWER TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (HEREAFTER **RES. Ans.**),asserting that respondent's contentions and arguments are disingenuous and specious as a matter of law.

In support petitioner states as follows:

1. PETITIONER ADMITS AS ACCURATE;

2. PETITIONER ADMITS AS ACCURATE;

3. PETITIONER ADMITS that the State appellate court did set forth those facts, however a " extra-proof" record was established from subsequent collateral proceedings that is highly compelling and that calls into question whether the State court factual findings were clearly erroneous as regards to several matters.
Moreover, the " presumption of correctness " does not apply to " Questions of law" or mixed questions of law or fact." 28 U.S.C. ¶ 2254(e)(1).

4. PETITIONER ADMITS AS ACCURATE;

5. PETITIONER ADMITS AS ACCURATE, except last sentence that:

" petitioner did not file a postconviction petiton for leave to appeal." (PLA)

Pet. at 3.

This contention like the first(1st) delaying **MOTION TO DISMISS** ( Doc. 13 ) is simply another unnecessary delay tactic! Respondent again shows a complete disregard of the Court and lack of **due diligence** , that is reasonable under these circumstances, particuarly regardings its ethical obligation to conduct an " appropriate investigation into the facts", before signing any pleading, paper or written motion, per **Rule 11- FEDERAL RULES OF CIVIL PROCEDURE.**

Petitioner maintains that **Sanctions** should be monetarily imposed as respondent has alleged again a " Procedural Default" against petitioner knowing that such a claim is meritless and disingenuous. ( See, **Res. Ans. at 7** ) Respondent is simply delaying vindication of petitioner's Federal Constitutional rights as the following exhibits refute a(any) State rule violation.

### ILLINOIS SUPREME COURT PROCEDURAL FILING (PLA)

| | | |
|---|---|---|
| EXHIBIT " 1 " | SEPTEMBER 11,2007- | **LEAVE TO APPEAL STATE POSTCONVICTION** |
| EXHIBIT " 2 " | OCTOBER 23,2007 | **LEAVE TO FILE ADDENDUM GRANTED** |
| EXHIBIT " 3 " | NOVEMBER 29,2007 | SUPREME COURT # 105273 (Nos 1-06-2583 & 1 06 2769 ) |
| | | State Postconviction (PLA) Denied |

**6** PETITIONER ADMITS AS ACCURATE ;

7   PETITIONER ADMITS AS ACCURATE;

8   PETITIONER DENIES  as respondent withdrew **MOTION TO DISMISS( DOC 13)** prior to any substantive ruling on **petitioner s response in opposition to specious motion to dismiss ( DOC 18 )**

Respondent is seeking to obtain perfunctory rubber stamping eventhough recognizing the assertion/contentions **viz  Procedural Default**  is meritless

9  PETITIONER ADMITS AS ACCURATE;

10. PETITIONER has yet to receive **Exhibits referenced**  although **certification**
of service alleged, and completed on April 10,2008

11. Petitioner maintains respondent is less than candid in asserting that he
has no knowledge of the whereabouts or the " entity with possession of the record"
( Res. Ans. at 6 )
Respondent **knows** that both offices of State prosecuting attorney's & Appellate
Defender's have/had possession of record, since Appellate Defender Tiffany Green
filed **Pennyslvania v. Finley** , 481 U.S.551, 107 S.Ct.1990 (1987 ), memorandum in
support to withdraw as assigned postconviction appeal counsel.

### THIS MATTER SHOULD NOT BE SETTLED WITHOUT
### REVIEW OF THE COLLATERAL RECORDS

11(b)  Petitioner maintains in response to the second-part of this answer that the
" presumption of correctness" does not apply to " questions of law " or to
  mixed question of law & fact"  28 USC 2254(e)(1), eventhough respondent believes
" this matter can be settled without benefit of the record per 28 USC 2254(d)(2) &
(e) (1), requiring defence to the state appellate court's factual finding...........

.( Res. Ans. at 6 )

Petitioner asserts that although the Court presumes factual findings are correct,
Ineffective assistance of counsel is a mixed question of LAW & Fact not entitled to
presumption of correctness, **Jenkins v Nelson**– 157 F.3d 485,494 (7th Cir.1998)

( **Pratt v. Cain**– 142 F.3d 226,230 (adequacy of counsel's performance & prejudice
  were mixed questions of law & fact NOT entitled to presumption of correctness.)

**Jones v. Jones**, 938 F.2d 838,843 (where state appellate court's holding that trial
                court's implicit findings were not erroneous was a legal conclusion
                not entitled to presumption of correctness.)

Ergo, petitioner Daniels, requests a Evidentiary Hearing, if necessary to establish " **PREJUDICE**" surrounding claims of " objective unreasonable " performance of trial counsel for assisting the State prove its case; and Appellate counsel during direct appeal for failing to raise this obvious and viable issue of trial counsel's deficient performance & ineffectiveness.

**Hammon v. Ward** - 466 Fed 3d 919;

**MASSARO    UNITED STATES-** 123 S. CT. 1690,1693 (2003)

### STANDARD OF REVIEW

#### PROCEDURAL REQUIREMENTS

Petitioenr has exhausted for purposes of the **Section 2254(b)(1)**, each of the instant claims, which respondent's ADMIT (Res,Ans.at par.# 9).

There is not other reason but as another unnecessary delay tactic against vindication of petitioner's Constitutionally portected Federal rights, for respondent to speciously assert that petitioner " procedurally defaulted " his **CLAIMS II & CLAIM III**  instanter.

Respondent is in clear violation of the Spirit of **RULE 11.**

Under **O'Sullivan v. Boerckel**- 526 US 838,845 (1999)

petitioner has " fairly presented each of the instant claims operative facts and legal principles to state courts in accordance with state procedural rules."

Respondent is illustrating its Overall Weakness of its entire position by arguing such meritless and disingenuous answers.

## SUPPORTING RECORD ESTABLISHING UNREASONABLE STATE COURT DETERMINATION PER 28 U.S.C. ¶ 2254 (D)

The following 'extra-record' facts are produced inter alia, from

Petitioner's **Counseled AMENDED STATE POSTCONVICTION** petition filed on

October 26,2005, at Bridgeview courthouse, Cook County, Illinois through

privately retained attorney DAVID H. NORRIS.

**KIMMELMAN -MORRISON-477 U.S. 365,378 (1986)**

( holding inter alia, collateral review will frequently be the only means
   by which an accused can effectuate the right to counsel.)

**Beaulieu v. United States, 930 F.2d 805,806**

**UNITED STATES v. GRIFFIN- 699 F.2D 1102,1108-09**

( Issues of ineffective assistance of counsel is peculiarly suited for determination
   not on direct appeal, but rather in collateral proceedings that involves
   proof of ' **extra-record** ' facts..........."       **( emphasis supplied)**

   Since, generally Issues are framed after the respondent's Answer or return

to the writ, and petitioner's answer or traverse thereto, the proofs that follow

in this discussion and analysis will correspond with and be confined solely to

issues in traverse to respondent's pleadings.     ( Res. Ans. at 10-21 )

-5-

**\* \* CRITICAL \* \***
COMPLAINING WITNESS' DIRECT EXAMINATION
SUPPORTING PETITIONER'S ARGUMENT

TRIAL RECORD REPORT                    # 00-CR- 7104
T.R.R. 118-119 (JUNE 5, 2002)

Q: WAS THE **APARTMENT** ACROSS THE HALL FROM YOU AT
   8234 S. EBERHART OCCUPIED AT THAT TIME?
A: NO SIR.
Q: WHAT WAS THE CONDITION OF THAT **APARTMENT**
   ACROSS THE HALL?
A: THE CONDITION WAS THAT NO ONE WAS THERE
   BECAUSE THE OCCUPANT HAD MOVED OUT, BUT I
   HAD MOVED SOME OF MY THINGS ACROSS THE HALL.

Q: DID ANYBODY HAVE AUTHORITY TO BE INSIDE
   YOUR VACANT **APARTMENT** AT THAT TIME & PLACE?
A: NO SIR.
Q: AFTER YOU HEARD SOMEBODY INSIDE YOUR VACANT
   **APARTMENT** THAT AFTERNOON. WHAT DID YOU DO?

A: I WENT BACK AND CALLED THE POLICE AND I
   TOLD THEM I THOUGHT HE WAS GONE BUT
   HE'S IN THE **APARTMENT**.
Q: THEN WHAT HAPPENED?
A: THEY CAME BACK.
Q: DID YOU SEE ANYBODY LEAVE THAT AREA?
A: YES
Q: AND YOU NEVER GAVE THAT PERSON
   PERMISSION TO ENTER THAT **VACANT**
   **APARTMENT** OF YOUR?
A: NO SIR.

During trial, the State failed to elicit any testimony regarding Defendant's alleged entry into the "common areas" of the apartment building. (R.115-125)  Mrs. Elston's direct examination testimony is only approximately 10 pages in length. There is nothing contained in that brief examination which supports the notion that Defendant entered into the hallway or any other "common area" of the building.  Mrs. Elston heard him ring the bell on the front porch and "fumbl[e] with the mailbox" but that is all. (R.118)  According to the direct examination, Mrs. Elston never heard or saw anybody in the hallway or "common areas" of the building past the mailboxes. (R.118-119)  Mrs. Elston called the police but the individual was gone before the police arrived. (R.119)  On the way to get her mail after the police left, Mrs. Elston heard some plastic bags rattling in the apartment across from hers which she knew to be vacant. (R.119) Later, from her apartment window she saw the same individual as earlier walk down her front walk way and leave her property. (R.120)  That is all that was contained in the relevant portions of Mrs. Elston's testimony on direct examination.

To be sure, defense counsel was able to clear up Mrs. Elston's somewhat muddled testimony on cross-examination.

Through cross examination, we learned that Mrs. Elston was actually looking out a window when she saw the man walk up the front walkway and onto the porch before she heard the noise at the mailboxes. (R.126)  She lost sight of the man when he "came in the building" which presumably was when he entered the foyer or vestibule where the mailboxes are found. (R.127)[1]  Mrs. Elston clearly stated that she never heard him come up the stairs, and thereby, enter the hallway outside her apartment door. (R.127-128)  Then counsel elicited the following damaging testimony:

> Q:    How long would you say he was in the *hallway* of your building?
>
> A:    I'd say three minutes.
>
> Q:    Thirty minutes?
>
> A:    Three minutes.

(R.128; emphasis supplied)  This testimony is damaging in several ways.  First, Mrs. Elston never said that Defendant was in the hallway of her building.  The Record is devoid of any such testimony prior to defense counsel's question cited above.  This question arguably puts Defendant past the security door by the mailboxes and in the "common areas" of the building.  Whether defense counsel merely chose the wrong word when he used the term

---

[1] Although there was no testimony to this end, most mailboxes in Chicago apartment buildings are located outside or in a semi-public area; that is to say, there is usually some sort of security door past the mailboxes which stops the general public from entering the building.

"hallway" is unclear.  This line of questioning, incidentally, directly contradicts Mrs. Elston's testimony on direct examination where she never stated that she saw or heard anybody in the actual hallway of the apartment building. (R.118-119) Second, it undercuts the other portions of the cross examination testimony of Mrs. Elston where she states, clearly and unequivocally, that the doors to the vacant apartment were locked and that Defendant must have come in through an open window. (See e.g. "one of them had to be open for him to get in") (R.135-136)

This issue of the lock on the doors of the vacant apartment inures to the benefit of Defendant.  The vacant apartment had a lock on the front door. (R.135)  When the police arrived the first time, they checked the front and back door to the vacant apartment and both doors were locked. (R.137)  As for the windows in the vacant apartment, they were all shut but not all locked. (R.136)  How do we know this?  Because Elston testified that "one of them [the windows] had to be open for him to come in." (R.136) And, incidentally, when police arrived the second time, the vacant apartment doors were still locked. (R.136)  The testimony of the complaining witness was clear:  who ever burglarized her vacant apartment must have come through the window.  This would mean, by necessity, that the burglar circumvented the "common areas" of the building.  That said, the **ONLY** testimony at all regarding 3 (three) minutes in a " **common, areas-hallway** " was elicited by defense counsel **not by the State prosecutor.**

## THE STATE CAN NOT REBUT THE FACTUAL PREDICATE THAT THE
## PETITIONER'S ATTORNEY HELPED PROVE THEIR CASE-IN CHIEF

Petitioner Daniels asserts that defense counsel elicited harmful testimony during cross-examination of the State's complaining witness. Petitioner does not wish to **disparage** trial counsel, but a **Mistake** was made and defense counsel was the one who made it.  Defense counsel can be the most competent attorney in the jurisdiction and still make a mistake during a bench trial which helped the State prove its case.

Moreover, defense counsel's line of questioning as has been shown could have been well-intentioned, but the fact remains that " **but for** " defense counsel eliciting the trial testimony regarding the  (3) minutes " hallway-common areas" the trial court could not, as a matter of State or Federal law, have made a finding of guilty for the burglary of those areas. ( T.R.R. 115-125 )

**RESPONDENT HAS NEVER REBUTTED THIS FACTUAL PREDICATE**

In its effort to overcome this damming fact, respondent instanter, simply ignores the reality of both the **United States Constitution and Illinois Constituitons** that petitioner has a due process right to the **effective assistance** of counsel in his criminal proceedings. Moreover, that an accused is denied effective assistance  where his attorney's performance falls below an objective standard of reasonable representation and there is a reasonable probability that the outcome of the proceedings would have been different  **BUT FOR** the attorney's inadequate performance.

**STRICKLAND v. WASHINGTON,**   466 U.S.668,687 (1984 )

**DAVIS V. LITSCHER**- 290 F.3D 943,946 ( 7TH CIR. 2002)

## PETITIONER'S ANALYSIS OF RESPONDENT'S CLAIM I ANSWER

Respondent takes the following **Blockbuster** positions:

" Petitioner implies that the sTate failed to prove him guilty beyond
reasonable doubt because some of the facts that secured his conviction
were elicited on cross-examination."

   This position has no support in Illinois or Federal law-
the trier of fact is permitted to consider the totality of evidence
presented at trial in reaching its verdict. "
   People v. Smith- 685 N.E.2d 880,890 ( Ill.1997)


" Petitioner also, suggests taht counsel's eliciting this information
on cross-examination was ineffective assistance of counsel. "

                                        ( **Pet. Mem at 5** )

   ............the trier of fact was entitled to consider all the
   evidence adduced at trial regardless of the **STRATEGIC WISDOM**
   of petitioner's attorney eliciting that information from
Elston on cross-examination."   (**Res. Ans. at 16** )

                                        ( **emphasis supplied** )



   **Respondents** Legal position , **viz.,**- defense counsel's performance as

**STRATEGIC WISDOM**  is both specious and denigrating to all defense legal practioner's.

**WEBSTER** defines " **Strategy** "   as a " careful plan or method; a clever stratagem,

the art of devising or employing plans or stratagems **Towards a GOAL.** "

( See, WEBSTER NINETH NEW COLLEGIATE DICTIONARY @ 1165 )

The hallmark of a trial " **strategy** "   **would be** to obtain some sort of goal or

relief for a petitioner.  And what was that relief or GOAL in this case on  the

part of defense counsel???????????

**IT WAS ASSISTING THE STATE TO PROVE THE ESSENTIAL ELEMENTS OF ITS CASE**

IN truth, there could have been no viable strategy for defense counsel to have elicited the " common areas/hallway" testimony in this case.

The same hold equally true for appellate counsel for failing to have raised a clearly viable issue on direct appeal when it would have been procedurally and substantially easier to do so then.

The trial record ( T.R.R. 115-125 ) as referenced above clearly establishes that prior to defense counsel's cross-examination there was nothing whatsoever as testimonial support/evidence for a finding of guilty for the offense of burglary as the **mutually exclusive offense was Statutorily constructed at that time as a matter of State or Federal law.** See, <u>People v. Atkins</u>, 298 Ill.Dec.50, 838 N.E.2d 943,217 Ill.2d 66 and **U.S.C.A. 5th & 14th Amends.**

Stated another way " but for " defense counsel's exercise of " **STRATEGIC WISDOM** " during cross-examination, the STate could NOT have satisfied its Due process clause burden.  Responsent has not and cannot rebut this fact otherwise from the record. IT stands that since respondent refuses to **Certify** the issue as to where in the trial record during its direct examination it elicited ANY requisite proof on the charged offense of burglary to a Common areas/hallway " of the building **prior** to defense counsel"; #/'s action are " prejudicial " and " objectively unreasonable" for which the GRANT of Habeas corpus relief should issue forthwith, when viewed through the mandates of **UNITED STATES CONSTITUTION SIXTH AMENDMENT (VI), Viz.,** <u>**STRICKLAND v WASHINGTON,**</u> supra

Appellate counsel Michael J. McDermott, did not argue that trial counsel assisted the State prove its case against petitioner. There was not external objective factor that impeded Appellate counsel's decision to raise issue that trial counsel elicited harmful evidentiary testimony, and the actions of trial counsel worked to petitioner's **Actual & Substantial** disadvantage, infecting his entire trial with **error** of **Constitutional dimensions.**

Because this was a " objectively unreasonable" oversight on the part of Appellate counsel and because appellate counsel's decision or omission did " **Prejudice",**    **HABEAS CORPUS** relief should be granted to petitioner Daniels. Most compelling in support for petitioner being granted relief are respondent's **duplicitous admission** while simultaneously attempting to trivalize petitioner's evidence of Ineffective assistance claims:

> " **AT BEST,** petitioner has shown that **ABSENT** his attorney's eliciting information on cross-examination, there might have been insufficient proof that he was in the hallway of the building.
>
>    But this is **Pure Conjecture** and not the type of credible evidence that gives rise to relief under the extremely narrow exception ( fundamental miscarriage of fairness ) to a procedural default."

**Res. Ans. at 21**                    ( **Emphasis supplied** )


Petitioner Daniels, asks that **JUDICIAL NOTICE** be taken regarding respondent's claim of the weight to be give petitioner's proof of Ineffective assistance evidence as " Pure Conjecture"; while the same Evidentiary proof is employed to affirm this conviction at trial, direct appeal and during the State's responsive pleadings on collateral review against petitioner.

Respondent's Entire basis within instant Answer is   **SAME  evidence** as support

 ( **see, Res. Ans. at 12,  15, 16, 17  )**

Respondent continues to try and  **HOODWINK** this Honorable Federal Court with its duplicity, frivolous contentions of a " procedural default " and overall specious argument as to the lack of " prejudice " **actually & subtantially** suffered by petitioner's attorney's deficient and " objectively unreasonable " performance of helping the State prove his client guilty.

**Strickland v. Washington,** 466 U.S.668,687 (1984)

Regretably respondent's counsel chooses to sarcastically and jokingly declare that the petitioner's attorney's actions described above as **STRATEGIC WISDOM** is not the conclusion of this review. Fortunately the **United States Supreme Court and this Federal District Court,** have long ago agreed that the standards of **Strickland, are sacrosant** and long settled as basic precept, that an attorney's unreasonable performance that irreparably prejudices an accused to the degree that " but for " that error the outcome of the proceedings would have been different, has worked a **Disadvantage** of **Constitutional magnitude.**

### CLAIM   II

Petitioner Daniels, asserts as established through Exhibits " 1" "2" "3 ", that respondent has solely argued speciously " procedural default " to simply delay vindication of petitioner's Constitutional rights and to abuse process. Petitioner  presentedthis claim fully during the state postconviction proceedings. There has been a " fair presentment", that the Circuit Court ignored during its review of the **Amended Postconviction** proceedings that ended on August 11,2006. Respondent's Exhibits " **J & K,** establish Appellate Counsel & Appellate CourtRule 23 reviewed instant claims. Moreover,  ( See **Res. Ex: "L" & "M"** ) establishing that petitioner went one step beyond by presenting Constituional question under **Rule 361** to the Illinois Supreme Court.

### CLAIM III

Same argument & rational as posited for Claim II. Respondent's  `disingenous and should be sanctioned accordingly for violation of process

## CONCLUSION

**HABEAS CORPUS** relief should be allowed because reasonable Judicial minds could differ as to the state court determinations of whether **SIXTH AMENDMENT (VI) FEDERAL LAW** was violated by trial counsel eliciting irreparably harmful testimony that ultimately secured the state's proof of its case against petitioner.

Additionally, whether Direct appellate counsel was ineffective for his decision or omission not to raise the fact that trial counsel helped the state prove the petitioner guilty during instant criminal proceedings.  This **mistake** being particularly egregious where the State prosecutor had not otherwise elicited **any** direct testiminal evidence on the material elements of unauthorized entry into any " common areas-hallway "    **essential** to the state's case, prior to defense counsel's deficient cross-examination ( **see, T.R.R.115-125** )
Obviously, as some sort of practical joke in humor, the respondent brazenly takes the arguable position that petitioner's defense attorney's actions of assisting the state prosecutor satisfy its requisite burden of proof by eliciting harmful and **prejudicial testimony, otherwise missing was STRATEGIC WISDOM,** is a travesty. Petitioner Daniels, prayer of relief are for the issuance of Habeas corpus.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

UNITED STATES OF AMERICA, ex. rel.                 )

CHARLES DANIELS                                    )        07-C-6475

            vs.    PETITIONER,                     )

                                                   )        THE HONORABLE

DAN AUSTIN, WARDEN                                 )        HARRY D. LEINENWEBER

PINCKNEYVILLE Corr. CENTER                         )        JUDGE PRESIDING

            RESPONDENT.                            )

                                                   )

PETITIONER'S  APPENDIX  OF  MATERIALS

AS  REFERENCED  IN  TRAVERSE  TO  RESPONDENT'S

ANSWER  TO  WRIT  OF  HABEAS  CORPUS

\*\*\*         **A P P E N D I X \*\*\***              07 C 6475

<u>EXHIBITS</u>

" 1 "              SEPTEMBER 11,2007

                   <u>PETITION FOR LEAVE TO APPEAL STATE POSTCONVICTION</u>  (P.L.A.)
                              RE; NO. 105273


" 2 "              OCTOBER 23,2007

                   <u>LEAVE GRANTED TO FILE ADDENDUM TO PETITION FOR LEAVE</u>
                         <u>TO APPEAL (PLA)</u>

"3"                NOVEMBER 29,2007

                   P.L.A. DENIED NO-105273

'" 4"          FAXED COVER LETTER OF JANUARY 20,2006 & MARCH 3,2006


" A "          2 OF 10 PAGES <u>PEOPLE'S RESPONSE TO AMENDED POST-CONVICTION</u>

               FAXED TO PARTIES ON JAN. 20,2006 & MARCH 3,2006

" 5 "          NOVEMBER 09,2006

               <u>APPELLATE COURT'S REFUSAL TO ALLOW PETITIONER TO PROCEED PRO SE.</u>


"  6 "         <u>DEFENDANT'S REPLY TO PEOPLE' RESPONSE</u>

" 7 '          <u>AFFIDAVIT</u>  --   AUGUST 23,2005



## SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
SPRINGFIELD 62701

**JULEANN HORNYAK**
CLERK OF THE COURT
(217) 782-2035

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(217) 524-8132

September 11, 2007

**FIRST DISTRICT OFFICE**
20TH FLOOR
160 N. LASALLE ST.
CHICAGO 60601
(312) 793-1332

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(312) 793-6185

Mr. Charles Daniels
Reg. No. N-63102
Pinckneyville Correctional Center
P. O. Box 999
Pinckneyville, Illinois 62274

Re: No. 105273 - People State of Illinois, respondent, v. Charles Daniels, petitioner. (Appellate Court Nos. 1-06-2583 & 1-06-2769, cons.)

Dear Mr. Daniels:

This office has timely filed your petition for leave to appeal today in the above-entitled cause. You are being permitted to proceed as a poor person.

Your petition will be presented to the Court for its consideration, and you will be advised of the Court's action thereon.

In accordance with your request, we are returning to you with this letter a file-stamped copy of your petition for leave to appeal.

Very truly yours,

*Juleann Hornyak*
Clerk of the Supreme Court

JH/jak
Enclosure
cc: AG CrMadigan
    SA Crim

EXHIBIT "1"



# SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
SPRINGFIELD 62701

**JULEANN HORNYAK**
CLERK OF THE COURT
(217) 782-2035

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(217) 524-8132

**FIRST DISTRICT OFFICE**
20TH FLOOR
160 N. LASALLE ST.
CHICAGO 60601
(312) 793-1332

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(312) 793-6185

October 23, 2007

Mr. Charles Daniels
Reg. No. N-63102
Pinckneyville Correctional Center
P. O. Box 999
Pinckneyville, IL 62274

> In re: People State of Illinois, respondent, v. Charles
> Daniels, petitioner.
> No.105273

Today the following order was entered in the captioned case:

> Motion by petitioner, pro se, for leave to file an addendum to
> the petition for leave to appeal instanter. Motion Allowed.

> Order entered by Justice Fitzgerald.

Very truly yours,

*Juleann Hornyak*

Clerk of the Supreme Court

cc: Hon. Lisa Madigan
    Hon. Richard A. Devine

*Exhibit "2"*

## IN THE
### SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE STATE OF ILLINOIS | ) | APPEAL FROM THE APPELLATE COURT |
| Respondent, | ) | OF ILLINOIS, FIRST DISTRICT |
| | | #1-06-2583 & 1-06-2769 |
| v. | ) | THERE HEARD ON APPEAL FROM THE |
| CHARLES DANIELS, | ) | CIRCUIT COURT, COOK COUNTY, ILLINOIS |
| | | # 00-CR-7104 |
| Petitioner. | ) | |

### LEAVE TO FILE AN ADDENDUM TO THE PETITION FOR LEAVE TO APPEAL INSTANTER
### PER ILLINOIS SUPREME COURT RULE 361

CHARLES DANIELS, pro se.

Reg. # N-63102

P.O. Box 999

PICKNEYVILLE, ILLINOIS

62274

Exhibit "2"

## LEAVE TO FILE ADDENDUM TO THE PETITION FOR LEAVE TO APPEAL INSTANTER
### PER ILLINOIS SUPREME COURT RULE 361

Charles Daniels, petitioner, pro se, moves before this Honorable Court pursuant to the **Rule 361**, that he be granted **Leave to file an addendum** as a supporting record upon the discussion of the facts and issues on appeal sufficient to enable the court to consider the dispositive motion towards petitioner's claim that former State Appellate defender, First District, Attorney Michael McDermott, was at all times relevant to the Post-conviction proceedings " **conflicted-out"** from having had a(any) Legal involvement or undertaking. Particuarly, where said appellate counsel would have been the subject of ineffective assistance during the direct appeal in # 1-02-2905, regarding his Unreasonableness in refusing to have submitted the precise issue that this Honorable Supreme Court subsequently ruled was unconstitutional.

### CONTENTION

These documents must be viewed in the specific light that the retained counselor David H. Norris, was hired in **March   2005,** and provided inter alia with copies of the complete Trial and Appellate court records, including transcripts. The petitioner's **Amended Post-conviction** was filed on **August 23,2005,** and contained more than **30 pages.**   Subsequently , on **January 20,2006,** the State prosecutor filed: **PEOPLE RESPONSE TO DEFENDANT'S AMENDED POST CONVICTION PETITION.**
Shortly, thereafter, **MICHAEL MCDERMOTT** was FAXED **Exhibit** " 4 " along with (10) Ten pages of the **PEOPLE'S RESPONSE,** with the handwritten notations regarding **potential defense strategies and reply.** Most interesting is that **Michael McDermott** was told by Attorny Norris:   " **To be candid, I have NOT READ all the pleadings in combination with the state's response filed 2 days ago and OUR CLIENT's in depth legal analysis......."**

> **P.S.**   **Thanks for the computer work; I'll give you some CASH when we meet.   DN**

Exh "2"

Petitioner was scheduled to file a Reply, if any, by **February 24,2006.**
On **March 3,2006, Michael McDermott,** was FAXED for the <u>second</u> time complete work
product of the Defense potential strategy and the **PEOPLE's reply,** when he had
clearly known that he had a personal interest in avoiding potential misconduct
investigation through the contention raised within the Amended post-conviction
filing.  Michael McDermott, recognized that he needed to" **conceal"** the fact that
he had refused to raise during direct appeal the Constitutional question which
this **Honorable Supreme Court in** <u>People v. Atkins</u>**,** 298 Ill.Dec.50,838 N.E.2d 943,
217 Ill.2d 66; clarified regarding Substantive amendments to criminal state laws.

The Fact remains that viewing these addendum documents, it is **unreasonable**
**and incredulous** that a(any) legal researcher  and writer of the Petitioner's
**Amended Post-conviction petition** that had been filed on **August 26,2005,** could/would
**HA**ve said to anyone other than the **Actual person (MIKE MCDERMOTE),** that he **candidly**
did not **know** about their case at that late stage on **January 20,2006.** (*Exh: "4"* )
Mike McDermott was hired **quid pro quo,** to complete the Legal undertakings and responsive
pleadings which petitioner had been led to think were being handled by Attorney Norris.
It is because of the financial and friendship relationships that petitioner became
" **OUR CLIENT."**

### ARGUMENT SUPPORTING MOTION

Out of Fundamental fairness and to avoid miscarriage of justice, this matter
should have been investigated or minimally counsel appointed **other** than the State
Appellate Defender's office. The filing of this **Finley** brief, is a effort to obscure
and deflect attention away from impropriety of a former colleague's financial
undertaking that prejudicially affect the outcome of instant collateral attack.
The State Appellate decision does not provide " a reasoned method of any inquiry
into the relevant questions of fact and law."  In granting the State Appellate
defender's leave to withdraw as counsel, the Appellate court ignores the reality that
his conduct & undertakings in both receiving cash payment and receipt of these documents

*Exh:- "2"*

was a impropriety, conflict of interest and violation of any number of this **Illinois Supreme Court Rules of Professional conduct,** that necessitated a reasoned inquiry as a matter of **United States Supreme Court precedent** under the standard **Strickland v. Washington,** 466 US 668,1045 S.Ct.2052, 80 L.Ed 2d 674. The Appellate OPINION and actions of forcing the petitioner to remain with counsel whom he had already been embroiled in irreconcilable conflict and worst to deny him the desire to proceed pro se or appoint counsel other than those familiar to Attorney Michael McDermott is " **contrary to** " and employs an " **unreasonable application of the United States Supreme Court precedent** under 28  2254 **(d) (1-2).**

## CONCLUSION

Based on the foregoing and the documents supporting this petition for leave to appeal instanter, respectfully this Honorable Court is requested to allow leave for these documents  to be admitted surrounding petitioner's claims of Sixth Amendment violations (VI) and Rules of Professional misconduct that affected the Evidentiary hearing on the instant outcome.

Respectfully submitted,

*Charles Daniels*

Charles Daniels, pro se.

Exh: "2"

105273

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

November 29, 2007


Mr. Charles Daniels
Reg. No. N-63102
Pinckneyville Correctional Center
P. O. Box 999
Pinckneyville, IL 62274

No. 105273 - People State of Illinois, respondent, v. Charles
            Daniels, petitioner.  Leave to appeal, Appellate
            Court, First District.


    The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.


    The mandate of this Court will issue to the Appellate Court

on January 4, 2008.


Exhibit "3"

### David H. Norris
*Attorney at Law*
**407 South Dearborn Street**
**Suite 1735**
**Chicago, Illinois 60605**
**312-697-0022**
**Facsimile: 312-697-0812**

28th.

## FAX COVER SHEET

**DATE:**        January 20, 2006        Resent 3/3/06 ASA
Hoskins #

**TO FAX NO:**        312-697-0812

**ATTENTION:**        Mike McDermott        773-869-3065

**FROM:**        David H. Norris

**NUMBER OF PAGES TO FOLLOW:** 1

**OUR FAX NUMBER:**        312-697-0812

**OUR PHONE NUMBER:**        312-697-0022  (cell: 219-617-5753) (home:219-531-0880)

**ANY PROBLEM IN TRANSMISSION CONTACT:**        David H. Norris        FAX to:
→ Judy Day
2898

**Re:    People v. Daniels**
Mike, attached is the letter forwarded to me from Daniels via his elderly mama. To be candid, I have not read all the pleadings in combination with the State's response filed 2 days ago and our client's in depth legal analysis. The case is set for one week from today so I need to decide whether I want to tell the judge we're going to file a reply (or anything else) necessitating a longer continuance. I spoke with opposing counsel yesterday when I happened to see him in court and he said, inter alia, that he thought he had us becaused of the legal theory he referred to in the response, presumedly, that since defendant made an incriminating statement in the police station, the State wins. I didn't argue the point but it would seem that the only relevance a statement made out of court that was not introduced at trial would be at the time of retrial, not theissue of whether the petition would be granted. Opposing counsel has an argument next Friday at 9:00 am at 26th and would not be able to appear at Bridgeview until 11-12 so I want to continue the case by agreement so I don't waste an entire morning. Also please advise whether I should tender record to court at next date. We'll talk.    DN

**PS Thanks for the computer work; I'll give you some cash when next we meet.  DN**

Mike—Here's doc's I sent to you on 1-20-06
Call if questions —
Dave

Exhibit #1

STATE OF ILLINOIS )
                  ) §

COUNTY OF COOK )

### IN THE CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT – CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
         Respondent )
                       )
       vs                   )      P.C. NO. 00CR 07104
                       )      HONORABLE THOMAS DAVY
CHARLES DANIELS )     Judge Presiding
         Defendant )

**FILED**
CR-526-8
JAN 17 2006
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

### PEOPLES RESPONSE TO
### AMENDED POST-CONVICTION PETITION

     Now comes the People of the State of Illinois, by and through their attorney,
Richard A. Devine, State's Attorney of Cook County, through his assistant, John
Haskins, and respectfully moves this Honorable Court to dismiss the petition for post-
conviction relief for the following reasons:

     1. The respondent incorporates the original motion to dismiss into this response.

     2. In the Amended Post-Conviction Petition, the petitioner argues ineffective
assistance of trial and appellate counsel's. This allegation is based on hindsight rather
than counsel's perspective at the time of counsel's conduct. Petitioner's argument is
based on the erroneous assumption that based on the victim Nora Elston's direct
examination, the State would be unable to prove the crime of burglary.

     3. The petitioner's trial attorney Dennis Sherman was aware that the petitioner
Charles Daniels had given an incriminating statement to police detective James
Carlassare on the evening of February 12, 2000. At the time that Mr. Sherman cross-

EXHIBIT "A"
(2 of 10 pages)
010/200 ☐

1

Mar 03 2006 11:42AM   Attorney at Law          312-697-0812                    P.3

examined Ms. Elston he was aware that his client had made that incriminating statement to the police concerning the crime. This was definitely a matter of trial strategy not subject to judicial review in post-conviction cases.

4.   The factual scenario in the appellate opinion, (Respondent's Exhibit 1, in the original Motion To Dismiss), is more accurate and less biased than the Petitioner's statement of facts which is self-serving.

5.   In the Amended Petition the petitioner alleged that his appellate counsel was ineffective where he filed a brief in which he argued that the burglary conviction must be reversed because there was insufficient evidence for the trial court to find beyond reasonable doubt that defendant entered and burglarized the "common areas" of the apartment building.

The petitioner further alleges the acts and omissions of appellate counsel prejudiced defendant because, but for trial consul's errors, defendant was plausibly looking at a directed verdict on the sole count of the indictment, burglary of Nora Elston's home.

In presenting this argument petitioner ignores the fact that he himself had made an incriminating statement to the detective after receiving the Miranda warnings on the evening the crime was committed.

Dennis Sherman was cross-examining the victim Ms. Elston because he felt it necessary to attack her credibility.

*ASA's speculation as to the intent of defense consel aside, all this Cort and the parties can look at is the Record. And the Record shows...*

010/800

On pg. 5 of the Appellate Court opinion <u>People v. Daniels</u>, No. 1-02-2905, the

Appellate Court held:

> "Here, Elston testified that she saw defendant enter
> and, after three minutes in the hallway, leave her
> building. Combined with the facts that he later
> entered the vacant unit and removed Elston's
> property and the Elston did not grant him
> permission to be in the building, a reasonable
> person could conclude that defendant entered a
> non-dwelling portion of the building without
> authority and with the intent to commit theft."
> As in <u>Maskell</u> the evidence is clear that defendant
> made two unauthorized entries with intent to steal:
> into Elston's building and into the vacant unit.
> <u>Maskell</u> 304 Ill. App. 3rd at 84.

*[handwritten margin note: but she never said she saw him in the hallway just the foyer]*

This issue is res judicata.

Since the petitioner's trial attorney was not ineffective but exercising trial tactics

he was not ineffective pursuant to <u>Barfield</u> 187 Ill. App. 3d 190, 543 N.E. 2 812 (1989).

Appellate counsel was not ineffective for not raising ineffective assistance of trial

counsel, since the trial counsel was not ineffective.

6.   In the case supplemental report, Detective James Carlasse star No. 21210

stated that on February 12, 2000 he interviewed the petitioner. After reading the

petitioner his constitutional rights, the petitioner related he wanted to proceed with the

interview. When the petitioner was asked how he gained entrance to the building,

Charles Daniels told the detective that the front door was unlocked.

This entrance would have placed petitioner in the common area of the building

where the burglary occurred.

Peoples Exhibit One – Case Supplemental Report July 9, 2002

*EXHIBIT "A"*
*(4 of 10 pages*

3

ORDER

## IN THE APPELLATE COURT, STATE OF ILLINOIS
### FIRST DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,    )
    Plaintiff-Appellee,    )
        )
        V.    )   NO.  06-2583
        )        06-2769
CHARLES DANIELS,    )        Consolidated
    Defendant-Appellant.    )
        ORDER

     This cause coming to be heard on Defendant-Appellant's pro se "Motion for Reconsideration of Order Appointing State Appellate Defender on the Precise Issue that Appellant Wanted Presented on Direct Appeal But was Rejected and Has Subsequently Been Declared Unconstitutional and a Meritorious Claim;"

     **IT IS ORDERED** that Defendant-Appellant's pro se "Motion for Reconsideration of Order Appointing State Appellate Defender on the Precise Issue that Appellant Wanted Presented on Direct Appeal But was Rejected and Has Subsequently Been Declared Unconstitutional and a Meritorious Claim" is

     \_\_\_\_ **GRANTED**, the Court's 10/16/06 order is vacated, except that appeals 06-2583 and 06-2769 remain consolidated. The State Appellate Defender is withdrawn as counsel, with the exception that the State Appellate Defender remains responsible for filing the record. In accordance with the Supreme Court rules, the pro se Appellant shall file his brief within 35 days of the filing of the record; briefs may not be filed until the record has been filed.

     X **DENIED**, and the Court's order of 10/16/06 stands.

**Name**  Charles Daniels      ~~ORDER ENTERED~~    Justice
       N63102
                  NOV 0 9 2006
**Attorney for**
                  APPELLATE COURT, FIRST DISTRICT    Justice

**Address**  P.O. Box 900
        Taylorville, IL 62568
                                    Justice

## STEVEN M. RAVID, CLERK OF THE APPELLATE COURT, FIRST DISTRICT

*Exhibit "5"*

STATE OF ILLINOIS   )
                    )  SS
COUNTY OF C O O K   )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,   )
                                   )
            Plaintiff,             )
                                   )
vs.                                )      No. 00 CR 07104
                                   )
CHARLES DANIELS,                   )      Honorable Judge Thomas
                                   )      Davy, Presiding.
            Defendant.             )

## DEFENDANT'S REPLY TO PEOPLE'S RESPONSE
## TO DEFENDANT'S AMENDED POST-CONVICTION PETITION

NOW COMES your Defendant, CHARLES DANIELS, by and through
his attorney, DAVID H. NORRIS, and hereby respectfully submits
this Reply to the People's Response to Defendant's Amended
Petition for Post-Conviction Relief.  Defendant requests that
this Honorable Court deny the State's motion to dismiss and,
instead, that the Court set this matter for an evidentiary
hearing on the merits of Defendant's claims.  In support thereof,
Defendant states the following:

1.    The State's Response was filed on January 17, 2006.
      Defendant was scheduled to file a Reply, if any, by
      February 24, 2006.

2.    Counsel apologizes for the tardiness of this Reply, but
      Defendant's case has merit and the untimeliness of this
      pleading should not preclude the Court from considering

-1-

*EXHIBIT "6"*

the substance of Defendant's Reply.

## ARGUMENT

The State's Response to Defendant's Amended Post-Conviction Petition is disingenuous, at best. The State relies, almost entirely, on a police report to support its argument that defense counsel was acting within the purview of "trial strategy." (State's Response, at 1-2)  The State knows, as does the Court, that police reports are inadmissible as a matter of law. See generally, People v. Morris, 65 Ill. App. 3d 155, 382 N.E.2d 383 (1st Dist. 1978); People v. Gagliani, 210 Ill. App. 3d 617, 629, 569 N.E.2d 534 (1st Dist. 1991).  The report the State references in its Response did not come into evidence at Defendant's trial, nor would it come into evidence at any subsequent trial should the Court see fit to grant Defendant a new trial.  For the State to rely on such a document illustrates the overall weakness of its position.

The State claims that trial counsel "was aware that the petitioner Charles Daniels had given an incriminating statement to police detective James Carlassare on the evening of February 12, 2000." (State's Response, at 1)  The State attempts to use the police report in question to prove that Defendant made that incriminating statement.  Of course, this is completely improper.

Carlassare testified at trial.  The proper way to advance the argument the State attempts to make is to cite Carlassare's

-2-

trial testimony.  Or to obtain an affidavit from Carlassare
stating that Defendant made some sort of incriminating statement
and to include the details of that alleged statement.  The
State's only purpose in presenting this inadmissible and
inflammatory police report to the Court is to prejudice Defendant
and his post-conviction petition in the eyes of the Court.

For that reason, Defendant moves that this Honorable Court
strike the police report attached to the State's motion as an
exhibit and, additionally, strike any reference to that report
contained in the State's Response.

However, in the event the Court does not strike the police
report from the State's Response, Defendant submits to the Court
that the report offered by the State actually *supports*
Defendant's argument that his trial counsel was ineffective.
Contained in that report are several material inconsistencies
with the testimony adduced at trial.  The report states that Ms.
Elston *saw* Defendant in the hallway of the building and that she
*saw* him walk to the rear of the building. (State's Response, at
Exhibit 1)  The report also states that Ms. Elson *saw* Defendant
check the door knob of the apartment across the hall and that,
when he could not gain entry, she *saw* Defendant walk back to the
front of the building. (State's Response, at Exhibit 1)  Yet the
trial testimony of Ms. Elston and Detective Carlassare is
curiously devoid of any such events.

-3-

Ms. Elston testified that she was in her apartment the entire time.  She saw Defendant come up the walkway and then ring the doorbell to the vacant apartment. (R118-119)  However she saw that as she looked out her front window.  Later she heard rattling from the mailbox in the foyer. (R118-119)  But again, that was heard while she was in her apartment.  Elston called the police when she thought the man was at the front door of her building for about three minutes. (R128)  Elston never testified that she opened her apartment door and saw Defendant or that she ever actually saw Defendant in the building past the mailbox area.  In fact, Elston did not believe that Defendant was ever in the hallway past the security door.  Elston testified that Defendant crawled in through an open window directly into the apartment to gain entry, she said a window must have been open for Defendant to get in ("one of them had to be open for him to come in"). (R136)  So, the statements in Carlassare's police report contradicted Elston's trial testimony, yet she was never questioned about those inconsistencies.

Carlassare testified that he interviewed Defendant at the police station after his arrest and that Defendant stated he knew he was in trouble and that he shouldn't have gone into the apartment. (R151-154)  At no time did Carlassare mention that he interviewed the victim, Ms. Elston.  Notably, Carlassare did not submit his report for about 150 days after Defendant's arrest.

-4-

(R154-155)  Significantly, Carlassare was not even questioned about this report.

Both Ms. Elston and Detective Carlassare should have been questioned about the contents of the report.  The report was detailed and had significant impeachment value.  Yet it was never used by defense counsel.  This supports Defendant's contention that defense counsel was ineffective in representing Defendant at trial.

Just as counsel finds it interesting that the State responds by attaching an inadmissible police report to its pleading, counsel finds it equally interesting what the State has chosen not to respond to.  The State does not rebut in any meaningful way Defendant's argument that trial counsel elicited testimony harmful to the defense.  The State makes no mention of the fact that trial counsel, on cross examination, elicited testimony that helped the State prove a material element of its case.  See Defendant's Amended Petition, at 10-15)

As such, the State has waived its opportunity to respond to these issues.

## CONCLUSION

For the above reasons, Defendant's post-conviction petition successfully illustrates a deprivation of Defendant's constitutional right to effective assistance of counsel. Defendant prays that this Honorable Court deny the State's motion

-5-

## AFFIDAVIT

I, *CHARLES DANIELS*, Inst. No. *N-63102*, hereby declare under penalty of perjury that the following is true and correct based upon my personal knowledge and that I am competent to testify thereto if called upon as a witness.

I INCORPORATE BY REFERENCE THE ORIGINALLY FILED AFFIDAVIT WITH THE POST-CONVICTION PETITION OF NOVEMBER 4, 2004, AND THE FOLLOWING STATING THAT IN THE MONTHS PRIOR TO TRIAL IN CRIMINAL MATTER 00CR7104, ATTORNEY DENNIS H. SHERMAN, STATED TO ME A PLEA OFFER OF (15) YEARS HAD BEEN OFFERED ON BOTH 99CR9919 AND THIS CASE. I ELECTED TO TAKE 12 YEARS - (99-CR-9919), proceeding TO TRIAL ON 00-CR-7104, BECAUSE OF THE ANTICIPATED TESTIMONY OF THE COMPLAINANT. ON JUNE 5, 2002, After explaining MY LEGAL reason AND BELIEF that the TESTIMONY FAILED TO "PLACE" ME INSIDE OF BUILDING AS ALLEGED, I WAS SHOCKED AFTERWARDS WHY MY DEFENSE COUNSEL "CROSS-EXAMINED" AS HE DID THIS WITNESS? THERE WAS ONLY ONE REASON TO HAVE ELICITED THIS "INCULPATORY EVIDENCE", THAT THE STATE HAD FAILED TO DO. COUNSEL'S ACTION AMOUNTED TO DEFICIENT PERFORMANCE IN CONTEXT OF THIS CASE, NOR COULD BE A REASONABLE TACTICAL DECISION, PREJUDICING ME UNDER U.S. v. BOOKER, 125 S. CT. 738 - FURTHER AFFIANTH SAYETH NAUGHT

*Charles L. Daniels*
**AFFIANT**

Signed before me this 23 day of
*August*, 2005.

*Lenard E. Palmer*
**NOTARY PUBLIC**

"OFFICIAL SEAL"
Lenard E. Palmer
Notary Public, State of Illinois
My Commission Exp. 09/29/2007

IN THE
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT ILLINOIS - EASTERN DIVISION

UNITED STATES OF AMERICA, ex rel

CHARLES DANIELS

~~████~~, PETITIONER,                                    )
                                                        )
                                                        )   Case No. 07-C-6475
        v.                                              )
                                                        )
DAN AUSTIN, WARDEN                                      )
PINCKNEYVILLE CORR. CENTER                              )
~~████~~ RESPONDENT.

## PROOF/CERTIFICATE OF SERVICE

TO: c/o ATTY. ERIC W. TRUETT          TO: c/o PRISONER CORR. CLERK
    ATTORNEY GEN. ILLINOIS                U.S. DISTRICT COURTHOUSE
    100 W. RANDOLPH ST - 12th FL          219 S. DEARBORN ST.
    CHICAGO, ILLINOIS 60601-3218          CHICAGO - IL - 60604
            (1 COPY)                          (1 + 1) COPIES

PLEASE TAKE NOTICE that on ___MAY 2___, 20_08_, I have placed the
documents listed below in the institutional mail at _PINCKNEYVILLE_ Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER TO
PETITION FOR WRIT HABEAS CORPUS;
  APPENDIX DOCUMENTS; RULE 5 + 11 RESP. VIOLATION NOTICE

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: MAY 2, 2008                    /s/ _Charles Daniels_
                                     NAME: CHARLES DANIELS
                                     IDOC#: N-63102
                                     PINCKNEYVILLE Correctional Center
                                     P.O. BOX 999
                                     PINCKNEYVILLE, IL 62274