File Date: _May 15, 2008_

Case No: _07cv 6475_

ATTACHMENT # _____

EXHIBIT ___2_____

TAB (DESCRIPTION) _____

# Transcript of Record
## Appeal
## to

_____APPELLATE_____ **Court of Illinois**

_____FIRST_____ **District**

**Circuit Court No.** _____ 00 CR 7104 _____

**Trial Judge** _____ THOMAS DAVY _____

**Reviewing Court No.** _____ 06-2583 _____

_____ THE PEOPLE OF THE STATE OF ILLINOIS _____

# 06-2583

CHARLES DANIELS

**FILED**
APPELLATE COURT 1st DIST.
APR 16 2007
STEVEN M. RAVID
CLERK

## from
# CIRCUIT COURT
## of
# COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CRIMINAL DIVISION

ONE VOLUME
COMMON LAW RECORD

**DOROTHY BROWN,**
Clerk of the Circuit Court Amended

DR/SG

**Deputy**

EXHIBIT O

(Rev. 1/17/01) CCCR 0310

THE PEOPLE OF THE STATE OF ILLINOIS VS.   00CR0710401

CHARLES    DANIELS

| DATE | |
|---|---|
| MAR 10 2000 | INDICTMENT/INFORMATION FILED IN THE CLERK'S OFFICE |
| | PRES. JUDGE ASSIGNMENT DATE: MAR 24 2000 |
| | BAIL PREVIOUSLY SET $ |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| MAR 24 2000 | THOMAS R. FITZGERALD | NO ARRAIGNMENT |
| | | ASSIGNED TO JUDGE Davy 3/27 |
| | | ATTY FPD app M-D 4-3-00 |
| 4-3-00 | Davy | (C) LTF app Dennis Sherman |
| | | DEFENDANT ARRAIGNED. WAIVES READING OF INDICTMENT. ENTERS PLEA OF NOT GUILTY. |
| | | STATE FILES MOTION composite "250,000(D) |
| | | P.T. DISC AND ANSWER. Deft advised Time |
| | | TENDERS APPROPRIATE |
| | | ATTACHMENTS. BA 4-13-00 |
| | | No object for Deft to go to law library. |
| 4-13-00 | Davy | Em BA 5·22·00 x |
| 5·11·00 | Mannion | (C) BA 5·22·00 x |
| 5-22-00 | Day | (C) atty on trial at 26th St. MD 5·24·00 x for atty Δ allowed to go to law library |

C    2    (OVER)

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|
| 5-24-00 | Davy | (C) New case up 5-30 BC 12 compard. bond $1,000,000 BA 6.800 X Status on new case |
| 6-2-00 | Davy | (c) Δ brought to court by CCDOC, Δ new case bef J. Fitzgerald 6-22-00 sent to 6-8-00, VOBB filed in Br. Ct. no bail |
| 6-8-00 | Davy | (c) BA 7-5-00x, status re: new case bef P.J |
| 7-5-00 | Mannion | (c) B/A 8/15/00 |
| 8-15-00 | Davy | (C) Forensic Clinical Services evaluation ordered for fitness & sanity at time of all offences lt wrts 1C MD 10/2/00x for BCx |
| 10-2-00 | Davy | (c) Atty did not submit forms to Forensic Clinical Services MD 11-14-00 + for eval |
| THOMAS M. DAVY JSC NOV 14 2000 | | (C) - Per Forensic Clinical Services dft FK & SANE MD 11-29-00 + for mtt for independent psych eval. |
| THOMAS DAVY NOV 29 2000 | | (C) Order for Δ to be examined by Dr. Love ns 1/17/01 x for eval |
| THOMAS DAVY JAN 17 2001 | | (C) Ord signed for Dr. Love to examine Δ at jail MD 2-14-01 x C for report. |

THE PEOPLE OF THE STATE OF ILLINOIS VS.

*Daniels, Charles*

CASE NO. 00 CR 07104-01

| DATE | PAPERS FILED |
|------|--------------|
|      |              |

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|
| 2-14-01 | Davey | (C) Exam will not be done by Dr. Lowe. MD 3-21-01 x for evaluation by another doctor. (atty will come in with order for exam.) |
| THOMAS M. DAVY 1590 MAR 21 2001 | | (C) Δ's Dr. did not have opinion as to fitness + sanity MD 5-16-01 x Δ surrenders in exoneration of bond. |
| Mannion THOMAS M. DAVY 450 MAY 16 2001 | | (C) BA 6/20/01 x |
| 6/20/01 | Davy | (C) Δ request for County payment for psych eval allowed St request to Forensic Clinical Services to evaluate report allowed BA 7/24/01 |
| THOMAS M. DAVY 1590 JUL 24 2001 | | (C) Forensic Clinical Services not complete BA 9/17/01 x |

(OVER)

CC-69 (3-81)

C   4

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|

THOMAS, DAVY    SEP 17 2001    (C) report received from forensic clinical services B/A 10.1.01x to get summary of Dr. Shikarir report

THOMAS, DAVY    OCT 01 2001    (c) Psych summary to be dictated today B/A 10.9.01x to set for trial on elected case

THOMAS DAVY    OCT 0 9 2001    (C) St. tenders report from forensic clinical M.O 10.23.01 x to set for trial

THOMAS M. DAVY-159C    OCT 23 2001    (C) M.D 11.5.01 x

THOMAS, DAVY    NOV 05 2001    (C) M/D 11/29/01 status

THOMAS M. DAVY-159C    NOV 29 2001    (c) M.D 12-17-01 x

11-17-01    Davy    (C) atty unable to interview psychiatric M.D - 1-17-02 + 1-17-02

JUDGE THOMAS M. DAVY    JAN 17 2002    (c) O/C for PSI    M.D 3.5.02 x for PSI

THOMAS M. DAVY-159C    MAR 0 5 2002    (c) PTI distributed    MD 3-26-02 x plea or set for trial

3-26-02    Davy    (C) M/D 4-10-02 x final conf & set or trial

THOMAS M. DAVY-159C    APR 1 0 2002    (c) M.D 4.16.02 x final plea or set for trial

JUDGE THOMAS M. DAVY    APR 1 6 2002

C    5

THE PEOPLE OF THE STATE OF ILLINOIS  VS.

CASE NO. C R 0 7 1 0 4 01

| DATE | PAPERS FILED |
|------|--------------|
| | INDICTMENT/INFORMATION FILED IN THE CLERK'S OFFICE |
| | PRES. JUDGE ASSIGNMENT DATE: |
| | BAIL PREVIOUSLY SET $ |
| | |
| | |
| | |
| | |

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|
| | | ~~NO ARRAIGNMENT~~ |
| | | ~~ASSIGNED TO JUDGE~~ |
| 4.16 02 | Davy | (C) No officer defenses & no witer oral answer. MD 6.5.02 WSFT Bench Indicated Δ to file ans w/ 15 days. |
| -5-02 | Davy | (C) Jury waiver accepted PNG/ JW/ BT testimony heard BA TCC 6-19-02 WSFT |
| THOMAS DAVY  JUN 19 2002 | | (C) St tenders addit'l Supp Det 1C, 1A01C, order on furlo, no evidence heard, m/s 7-16-02 WSFT |
| THOMAS M. DAVY-1590  JUL 16 2002 | | (C) St tendered addit'l PR to Δ on 7-9-02, PNG/JW/BT CoC, testimony heard, Mot for Δ at close of St's case denied, Δ rests, Finding of Guilty, bond revoked, o/c 7-30-02 C |

(Rev. 7/7/95) CCCR 0605

(OVER)

6

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|
| THOMAS M. DAVY-1590  JUL 3 0 2002 | | (c) Δ files mot for new trial, Motion Denied, Hearing in agg & mitt, Δ sent to 8 yrs IDOC, concur. to 99CR 9919, Δ adv of app. rts. SOM 9-26-02 |
| 8-26-02 | Harriwister | (c) BA 9-5-02 × |
| 8-29-02 | Clerk | Δ files Notice of Appeal & Request for Extension of time to file Mandamus etc |
| 9-5-02 | Davy | (c) Δ mot. to reconsider or reduce sentence - denied. SOM 9-26-02  Δ advised leave to file mandamus should be brought before the ILL supreme court, rather than trial crt |

THE PEOPLE OF THE STATE OF ILLINOIS VS.   CASE NO. D0CR 071040

DANIELS-CHARLIE

| DATE | | PAPERS FILED |
|------|--|--------------|
| | | INDICTMENT/INFORMATION FILED IN THE CLERK'S OFFICE |
| | | PRES. JUDGE ASSIGNMENT DATE: |
| | | BAIL PREVIOUSLY SET $ |

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|
| | | ~~NO ARRAIGNMENT~~ |
| | | ~~ASSIGNED TO JUDGE~~ |
| 12-12-02 | Davy | (C) mitt to issue |
| 7/16/04 | | APPELLATE COURT MANDATE FILED IN CLERKS OFFICE TRANSFER TO PRESIDING JUDGE FOR 7 27 04 ☐ DISMISSED ☐ AFFIRMED ☐ RECALLED ☐ |
| 7/27/04 | Biebel | Circ & Cent appointed |
| 12-27-04 | Davy | (CC) IDOC Case docketed 9/c status 3-18-05 (See written order) |
| JUDGE THOMAS M. DAVY MAR 18 2005 | | (C) IDOC LTF App David Narin BA 6-24-05 |
| 6/24/05 | Davy | Aun IDOC ASA Harlib 1C Atty Narin 1C BA 8/26/05 to |

(Rev. 7/7/95) CCCR 0605

C   8 (OVER)

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| | | *Daniels, Charles*<br>*DOCKET 04-01* |
| JUDGE THOMAS M. DAVY JUN 24 2005 | | file amended PC |
| JUDGE THOMAS M. DAVY AUG 26 2005 | | Δ in IDOC, st files mot to dismiss pu 10-28-05 x for Δ response |
| JUDGE THOMAS M. DAVY OCT 28 2005 | | C IDOC-NIC ASA Haskins + atty David Norris IC. Δ files amended PC petition pu 1-27-06x for st. response |
| JUDGE THOMAS M. DAVY JAN 27 2006 | | C (IDOC) NIC, St files response to amended PC petition BA 2-24-06 x for Δ reply |
| JUDGE THOMAS M. DAVY FEB 24 2006 | | C B/A 4-28-06 for argu |
| 4-28-06 DAVY | | C (IDOC) Atty Michael McDermott, ~~of the late John Nerius~~, IC, ASA Norwell IC, BA 5-26-06 x status re: priv atty |
| JUDGE THOMAS M. DAVY MAY 26 2006 | | Δ in IDOC LT F app Kevin Peters B/A 7-28-06 for arg on mot to Dismiss |
| JUDGE THOMAS M. DAVY JUL 28 2006 | | C (IDOC) ASA Haskins, All C/C 8-11-06x for arg Δ's request to be present for argument denied. |

C    9

THE PEOPLE OF THE STATE OF ILLINOIS VS.

*Charles Daniels*

CASE NO. 00JR07104

| DATE | PAPERS FILED |
|------|--------------|
| | INDICTMENT/INFORMATION FILED IN THE CLERK'S OFFICE |
| | PRES. JUDGE ASSIGNMENT DATE: |
| | BAIL PREVIOUSLY SET $ |

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|
| | | NO ARRAIGNMENT |
| | | ASSIGNED TO JUDGE |
| 8.11.06 | DAVY | D in (IDOC) arg. on Amended post. conviction petition - st. mot to dismiss granted P.C. petition denied. |

Rev. 4/2/01) CCCR 0605 A

C   10   (OVER)

**THE PEOPLE OF THE STATE OF ILLINOIS VS.**

Daniels Charles

**CASE NO.** DOCW 7104

| DATE | PAPERS FILED |
|------|-------------|
|  | INDICTMENT/INFORMATION FILED IN THE CLERK'S OFFICE |
|  | PRES. JUDGE ASSIGNMENT DATE: _____ |
|  | BAIL PREVIOUSLY SET $ _____ |
|  |  |
|  |  |
|  |  |
|  |  |

| DATE | JUDGE | ORDERS ENTERED |
|------|-------|----------------|
|  |  | NO ARRAIGNMENT |
|  |  | ASSIGNED TO JUDGE _____ |
| S | CLERK'S OFFICE | NOTICE OF APPEAL FILED 8-21-06 |
|  |  |  |
|  |  | NOTICE OF APPEAL MAILED 8-22-06 |
|  |  | APPELLATE HEARING DATE ASSIGNED BEFORE |
|  |  | PRESIDING JUDGE 8-25-06 |
| 8-25-06 | PAUL P. BIEBEL, JR. | [X] STATE APPELLATE DEFENDER |
|  |  | [ ] PUBLIC DEFENDER |
|  |  | [ ] OTHER |
|  |  | APPOINTED TO REPRESENT THE DEFENDANT ON THE APPEAL |
|  |  | [X] FREE REPORT OF PROCEEDINGS, ALLOWED |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**(Rev. 4/2/01) CCCR 0605 A**

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 00 CR 07104 |
| | ) | |
| CHARLES DANIELS, | ) | THOMAS M. DAVY |
| Defendant-Petitioner. | ) | HONORABLE PRESIDING JUDGE |
| | ) | |

## NOTICE OF FILING

TO; RICHARD A. DEVINE
    Cook County State's Attorney
    10220 S. 76th Ave.
    Room 223
    Bridgeville, Illinois 60455

Honorable Timothy C. Evans
Cook County Chief Judge
Suite 2600
50 West Washington St.
Chicago, Illinois 60602
c/o-Timothy Holt

    Honorable THOMAS M. DAVY
    Bridgeview Courthouse
    10220 S. 76th Ave.
    Bridgview, IL 60455

Please take NOTICE that on the_____day of August_____2005
the undersigned has filed with the Clerk of the Circuit Court
of Cook County, Illinois, the Defendant's AMENDED Post-Conviction
petition, and has placed in the U.S. Mail with adequate postage
copy to Honorable Timothy C.Evans, while hand delivering copies
to the other relevant parties at the Courthouse of Bridgeview.

DATED: AUGUST     2005       Charles Daniels, pro se,

*Charles Daniels*

## PROOF OF SERVICE

Under penalties as provided by law pursuant to Sec.1-109 of the
Code of Civil Procedure, **735 ILCS 5/1-109**, the undersigned
certifies that he served this notice with attached Amended Post
Conviction petition by placing in the U.S. MAI1 and personally
delivering a copy of the same to the above stated Court officials
at the address(es) stated above before 5:00 pm. on AUGUST_____2005

C   12

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CRIMINAL DIVISION- COUNTY DEPARTMENT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | no. 00 CR 07104 |
| vs. | ) | THOMAS M. DAVY |
| CHARLES DANIELS, | ) | HONORABLE PRESIDING JUDGE |
| Defendant- Petitioner | ) | |

## DEMAND FOR RESPONSIVE PLEADING ANSWERING DEFENDANT-PETITIONER'S POST-CONVICTION PETITION

NOW COMES, Petitioner-Defendant **CHARLES DANIELS,** pursuant to **725 ILCS 5/122-1 et.seq**, of the Post-Conviction HEaring Act, specifically **725 ILCS 5/122-5**, compelling that the State prosecutor be directed by this Honorable Court to either Answer responsively to the pleading or file a motion to dismiss the Post-Conviction petition alleging Substantial **Fifth, Sixth and Fourteenth Amendment Constitutional violations** that denied the petitioner a fair trial. Petitioner asserts that his pleadings are both factual and supported by the trial court record and affidavits and that the Truth or Falsity determination will best resolve this dispute, during a Evidentiary Hearing as to Each Constitutional And Substantive Question of Law raised therein.

By: *Charles Daniels*

CHARLES DANIELS N-63102

Charles Daniels N-63102
Hill Correctional
P.O. Box 1700
Galesburg, Illinois 61401

C    13

STATE OF ILLINOIS)
COUNTY OF COOK   )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT-CRIMINAL DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | NO. OO CR 07104 |
| | ) | THOMAS M. DAVY |
| CHARLES DANIELS, | ) | HONORABLE PRESIDING JUDGE. |
| DEFENDANT. | ) | |
| | ) | |

## AMENDED POST CONVICTION PETITION

NOW COMES, CHARLES DANIELS, pursuant to the Illinois Post Conviction Act, **725 ILCS 5/122-1, et. seq.** and moves this Honorable Court, on its finding of guilty of Burglary in connection with the above referenced indictment number, seeking relief from the judgment based upon Substantial Constitutional depravations. In support thereof, the defendant-petitioner states:

1. That the petitioner-defendant is presently incarcerated in the Henry Hill Correctional Center, Knox County, Galesburg, IL

2. That petitioner was charged with one count of Burglary on **March 10, 2000**, in violation of **720 ILCS 5/19-1(a)(West 2000)_C-2426**

3. That after a bench trial beginning on **June 5, 2002**, continuing on **July 16, 2002**, the petitioner was subsequently found guilty by the Honorable Thomas M. Davy, presiding judge.

4. The trial court during sentencing failed as required under **Illinois Supreme Court Rule 402, to Admonish petitioner of mandat**ory Supervised release being applicable in his case. **People v. Day,** 224 Ill.Dec. 106, 724 N.E.2d 994, 311 Ill.App. 3d 271 (2000)

5. Petitioner filed a direct appeal to the First District Court of Appeal, that was subsequently affirmed on **Dec. 22,2003.**

6. Petitioner filed for Leave to appeal to the Illinois Supreme Court on **march 4,2004,** that was later denied on **June 23,2004.**

7. This petition follows and is based on Substantive constitutional **Fifth,Sixth** and **Fourteenth Amendment** violations and are supported along with affidavits, supporting transcripts records & references thereto, sufficient to survive the first stage dismissal threshold requirement necessitating only the " gist" of the Constitutional depravation. **People v. Edwards**, 197 Ill.2d 239

## STANDARD OF REVIEW

The Post Conviction Hearing Act **725 ILCS 5/122-1(West 2000)** provides a opportunity to raise any allegation of a Substantial deprivation against a defendant's Constitutional rights, and must include certain information, along with affidavit, records, or other evidence supporting its allegations, or shall state why they are not attached. " Any claim of substantial denial of Constitutional rights not raised in the original or an amended petition is waived." **725 ILCS 5/122-3;People v. Mahaffey** 194 Ill.2d 154,170 (2000)

After the petition is filed, the trial court examines it to determine if its frivolous or is patently without merit. **725 ILCS 5/122-2.1(a)(2)(West 2000).** At this stage, if the court determines that the petition is frivolous or patently without merit, it dismisses the petition. If not, the trial court dockets

the petition for further considerations pursuant to section 122-4 through 122-6 **725 ILCS 5/122-2.1(b) (West 2000)**

At the second stage, the trial court may appoint counsel for an indigent defendant. **725 ILCS 5/122-4.** Counsel may seek leave to file amendments to the petition. Also, the State has 30 days to either answer the petition or move to dismiss. **725 ILCS 5/122-5.** IF it files a motion to dismiss which is denied, it has ⸱-20 days to answer the petition.

The Trial court may " receive proof by affidavits, depositions, oral testimony, or other evidence " and, in its discretion, may require the petitioner to be brought before the Court for a Hearing. **725 ILCS 5/122-6.**

C    16

## STATEMENT OF FACTS

Defendant Charles Daniels was charged by information on March 10, 2000, with one

count of burglary, in violation of 720 ILCS 5/19-1(a) (West 2000). (C.24-26)  A bench trial

before the Honorable Judge Thomas Davy commenced on June 5, 2002 and was continued to

July 16, 2002.  On those dates, the following testimony was adduced.

On February 12, 2000, the complainant, Nora Elston, was a 76 year old woman who lived

in one of the two first floor apartments at 8232 S. Eberhart Street in Chicago. (R.115-116).  She

owned the building, which was a three story six-flat, and had been living there for about 15 years.

(R.116)  At approximately 3:40 p.m., she was at home alone. (R.117)  The apartment across the

hall from hers was vacant because the tenant had moved out. (R.117)  Elston had been using the

apartment to store some of her property. (R.117)  She kept both the back and front doors locked.

(R.117, 135-136)  That vacant apartment was not being rehabbed, and was completely habitable.

(R.125-126)  Elston had planned to rent the apartment again in its present condition. (R.126)

From the apartment where she lived, Elston saw a man walk up to the front of the

building and ring the bell for the vacant apartment. (R.118-119)  Moments later she thought she

heard a rattling at the mailbox. (R.118-119)  Elston immediately called the police because she

believed that individual to be  "fool[ing]" with the mailbox. (R.118-119)  Elston believed that

man was at the front door of her building for about three minutes. (R.128)  After about 10 or 15

minutes, the Chicago Police Officer William Meister and his partner arrived. (R.128, 156-157)

They checked the back yard and looked around. (R.137, 157)  At that time they also checked the

door to the vacant apartment, found it locked and left because the man was gone and they could

not find anything. (R.118-119, 137)  After they had gone, Elston thought she heard a plastic bag

being opened in the apartment across the hall, so she phoned the police again. (R.119, 128, 157)

While waiting for the police the second time, Elston saw a man proceed down the

walkway of her building with a plastic bag filled with some of her belongings from the vacant

apartment. (R.120, 129)  She watched him walk away and decided to follow him so she could tell

police where he fled to when they arrived. (R.121-122)  Elston followed the man westbound

down an alley just north of 83rd Street until he turned northbound in another alley. (R.130-131)

She stopped following him because at one point, he was no longer carrying the plastic bag with

her belongings. (R.130-131)  She went back to her house to wait for police who arrived this time

in about seven minutes. (R.129)  The police put her in their squad car and drove around the alley

where Elston had followed the man. (R.123, 132-133, 157-158)  After a short time, the police

and Elston located the suspect near 8240 S. Burnom. (R.124, 157-158)

When the police approached the man, he did not have any plastic bags on his person.

(R.133-134)  Elston testified that the plastic bags were 2 1/2 by 3 1/2 feet, and could not be

secreted on one's person. (R.134-135)  After the police spoke with the man, he briefly walked

over to 510 W. 83rd Street, where police found two large plastic bags. (R.133-134, 159-160)

Meister showed Elston the bags and she said that the items in the bags, some clothing, a clock

radio, a discman, and some compact discs, were hers. (R.160-161)  Meister gave Elston some of

her clothing and belongings back that day. (R.163-164)

When Elston returned to her building she made an inspection of the vacant apartment.

(R.136)  The doors were still locked. (R.136)  Elston testified that she believed that all the

windows had been locked, but admitted, "[o]ne of them had to be open for him come in." (R.136)

C   18

Additionally, it is clear from trial testimony(R.136-137)
that the complaining witness believed she left a window open in
the vacant apartment and that is how the defendant gained entry
to the building.(R.136-137). So, in fact, the defendant did gain
entry through a window to the vacant apartment, thereby circumventing
any " common areas," which by the lower court's ruling, supported
a conviction for simple burglary. The record thus indisputably
shows that entry occurred through the window. There was no testimony
about the front door of the vacant apartment being forced open in
any way, indeed when  police  arrived, the door to the vacant
apartment was still locked.( R.136-136)

Chicago Police Detective James Carlassare, assigned to Area 2,
testifed that on February 12, 2002, he interviewed defendant.
He read defendant his rights per Miranda.( R.152-153) Defendant then
told Carlassare that he knew he was in trouble and that he shouldn't
have gone into the apartment. (R.154) Defendant added that he was
receiving help for his problem.(R.154) Carlassare made a report
about the interview, but did not submit it until July 10,2000
almost 150 days later.(R.154-155)

The State then rested its case-in-chief and the defense motion
for a **directed finding** was denied.)R.164-166). The defense then
rested.(R.166) The State waived its opening argument and the defense
waived all closing arguments.(R.166)  The trial court then announced
its ruling, finding defendant guilty of burglary, and entered a
verdict on the finding.(R.166-167)

At the hearing on the motion for new trial, defense counsel
Dennis H. Sherman argued that the defendant should have been
convicted of residential burglary, not burglary, and reminded the
court that the two were mutually exclusive charges.( R.170-172)
The State responded by arguing that the common areas of the
building at issue here were not a " **dwelling**," but merely a
building for purposes of the simple b urglary statute.( R.172-173)
Furthermore, the apartment was vacant, meaning no one intended
to live in the apartment within a reasonable amount of time(R.173)
The State also argued that the statute had **already been corrected**
**so that the offenses are no longer mutually exclusive. The defense**
again argued that the apartment building was a residence under the
statute.(R.174)

The court found that defendant made two separate unauthorized
entries, one into the apartment building and the other into the
vacant apartment. ( R. 177-179)  The trial court stated, "[H]ad the
defendant been charged with the entry into a specific apartment
[**Childress** and the residential burglary statute] would still apply
since there are numerous cases that say a building is a dwelling
if going to intent to be used as a dwelling regardless of who
would be living there."(R.178-179) The trial court judge then added:

> [U]nless the evidence would be that someone entered
> directly into a particular apartment through a window
> or a door leading directly from that apartment, from
> outside into the apartment that as long as there is a
> common area hallway, stairway, or whatever, that entry
> into that building into that common area would sustain
> charge of burglary.(R.179)

Finding that because the defendant entered the building on his way into the apartment, the court denied defendant's motion for a new trial and sustained the charged of burglary (R.177-17 )

The court sentenced defendant to a Class X sentence of eight years on the sole count of burglary based on his prior convictions.( 182-183) Defendant filed a motion to reconsider sentence which was denied.( R.195-196)  Defendant direct appeal was affirmed by the Appellate First District on December 22,2003. Petition for leave to appeal to the Illinois Supreme Court followed and was denied on January 27,2004 and subsequently the petition for re-hearing on the issues raised from the Direct appeal was denied, on June 23, 2004.

C   21

Issue A

## INEFFECTIVE ASSISTANCE OF TRIAL ATTORNEY & APPELLATE

A.   Trial counsel is  ineffective towards his overarching Duty
to advocate the Defendant's cause and to bring to bear such **skill
& knowledge** as will render the trial a reliable adversarial
testing process, where counsel supplies an otherwise **Unproven element**
of the crime during his cross-examination of the State's complaining
witness, **(R.V 16-17)** this Error is _ipso facto_ of the deficieny.

Petitioner-Defendant **Charles Daniels**, maintains and asserts
that the essence of his Ineffective-assistance claim is that counsel's
representation fell below an objective standard of reasonableness
and so upset the adversarial balance between the Defence and the
prosecution that his trial was rendered unfair and the verdict
suspect. **Kimmelman v. Morrison,** 477 US 365,374, 106 S.Ct. 2574
When a defendant complains of the ineffectiveness of counsel's
assistance, the defendant must show that counsel's representation
fell below objective standards of reasonableness and that there is
a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceedings would have been different.
 **People v. Albanese,** 104 Ill. 2d 504,525, 85 Ill.Dec.441,473 N.E.1246

The United States Supreme Court holding in **Strickland v.Washington**
466 US 668, 104 S.Ct.2052,2064,80 L.ed 2d 674(1984) contains two
components to any ineffective assistance claim: (1) deficient
performance and (2) prejudice. **Lockhart v.Fretwell**, 506 US 364
113 S.Ct.838,842,(1993) and **Petitioner Daniels**, in this instant
matter, believes that **both requirements** of the **Strickland test** have
been satisfied through trial counsel's eliciting testimony which
established and proved a material and essential element of the State's
case-in chief. **Appellate counsel for having failed to include.**

-4-

C   22

Trial counsel's cross-examination of the State's complaining witness Mrs. Elston, was so unreasonable through his eliciting testimony from her that specifically placed the petitioner in the non-dwelling portion of the building (R.V-16,17), that he rendered ineffective assistance of counsel to the petitioner, Constitutionally.

Prior to defense counsel's cross-examination, the record shows that the petitioner had only entered as a matter of **factual finding**, into the vacant apartment unit.((R-V-6,13 )  Nothing is specificaly stated as to whether that entry was through a window or door leading from outside the building into the apartment, which was the State's responsibility to establish.  This  omission towards the exact way that the petitioner gained entry was a critical fact towards proof of the crime charged, that the State failed to elicit during its Direct examiantion of the complaining witness or otherwise. The June 5th 2002, testimony adduced the following:

> Q: And that's the same person you had seen going into
>    your building?
> A: Right.
> Q: And is that the same person that you saw leave your building?
> A:  Yes, Sir.

From a complete reading of Mrs. Elston entire testimony upon which the State's theory was established," the petitioner had entered the vacant apartment unit, and thereby committed the offense of burglary, due to nobody residing in that apartment." ( R. 177-178 )

According to A.S.A. Ronkowski:

> " The law at the time was if I could have these back, if no
>   owner intended to occupy that apartmentwithin a reasonable
>   period of time, <u>it is not a dwelling</u>.  <u>It is a building</u>
>   and the owner did not intend to occupy that apartment." (177,78)

-5-

The above testimony by the State prosecutor was asserted concomittant with the proof of the commission for the burglary offense and the petitioner having been inside of the dwelling apartment unit. ( R.173-176)  In fact, the State's " position" had been that the petitioner's entry into the " dwelling " place of the structure at 8232-34 So. Eberhart St., supported a finding of guilty of burglary because the Statutory definition for this offense was that a " dwelling " is a building.( R.174 )

A.S.A. Ronkowski:

> " It is like the Illinois Supreme Court saying that a cow
> is a horse. In fact, if you look at the statute, the statute
> has since been changed to correct that mistake and that is
> no longer in there, but rather than argue those two things,
> I would argue that the sta tutory definition of dwelling
> was in affect at the time the crime indicated that a
> <u>dwelling is a building</u>, even if persons are not actually
> residing there, " if " absence is intended within a
> reasonable period of time to reside."

Hence; the State's theory, coupled with its eliciting of testimony from Mrs. Elston that (1) the apartment was unoccupied at the time of the crime;(R.V-6) and (2) Mrs. Elston, did not give permission to the petitioner or authorization to remove her property from inside of the unoccupied apartment unit,(R.V-13) only supported the commission of residiential burglary, PRIOR TO defense counsel's cross- examination.

The Trial court ruled after defense counsel's unreasonable cross-examnation that elicited the Inculpatory statements, that the petitioner made a second ' distinct entry' into the **hallway** which was a common area, and that the petitioner was guilty based on that entry . ( R.176-179 )  In a word, trial counsel helped supply the evidence and inferences thereto regarding this second ' distinct'

C    24

entry into the building.  Whether this conduct was deliberate or mindless, the result remains the same. Trial counsel provided ineffective assistance as guaranteed to the defendant through his actions and unreasonable cross-examnation under the **SIXTH AMENDMENT**.

The trial & Appellate courts both concede that the entry into the vacant apartment unit was residential burglary and that had never been charged. ( R.176-179 )

The crux of the petitioner's **SIXTH AMENDMENT (VI) Constitutional** complain is that his trial attorney elicited from the State witness irreparable testimony that aided the State in establishing its case. Trial counsel's questions were non-probative and of zero value in furthering the client's effort at obtaining an acquittal based on the State's failure to satisfy Due Process, regarding being anywhere outside of the apartment unit or dwelling place.
The trial record notes that the witness initially did **NOT** " place" the petitioner as having been heard coming up the stairs of the building. ( R-V-16,17)  Nonetheless, counsel pressed **recklessly** forward against his client's interest until he finally obtained Inculpatory statements that supported his client's finding of guilt.
[ Defense counsel]:  But you didn't hear this person come up the
        stairs did you ?
[Witness]:        NO.
Q:     And you said you saw the man come into the building and you
        lose sight of the man when he comes inside the building, right?
A:     OF course.

-7-

C   25

Trial counsel would not simply accept Mrs. Elston's Initial statement in response to having NOT heard the petitioner entering into the "non-dwelling" part of her building through the stairway. **Maskell,** teaches that the critical question in determining whether a defendant committed burglary or residential burglary is the nature of the place(s) entered without permission or authority and with the requisite intent.

Rather, defense counsel calculated as a Question a Point **NEVER** before stated or proven, as though it was already a **EXPLICIT FINDING FACTUALLY,** and which would eventually from the witness' answer, place on the record Testimonial evidence that would **"simulate"** the Trial Court ruling of **People v.Maskell**, 304 Ill.App.3d 77,710 NE 2d 449 ((where the Court found that the defendant had made **two distinct unauthorized entries** into that building.)

[Defense counsel: Q: How long would you say he was in the HALLWAY
of your building?

A: I'd say three minutes.
Q: Thirty minutes
A: Three minutes. (R.V.16-17)

Trial counsel's Blunder not only drew attention but worst highlighted before the Court the amount of time speculated that his client was in the "non-dwelling" part of the building. The petitioner maintains that a **Thorough Search** of the Entire trial record will conclusively establish and support his contention here that the witness NEVER SAID that the petitioner was at any time in the hallway or any other non-dwelling part of that building. Trial counsel Impetuosly placed his client in the hallway with presumptive Evidence, that shows his actions were unreasonable. This was a willful disregard to the substantial and unjustified risk that would result from his conduct to the degree that it borders on wantonly indifferent. **Undisputeably,** the witness NEVER said anything about petitioner being in Hallway.

-8-

C    26

Worst, why and for what purpose other than to " prejudice" would a(any) reasonable defense attorney ask **LEADING** questions that would help the State establish with " specificity " a(any) Material & Essential ELEMENT of the crime his client was charged with having committed? Whatever the reason, it placed into the record critical testimony that the State had failed to ask during the Direct examination of that witness. A 2nd Distinct entry.

* * * * *

Prejudice is herein established because without the above referenced cross-examiantion being so unreasonable in eliciting Inculpatory evidence by defense counsel, the State had not during its direct examination placed with any " specificity" the petitioner anywhere Other than inside the building vacant apartment. The Egregiousness of defense counsel's actions are akin to the case: **People v. Jackson**, 251 Ill.Dec. 848,741 N.E. 2d 1026 (Ill.App.1 Dist. 2000) ( where defense counsel provided ineffective assistance of counsel in a drug possession trial when, in cross-examining police officer he elicited fact that person to whom defendant had pointed after receiving money from unknown thrid person reached into paper bag and gave an object to the unknown person, where the State had not established that fact in its case-in-chief, and without that evidence there was nothing to link defendant with the narcotics found in paper bag.) See, also, **People v. Little**, 750 N.E.2d 745, 754,322 Ill.App.3d 607,255 Ill.Dec.828,837 ( Ill.pp.1 Dist.2001)

## CONTENTION II

Defense counsel's Misapprehension of the Law and Ineffective assistance at the time of this offense is seen further in the clear distinctions enunciated through the **stare decisis** of the Illinois Supreme Court's ruling in the case of **People v. Childress** , 158 Ill. 2d 275,302 (1999) stating that the two offenses of burglary and residential burglary were " **mutually exclusive,**" and that the

97

offense of burglary could not be committed inside of a
" dwelling place", while residential burglary could only be  committed
in a dwelling place.

Despite this teaching of the Court, counsel argued to the
contrary prejudicing his client, through his errant belief that a
" entire building was a residence, in which Mrs. Elston resided,
regardless of the fact that she lived in another apartment than
that which was burglarized." ( R.170-172; 175 )
Counsel's Ineffectiveness was clearly demonstrated ipso facto,
where the trial court judge ruled that trial counsel's theory &
argument had little merit and cited People v. Maskell, ibid.
in subsequently siding with the State. [ R.178-179 ]
Counsel in short both misapprehended the Law on this offense at
the time of the crime as demonstrated through his statments and
arguments attenuated thereto, coupled with his having elicited
Inculpatory testimony that aided the State in their case-in chief.

### ARGUMENT

When and where trial counsel " elicits an otherwise unproven
material element" through his examination of a witness, that
" specifically " places his client in the area or location which
ends up supporting that conviction ineffective assistance has been
demonstrated, ipso facto. In this instance, counsel is Deficient.
Peititioner Daniels maintains that is the responsibility of the
State to establish, not defense counsel against his own client.
( R.V-7,8;16 )  In fact, without the " gift horse " provided by
defense counsel placing his client specifically inside the HALLWAY
of that building, all that remained was a scenario where the
petitioner had entered & removed property without permission or
authority from a vacant apartment ( R_Y-9 )

This scenario was in no way sufficient to have linked the petitioner inside of the " non-dwelling" part of the building in conformity with **Due Process of Law**, nor as in <u>**MASKELL**</u>,that the trial court ruled was applicable and dispositive.

Hence " but for " defense counsel eliciting of those **Inculpatory** statements which were violative of the petitioner's Constitutionally guaranteed safeguards and protections, the probability is that the result would have been different.  The Appellate Court in light of this fact referenced it in affirming the trial court's judgment:

" Here, Elston testified that she saw the defendant enter and, **<u>after Three minutes in the Hallway</u>** leave her building."

( Dec.22,2003 ORDER) pg.6

In short, the Appellate Court affirmed based upon this distinct entry into a non-dwelling portion of a building, based on the evidence that had been elicited and placed into the record from defense counsel, without which the evidence had only established the petitioner as having made one distinct unauthorized entry as a Explicit factual finding. Defense counsel's actions were Constitutionally unreasonable and his performance was deficient at this critical stage of the proceedings.

Finally, Appellate Counsel was unreasonable in not having raised and included this significant  obvious issue on direct appeal, where he had no reason for failing to have done so, since there was merit, after consultations with the client he had promised to do so, and no conflict of interest existed regarding this clear Constitutional **SIXTH Amendment(VI)** violation and Substantive question.

C    9 0

## Issue B

Petitioner's FIFTH &SIXTH AMENDMENT right to NOTICE
of the exact cause & nature of the charge was violated through
the Burglary indictment merely alleging that he knowingly and
without authority entered into a building, the property of Nora
Elston, with the intent to commit a felony or theft therein(C.24-26),
where the Evidence at the Trial showed TWO DISTINCT ENTRIES
( R. 177-179); one to the vacant unit apartment (R.118-119) and
one into the " common areas " of the building.(R.176-179)

Because the Indictment did not specify which entry was the
basis for the Burglary, it lacked the specificity necessary to bar
a subsequent prosecution for the same conduct.

People v. Walker, 61 Ill.App.3d 891, 378 N.E.2d 607
( Burglary indictment that alleged intent to commit " a theft or
felony" was held defective. The evidence at trial showed two,
distinct enteries- one to commit theft and one to commit rape.
Because the indictment did not specify which entry was the basis
for the burglary charge, it lacked the specificity necessary to
bar a subsequent prosecution for the same conduct.)
People v. Thingwold, 145 Ill.2d 441,448,584 NE 2d 89,91, 164 Ill
                            Dec. 877

The Defence argued to the trial court that the entire building
was a " dwelling " within the meaning of the residential burglary
statute. ( R.170-172)

The State responded by arguing that the apartment was vacant
at the time of this offense, and that nobody had planned to live
in that apartment within a reasonable amount of time(R.172-173).
Additionally the State added that at the time of trial the statute
had already been corrected, relative to these offenses( simple
burglary and residential burglary) having been " mutually exclusive"
under the Illinois Supreme court holding in People v. Childress,ibid
( R.V.176-)

-11-

C    30

The trial court ruled according to the report of the proceedings that there were " two distinct entries ", the first into the building at 8234 S.Eberhart, and the second into the first floor apartment of that building. ( R. 176-179 )

The trial court along with the appellate court both conceded that entry into the Buildings' vacant apartment unit was a residential burglary and that had never been charged. ( R.176-179 ) The court went on to hold that the petitioner was guilty based on the " **distinct entry** " into the " common areas " of the building as opposed to the distinct entry to the vacant apartment(R.176-179)

### ARGUMENT

Petitioner-Defendant 'Daniels; **FIFTH- SIXTH AMENDMENT** protection guaranteed under the United States Constitution, were violated here in the Defective indictment failing to have provided defense counsel or the defendant with **NOTICE** of the exact cause & nature of which " Distinct entry " into the building formed the basis for the Burglary and in the Indictment lacking the specificity necessary to have barred a subsequent prosecution for the same conduct. Ergo, this conviction must need be reversed, as a matter of State and Federal laws. Moreover, the petitioner challenges the sufficiency of the charging instrument for its failure to correctly have alleged the offense. While technical defects in a charge are waived if not challenged in the circuit court, **People v. Clark**, 30 Ill.2d 67,73, 195 N.E. 2d 157; the argument that a charge is **VOID** is one that can be raised at any time, regardless of whether the alleged error is properly preserved for review, because an allegation that a charge is void is an allegation of a **Substantial**

C  31

Defect that cannot be waived. Illinois supreme court rule 615A
As the Illinois Supreme Court held in **People v. Pujoe,** 61 Ill. 2d
335, 339,335 N.E.2d 437, **the ommission of a material** element does
not render a charge void, a charge will be held :

> " sufficient if it apprised the accused of the precise
> offense charged with sufficient specificity to prepare
> his defense and allow pleading a resulting conviction
> as a bar to future prosecution arising out of the same
> conduct."

## CONCLUSION

As it stands, the **SIXTH AMENDMENT(VI),** guarantee that a defendant
be fully informed of the charge against him and the **FIFTH AMENDMENT**
**(V),** guarantee of the right to a indictment by a grand jury and
its **DOUBLE JEOPARDY** bar, requires at a minimum that the indictment
adequately apprises the defendant of the **EXACT NATURE,** of the
charge and cause of the criminal accusation, so that he can prepare
his defence to avoid surpises, such as here, and that , if future
proceedings are brought against him for a similar offense, the
trial record would show to what extent the defence of **double jeopardy**
is available as a bar to subsequent prosecution arising out of the
same conduct.

S.H.A. Const. Art.1§8; 725 ILCS 5/111-3(a)

U.S.C.AS. Sixth Amendment(VI); Fifth Amendment(V)

Poeple v. Meyers, 196 Ill. Dec. 646,630 NE 2d 811,158 Ill.2d 46;

People v. Smith , 227 Ill.Dec. 287,876 N.E.2d 1121,337 Ill.App 819
                          (2003 4th Dist.)

Appellate attorney was clearly Ineffective for failure to have
raise this obvious Constitutional vioaltion that had been presented
to him by petitioner in pro se brief, prior to filing direct appeal.

C    32

ISUE    C

Petitioner Daniels, asserts that under the **Due Process Clause**
of the Federal Constitutional Fifth and Fourteenth Amendments, the
State prosecutor is required to prove every element of the crime
charged beyond a reasonable doubt.  **Jackson v. Virginia,** 443 US 307,
316,99 S.Ct.2781,; **In re Winship,** 397 US 358,364(1970); see also,
**Fiore v. White,** 531 US 225,228-29 (2001)

The reasonable doubt standard applies in both State and Federal
proceedings upon the prosecution. **Sullivan v. Louisiana,**508 US 275,278
This burden of proof upon **each & every Element** of the crime remains
in a criminal matter on the prosecution of proving beyond a reasonable
doubt ALL ELEMENTS.  This burden consists of both **production and
persuasion.** **People v. Adams,** 281 Ill.App.3d 339,666 N.E.2d 769
( 1st Dist.1996); McCormick, Evidence, 336-337(5th Ed.1991)
The defendant must be acquitted if the government fails to sustain
its burdens of proof. LaFave & Scott, Criminal Law(2d ed.1986)

The Constitutional complaint within this post-conviction, is
based upon the State's theory and argument before the trial judge,
that the petitioenr had committed the offense of Burglary through
his entry and subsequent theft from inside of a vacant apartment.
A building owned by Ms.Elston, whom was not residing in that apartment
at the time of the theft. ( R.118-19,120; R.172-173)
The prosecution was required it is contended to prove beyond a(any)
 reasonable doubt each element of the burglary. Petitioner Daniels,
asserts and maintains that the trial record contains a **ABSENCE OF
EVIDENCE AS TO ONLY ONE ELEMENT. The** presentment against the Defendant
was that he " without authority knowingly entered into the building
the property of Nora Elston, with the intent to commit a theft or
felony therein."

-14-

### CONTENTION

Under both State of Illinois and Federal Due process of Law, the prosecution has a burden to satisfy on the record that the defendant in the matter as in this case was denied " authority or permission " to have entered or remained within the building of the complainant, as alleged in the presentment.

**People v. Heper,** 132 Ill App.3d 705,477 N.E.2d 768,773

**People v. Baker,** 59 Ill.App.3d 100,375 N.E.2d 176

( holding that the fact of an unauthorized entry must be proved
   separately from the fact of any entry with wrongful intent.)

**Bunkley v. Florida,** 538 US 835,155 L.Ed 1046,123 S.Ct.2020

( where(1) State statute classified burglary with dangerous weapon
   as a burglary in first degree, and (2) Supreme Court held that
   state court had erred in upholding denial of post-conviction
   relief to burglary defendant without deciding whether defendant's
pocketknife was " weapon" for purposes of state law at the time
   that defendant's conviction became final.)


Additionally, in Illinois, it has long been held that each " essential allegation of a indictment must be proved without variance and **cannot be inferred.**"

**People v. Mosby,** 185 N.E.2d 152,25 Ill.2d 400 (1962)

**People v. Jamison-** 235 N.E. 2d 849,92 Ill.App. 2d 28;

**People v. Johnson-** 339 N.E.2d 325, 34 Ill.App.3d 38;

**People v. Clark-** 389 N.E.2d 911, 71 Ill.App.3d 381

( holding that essential allegations of an indictment must be
   proved without variance and an essential element of an crime
   cannot be inferred but must be established with positive proof.)

-15-

TESTIM. / SUPPORTING CONTENTION

Q: Was the apartment across the hall from you at 8234 S. Eberhart occupied at that time?

A: No, Sir.

Q: What was the condition of that apartment across the hall?

A: The condition was that no one was there because the occupant had moved out, but I had moved some of my things across the hall because I was going to do some work in my building, I was trying to get them out of the way temporarily.

Q: Did anybody have authority to be inside your vacant apartment at that time & place?

A: No, Sir.

Q: After you heard somebody inside your vacant apartment that afternoon what did you do next?

A: I went back & called the police again & I told them I thought he was gone but now he's in the apartment.

Q: And you never gave that person permission to enter that vacant apartment of yours?

A: No Sir.


The above are the totality of " proof" on this material and essential Element " permission or authority", NOT, however regarding the entry, remaining or leaving from the "non-dwelling" portion of the building; nor proof to comport with the Statutory language as constructed at the time of this offense on February 12, 2000, under Public Act 91-360; where burglary & residential burglary were deemed " mutually exculsive " offenses under Childress, supra.

BUT.....regarding the " distinct offense " residiential burglary.

As the Illinois Supreme Court long-ago stated in Mosby,

185 N.E.2d 152 (" An essential element of proof to sustain a conviction cannot be INFERRED but must be established. The fact that this proof might have been elicited by a Single Question, is besides the point since it was not done. Because of the failure of the People to prove an essential allegation the judgment is reversed."

-16-

C     35

## ARGUMENT

The State prosecutor was required & expected under Federal and Illinois Law to have comported with the Strictures of Due process that explicitly has protected an accused against a conviction except upon proof beyond a reasonable doubt of **every fact** necessary to constitute a crime with which the accused was charged. In re Winship(1979) supra.and progenies.

In **Jackson v. Virginia**, the United States Suprme Court, said it was of no Constitutional significance that the trier of fact in the case was a judge and not a jury. 443 US 307,319 (1979)

More recently in **Fiore v. White**, (2001) 531 US 225,148 L.Ed 2d 629, 121 S. Ct.712, the Court (1) held that a conviction violated the due process clause, for the State had presented no evidence whatsoever to prove a basic element of the crime in question. Also noteworthy is **Bunkley v. Florida**, 538 US 835,123 S.Ct.2020(2003) where all the essential elements towards the crime were not decided and the State court had erred in upholding denial of post conviction relief to burglary defendant.)

Based on the foregoing, Post-conviciton relief must be granted for the State's unsatisfactory proof of each and every essential and material element of the crime beyond a reasonable doubt as is required under Due process of law.

-17-

C   36

Issue D

Petitioner Daniels was denied a fair & impartial trial through application of a statutory amendment that affected his Substantive rights, where neither the State nor the Trial court rebutted the presumption of prospectivity, that resulted in a violation of State of Illinois and Federal Ex Post Facto laws, in light of the petitioners' reliance on the law as it existed prior to his irreparable detriment.

Petitioner further asserts that the trial court committed reversible error through its misapprehensive application of **Public Act 91-928**, effective June 1,2001, that allowed a burglary charge to be sustained upon the proof of residential burglary offense and/or where " **the person without authority, knowingly entered or remained within a building****** <u>or any part thereof</u> with intent to commit a felony or theft.**" 720 ILCS 5/19-1(a)(2002)

Rather than under **Public Act 91-360,** the purview under which the petitioner's criminal conduct fell. **Public Act 91-360,** Statutory construction language mandated, under <u>People v. Childress</u>, 158 Ill.2d 275, 302 (1994), inter alia, that a Building was either a dwelling residence or one whose "**character type**" made it unoccupiable to live in, and more applicable to buildings such as " business or public buildings or other buildings open to the public during which the authority to enter was with a purpose consistent with the reason the building was open. " e.g., **People v. Boose, (1985),**139 Ill.App.3d 471 94 Ill.Dec. 211,437 N.E. 2d 1085

<u>Childress</u>, held also, that the offenses residential burglary and burglary were " mutually exclusive" <u>**Childress**</u>, 158 ILl. 2d 275,302

-13-

Long before    **Childress**, in **People v. Jones**, 114 Ill.App.
3d 576, 70 Ill.Dec. 418, 449 N.E. 2d 547, it has remained
fundamental to the Illinois Judicial system that:

> " once the Illinois Supreme Court declares the law on
>     a particular issue, its decision is binding on all
>     Illinois courts."

Inspite of this **Stare decisis of Childress opinion**, the trial court
here abused discretion, showing partiality towards the State in
failing to follow the Illinois Supreme court directive towards
**Mutually Exclusive** offenses, and its **crystal clear holding that
a structure is either a dwelling place or not. Childress**, 158Ill.302
Moreover, the trial court from its **defacto** application of the
current statutory language for the burglary offense under **P.A. 91-928,**
has aberrantly through its ruling essentially " **parsed out and
segregated common areas from dwelling areas.",** where there was
no Statutory discretion **Dejure,** to do so while **Childress,** remained
as **co**ntrolling rule of Law on this Issue towards residential unit
apartment building cases.

In fact, through **retrospectively** employing the ruling of
**People v. Maskell, the** trial court erroneously interpreted the
**Childress** holding, i,e, ( that a building is either a dwelling
residence or not), and therein worked "actual & substantive "
disadvantage against the petitioner being given  a fair trial.
The Maskell ruling remains inapposite to the **Legitimate rule of Law**
towards residential apartment buildings, at the time of this crime;
**People v. Silva**, 256 Ill.App. 3d 414, 628 N.E. 2d 948
**People v. Suane,** 164 Ill.App. 3d 997, 518 N.E.2d 458,(1st.Dist.1987)
**People v. Quiver,**205 Ill.App. 3d 1067, 1071-1072, 563 NE 2d 991
**People v. Torres,** 327 Ill.App.1106,1111,764 N.E.2d 1206(5thDist.2002)

## TENTION

Petitioner-Daniels, contends that his unathrozed entry
was to a residential " character typed" apartment building,
under applicable statute on February 12, 2000;**Childress**,
**158 Ill.2d 302**, and that this Statute**EXCLUDED** from the Burglary
offense **This** type of Building.  For example see, **People v. Blair**,
166 Ill.Dec.631,586 N.E.2d 589; **People v. Bales**, 108 Ill.2d 182,
190, 483 N.E.2d 517 (1985) (holding that " to determine if a
building is a dwelling depends on how the structure is actually
used instead of the structure's design.)

The trial judge's ruling came as a total surprise to the
defense in that the **requisite** standard to convict was lowered,
resulting in **less and different** evidence being presented before
the trier of fact.  In fact under **Public Act 91-928**, the added
language of the Leglislative **lessened** the culpable standard needed
to convict for simple burglary in and through this offense **including**
at the time of trial Residential burglary as proof of the offense
the petitioner had been charged with.

However, under **Public Act 91-360, the Legitimate** Standard
for analysis herein, that same evidence accepted by the Trial Court
using the case of **MASKELL**, still required **PROOF** upon each of these
**"distinct "** and " separate " entries into the building to have
satisfied **Due Process of Federal Law, which was NOT DONE.**
Neither did the trial court receive any type of testimony
**Limiting or stating** that the petitioner had no AUTHORITY/PERMISSION
whatsoever to have entered as to either time or purpose.
**People v. Meeker**, 86 Ill.App.3d 162,407 N.E.2d1058( where conviction
reversed because the evidence failed to prove that the entry was
in fact unauthorized. There was no testimonylimiting authority to enter)

The petitioner's Defence was prepared for the State's theory as alleged in the indictment, that the plaintiff's " entry into the vacant apartment unit constituted burglary, and not residential burglary, because the apartment was not being used as a dwelling." ( **R.V. 172-173** )

The State Appellate prosecutor's office's also argued this identical position: (**State's Br., at 15-16,**citing, **People v. Bales**, 108 Ill.2d 182, 190, 483 N.E. 2d 517(1935) holding that:

> " to determine if a building is a dwelling depends on how the structure is actually used instead of the structure's design.)

and also, " the key inquiry is the intent of the owner to reside in the building within a reasonable period of time after his absence." **People v. Smith, 209 Ill.** App. 3d 1091, 1096, 568 N.E. 2d 417 **[ State's Br. at 15-16]**

The Trial prosecutor's argument" that the Illinois legislature had reversed itself and that Childress opinion by changing statute. ( R.V. 176,L21-24).

" Defense counsel could not make that argument today because the statute has been changed. So that in affect calls into question the Childress decision.

THE COURT: What, the residential?

MR. RONKOWSKI: Took out the offending language that counsel quotes about the the charges being mutually exclusive.

**Under Current Statute,** specifically the statute now reads under residential burglary, this offense includes the burglary as defined under 19-1, that is currently in the statute."

THE COURT: When did that take affect?

MR. RONKOWSKI: Makes no difference because_____

THE COURT: Why doesn't it make a difference, you can't be charged with something in the statute in affect is the one that was in affect on the date of the incident?

C    40

Mr.Ronkowski: What the Illinois Legislature is saying,is that if the Illinois Supreme Court misinterprets our intent we're going to make it quite clear what our intent was, but you don't even get to **Childress**. It is strictly what was the law at the time. **THE COURT:** What was the law at the time? Mr.Ronkowski: The law at the time was if I could have these back if no owner intended to occupy that apartment within a reasonable period of time, it is not a dwelling. It is a building and the owner of the building did not intend to occupy that apartment. She lives next door. It is an issue of statutory construction. It was vacant. It is being renovated and falls clearly within the provision where there is no owner intending to occupy that vacant unit at the time. ( R. 177-178)

### SUMMARY

Based on the foregoing contention that the State failed to establish the requisite proof towards the charged offense of burglary ( **Argument C,supra**), and the **trial** court accepting a **different degree** of proof **other than that which was required under Public Act 91-360**, the petitioner was " **constructively** " prejudiced. Moreover, the trial court's ruling had the same affect as **altering** the rules of **evidence**, through the trial prosecutor's argument to the Court that the Illinois Legislature had reversed itself & the <u>Childress</u> opinion through Public Act **91-928** ( **R.V. 176** )

Similarily, the State has here essentially been allowed to : charge the petitioner with a burglary in **March of 2000**,violative of **720 ILCS 5/19-1(a)(West 2000)**, and then because the State doesn't until after the **June 5th 2002**, trial proceeding **recognize** that the testimonial evidence elicited by its eyewitness was **Incongruent** towards satisfying the definition in effect of burglary on the date of this offense(February 2000, under **Public Act 91-360**); in Bias and Partiality against the petitioner's Constitutional **SIXTH AMENDMENT (VI)** protection and guarantee, the trial court appears to " **Rescue** " the State prosecutor from its dissipating theorectical underpinning that:

> "entry into the vacant apartment unit where no owner had intended to reside within a reasonable period of time."
> (R.174-176)

**Was** Sufficient to satisfy Due process.

C    41

In conclusion, the petitioner maintains that the Affect of the trial judge's Advocation of**Maskell** and a " Entry" , that had never been specified in the indictment nor alleged at any prior proceeding, nor even raised by the prosecutor during its entire arguments, consequently lacked the **specificity** to have avoided placing him in total surprise and in Danger of **Double Jeopardy.**

Additionally, the ruling violated the petitioner's **FIFTH & SIXTH Constitutional protections ( V)(VI)**, as it is well settled as matter of Law that " any law which alters the rules of evidence applicable in a given case", so that under the new law( **Public Act 91-928)** that the prosecutor argued was applicable:

> "Under **CURRENT STATUTE**, specifically the statute now reads under residential burglary, this offense includes the burglary as defined under 19-1, that is currently in the statute." ( **R.176,177,178)**

coupled along with the trial court's advocation and subsequent ruling - **Maskell**, having had the same affect, of receiving of less or different evidence and testimony being made admissible to convict the offender than was required prior to the Statutory amendment, is violative of **EX POST FACTO.**

Especially, where as here the petitioner had relied on the Law in effect on the date of this offense rather than that effective after June 1,2001 as declared under Public Act91-928, as his defence to his irreparable disadvantage and detriment.
**U.S. Const. Amendment 5 & 6; Illinois Const. 1970,artI,ß 8;**
**U.S. Const. Art. 1 ß 9,cl.3;Art 1 ß 10;**
**Weaver v. Graham**, 450 US 24
**Fiore White,** 531 YS 225, 121 S.Ct. 712
**Vachon v. New Hampshire,** 414 US 478

C    42

Wherefore, the Petitioner prays that his cause be answered by the State Prosecutors Office under law 725 ILCS  5/122-1, during this second stage processing of the post Conviction hearing action.

*Charles Daniels*

## CERTIFICATION

I, Charles Daniels, prisoner incarcerated at Hill Correctional Center certify that the facts contained herein are true and accurate.

*Charles Daniels*

P.O. Box 1700
Galesburg, IL 61402

-24-

C    4 3

# APPENDIX

C    44

Charles Daniels
N-63102
P.O. Box 1700
Galesburg, Illinois 61401

May 12,2003

Attorney Michael J. McDermott
Asst. Appellate Defender
203 N. Lasalle-24th floor,
chicago, Illinois

Dear Attorney:

     Thank you for obtaining the extension of time before the
filing of my direct appeal, and also for your forwarding to me
a draft copy. Your analysis & case law along with the contentions
therein have merit, however I still wanted to raise the issue
of trial counsel's Ineffective assistance, where he supplied an
otherwise unproven element of the offense that I was charged with
having committed. I believe that that was a gross error and in
and of itself, demonstrated his ineffectiveness in my matter.

     Additionally, I believe that the issue of the charging
instrument having failed to have specified which " entry"
was the basis of my indictment was another Error that should
have been included., Finally, that the Ex post facto and
Due process arguments and contentions that I have mailed to
you were not included is beyond me, especially, when I am the
person sitting here in prison. Respectfully, I await your
responsiveness as to a justification for not including these
Substantive Constitutional  issues that deprived me of a fair
and impartial trial.

*Charles Daniels*

C    45



# OFFICE OF THE STATE APPELLATE DEFENDER
## FIRST JUDICIAL DISTRICT

**203 NORTH LASALLE STREET**
**24TH FLOOR**
**CHICAGO, ILLINOIS 60601**
**TELEPHONE: 312/814-5472**
**FAX: 312/814-1447**

**MICHAEL J. PELLETIER**
DEPUTY DEFENDER

June 13, 2003

**MICHAEL JAMES**
**MCDERMOTT**
ASSISTANT APPELLATE DEFENDER

Mr. Charles Daniels
Register No. N-63102
Hill Correctional Center
P. O. Box 1700
Galesburg, IL 61401

Dear Mr. Daniels:

Enclosed find a copy of the brief that has been filed on your behalf. The State will respond to our brief, and we will file a reply to the State's brief, if one is necessary. I will send you copies of the State's brief and our reply (if one is necessary) when they are filed. It could be anywhere from two to six months before the State files its brief. Unfortunately, it could be a year or more before the court decides your case. Please try to be patient and know that I will do all that I can to move your case along as quickly as possible.

If you have questions or comments about your case, please do not hesitate to write me.

Sincerely,

MICHAEL JAMES MCDERMOTT
Assistant Appellate Defender

C    4 6



# OFFICE OF THE STATE APPELLATE DEFENDER
## FIRST JUDICIAL DISTRICT

**203 NORTH LASALLE STREET**
**24TH FLOOR**
**CHICAGO, ILLINOIS 60601**
**TELEPHONE: 312/814-5472**
**FAX: 312/814-1447**

**MICHAEL J. PELLETIER**
DEPUTY DEFENDER

January 25, 2004

**MICHAEL JAMES**
**MCDERMOTT**
ASSISTANT APPELLATE DEFENDER

Mr. Charles Daniels
Register No. N-63102
Hill Correctional Center
P. O. Box 1700
Galesburg, IL 61401

Dear Mr. Daniels:

In your last letter you asked why I chose not to raise your "due process" argument. There are several reasons. The Appellate Court handed down a decision in your case on December 22, 2003. I takes me a day or so to get the opinion. Then on December 24, 2003, I sent you a copy of the opinion with a letter stating that I had not decided whether I would file a Petition for Rehearing in your case, but that I would decide in a week or so.

On December 29, 2003, I assume before you received my letter of December 24th, you sent me a letter requesting that I file a supplement to my opening brief to raise a "due process" claim. The "due process" issue centered around your argument that the State did not prove every necessary element of the offense you were charged with, specifically you argued that it was never proved that you entered the building "without permission or authority." A copy of your *pro se* brief was included with your letter. Your letter was received by my office on January 5, 2004. Given that I did not receive your *pro se* brief until after the Court's opinion came down, I could not have filed a supplemental brief even if I thought your argument had merit.

Then, I decided not to include your "due process" issue in a Petition for Rehearing or Petition for Leave to Appeal because I do not believe that you had a chance of prevailing on it, that is, I believe the issue was meritless. The complaining witness in your case testified that "no one" had permission to be in the vacant apartment where the burglary took place. (R120) It can be inferred from the facts and circumstances of her testimony that no one had permission to enter the building either. The Appellate Court found that either your entry into common areas of the building or your entry into the apartment would have sustained your conviction because there were two illegal entries made. (Opinion, at 6)

C    47

While I chose not to raise your "due process" issue, I did send you a packet of information that instructed you how to file either a Petition for Rehearing or a Petition for Leave to Appeal to the Illinois Supreme Court yourself. The filing deadline for both petitions is past, but you could try to file a Petition for Leave to Appeal to the Illinois Supreme Court now with a motion to file instanter.

I hope this is of some help to you. If there are anymore questions or problems please do not hesitate to contact me. Thank you.

Sincerely,

MICHAEL JAMES MCDERMOTT
Assistant Appellate Defender

STATE OF ILLINOIS      )
                       )  SS:
COUNTY OF C O O K      )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE          )
STATE OF ILLINOIS,         )
                           )
        Plaintiff,         )
                           )
  vs.                      )     No. 99 CR 9919
                           )        00 CR 7104
CHARLES DANIELS,           )
                           )
        Defendant.         )

        REPORT OF PROCEEDINGS of the hearing of the above-
entitled cause, before the Honorable THOMAS DAVY, one of
the Judges of said District, on the 5th day of June,
2002.

        APPEARANCES:

                HON. RICHARD A. DEVINE,
                State's Attorney of Cook County, by:
                MR. EDWARD RONKOWSKI,
                Assistant State's Attorney,
                    appeared for the People;

                MR. DENNIS SHERMAN,
                    appeared for the Defendant.

THOMAS E. LIEF, CSR #084-000501
Official Court Reporter
10220 S. 76th Avenue
Bridgeview, Il.  60455

C      4 9

1        A.      No, sir.

2        Q.      Would you recognize that person if you

3    saw him again?

4        A.      Yes, sir.

5        Q.      Is he in court?

6        A.      Yes, sir.

7        Q.      Would you please point him out, describe

8    what he's wearing today?

9        A.      A white T-shirt and a tan short sleeve

10   cotton shirt.

11       MR. RONKOWSKI:  May the Record reflect in-court

12   identification of the defendant, Charles Daniels?

13       THE COURT:   Record may reflect that.

14       MR. RONKOWSKI:  Your witness.

15       THE COURT:   Cross-examine.

16                   CROSS EXAMINATION

17                   By Mr. Sherman:

18       Q.      Ms.  Elston, on the date of February

19   12th, year 2000 you lived in the building at 8232

20   for approximately thirteen years?

21       A.      Thirteen, yeah.

22       Q.      It's a 3-story building?

23       A.      Yes, sir.

24       Q.      Three apartments on each side?

14

1      A.     Right.

2      Q.     And you said you saw the man come into

3   the building and you lose sight of the man when he

4   comes inside your building, right?

5      A.     Of course.

6      Q.     That's when you called the police?

7      A.     When I heard him at the mail box, yes.

8      Q.     At the mail box, which was right after

9   he came into the --

10     A.     Exactly.

11     Q.     Okay.  Called the police, police arrived

12   how long after you called them?

13     A.     I imagine between ten and fifteen

14   minutes.

15     Q.     It took them that long to get there?

16     A.     Right.

17     Q.     And the ten to fifteen minutes, where

18   were you?

19     A.     Inside my building.

20     Q.     At the same spot where you had been in

21   your living room looking out the window?

22     A.     Well, I didn't stay at the window all

23   the time.

24     Q.     But you didn't hear this person come up

16

C    51

1    the stairs, did you?

2         A.    No.

3         Q.    You didn't see the person leave out the

4    door?

5         A.    Yes, I saw him leave.

6         Q.    How long would you say he was in the

7    hallway of your building?

8         A.    I'd say three minutes.

9         Q.    Thirty minutes?

10        A.    Three minutes.

11        Q.    I'm sorry, three minutes.  And the

12   police arrived, at that time you looked -- did they

13   look around the building after the police arrived?

14        A.    Yes.

15        Q.    After the police left what happened?

16        A.    After the police left I decided to go

17   out and get my mail, and I had to pass the door of

18   the apartment that was vacant and I heard the bags

19   and so forth and somebody inside over there.

20        Q.    You heard rustling of the plastic?

21        A.    Exactly.

22        Q.    You went back into your apartment,

23   called the police again?

24        A.    Right.

17

STATE OF ILLINOIS      )
                       )  SS:
COUNTY OF C O O K      )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE         )
STATE OF ILLINOIS,        )
                          )
              Plaintiff,  )
                          )
vs.                       )      No. 00 CR 07104
                          )
CHARLES DANIELS,          )
                          )
              Defendant.  )

REPORT OF PROCEEDINGS  of hearing had before the Honorable THOMAS M. DAVY, on the 30th day of July, 2002.

APPEARANCES:

        HON. RICHARD A. DEVINE,
            State's Attorney of Cook County, by:
        MR. EDWARD RONKOWSKI,
            Assistant State's Attorney,

                    appeared for the Plaintiff;

        MR. DENNIS SHERMAN,

                    appeared for the Defendant.

Patricia A. Grogan, CSR 084-001450
Official Shorthand Reporter
10220 South 76th Avenue
Bridgeview, Illinois 60455

1    THE CLERK:  Charles Daniels.

2    MR. SHERMAN:  For the record, my name is Dennis Sherman.
3 I represent Charles Daniels who is present before the Court.

4    At this time, Judge, we filed a motion for new trial,
5 actually we're asking for a finding of not guilty after a
6 finding of guilty, Judge.

7    We did present to the Court cases and we did show them
8 to the State also.

9    THE COURT:  All right, both sides prepared to proceed on
10 the argument on the motion for new trial?

11    MR. RONKOWSKI:  State is.

12    MR. SHERMAN:  Defense is ready.

13    THE COURT:  You may proceed, Mr. Sherman.

14    MR. SHERMAN:  Well, Judge, the evidence in the case
15 showed that, proved that the Defendant went inside the
16 residence, seen inside that residence,  took something
17 inside of that residence and in fact left.  That he was not
18 charged with residential burglary.  He was charged with
19 burglary.

20    The cases that I've given you show that burglary and
21 residential burglary are one mutually exclusive.  They are
22 not a lesser included.

23    One of them said that the legislation intended
24 residential burglary statute apply to burglary of a

17 2

C    5 4

1 structure intended for use as a residence regardless of

2 whether the structure was being actually used as a residence

3 at the time of the burglary.

4    That is People vs. Sexton, S-e-x-t-o-n.  You heard the

5 evidence this lady said I forgot either a four or six flat

6 building was occupied.  She lived there.

7    The people had moved out, but in fact there was no

8 testimony that she was doing that, this was not going to be

9 a dwelling place, therefore, we believe, Judge, also we

10 bring up Swain, S-w-a-i-n, also said which was a

11 nonoccupied second floor of the building which was under

12 going renovation was a dwelling place, here there was no

13 renovation going on, just vacant, Judge.

14    We believe Judge, not that the State proved the

15 Defendant guilty not of  burglary, but of residential

16 burglary since it is not a lesser included since they are

17 mutually exclusive.

18    The burglary cannot stand.

19    THE COURT:  Thank you, Mr. Sherman.  Mr. Ronkowski,

20 response?

21    MR. RONKOWSKI:  State would object to paragraph four,

22 lack of specificity.  As to Counsel's specific argument

23 today,  the State probably could argue, People vs.

24 Edelston, the case said the identical issue in the 2nd

17  3

C  55

1 District said the State called on which charge either way

2 was denied on that or the State can argue, the statutory

3 construction based upon the case is that Counsel has cited

4 where they interpreted the statute at the time that some how

5 a dwelling building, a home, is not a building.

6    It is like the Illinois Supreme Court saying that a cow

7 is a horse.  In fact, if you look at the statute, the

8 statute  has since been changed to correct that mistake and

9 that is no longer in there, but rather than argue those two

10 things, I would argue that the statutory definition of

11 dwelling that was in affect at the time the crime indicated

12 that a dwelling is a building even if the persons are not

13 actually residing there, if "absence is intended within a

14 reasonable period of time to reside."

15    Based upon the testimony of the victim, she didn't

16 live there.  She lived across the hall.  She never intended

17 to live in that apartment next door.

18    She owned the building.  There is no testimony that any

19 owner intended to reside in that vacant apartment within

20 any reasonable period of time.

21    The testimony shows quite squarely that the Defendant

22 committed a burglary within the meaning of the statutory

23 definition that existed at the time of the crime.

24    So, based upon the testimony in the statute in

17 4

C    56

1 existence at the time, the Defendant quite clearly committed

2 a burglary and the Defendant's motion for new trial should

3 be denied.

4    MR. SHERMAN:  Judge, I think I guess they're citing 720

5 ILCS which says for residential burglary, a dwelling defines

6 a house, apartment, mobile home, trailer or other living

7 quarters in which at the time of the alleged offense the

8 owners or occupants actually resides, this woman did reside

9 in this building.

10    The apartment maybe one, but she says she saw this man

11 come inside this building.  This building is a residence.

12 She also said that in fact though there was nobody living

13 in the apartment that was next door to it, there was

14 nothing saying that she wasn't going to rent it out.

15 Nothing saying it was not going to be used as a residence,

16 so I believe, Judge, that in fact this was a residential

17 burglary, pure and simple and the State argues, I don't

18 think it goes to the fact that these two charges, burglary

19 and residential burglary are mutually exclusive.

20    They are not a lesser included and I believe, Judge, if

21 they're not a lesser included, then you should have found

22 the Defendant not guilty of burglary at the time.  Thank

23 you.

24    THE COURT:  Mr. Ronkowski, the definition you have for

17⁵

C    57

1 dwelling wasn't that the same definition in fact at the time

2 the Supreme Court decision, People vs. Childress from 1994

3 which said that one of the cases cited by Mr. Sherman that

4 the two are mutually exclusive, residential burglary can be

5 committed only in a dwelling place while a simple burglary

6 cannot occur in a dwelling place.

7      MR. RONKOWSKI:  That maybe the case but Childress can be

8 distinguished based on the facts and if I can have a moment

9 to explain that, if I recall correctly, the crime occurred

10 inside the victim's dwelling.  This particular case the

11 victim testified she lived in one apartment, the Defendant

12 burglarized the unoccupied apartment.

13      The people that were supposed to be occupied that,

14 there is absolutely no testimony showing anybody intended

15 to, any owner of that apartment intended to reside in that

16 apartment in the near future and based upon her testimony

17 that this was an unoccupied apartment, it hadn't been

18 rented out and her testimony shows quite clearly it falls

19 within the statutory definition of a building based on that

20 definition that existed at the time.

21      Childress was a case involving statutory interpretation

22  on whether or not  burglary is a lesser included offense.

23      The Illinois legislature had reversed so to speak that

24 Childress' opinion by changing the statute.

*176*

C    58

1   Defense Counsel could not make that argument today

2 because the statute has been changed so that in affect calls

3 into question the Childress decision.

4   THE COURT:  What, the residential?

5   MR. RONKOWSKI:  Took out the offending language that

6 Counsel quotes about the charges being mutually exclusive.

7   Under current statute, specifically, the statute now

8 reads under residential burglary, this offense includes

9 the offense of burglary as defined under 19-1 that is

10 currently in the statute.

11   THE COURT:  When did that take affect?

12   MR. RONKOWSKI:  Makes no difference because--

13   THE COURT:  Why doesn't it make a difference, you can't

14 be charged with something in the statute in affect is the

15 one that was in affect on the date of the incident?

16   MR. RONKOWSKI:  What the Illinois legislature is

17 saying, if the Illinois Supreme Court misinterpretes are

18 intent, we're going to make it quite clear what our intent

19 was, but you don't even get to Childress.  It is strictly

20 what the law was at the time.

21   THE COURT:  What was the law at the time?

22   MR. RONKOWSKI:  The law at the time was if I could have

23 these back, if no owner intended to occupy that apartment

24 within a reasonable period of time, it is not a dwelling.

C   59

1 It is not a dwelling.  It is a building and the owner of the

2 building did not intend to occupy that apartment.  She lives

3 next door.  It is an issue of statutory interpretation.

4     If she had leased that apartment out and the people

5 weren't home at the time, Counsel may have an argument, but

6 the owner testified I own the building, nobody was living in

7 that apartment.

8     It was vacant.  It is being renovated and falls clearly

9 within the provision where there is no owner intending to

10 occupy that vacant unit at the time.

11     So, you don't even get to the Childress decision.

12     MR. SHERMAN:  Judge, the charge against the Defendant

13 is that he without authority knowingly entered into the

14 building the property of Nora Elston, not an empty

15 apartment, but a building.  A building in which Nora Elston

16 owned and lived.

17     I find it hard to believe that is not a dwelling.  The

18 fact is there maybe a vacant apartment in that building

19 doesn't mean that if the Defendant goes inside that

20 building, it is owned with the intent to commit a theft.

21 That is residential burglary if somebody lives there and

22 Nora Elston did live there.

23     THE COURT:  Well, the case I think is directly on point

24 is People vs. Maskell, 304, Ill.App.3rd, 877, 1999 2nd

178

C     60

1 District case which discusses the Childress case which I
2 think had the Defendant been charged with the entry into a
3 specific apartment would still apply since there are
4 numerous cases that say a building is a dwelling if going to
5 intent to be used as a dwelling regardless of who would be
6 living there.

7    In any case, the Maskell case, it involved an apartment
8 building and one of the witnesses observed the Defendant
9 taking the TV set, pushing the TV set down the stairs of the
10 building that was entered through the front door and then
11 into the families apartment.

12    The Maskell case, page 84, unlike Childress and Borgen,
13 the  evidence in this case will allow the rational trier of
14 the fact find the Defendant made two unauthorized enteries.

15    These unauthorized enteries,  one into the building,
16 two in the apartment.  Moreover, the State does not dispute
17 that the stairwell of the building, the area of the
18 building that the Defendant entered when he entered the
19 building was not a dwelling place.

20    In this particular case, the testimony of Ms. Elston
21 was that she heard some noises at the entryway.  The
22 entryway, there was a common entryway into the apartment
23 where the mailboxes were at.

24    Entry was made apparently through there and through

179

C

61

1 that area the Defendant then entered the particular vacant

2 apartment.

3      So, I think under Maskell case in an apartment building

4 case unless the evidence would be that someone entered

5 directly into a particular apartment through a window or a

6 door leading directly from that apartment, from outside into

7 the apartment that as long as there is common area hallway,

8 stairway, or whatever, that entry into that building into

9 that common area would sustain the charge of burglary.

10      So, at this time, respectfully, motion for new trial is

11 denied.  I believe the parties agree we're going to proceed

12 on the presentence investigation was tendered on March 7th.

13      MR. RONKOWSKI:  Correct.

14      MR. SHERMAN:  Correct.

15      THE COURT:  Both sides prepared to proceed to

16 sentencing at this time?

17      MR. SHERMAN:  Yes.

18      MR. RONKOWSKI:  Yes.

19      THE COURT:  State, aggravation.

20      MR. RONKOWSKI:  Aggravation is listed quite eloquently,

21 in all of the Defendant's previous residential burglary

22 convictions in the PSI, Class X by priors and last sentence

23 of twelve years wasn't enough for him, the State would

24 recommend fifteen years mandatory consecutive.

**JPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

97992

May 26, 2004

Mr. Charles Daniels
Reg. No. N-63102
P. O. Box 1700
Galesburg, IL 61401

No.  97992 - People State of Illinois, respondent, v. Charles
Daniels, petitioner.  Leave to appeal, Appellate
Court, First District.

The Supreme Court today DENIED the petition for leave to
appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court
on June 17, 2004.

changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

FIRST DIVISION
DECEMBER 22, 2003

No. 1-02-2905

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 7104 |
| | ) | |
| CHARLES DANIELS, | ) | Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

## O R D E R

Following a bench trial, defendant Charles Daniels was convicted of burglary and sentenced as a Class X offender to eight years' imprisonment. Defendant contends on appeal that he was not proven guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he entered the common area of an apartment building. He argues that his unauthorized entry was to a dwelling place and was thus residential burglary rather than burglary, at a time when burglary and residential burglary were considered mutually exclusive offenses. Defendant also contends that mandatory Class X sentencing under section 5-5-3(c)(8) of the Code of Corrections (730 ILCS 5/5-5-3(c)(8) (West 2002)) violated his right to due process and trial by jury because the State is not required to give notice of its intent to sentence defendant as a Class X

1-02-2905

offender or to prove his convictions, the sequence of those
convictions, or his age to a jury beyond a reasonable doubt.

At trial, Nora Elston testified that she owned an apartment
building at 8232 and 8234 South Eberhart and lived in a first-
floor apartment at the 8232 address. On February 12, 2000, the
first-floor unit across from Elston's, at the 8234 address, was
vacant and the doors were locked. Elston intended to rent the
vacant unit again "eventually," but was storing some of her
belongings there. At about 3:40 p.m., Elston looked out the
window and saw defendant approach her building. She heard the
doorbell for the vacant unit and then "fumbling" with the
mailbox. Elston saw defendant enter the building; he was in the
hallway for about three minutes before she saw him leave. Elston
called the police. The police left after finding the door to the
vacant unit locked and searching outside the building.

Later, Elston heard noises from the vacant unit and called
the police again. She saw defendant leaving her building, by the
front door, with some of the large plastic bags she had stored in
the vacant unit. Elston followed defendant, but returned home
when she lost sight of him. When the police arrived, Elston
accompanied them and pointed out defendant. The officers
arrested defendant, who was not carrying any bags. Defendant
then "produced the bags from somewhere," and Elston identified
them as hers. When Elston checked the doors to the vacant unit,

1-02-2905

they were still locked. Elston had not given defendant permission to be in the vacant unit or remove property from it.

Police detective James Carlassare testified that he interviewed defendant on the evening of February 12, 2000. Defendant told Detective Carlassare that he "was in a lot of trouble" and "shouldn't have gone into that apartment."

Officer William Meister testified that he responded to Elston's call. Elston met Officer Meister in front of her building and accompanied him and his partner to search for defendant. After a few minutes, Elston saw defendant. Officer Meister arrested defendant, who showed him two large plastic bags about 10 yards away. Officer Meister brought the bags back to Elston, who identified the property in the bags as hers.

The trial court found defendant guilty of burglary. Based on prior burglary and residential burglary convictions, defendant was sentenced, as a mandatory Class X offender under section 5-5-3(c)(8), to eight years' imprisonment.

Defendant contends that he was not proven guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he entered the common area of an apartment building. He also argues that his unauthorized entry was to a dwelling place and was thus residential burglary rather than burglary. He notes that, at the time of the offense, burglary and residential burglary were considered mutually exclusive offenses. See People

- 3 -

C  66

1-02-2905

v. Childress, 158 Ill. 2d 275, 302 (1994).

In assessing the sufficiency of evidence, the relevant question is whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Pollock, 202 Ill. 2d 189, 217 (2002). It is the role of the trier of fact to determine the credibility of witnesses and the weight to give their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. People v. Tenney, 205 Ill. 2d 411, 428 (2002). It is not the function of this court to retry defendant or to substitute our judgment for that of the trier of fact regarding witness credibility or the weight of the evidence. Tenney, 205 Ill. 2d at 428. Thus, a conviction will be reversed only where the evidence is "so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." Pollock, 202 Ill. 2d at 217.

Under section 19-1 of the Criminal Code (Code), a "person commits burglary when without authority he knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft," 720 ILCS 5/19-1 (West 2002). Similarly, under Code section 19-3, one "commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the

- 4 -

C    67

1-02-2905

dwelling place of another, or any part thereof, with the intent
to commit therein a felony or theft."  720 ILCS 5/19-3 (West
2002).

Until June 1, 2001, section 19-1 provided that burglary
"shall not include *** the offense of residential burglary as
defined in Section 19-3 hereof."  720 ILCS 5/19-1 (West 2000).

> "As the defendant observes, the two offenses
> are mutually exclusive.  Residential burglary
> can be committed only in dwelling places,
> while simple burglary cannot occur in a
> dwelling place."  People v. Childress, 158
> Ill. 2d 275, 302 (1994).

However, in People v. Maskell, 304 Ill. App. 3d 77 (1999), where
defendant entered an apartment from the stairway and corridor of
an apartment building and removed property from the apartment,
the evidence was deemed sufficient to show that he committed both
burglary and residential burglary, and thus his burglary
conviction was affirmed.  Maskell, 304 Ill. App. 3d at 84.
"Unlike Childress, *** the evidence in this case would allow a
rational trier of fact to find that defendant made two
unauthorized entries *** (1) into the building and (2) into the
apartment."  Maskell, 304 Ill. App. 3d at 84.

For purposes of section 19-3, a "dwelling" is an "apartment
*** or other living quarters in which at the time of the alleged

1-02-2905

offense the owners or occupants actually reside or in their
absence intend within a reasonable period of time to reside."
720 ILCS 5/2-6(b) (West 2002).  A person committed residential
burglary when he entered and took items from vacant first-floor
and basement apartments of a building in which the owner lived on
the second floor and was using the unoccupied units for storage.
People v. Silva, 256 Ill. App. 3d 414, 420-21 (1993).

Here, Elston testified that she saw defendant enter and,
after three minutes in the hallway, leave her building.  Combined
with the facts that he later entered the vacant unit and removed
Elston's property and that Elston did not grant him permission to
be in the building, a reasonable person could conclude that
defendant entered a non-dwelling portion of a building without
authority and with the intent to commit theft.  As in Maskell,
the evidence is clear that defendant made two unauthorized
entries with intent to steal: into Elston's building and into the
vacant unit.  Maskell, 304 Ill. App. 3d at 84.  Indeed, if the
course of entry in Maskell -- through the common area of the
building to the dwelling unit -- constituted two entries, then
defendant's separate entries here -- into the building and out
again, then later into the vacant unit -- are even more clearly
two distinct entries and the basis of two distinct offenses.  The
fact that the vacant unit was a dwelling, and defendant's entry
thereto was residential burglary, thus did not preclude

C    69

1-02-2905

defendant's conviction for burglary.  There was sufficient
evidence to convict defendant of burglary beyond a reasonable
doubt.

Defendant also contends that the mandatory Class X
sentencing provision of section 5-5-3(c)(8) violates the rights
of due process and trial by jury because the State was not
required to give defendant notice of its intent to sentence him
as a Class X offender or required to prove his convictions, the
timing or sequence of the convictions, or his age beyond a
reasonable doubt to a jury.  However, this court has considered
and rejected precisely this contention.  <u>People v. Smith</u>, 338
Ill. App. 3d 555, 564 (2003), citing <u>Apprendi v. New Jersey</u>, 530
U.S. 466, 494-96, 147 L. Ed. 2d 435, 457-58, 120 S. Ct. 2348,
2365-66 (2000); <u>People v. Pittman</u>, 326 Ill. App. 3d 297, 300-01
(2001); and <u>People v. Lathon</u>, 317 Ill. App. 3d 573, 587 (2000).

Accordingly, the judgment of the circuit court is affirmed.
Affirmed.


GORDON,J., with O'MALLEY,P.J. and McBRIDE,J., concurring.

5. Petitioner filed a direct appeal to the First District Court of Appeal, that was subsequently affirmed on **Dec. 22,2003.**

6. Petitioner filed for Leave to appeal to the Illinois Supreme Court on **march 4,2004,** that was later denied on **June 23,2004.**

7. This petition follows and is based on Substantive constitutional **Fifth,Sixth** and **Fourteenth Amendment** violations and are supported along with affidavits, supporting transcripts records & references thereto, sufficient to survive the first stage dismissal threshold requirement necessitating only the " gist" of the Constitutional depravation. **People v. Edwards**, 197 Ill.2d 239

## STANDARD OF REVIEW

The Post Conviction Hearing Act 725 ILCS 5/122-1(West 2000) provides a opportunity to raise any allegation of a Substantial deprivation against a defendant's Constitutional rights, and must include certain information, along with affidavit, records, or other evidence supporting its allegations, or shall state why they are not attached. " Any claim of substantial denial of Constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3; **People v. Mahaffey** 194 Ill.2d 154,170 (2000)

After the petition is filed, the trial court examines it to determine if its frivolous or is patently without merit. **725 ILCS 5/122-2.1(a)(2)(West 2000).** At this stage, if the court determines that the petition is frivolous or patently without merit, it dismisses the petition. If not, the trial court dockets

C  72

the petition for further considerations pursuant to
section 122-4 through 122-6 **725 ILCS 5/122-2.1(b) (West 2000)**

At the second stage, the trial court may appoint counsel
for an indigent defendant. **725 ILCS 5/122-4**. Counsel may seek
leave to file amendments to the petition. Also, the State has
30 days to either answer the petition or move to dismiss.
**725 ILCS 5/122-5**. IF it files a motion to dismiss which is denied,
it has   -20 days to answer the petition.

The Trial court may " receive proof by affidavits, depositions,
oral testimony, or other evidence " and, in its discretion, may
require the petitioner to be brought before the Court for a Hearing.
**725 ILCS 5/122-6**.

C   73

## STATEMENT OF FACTS

Defendant Charles Daniels was charged by information on March 10, 2000, with one count of burglary, in violation of 720 ILCS 5/19-1(a) (West 2000). (C.24-26)  A bench trial before the Honorable Judge Thomas Davy commenced on June 5, 2002 and was continued to July 16, 2002.  On those dates, the following testimony was adduced.

On February 12, 2000, the complainant, Nora Elston, was a 76 year old woman who lived in one of the two first floor apartments at 8232 S. Eberhart Street in Chicago. (R.115-116).  She owned the building, which was a three story six-flat, and had been living there for about 15 years. (R.116)  At approximately 3:40 p.m., she was at home alone. (R.117)  The apartment across the hall from hers was vacant because the tenant had moved out. (R.117)  Elston had been using the apartment to store some of her property. (R.117)  She kept both the back and front doors locked. (R.117, 135-136)  That vacant apartment was not being rehabbed, and was completely habitable. (R.125-126)  Elston had planned to rent the apartment again in its present condition. (R.126)

From the apartment where she lived, Elston saw a man walk up to the front of the building and ring the bell for the vacant apartment. (R.118-119)  Moments later she thought she heard a rattling at the mailbox. (R.118-119)  Elston immediately called the police because she believed that individual to be  "fool[ing]" with the mailbox. (R.118-119)  Elston believed that man was at the front door of her building for about three minutes. (R.128)  After about 10 or 15 minutes, the Chicago Police Officer William Meister and his partner arrived. (R.128, 156-157)  They checked the back yard and looked around. (R.137, 157)  At that time they also checked the door to the vacant apartment, found it locked and left because the man was gone and they could

C    74

not find anything. (R.118-119, 137)  After they had gone, Elston thought she heard a plastic bag

being opened in the apartment across the hall, so she phoned the police again. (R.119, 128, 157)

While waiting for the police the second time, Elston saw a man proceed down the

walkway of her building with a plastic bag filled with some of her belongings from the vacant

apartment. (R.120, 129)  She watched him walk away and decided to follow him so she could tell

police where he fled to when they arrived. (R.121-122)  Elston followed the man westbound

down an alley just north of 83rd Street until he turned northbound in another alley. (R.130-131)

She stopped following him because at one point, he was no longer carrying the plastic bag with

her belongings. (R.130-131)  She went back to her house to wait for police who arrived this time

in about seven minutes. (R.129)  The police put her in their squad car and drove around the alley

where Elston had followed the man. (R.123, 132-133, 157-158)  After a short time, the police

and Elston located the suspect near 8240 S. Burnom. (R.124, 157-158)

When the police approached the man, he did not have any plastic bags on his person.

(R.133-134) Elston testified that the plastic bags were 2 1/2 by 3 1/2 feet, and could not be

secreted on one's person. (R.134-135)  After the police spoke with the man, he briefly walked

over to 510 W. 83rd Street, where police found two large plastic bags. (R.133-134, 159-160)

Meister showed Elston the bags and she said that the items in the bags, some clothing, a clock

radio, a discman, and some compact discs, were hers.  (R.160-161)  Meister gave Elston some of

her clothing and belongings back that day. (R.163-164)

When Elston returned to her building she made an inspection of the vacant apartment.

(R.136)  The doors were still locked. (R.136)  Elston testified that she believed that all the

windows had been locked, but admitted, "[o]ne of them had to be open for him come in." (R.136)

Additionally, it is clear from trial testimony(R.136-137)
that the complaining witness believed she left a window open in
the vacant apartment and that is how the defendant gained entry
to the building.(R.136-137). So, in fact, the defendant did gain
entry through a window to the vacant apartment, thereby circumventing
any " common areas," which by the lower court's ruling, supported
a conviction for simple burglary. The record thus indisputably
shows that entry occurred through the window. There was no testimony
about the front door of the vacant apartment being forced open in
any way, indeed when police arrived, the door to the vacant
apartment was still locked.( R.136-136)

    Chicago Police Detective James Carlassare, assigned to Area 2,
testifed that on February 12, 2002, he interviewed defendant.
He read defendant his rights per Miranda.( R.152-153) Defendant then
told Carlassare that he knew he was in trouble and that he shouldn't
have gone into the apartment. (R.154) Defendant added that he was
receiving help for his problem.(R.154) Carlassare made a report
about the interview, but did not submit it until July 10,2000
almost 150 days later.(R.154-155)

    The State then rested its case-in-chief and the defense motion
for a **directed finding** was denied.)R.164-166). The defense then
rested.(R.166) The State waived its opening argument and the defense
waived all closing arguments.(R.166)  The trial court then announced
its ruling, finding defendant guilty of burglary, and entered a
verdict on the finding.(R.166-167)

At the hearing on the motion for new trial, defense counsel Dennis H. Sherman argued that the defendant should have been convicted of residential burglary, not burglary, and reminded the court that the two were mutually exclusive charges.( R.170-172) The State responded by arguing that the common areas of the building at issue here were not a " dwelling," but merely a building for purposes of the simple b urglary statute.( R.172-173) Furthermore, the apartment was vacant, meaning no one intended to live in the apartment within a reasonable amount of time(R.173) The State also argued that the statute had already been corrected so that the offenses are no longer mutually exclusive. The defense again argued that the apartment building was a residence under the statute.(R.174)

The court found that defendant made two separate unauthorized entries, one into the apartment building and the other into the vacant apartment. ( R. 177-179)  The trial court stated, "[H]ad the defendant been charged with the entry into a specific apartment [Childress and the residential burglary statute] would still apply since there are numerous cases that say a building is a dwelling if going to intent to be used as a dwelling regardless of who would be living there."(R.178-179) The trial court judge then added:

> [U]nless the evidence would be that someone entered
> directly into a particular apartment through a window
> or a door leading directly from that apartment, from
> outside into the apartment that as long as there is a
> common area hallway, stairway, or whatever, that entry
> into that building into that common area would sustain
> charge of burglary.(R.179)

Finding that because the defendant entered the building on his way into the apartment, the court denied defendant's motion for a new trial and sustained the charged of burglary (R.177-17 )

The court sentenced defendant to a Class X sentence of eight years on the sole count of burglary based on his prior convictions.( 182-183) Defendant filed a motion to reconsider sentence which was denied.( R.195-196)  Defendant direct appeal was affirmed by the Appellate First District on December 22,2003. Petition for leave to appeal to the Illinois Supreme Court followed and was denied on January 27,2004 and subsequently the petition for re-hearing on the issues raised from the Direct appeal was denied, on June 23, 2004.

C   78

INEFFECTIVE ~ .ISTANCE OF TRIAL ATTORNEY & APPELLATE

A.    Trial counsel is  ineffective towards his overarching Duty
to advocate the Defendant's cause and to bring to bear such **skill
& knowledge** as will render the trial a reliable adversarial
testing process, where counsel supplies an otherwise **Unproven element**
of the crime during his cross-examination of the State's complaining
witness, **(R.V 16-17)** this Error is _ipso facto_ of the deficieny.

Petitioner-Defendant **Charles Daniels**, maintains and asserts
that the essence of his Ineffective-assistance claim is that counsel's
representation fell below an objective standard of reasonableness
and so upset the adversarial balance between the Defence and the
prosecution that his trial was rendered unfair and the verdict
suspect.**Kimmelman v. Morrison,** 477 US 365,374, 106 S.Ct. 2574
When a defendant complains of the ineffectiveness of counsel's
assistance, the defendant must show that counsel's representation
fell below objective standards of reasonableness and that there is
a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceedings would have been different.
 **People v. Albanese**, 104 Ill. 2d 504,525, 85 Ill.Dec.441,473 N.E.1246

The United States Supreme Court holding in **Strickland v.Washington**
466 US 668, 104 S.Ct.2052,2064,80 L.ed 2d 674(1984) contains two
components to any ineffective assistance claim: (1) deficient
performance and (2) prejudice. **Lockhart v.Fretwell**, 506 US 364
113 S.Ct.838,842,(1993) and **Petitioner Daniels**, in this instant
matter, believes that **both requirements** of the **Strickland test** have
been satisfied through trial counsel's eliciting testimony which
established and proved a material and essential element of the State's
case-in chief. **Appellate counsel for having failed to include.**

-4-

C    79

The crux of petitioner Charles Daniels' Sixth Amendment (**VI**), complaint is that his trial attorney elicited from the State witness testimony during cross-examination that established/proved a critical element and irreparably prejudiced the defendant during trial and during appellate review, where the intermediate court specifically referenced the following coloquy in its ruling affirming the judgment:

> [Defense counsel]: But you didn't hear this person come up the stairs, did you?
> [Witness]: No.
> Q: And you said you saw the man come into the building and you lose sight of the man when he comes inside the building, right?
> A: Of course.
>
> <p align="center">**********</p>
>
> [Defense counsel]: You didn't see the person leave out the door?
> [Witness]: Yes, I saw him leave.
> Q: How long would you say he was in the hallway of your building?
> A: I'd say three minutes.          ( R.V. 16-17)

**Appellate Court Order referencing this Element** annexed, p.2,6.

## CONTENTION

Because of trial counsel's cross-examination of this witness being so unprofessional and unreasonable, the witness placed the petitioner in an area that was a building, not a dwelling, which permitted the court to grant a conviction against the petitioner. In fact the State never established whether or not the petitioner had entered into the building and/or remained inside of the building, prior to defense counsel's actions which helped prove

that petitioner Daniels, was in an area that was a non-dwelling part of the building.  This point was compounded through trial counsel's blundering which only **HIGHLIGHTED** & **drew attention to** the amount of time speculated that his client was inside the building.

> [Defense counsel]: How long would you say he was in
> the **hallway of your building?**
> [Witness]: I'd say three minutes.
> Q: **Thirty minutes?**
> A: **Three minutes.**
> Q: I'm sorry, **three minutes.** And the police arrived, at
> that time you looked---did they look around the building
> after the police arrived?    ( R.V 16-17)
> *****      *****

**Prejudice** is herein established because without the above-referenced Evidence elicited by Defense counsel, the Court could not have found defendant guilty as was **decided** in **People v. Jackson,** (where defense counsel provided Ineffective assistance of counsel in a drug possession trial when, in cross-examining police officer he elicited fact that person to whom defendant had pointed after receiving money from unknown third person reached into paper bag and gave an object to the unknown person, where the State had not established that fact in its case-in-chief, and **Without that evidence** there was nothing to link defendant with the narcotics found in paper bag.)
**People v. Jackson,** 251 Ill.Dec. 848, 741 NE 2d 1026(Ill App.1 Dist.2000)

Petitioner- Charles Daniels, maintains that trial counsel's actions were not apart of a(any) valid trial strategy, especially in light of the totality of the State's theory being off-point:

> " This particular case, the victim testified she lived in
> one apartment, the Defendant burglarized the unoccupied
> apartment.
>
>      The people that were supposed to be occupied that,
> there is absolutely no testimony showing anybody intended
>                              ( R.V. 176 )

C    81

to reside in that apartment in the near future and based
upon her testimony that this was an unoccupied apartment,
it hadn't been rented out and her testimony shows quite
clearly it falls within the statutory definition of a
building based on that definition that existed at the time."

**Childress** was a case involving statutory interpretation
on whether or not burglary is a lesser included offense.
The Illinois legislature had reversed so to speak that
**Childress** ' opinion by changing statute. ( R.V 176)

It is like the Illinois Supreme Court saying that a cow is a
horse. In fact, if you look at the statute, the statute has
since been changed to correct that mistake and that is no
longer in there, but rather than argue those two things,
I would argue that the statutory definition of dwelling that
was in affect at the time the crime indicated that a dwelling
is a building even if the persons are not actually residing
there, if" absence is intended within a reasonable period
of time to reside."

Based upon the tesimony of the victim, she didn't live
there. She lived across the hall. She never intended to live
in that apartment next door.

She owned the building. There is no tesimony that any
owner intended to reside in that vacant apartment within any
reasonable period of time.

The testimony shows quite squarely that the Defendant
committed a burglary witnin the meaning of the statutory
definition that existed at the time of the crime.

( R.V 174)

### Testimony of eyewitness

[ State prosecutor]:

Q: Was the **apartment** across the hall from you at 8234 S.Eberhart
   occupied at that time?

A: No.sir.

Q: What was the condition of that **apartment** across the hall?

-7-

C    82

A:  The condition was that no one was there because the occupant
    had moved out, I had moved some of my things across the hall
    because I was going to do some work in my building, I was
    trying toget them out of the way temporarily.

Q:  Did anybody have **authority** to be inside your vacant **apartment**
    at that **time** and **place**?

A:  No sir.

Q:  After you heard somebody inside your vacant apartment that
    afternoon what did you do next?

A:  I went back and called the police agains and I told them I
    thought he was gone but now he's in the apartqment. (R.V.6)

Q:  And you never **gave** that person permission to enter that vacant
    **apartment** of yours.?

A:  No sir.                                                    (R.V. 13)

                    ********        ********

## ARGUMENT

Based upon the foregoing testimony, there was proof only to
support the **material and distinct** offense of Residential burglary
rather than Burglary **which was** " **mutually exclusive**" under the
**People v. Childress** ,158 Ill.2d 275,633 N.E.635,**stare decisis.**
Then, it stands that the above testimony would have **also been**
insufficient as a matter of law to have supported and satisfied
the necessary elements of the criminal offense of burglary as
alleged in the indictment. **People v. Mejia,** 187 Ill.Dec.342

It follows, that as no other **competent Evidence** had come in
through any other witness regarding the elements of burglary to a
building, that the petitioner was **Irreparably Prejudiced** through
the **constitutionally deficient performance** of trial counsel under
both State and Federal standards towards Ineffective assistance.
When  trial counsel " **Elicited an otherwise Unproven Element** "
------ through his cross-examination he placed the petitioner

C    83

inside of the Building, which is/was the responsibility of the prosecution to have established, not defense counsel against his own client.(R.V.7-8; V 16)

In fact, without the " **gift horse**" provide to the state by defense counsel's unreasonable performance, in placing petitioner inside of the building all that remained was a scenario where the petitioner had entered and removed personal property without authority from a vacant apartment. **(R.Y-9)**

This scenario is in no way **Sufficient** to have linked the petitioner inside of the Building as Required under conformity to Due process of Law, as the "entryway" where the mailboxes  buzzers were located had only placed petitioner at the front door outside of the Building(R118-119;128); **Inexplicably**, without the cross-exam by defense counsel the **Material and DISTINCT** Element of **ENTRY** inside of the Building **had not been established**. Moreover, " but for " trial counsel eliciting of this **INCULPATORY** statement from the State witness, the probability is that the result would have been different.

Finally, Appellate attorney was unreasonable in not including this **Significant and Obvious** Issue, where he had no legitimate strategic reason for failing to have done so, particuarly where there was no conflict of interest.

C    84

Issue B

Petitioner Daniels's SIXTH AMENDMENT right to NOTICE
of the exact cause & nature of the charge was violated through
the Burglary indictment merely alleging that he knowingly and
without authority entered into a building, the property of Nora
Elston, with the intent to commit a felony or theft therein(C.24-26),
where the Evidence at the Trial showed TWO DISTINCT ENTRIES
( R. 177-179); one to the vacant unit apartment (R.118-119) and
one into the " common areas " of the building.(R.176-179)

Because the Indictment did not specify which entry was the
basis for the Burglary, it lacked the specificity necessary to bar
a subsequent prosecution for the same conduct.
People v. Walker, 61 Ill.App.3d 891, 378 N.E.2d 607
( Burglary indictment that alleged intent to commit " a theft or
felony" was held defective. The evidence at trial showed two,
distinct enteries- one to commit theft and one to commit rape.
Because the indictment did not specify which entry was the basis
for the burglary charge, it lacked the specificity necessary to
bar a subsequent  prosecution for the same conduct.)
People v. Thingwold, 145 Ill.2d 441,448,584 NE 2d 89,91, 164 Ill
Dec. 877

The Defence argued to the trial court that the entire building
was a " dwelling " within the meaning of the residential burglary
statute. ( R.170-172)

The State responded by arguing that the apartment was vacant
at the time of this offense, and that nobody had planned to live
in that apartment within a reasonable amount of time(R.172-173).
Additionally the State added that at the time of trial the statute
had already been corrected, relative to these offenses( simple
burglary and residential burglary) having been " mutually exclusive"
under the Illinois Supreme court holding in People v. Childress, ibid
( R.V.176-)

-10-

C    85

The trial court ruled according to the report of the proceedings that there were " two distinct entries ", the first into the building at 8234 S.Eberhart, and the second into the first floor apartment of that building. ( R. 176-179 )

The trial court along with the appellate court both conceded that entry into the Buildings' vacant apartment unit was a residential burglary and that had never been charged. ( R.176-179) The court went on to hold that the petitioner was guilty based on the " **distinct entry** " into the " common areas " of the building as opposed to the distinct entry to the vacant apartment(R.176-179)

### ARGUMENT

Petitioner-Defendant Charles Daniels, **SIXTH AMENDMENT** protection guaranteed under the United States Constitution, were violated here in the Defective indictment failing to have provided defense counsel or the defendant with **NOTICE** of the exact cause & nature of which " Distinct entry " into the building formed the basis for the Burglary and in the Indictment lacking the specificity necessary to have barred a subsequent prosecution for the same conduct. Ergo, this conviction must need be reversed, as a matter of State and Federal laws. Moreover, the petitioner challenges the sufficiency of the charging instrument for its failure to correctly have alleged the offense. While technical defects in a charge are waived if not challenged in the circuit court, **People v. Clark**, 30 Ill.2d 67,73, 195 N.E. 2d 157; the argument that a charge is **VOID** is one that can be raised at any time, regardless of whether the alleged error is properly preserved for review, because an allegation that a charge is void is an allegation of a **Substantial**

Defect that cannot be waived. Illinois supreme court rule 615(A) As the Illinois Supreme Court held in People v. Pujoe, 61 Ill. 2d 335, 339,335 N.E.2d 437, the ommission of a material element does not render a charge void, a charge will be held :

> " sufficient if it apprised the accused of the precise
> offense charged with sufficient specificity to prepare
> his defense and allow pleading a resulting conviction
> as a bar to future prosecution arising out of the same
> conduct."

## CONCLUSION

As it stands, the SIXTH AMENDMENT(VI), guarantee that a defendant be fully informed of the charge against him and the FIFTH AMENDMENT (V), guarantee of the right to a indictment by a grand jury and its DOUBLE JEOPARDY bar, requires at a minimum that the indictment adequately apprises the defendant of the EXACT NATURE, of the charge and cause of the criminal accusation, so that he can prepare his defence to avoid surpises, such as here, and that , if future proceedings are brought against him for a similar offense, the trial record would show to what extent the defence of double jeopardy is available as a bar to subsequent prosecution arising out of the same conduct. PETITIONER PREJUDICED FROM THIS " DUPLICITY,"

S.H.A. Const. Art.1§8; 725 ILCS 5/111-3(a)

U.S.C.A. Sixth Amendment(VI); Fifth Amendment(V)

Poeple v. Meyers, 196 Ill. Dec. 646,630 NE 2d 811,158 Ill.2d 46;

People v. Smith , 227 Ill.Dec. 287,876 N.E.2d 1121,337 Ill.App 819 ·
                  (2003 4th Dist.)

Appellate attorney was clearly Ineffective for failure to have raise this obvious Constitutional vioaltion that had been presented to him by petitioner in pro se brief, prior to filing direct appeal.

The trial court violated the petitioner's **SIXTH AMENDMENT**
**Guarantee** to a fair and impartial trial, where because the State's
theory of the case was insufficient as a matter of Law to support
a conviction, the Trial court demonstrated partiality by its ruling
and advocation that neither the State or the Defense had raised.
**People v. Edwards**, 183 Ill.Dec.543, 243 Ill.App. 3d 280
**People v. Gresham**,432 NE 2d 654, 59 Ill.Dec 868
( where a conviction may not be affirmed if the state merely proves
  at trial that defendant committed offense under alternative
  but uncharged theory of the case.)

In the instant matter, the State's theory and argument succintly
was that the petitioner committed the offense of Burglary through
his entry and theft inside of a vacant apartment; establishing
their case through the Testimonial evidence of Nora Elston, that
(1) the apartment was unoccupied at the time of the crime(**R.V-6**)
and (2) Mrs. Elston, did not give permission to the petitioner to
enter or authorization to remove her property from inside of the
unoccuped apartmentunit.(**R.V 13**)

It is through the **Bright Line**, advocation of **People v. Maskell**,
304 Ill.App.3d 77, 710 NE 2d 449(2nd Dist.1999),**ipso facto**, that
the petitioner was denied a impartial trial. Specifically, **Maskell**
**is inapposite** to this case, where in **Maskell**,a State witness **testified**
that nobody gave permission to that defendant to have entered the
apartment and take a television. **Further**, a Thomas Preston **testified**,
that he never gave permission to that defendant to have entered the
six-flat aprtment building unit.**Maskell**, 237 Ill.Dec. at 821

In the instant matter **NOBODY testified** that the petitioner
**DID NOT HAVE PERMISSION OR AUTHORITY** to have entered the Building.
During neither requested Directed verdict, or subsequent proceedings
did the State ever provide for the record any(**R.X18,19,20**)

-13-

C    88

**TESTIMONIAL EVIDENCE**, that the petitioner was denied permission or authority as a matter of Law, into the Building as is required to satisfy State and Federal Due process under the United States Fourteenth Amendment (XIV)

**People v. Heper**, 132 Ill.App.3d 705, 477 N.E. 2d 768,773

**People v. Baker**, 59 Ill.App. 3d 100, 375 N.E.2d 176
( which held that the fact of an unauthorized entry must be proved
separately from the fact of any entry with wrongful intent.)
**People v. Weinstein**, ( 1966), 35 Ill.2d 467, 220 N.E. 2d 432
( holding that in a criminal trial it is the burden of the prosecution
to prove beyond a reasonable doubt all material facts of the
offense as charged by the Indictment.)

It is the crux of petitioner Charles Daniels' contention that **PLAIN ERROR** of the trial court have denied him a fair and impartial trial and has further vitiated this conviction. Specifically,

" **Essential allegation of a indictment Must be proved
without variance and Cannot be Inferred.**"

**People v. Mosby**, 185 NE 2d 152, 25 Ill.2d 400 ( 1962)

**People v. Jamison**, 235 N.E. 2d 849, 92 Ill.App. 2d 28;

**People v. Johnson,** 339 N.E. 2d 325, 34 Ill. App. 3d 38, reversed.

**People v. Clark**, 389 N.E. 2d 911, 71 Ill.App. 3d 381
( where essential allegations of an indictment must be proved
without variance and an essential element of a crime cannot
be inferred but must be established with positive proof." )

In order to vitiate a conviction, petitioner is cognizant that it must be based on a faulty indictment, where there is a variance between the allegations in the charging instrument and the proof at trial which is Material.

In support of the variance between the allegation in the
charging instrument and the proof received in this trial being
contrasted are the following Illinois cases.

**People v. Godina**,165 Ill.Dec. 344, 584 N.E. 2d 523;

**People v.Durdin**, 244 Ill.Dec.524,312 Ill.App.3 4, 726 NE 2d 120;

**People v.Daniel**,219 Ill.Dec. 183,283 Ill.App.3d 1003,670 NE 2d 861;

**People v. Santiago**,216 Ill.Dec. 320, 279 Ill.App.749,665 N.E.2,380;

**People v. Weber**, 201 Ill.Dec 470,264 Ill.App 457,636 N.E 2d 902;

### CONTENTION

At the time of this Trial, the court  **misapprehended**
the distinguishing **Linchpin** that created reasonable doubt on the
essential element of this crime, in contrast to **People v. Maskell**
304 Ill.App.3d 77(1999), which was specifically referenced.

Rather, in **Maskell**, a State witness **TESTIFIED** for the record
that nobody gave permission or authority to the defendant to have
entered the apartment and take a television set. **FURTHER**, Mr.Thomas
Preston, **TESTIFIED**, that he never gave permission or authority
to that defendant to have entered the six-flat building.
237 Ill.Dec. at 821.

Petitioner likens his constitutional violation to a defendant charged
with armed robbery and at the trial the State only elicits testimony
that the perpetrator unlawfully took control of that victims personal
property, without eliciting a single question to have established whe-
ther the offense was committed while armed with a dangerous weapon.
In the instant matter(Subjudice)the State's error is fatal,as to
permission **OR** authority to have entered the building.

C  90

In fact, by the State having utterly failed to have established on the Record, **TESTIMONIAL** proof to conform to the charged alleged, the State therein failed in its burden of proof.  It follows, that where as here the State's **THEORY** is totally devoid of compentent evidence upon the **Material & Essential** elements for Burglary this conviction must be reversed.

As the **Illinois Supreme Court** has long ago stated in the case **People v. Mosby**, 185 N.E. 2d 152

> " **An essential element of proof to sutain a conviction
> cannot be Inferred  but must be established.**
> The fact that this proof might have been elicited by
> a **Single** Question, is beside the point since it was
> not done.  Because of the failure of the People to prove
> an Essential allegation the judgment is reversed."

Finally, Appellate attorney is Ineffective for his failure to have raised this obvious Constitutional violation that would have presented no conflict of interest to him or his office, and where there was no strategic reasons for having not done so.  As there is never any reason for not including a **DUE PROCESS OF LAW VIOLATION, that is obvious.**

Issue D

Petitioner Daniels was denied a fair & impartial trial through application of a statutory amendment that affected his Substantive rights, where neither the State nor the Trial court rebutted the presumption of prospectivity, that resulted in a violation of State of Illinois and Federal **Ex Post Facto laws**, in light of the petitioners' reliance on the law as it existed prior to his irreparable detriment.

Petitioner further asserts that the trial court committed reversible error through its misapprehensive application of **Public Act 91-928**, effective June 1,2001, that allowed a burglary charge to be sustained upon the proof of residential burglary offense and/or where " **the person without authority, knowingly entered or remained within a building**\*\*\*\* **or any part thereof with intent to commit a felony or theft**." 720 ILCS 5/19-1(a)(2002)

Rather than under **Public Act 91-360**,the purview under which the petitioner's criminal conduct fell. **Public Act 91-360**,Statutory construction language mandated, under **People v. Childress**, 158 Ill.2d 275, 302 (1994), inter alia, that a Building was either a dwelling residence or one whose "**character type**"'made it unoccupiable to live in, and more applicable to buildings such as " business or public buildings or other buildings open
> to the public during which the authority to enter was
> with a purpose consistent with the reason the building
> was open. " e.g., **People v. Boose, (1985)**,139 Ill.App.3d 471
> 94 Ill.Dec. 211,437 N.E. 2d 1085

**Childress**, held also, that the offenses residential burglary and burglary were " mutually exclusive" **Childress**, 158 ILl. 2d 275,302

C    92

Long before    **Childress**, in **People v. Jones**, 114 Ill.App.
3d 576, 70 Ill.Dec. 418, 449 N.E. 2d 547, it has remained
fundamental to the Illinois Judicial system that:

> " once the Illinois Supreme Court declares the law on
>
> a particular issue, its decision is binding on all
>
> Illinois courts."

Inspite of this **Stare decisis of Childress opinion**, the trial court
here abused discretion, showing partiality towards the State in
failing to follow the Illinois Supreme court directive towards
**Mutually Exclusive** offenses, and its **crystal clear holding that
a structure is either a dwelling place or not**. **Childress**, 158Ill.302
Moreover, the trial court from its **defacto** application of the
current statutory language for the burglary offense under **P.A. 91-928**,
has aberrantly through its ruling essentially " **parsed out and
segregated common areas from dwelling areas.**", where there was
no Statutory discretion **Dejure**, to do so while **Childress**, remained
a**s** **c**ontrolling rule of Law on this Issue towards residential unit
apartment building cases.

In fact, through **retrospectively** employing the ruling of
**People v. Maskell**, **the** trial court erroneously interpreted the
**Childress** holding, i,e, ( that a building is either a dwelling
residence or not), and therein worked `"actual & substantive"`
disadvantage against the petitioner being given  a fair trial.
The Maskell ruling remains inapposite to the **Legitimate rule of Law**
towards residential apartment buildings, at the time of this crime;
**People v. Silva**, **256 Ill.App. 3d 414, 628 N.E. 2d 948**
**People v. Suane**, 164 Ill.App. 3d 997, 518 N.E.2d 458,(1st.Dist.1987)
**People v. Quiver**,205 Ill.App. 3d 1067, 1071-1072, 563 NE 2d 991
**People v. Torres**, 327 Ill.App.1106,1111,764 N.E.2d 1206(5thDist.2002)

## CONTENTION

Petitioner Daniels, contends that his Unauthorized entry
was to a residential " character typed " apartment building,
that applied to the Entire building including the common areas,
under applicable statute on February 12, 2000, **Childress**, 158 Ill 302.
**and** that the Statute excluded from the Burglary offense **THIS**
type of Building from this offense. For example see, **People v.Blair**,
166 Ill.Dec.631, 586 N.E.2d 589; **People v. Bales**,108 Ill.2d 182,190,
483 N.E. 2d 517(1985) (holding that " to determine if a building
is a dwelling depends on how the structure is actually used instead
of the Structure's design.)

The trial judge's ruling came as a total surpise to the defense,
in that the **requisite** standard to convict was lowered, resulting
in less and different evidence being accepted before the trier
of fact, upon a other wise **Defective indictment**. In fact under
statute **P.A. 91-928**, the added language lessened the culpable
standard needed to convict for simple burglary in the words:

" **entry or remaining in any part thereto of a building**."
**However, under P.A. 91-360, the LEGITIMATE** standard for analysis
herein, the same evidence accepted by the Trial court ruling under
**Maskell**, still required proof on each of these "distinct" and
"separate" entries into the building to satisfy **Due Process of Law**,
**which was not done**. Neither did the trial court receive any type
of testimony **limiting or stating** that the petitioner had no authority
whatsover to enter as to **either time or purpose**. **People v. Meeker**
86 Ill.App. 3d 162, 407 N.E. 2d 1058( where conviction reversed
because the evidence failed to prove that the entry was in fact
unauthorized. There was no testimony limiting the defendant's
authority to enter.)

-19-

C   94

The petitioner's Defence was prepared for the State's
theory as alleged in the indictment, that the plaintiff's
" entry into the vacant apartment unit constituted burglary, and
not residential burglary, because the apartment was not being used
as a dwelling." ( **R.V.** 172-173 )

The State Appellate prosecutor's office's also argued  this
identical position: (**State's Br.**, at 15-16,citing, **People v. Bales**,
108 Ill.2d 182, 190, 483 N.E. 2d 517(1935) holding that:

> " to determine if a building is a dwelling depends on
>    how the structure is actually used instead of the
>    structure's design.)

and also, " the key inquiry is the intent of the owner to
             reside in the building within a reasonable period
                of time after his absence." **People v. Smith**, 209 Ill.
App. 3d 1091, 1096, 568 N.E. 2d 417 [ State's Br. at 15-16]

The Trial prosecutor's argument" that the Illinois legislature
had reversed itself and that <u>Childress</u> opinion by changing
statute.. ( R.V. 176,L21-24).

" Defense counsel could not make that argument today because
the statute has been changed. So that in affect calls into question
the Childress decision.
THE COURT:  What, the residential?
MR. RONKOWSKI: Took out the offending language that counsel quotes
about the the charges being mutually exclusive.
    **Under Current Statute**, specifically the statute now reads
under residential burglary, this offense includes the burglary
as defined under 19-1, that is currently in the statute."
THE COURT: When did that take affect?
MR. RONKOWSKI: Makes no difference because_____
THE COURT:  Why doesn't it make a difference, you can't be charged
with something in the statute in affect is the one that was in
affect on the date of the incident?

Mr.Ronkowski: What the Illinois Legislature is saying,is that if the Illinois Supreme Court misinterprets our intent we're going to make it quite clear what our intent was, but you don't even get to **Childress**. It is strictly what was the law at the time. **THE COURT:** What was the law at the time? Mr.Ronkowski: The law at the time was if I could have these back if no owner intended to occupy that apartment within a reasonable period of time, it is not a dwelling. It is a building and the owner of the building did not intend to occupy that apartment. She lives next door. It is an issue of statutory construction. It was vacant. It is being renovated and falls clearly within the provision where there is no owner intending to occupy that vacant unit at the time. ( R. 177-178)

## SUMMARY

Based on the foregoing contention that the State failed to establish the requisite proof towards the charged offense of burglary ( **Argument C,supra**), and the **trial** court accepting a **different degree** of proof **other than that which was required under Public** Act 91-360, the petitioner was " **constructively** " prejudiced.   Moreover, the trial court's ruling had the same affect as **altering** the rules of **evidence**, through the trial prosecutor's argument to the Court that the Illinois Legislature had reversed itself & the <u>Childress</u> opinion through Public Act 91-928 ( R.V. 176 )

Similarily, the State has here essentially been allowed to charge the petitioner with a burglary in **March of 2000**,violative of **720 ILCS 5/19-1(a)(West 2000)**, and then because the State doesn't until after the **June 5th 2002**, trial proceeding **recognize** that the testimonial evidence elicited by its eyewitness was **Incongruent** towards satisfying the definition in effect of burglary on the date of this offense(February 2000, under **Public Act 91-360**); in Bias and Partiality against the petitioner's Constitutional **SIXTH AMENDMENT (VI)** protection and guarantee, the trial court appears to " **Rescue** " the State prosecutor from its dissipating theorectical underpinning that:

> "entry into the vacant apartment unit where no owner had intended to reside within a reasonable period of time."
> (R.174-176)

**Was** Sufficient to satisfy Due process.

C    96

In conclusion, the petitioner maintains that the Affect of the trial judge's Advocation of**Maskell** and a " Entry" , that had never been specified in the indictment nor alleged at any prior proceeding, nor even raised by the prosecutor during its entire arguments, consequently lacked the **specificity** to have avoided placing him in total surprise and in Danger of **Double Jeopardy.**

Additionally, the ruling violated the petitioner's **FIFTH & SIXTH Constitutional protections ( V)(VI)**, as it is well settled as matter of Law that " any law which alters the rules of evidence applicable in a given case", so that under the new law( **Public Act 91-928**) that the prosecutor argued was applicable;

> "Under **CURRENT STATUTE**, specifically the statute now reads under residential burglary, this offense includes the burglary as defined under 19-1, that is currently in the statute." ( **R.176,177,178**)

coupled along with the trial court's advocation and subsequent ruling - **Maskell,** having had the same affect, of receiving of less or different evidence and testimony being made admissible to convict the offender than was required prior to the Statutory amendment, is violative of **EX POST FACTO.**

Especially, where as here the petitioner had relied on the Law in effect on the date of this offense rather than that effective after June 1,2001 as declared under Public Act91-928, as his defence to his irreparable disadvantage and detriment.

U.S. Const. **Amendment** 5 & 6; Illinois Const. 1970,artI,ß 8;

U.S. Const. Art. 1 ß 9,cl.3;Art 1 ß 10;

**Weaver v. Graham**, 450 US 24

**Fiore White,** 531 YS 225, 121 S.Ct. 712

**Vachon v. New Hampshire,** 414 US 478

C    97

WHEREFORE, the Petitioner prays (1) that his cause be docketed for hearing according to law, (2) that counsel be appointed, (3) that leave to proceed in this cause as a pauper be granted.

Respectfully submitted:

x *Charles L. Daniels*

**PETITIONER**

STATE OF ILLINOIS)
                ) SS
COUNTY OF KNOX )

## CERTIFICATION

I, CHARLES DANIELS, a prisoner incarcerated in the Illinois State Penitentiary, HILL CORRECTIONAL CENTER, have read and understand the above Petition for Post-Conviction Relief and certify that the facts contained therein are true and accurate except those matters stated to be upon information and belief and, as to such matters, I certify as aforesaid that I verily believe the same to be true.

Dated:

x *Charles L. Daniels*

**PETITIONER**

Charles Daniels
No. N63102
Illinois Department of Corrections
Hill Correctional Center
600 South Linwood Road
P.O. Box 1700
Galesburg, Illinois 61402

C     98

COUNTY OF KNOX   ) SS

AFFIDAVIT

I, CHARLES DANIELS _____, Inst. No. N63102

_____, hereby declare under penalty of perjury that the following is true and correct based upon my personal knowledge and that I am competent to testify thereto if called upon as a witness.

THAT DURING THE CRIMINAL MATTER 00 CR 07104, MY SUBSTANTIVE FEDERAL AND STATE OF ILLINOIS CONSTITUTIONAL 5th, 6th and 14th AMENDMENTS WERE VIOLATED DURING THE BENCH TRIAL, THAT HAVE NOT BEEN ADJUDICATED. THERE IS A REASONABLE PROBABILITY THAT THE OUTCOME WOULD HAVE BEEN DIFFERENT, BUT FOR, TRIAL COUNSEL"S ERRORS, CONSEQUENTLY THE STATE WAS PROVIDED WITH OTHERWISE UNPROVEN ELEMENTS OF THIS OFFENSE. ADDITIONALLY, APPELLATE COUNSEL WAS UNREASONABLE IN NOT INCLUDING THE FOLLOWING ISSUES ON DIRECT APPEAL WHERE THEY WERE MENTIONED IN A TIMELY FASHION PRIOR TO THE DIRECT APPEAL BEING FILED : SUBSTANTIVE CHARGING INSTRUMENT DEFECTS OF THE INDICTMENT: DUE PROCESS VIOLATIONS & EX POST FACTO VIOLATIONS, WERE NOT INCLUDED. ALSO, SIXTH AMENDMENT FAILURE TO HAVE BEEN PROVIDED NOTICE IN INDICTMENT OF ELIGIBILTY OF THE EXTENDED TERM BEING IMPOSED, NOT AS A APPRENDI ISSUE, BUT 6th Amend.

_Charles Daniels_
AFFIANT

Signed before me on this 30 day of
June , 20 04 .

_Lenard E. Palmer_
NOTARY PUBLIC

"OFFICIAL SEAL"
Lenard E. Palmer
Notary Public, State of Illinois
My Commission Exp. 09/29/2007

C   99

STATE OF ILLINOIS          )
                           ) SS
COUNTY OF   KNOX   )

## AFFIDAVIT

I, CHARLES DANIELS, Inst. No. N-63102, #00CR7104, hereby declare under penalty of perjury that the following is true and correct based upon my personal knowledge and that I am competent to testify thereto if called upon as a witness.

IN the Months prior to TRIAL IN CRIMINAL # 00 CR 7104, ATTORNEY DENNIS H SHERMAN, STATED that A plea offer of (15) YEARS had BEEN offered ON Both 99 CR 9919 AND 00CR 7104. I elected ONLY TO TAKE (12) YEARS ON 99 CR 9919 proceeding TO TRIAL ON Other, BECAUSE OF THE ANTICIPATED TESTIMONY OF THE COMPLAINANT. ON JUNE 5, 2002, I explained MY REASON and BELIEF that the TESTIMONY HAD FAILED TO PLACE ME INSIDE BUILDING AS ALLEGED IN INDICTMENT. I WAS SHOCKED AFTERWARDS WHY MY ATTORNEY CROSS-EXAMED AS HE DID THIS WITNESS. THERE WAS ONLY ONE REASON TO HAVE ELICITED THIS INCULPATORY EVIDENCE, WHICH THE STATE HAD FAILED TO DO SO AS TO SATISFY THE INDICTMENT'S ALLEGATION. MY LAWYER WAS INEFFECTIVE FOR THIS ACTION.

_Charles Daniels_
**AFFIANT**

Signed before me on this 6th day of
OCT. , 20 04 .

_____
**NOTARY PUBLIC**

"OFFICIAL SEAL"
Mark G. Spencer
Notary Public, State of Illinois
My Commission Exp. 06/08/2008

C   100

# APPENDIX



# SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
SPRINGFIELD 62701

**JULEANN HORNYAK**
CLERK OF THE COURT
(217) 782-2035

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(217) 524-8132

August 10, 2004

**FIRST DISTRICT OFFICE**
20TH FLOOR
160 N. LASALLE ST.
CHICAGO 60601
(312) 793-1332

TELECOMMUNICATIONS DEVICE
FOR THE DEAF
(312) 793-6185


Mr. Charles Daniels
Reg. No. N-63102
P. O. Box 1700
Galesburg, Illinois  61401

   Re: No. 97992 - People State of Illinois, respondent, v. Charles Daniels, petitioner.

Dear Mr. Daniels:

  This will acknowledge receipt of your letter regarding the above-referenced cause on August 9, 2004.

  Your petition for leave to appeal was filed on March 4, 2004, and denied by the Court on May 26, 2004. Your motion for reconsideration was filed on June 15, 2004, and was denied by the Court on June 23, 2004, thereby causing the mandate of this Court to issue that same day to the Appellate Court, First District.

      Very truly yours,

      *Juleann Hornyak*
      JULEANN HORNYAK, Clerk


JH:jak
Enclosure

C    102

97992

SUPREME COURT OF ILLINOIS
CLERK OF THE COURT
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

May 26, 2004

Mr. Charles Daniels
Reg. No. N-63102
P. O. Box 1700
Galesburg, IL 61401

No. 97992 - People State of Illinois, respondent, v. Charles Daniels, petitioner. Leave to appeal, Appellate Court, First District.

The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on June 17, 2004.

Charles Daniels
N-63102
P.O. Box 1700
Galesburg, Illinois 61401

May 12,2003

Attorney Michael J. McDermott
Asst. Appellate Defender
203 N. Lasalle-24th floor,
chicago, Illinois

Dear Attorney:

Thank you for obtaining the extension of time before the
filing of my direct appeal, and also for your forwarding to me
a draft copy. Your analysis & case law along with the contentions
therein have merit, however I still wanted to raise the issue
of trial counsel's Ineffective assistance, where he supplied an
otherwise unproven element of the offense that I was charged with
having committed. I believe that that was a gross error and in
and of itself, demonstrated his ineffectiveness in my matter.

Additionally, I believe that the issue of the charging
instrument having failed to have specified which " entry"
was the basis of my indictment was another Error that should
have been included., Finally, that the Ex post facto and
Due process arguments and contentions that I have mailed to
you were not included is beyond me, especially, when I am the
person sitting here in prison. Respectfully, I await your
responsiveness as to a justification for not including these
Substantive Constitutional  issues that deprived me of a fair
and impartial trial.

Charles Daniels

C  104

STATE OF ILL.

COUNTY OF KNOX

AFFIDAVIT

I, CHARLES DANIELS _____, Inst. No. N63102

_____, hereby declare under penalty of perjury that the following is true and correct based upon my personal knowledge and that I am competent to testify thereto if called upon as a witness.

THAT DURING THE CRIMINAL MATTER 00 CR 07104, MY SUBSTANTIVE

FEDERAL AND STATE OF ILLINOIS CONSTITUTIONAL 5th,6th and 14th

AMENDMENTS WERE VIOLATED DURING THE BENCH TRIAL, THAT HAVE NOT

BEEN ADJUDICATED. THERE IS A REASONABLE PROBABILITY THAT THE OUTCOME

WOULD HAVE BEEN DIFFERENT, BUT FOR, TRIAL COUNSEL"S ERRORS,

CONSEQUENTLY THE STATE WAS PROVIDED WITH OTHERWISE UNPROVEN

ELEMENTS OF THIS OFFENSE.  ADDITIONALLY, APPELLATE COUNSEL WAS

UNREASONABLE IN NOT INCLUDING THE FOLLOWING ISSUES ON DIRECT

APPEAL WHERE THEY WERE MENTIONED IN A TIMELY FASHION PRIOR TO

THE DIRECT APPEAL BEING FILED : SUBSTANTIVE CHARGING INSTRUMENT

DEFECTS OF THE INDICTMENT: DUE PROCESS VIOLATIONS & EX POST FACTO

VIOLATIONS, WERE NOT INCLUDED. ALSO, SIXTH AMENDMENT FAILURE TO

HAVE BEEN PROVIDED NOTICE IN INDICTMENT OF ELIGIBILTY OF THE

EXTENDED TERM BEING IMPOSED, NOT AS A APPRENDI ISSUE, BUT 6th Amend.

_Charles Daniels_
AFFIANT

Signed before me on this 30 day of
June, 20 04.

_Lenard E. Palmer_
NOTARY PUBLIC

"OFFICIAL SEAL"
Lenard E. Palmer
Notary Public, State of Illinois
My Commission Exp. 09/29/2007

C    105



## OFFICE OF THE STATE APPELLATE DEFENDER
## FIRST JUDICIAL DISTRICT

203 NORTH LASALLE STREET
24TH FLOOR
CHICAGO, ILLINOIS 60601
TELEPHONE: 312/814-5472
FAX: 312/814-1447

**MICHAEL J. PELLETIER**
DEPUTY DEFENDER

June 13, 2003

**MICHAEL JAMES MCDERMOTT**
ASSISTANT APPELLATE DEFENDER

Mr. Charles Daniels
Register No. N-63102
Hill Correctional Center
P. O. Box 1700
Galesburg, IL 61401

Dear Mr. Daniels:

Enclosed find a copy of the brief that has been filed on your behalf. The State will respond to our brief, and we will file a reply to the State's brief, if one is necessary. I will send you copies of the State's brief and our reply (if one is necessary) when they are filed. It could be anywhere from two to six months before the State files its brief. Unfortunately, it could be a year or more before the court decides your case. Please try to be patient and know that I will do all that I can to move your case along as quickly as possible.

If you have questions or comments about your case, please do not hesitate to write me.

Sincerely,

MICHAEL JAMES MCDERMOTT
Assistant Appellate Defender

C   106



# OFFICE OF THE STATE APPELLATE DEFENDER
## FIRST JUDICIAL DISTRICT

203 NORTH LASALLE STREET
24TH FLOOR
CHICAGO, ILLINOIS 60601
TELEPHONE: 312/814-5472
FAX: 312/814-1447

**MICHAEL J. PELLETIER**
DEPUTY DEFENDER

January 25, 2004

─────────────

**MICHAEL JAMES
MCDERMOTT**
ASSISTANT APPELLATE DEFENDER

Mr. Charles Daniels
Register No. N-63102
Hill Correctional Center
P. O. Box 1700
Galesburg, IL 61401

Dear Mr. Daniels:

In your last letter you asked why I chose not to raise your "due process" argument. There are several reasons. The Appellate Court handed down a decision in your case on December 22, 2003. I takes me a day or so to get the opinion. Then on December 24, 2003, I sent you a copy of the opinion with a letter stating that I had not decided whether I would file a Petition for Rehearing in your case, but that I would decide in a week or so.

On December 29, 2003, I assume before you received my letter of December 24th, you sent me a letter requesting that I file a supplement to my opening brief to raise a "due process" claim. The "due process" issue centered around your argument that the State did not prove every necessary element of the offense you were charged with, specifically you argued that it was never proved that you entered the building "without permission or authority." A copy of your *pro se* brief was included with your letter. Your letter was received by my office on January 5, 2004. Given that I did not receive your *pro se* brief until after the Court's opinion came down, I could not have filed a supplemental brief even if I thought your argument had merit.

Then, I decided not to include your "due process" issue in a Petition for Rehearing or Petition for Leave to Appeal because I do not believe that you had a chance of prevailing on it, that is, I believe the issue was meritless. The complaining witness in your case testified that "no one" had permission to be in the vacant apartment where the burglary took place. (R120) It can be inferred from the facts and circumstances of her testimony that no one had permission to enter the building either. The Appellate Court found that either your entry into common areas of the building or your entry into the apartment would have sustained your conviction because there were two illegal entries made. (Opinion, at 6)

C 107

While I chose not to raise your "due process" issue, I did send you a packet of information that instructed you how to file either a Petition for Rehearing or a Petition for Leave to Appeal to the Illinois Supreme Court yourself. The filing deadline for both petitions is past, but you could try to file a Petition for Leave to Appeal to the Illinois Supreme Court now with a motion to file instanter.

I hope this is of some help to you. If there are anymore questions or problems please do not hesitate to contact me. Thank you.

Sincerely,

MICHAEL JAMES MCDERMOTT
Assistant Appellate Defender