File Date: _May 15, 2008_____

Case No: _07 cv 6475_____

ATTACHMENT # _____

EXHIBIT _____4_____

TAB (DESCRIPTION) _____

STATE OF ILLINOIS    )
                     )  SS:
COUNTY OF C O O K    )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
#### COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE          )
STATE OF ILLINOIS,         )
                           )
          Plaintiff,       )
                           )
vs.                        )    No. 00 CR 07104
                           )
CHARLES DANIELS,           )
                           )
          Defendant.       )

REPORT OF PROCEEDINGS  of hearing had

before the Honorable THOMAS M. DAVY, on the 5th day of

September, 2002.

APPEARANCES:

        HON. RICHARD A. DEVINE,
            State's Attorney of Cook County, by:
        MR. EDWARD RONKOWSKI,
            Assistant State's Attorney,

                    appeared for the Plaintiff;

        MR. DENNIS SHERMAN,

                    appeared for the Defendant.

Patricia A. Grogan, CSR 084-001450
Official Shorthand Reporter
10220 South 76th Avenue
Bridgeview, Illinois 60455

AA-1

C  2 0 2

INDEX

PEO. VS. CHARLES DANIELS

SEPTEMBER 5, 2002

PAGES:  AA1

MOTION TO REDUCE

C    2 0 3

1    THE CLERK:  Charles Daniels.

2    THE COURT:  Did you give me back that information,
3 petition for mandamus.

4    MR. SHERMAN:  For the record, my name is Dennis Sherman.
5 I represent Mr. Daniels who is present before the Court.

6    Judge, we filed a motion to reconsider or reduce
7 sentence, filed it, we will stand on it.

8    THE COURT:  I believe that was filed before Mr. Daniels
9 filed his notice of appeal.

10    MR. SHERMAN:  Well, yes, you did it, I believe filing
11 any appeal, there has been a motion to reconsider, reduce
12 sentence and I think that stops the running of the thirty
13 days, which would be August 21st and I believe after ruling
14 there today, then the appeal should be taken, I will file a
15 notice of appeal, so just in case the Supreme Court doesn't
16 accept the mandamus, we will at least have argument to the
17 Appellate Court.

18    That depends of course, if the Court doesn't reduce the
19 Defendant's sentence to supervision or something like that.

20    THE COURT:  State's response to the written motion?

21    MR. RONKOWSKI:  State will stand on the original
22 argument made at aggravation, quite lengthy and I believe
23 fresh in the Court's mind.

24    THE COURT:  Mr. Sherman, anything else?


**AA-3**

1    MR. SHERMAN: No, sir.

2    THE COURT: I had indicated in response to defense's

3 motion as far as the burglary, residential burglary cite the

4 case of People vs. Maskell, 304, Ill.App.3d, 7799, 2d

5 District Illinois Appellate case. The proposition that

6 basically says the facts presented to Mr. Collell did not

7 only enter one particular apartment, entered the entire

8 building. I believe the evidence is sufficient to show the

9 intent to commit therein the offense of theft under the

10 Maskell case the charge the Defendant was in fact sentenced

11 under would be proper, so as far as that issue, as far as

12 the background of the Defendant, as set out in the

13 presentence investigation, the eight year sentence is

14 probably fine, so at this time, the Defense motion to

15 reconsider or reduce sentencing is denied.

16    MR. SHERMAN: Can I see the Maskell case? Can I see

17 the Maskell case?

18    THE COURT: Mr. Sherman, you are filing a Notice of

19 Appeal?

20    MR. SHERMAN: I would file it. I don't know if you

21 had, I would file it here, I usually file it in the Clerks

22 Office.

23    THE COURT: There is no problem with that. Your client

24 has filed a Notice of Appeal seeking leave to file mandamus

**AA-4**

C  2 0 5

1 to the Supreme Court of Illinois, don't know if you had an

2 opportunity to speak to him.

3    MR. SHERMAN:  I didn't, but I saw the one you gave me,

4 Judge, so as far as I'm concerned, the motion to reconsider

5 is denied and I will file a Notice of Appeal.  I believe

6 that if the Supreme Court wishes to accept certificate of

7 writ of mandamus, it can take it away from the Appellate

8 Court without any problem.

9    THE COURT:  Advise Mr. Daniels that needs to be filed

10 with the Supreme Court of Illinois.

11    MR. SHERMAN:  Right.

12    THE COURT:  Well, enough said.  Do you want the

13 mittimus to issue.

14    MR. SHERMAN:  Judge, he still has a pending case in

15 front of Judge Mannion when is the next date, I think he is

16 coming up shortly.

17    MR. SHERMAN:  The 26th.

18    THE COURT:  There was a stay of mittimus to the 26th.

19    I will reinstate that.

20    MR. SHERMAN:  Fine, thank you very much.

C   2 0 6

```
1    STATE OF ILLINOIS)
                      )  SS:
2    COUNTY OF COOK   )

3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
               COUNTY DEPARTMENT - CRIMINAL DIVISION
4

5    THE PEOPLE OF THE      )
     STATE OF ILLINOIS,     )
6                           )
              Plaintiff,    )
7                           )
              vs.           )  No.  00 CR 07104
8                           )
     CHARLES DANIELS,       )
9             Defendant.    )

10

11                         AFFIDAVIT

12

13        I, LOIS DAMITZ      , an Official Court Reporter

14   of the Circuit Court of Cook County, do hereby

15   certify that I have made a thorough and diligent

16   search of all stenographic notes recorded by me on

17   the 26th day of August     , 2002 , before the

18   Honorable JOHN MANNION   , Judge of said court, and I

19   find no record of proceedings of the above-entitled

20   cause.

21

22                         _Lois Damitz_____

23                         Official Court Reporter
                           License No. 084-00561
24
```

Z-1                              C  207

STATE OF ILLINOIS    )
                     )  SS.
COUNTY OF C O O K    )


           I, Patricia A. Grogan, Official

Shorthand Reporter of the Circuit Court of Cook County,

County Department-Criminal Division, do hereby certify that I

reported in shorthand the proceedings had in the above-

entitled cause, that I thereafter caused to be transcribed

into typewriting the above Report of Proceedings, which I

hereby certify is a true and correct transcript of the

proceedings before the Judge of said Court.


                              Official Shorthand Reporter
                              Circuit Court of Cook County


**AA-6**           C  208

STATE OF ILLINOIS     )
                            ) ss.
COUNTY OF COOK     )

**FILED**
AUG 26 2005
PER DOROTHY BROWN

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT  -  CRIMINAL DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | |
| Plaintiff-Respondent | ) | |
| | ) | CASE NO. 00CR-7104 |
| vs. | ) | |
| | ) | HONORABLE THOMAS DAVY |
| | ) | Judge Presiding |
| CHARLES DANIELS | ) | |
| Defendant-Petitioner | ) | |

## MOTION TO DISMISS
## PETITION FOR POST-CONVICTION RELIEF

Now comes the Respondent, People of the State of Illinois, by Richard A. Devine, State's

Attorney of Cook County, Illinois, through John Haskins, Assistant State's Attorney, and moves this

Honorable Court to strike the petitions for post-conviction relief and to dismiss the proceedings for

the following reasons:

1. Defendant was found guilty of burglary and sentenced as a Class X offender to eight years

imprisonment following a bench trial on July 16, 2002. Defendant's conviction was affirmed on

December 22, 2003. Defendant's petition for leave to appeal was denied on January 27, 2004.

Defendant's petition for re-hearing on the issued raised from direct appeal was denied on

June 23, 2004. Defendant filed a petition for post-conviction relief on November 5, 2004.

3. Petitioner's allegations come within the purview of the Act, most of the allegations are

barred by the doctrines of res judicata and waiver. According to the petition, petitioner's conviction

was affirmed by the Appellate Court on December 22, 2003. It is well established law in Illinois that

1

C   200

the scope of post-conviction review is limited by the doctrines of waiver and res judicata. Where the petitioner has appealed his convictions, all issues actually adjudicated on direct appeal are now res judicata, and all issues which petitioner could have raised in his direct appeal but failed to raise are now deemed waived. People v. Stewart, 123 Ill.2d 368, 528 N.E.2d 631 (1988); People v. Gaines, 105 Ill.2d 79, 473 N.E.2d 868 (1984); People v. Derengowski, 44 Ill.2d 476, 256 N.E.2d 455 (1970).

4. According to the United States Supreme Court in Strickland v. Washington, a convicted defendant in order to prevail on a claim of ineffective assistance of counsel must show: "First, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." Strickland v. Washington, 104 S.Ct. 2052, 2055 (1984).

In judging an ineffective assistance of counsel claim, the benchmark is whether the attorney's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington (1984), 466 U.S. 668, 686, 80 L.Ed.2d 674, 692-93, 104 S.Ct. 2052, 2064). The Strickland analysis involves a two step inquiry. The defendant must show that his attorney's specific acts or omissions to act fell below the standard of reasonable professional judgment. (Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695, 104 S.Ct. at 2066; People v. Albanese (1984), 104 Ill.2d 504, 525, 473 N.E.2d 1246, 1255, cert. Denied sub nom., Albanese v. Illinois (1985), 471 U.S. 1044, 85 L.Ed.2d 335, 105 S.Ct. 1061.) The reasonableness of an attorney's action is determined in light of the facts of the particular case, viewed not in hindsight, but as of the time of the conduct. (Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695, 104 S.Ct. At 2066; People v. Spicer (1987), 163 Ill. App.3d 81, 93, 516 N.E.2d 491, 500, appeal denied (1988), 119 Ill.2d 571, 522 N.E.2d 1254.) There is a presumption that counsel has provided adequate assistance and has exercised reasonable professional judgment. Strickland, 466

2

U.S. at 690, 80 L.Ed.2d at 695, 104 S.Ct. At 2066; Spicer, 163 Ill. App.3d at 93; 516 N.E.2d at 499.

The inquiry into the competency of counsel will not generally extend to areas involving counsel's judgment, discretion, trial tactics or strategy. People v. Barfield, 187 Ill. App.3d 190, 543 N.E.2d 812 (1989); People v. Smith, 182 Ill. App.3d 1062, 538 N.E.2d 1268 (1989); People v. Puente, 125 Ill. App.3d 152, 465 N.E.2d 682 (1984); People v. Gallardo, 112 Ill. App.3d 764, 445 N.E.2d 1213 (1983).

> "The inquiry into the competency of counsel will not generally extend to the exercise of judgment, discretion, trial tactics or strategy even where appellate counsel or the reviewing court might have handled the matter differently. A defendant is entitled to competent, not perfect representation, and the fact that a tactic in retrospect proved unsuccessful does not demonstrate incompetence. People v. Barfield, 187 Ill.App.3d 190, 197, 543 N.E.2d 812, 816 (1989)

In People v. Shum, the Illinois Supreme Court in commenting upon the first part of the Strickland test stated as follows:

> As to the first element of the test, this court has held that alleged incompetency arising from a matter of trial tactics or strategy will not support a claim of ineffective representation.... even in a death penalty case.... People v. Shum, 117 Ill.2d 317, 370, 512 N.E.2d 1183, 1205 (1987).

In People v. Madej, the Illinois Supreme Court stated as follows:

> A claim of incompetency which arises from a matter of defense strategy will not, of course, support a claim of ineffective representation. People v. Madej, 106 Ill.2d 201, 214, 478 N.E.2d 392, 397 (1985).

As a general rule, decisions as to what matters to object to and when to object are matters of trial strategy. People v. Grant, 38 Ill. App.3d 62, 347 N.E.2d 244, 251 (1976). The extent to which

C  211

witnesses are cross-examined is a matter involving strategy. People v. Puente, 125 Ill. App.3d 152,

465 N.E.2d 682, 687 (1984).

The Illinois Supreme Court has stated, in People v. Bryant, (1989) 128 Ill.2d 448, 539 N.E.2d

1221, as follows, regarding the trial counsel's alleged failure to file a Motion:

> ....An attorney's decision to file or not to file a
> motion is regarded as a matter of trial strategy, which
> must be given great deference....When counsel is
> planning trial strategy, judgments must be made and
> any errors in judgment do not constitute ineffective
> assistance of counsel.... People v. Bryant, supra at p.
> 458-459.

The Strickland standard is also applicable to allegation of ineffective assistance of appellate

counsel. People v. Caballero, 126 Ill.2d 248, 533 N.E.2d 1089; People v. Ferro (1990) 195 Ill.

App.3d 282, 551 N.E.2d 1378; People v. Sanders, (1991) 209 Ill. App.3d 366, 568 N.E.2d 200

In Sanders, the Appellate Court specifically addressed the issue of alleged ineffective

assistance of appellate counsel as follows:

> "Counsel is not obligated to brief every
> conceivable issue on appeal. It is not incompetent for
> counsel to refrain from raising those issues which, in
> his judgment, are without merit, unless his appraisal
> of the merits is patently wrong... The two-part
> Strickland analysis is appropriate to test the adequacy
> of appellate counsel's representation as well as that of
> trial counsel, so a defendant must show that he was
> prejudiced by the defense...." People v. Sanders, 209
> Ill. App.3d 366, 568 N.E.2d 200, 107 (1991).

> .....Where the defendant maintains, for
> example, that his appellate attorney failed to argue a
> particular issue, he must show the failure to raise that
> issue was objectively unreasonable, as well as a
> reasonable probability that, but for this failure, his
> sentence or conviction would have been reversed.
> People v. Caballero, 126 Ill.2d 248, 270, 533 N.E.2d
> 1089, 1096 (1989).

The petitioner has not met his burden under any prong of the Strickland test.

5. The Appellate Court affirmed the conviction of the petitioner Charles Daniels in People v. Daniels, Appellate Number 1-02-2905. See attached People's (EXHIBIT I)

6. The Appellate Court also affirmed the mandatory Class X sentencing.

7. Since the petitioner was convicted after a bench trial he was not entitled to Supreme Court Rule 402 admonishments before being sentenced to mandatory supervised release. The 402 admonishments only apply to guilty pleas.

8. The petitioner's allegation that appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel is meritless because the alleged ineffectiveness involved matters of trial strategy which are not subject to judicial review in post-conviction cases. People v. Barfield, supra.

WHEREFORE, the respondent prays that an order be entered by this Honorable Court, striking the petitions for post-conviction relief of the petitioner Charles Daniels, and dismissing the proceedings.

Respectfully submitted,

RICHARD A. DEVINE

State's Attorney of
Cook County, Illinois

By: _John Haskins_

John Haskins
Assistant State's Attorney

5

C  213

**NOTICE**

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

*affirmed*
*12-22-03*

FIRST DIVISION
DECEMBER 22, 2003

*TREVOR HAYES*

No. 1-02-2905

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

03-1667

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 00 CR 7104 |
| CHARLES DANIELS, | ) | Honorable Thomas M. Davy, Judge Presiding. |
| Defendant-Appellant. | ) | |

O R D E R

Following a bench trial, defendant Charles Daniels was convicted of burglary and sentenced as a Class X offender to eight years' imprisonment. Defendant contends on appeal that he was not proven guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he entered the common area of an apartment building. He argues that his unauthorized entry was to a dwelling place and was thus residential burglary rather than burglary, at a time when burglary and residential burglary were considered mutually exclusive offenses. Defendant also contends that mandatory Class X sentencing under section 5-5-3(c)(8) of the Code of Corrections (730 ILCS 5/5-5-3(c)(8) (West 2002)) violated his right to due process and trial by jury because the State is not required to give notice of its intent to sentence defendant as a Class X

1-02-2905

offender or to prove his convictions, the sequence of those convictions, or his age to a jury beyond a reasonable doubt.

At trial, Nora Elston testified that she owned an apartment building at 8232 and 8234 South Eberhart and lived in a first-floor apartment at the 8232 address. On February 12, 2000, the first-floor unit across from Elston's, at the 8234 address, was vacant and the doors were locked. Elston intended to rent the vacant unit again "eventually," but was storing some of her belongings there. At about 3:40 p.m., Elston looked out the window and saw defendant approach her building. She heard the doorbell for the vacant unit and then "fumbling" with the mailbox. Elston saw defendant enter the building; he was in the hallway for about three minutes before she saw him leave. Elston called the police. The police left after finding the door to the vacant unit locked and searching outside the building.

Later, Elston heard noises from the vacant unit and called the police again. She saw defendant leaving her building, by the front door, with some of the large plastic bags she had stored in the vacant unit. Elston followed defendant, but returned home when she lost sight of him. When the police arrived, Elston accompanied them and pointed out defendant. The officers arrested defendant, who was not carrying any bags. Defendant then "produced the bags from somewhere," and Elston identified them as hers. When Elston checked the doors to the vacant unit,

- 2 -

1-02-2905

they were still locked.  Elston had not given defendant
permission to be in the vacant unit or remove property from it.

Police detective James Carlassare testified that he
interviewed defendant on the evening of February 12, 2000.
Defendant told Detective Carlassare that he "was in a lot of
trouble" and "shouldn't have gone into that apartment."

Officer William Meister testified that he responded to
Elston's call.  Elston met Officer Meister in front of her
building and accompanied him and his partner to search for
defendant.  After a few minutes, Elston saw defendant.  Officer
Meister arrested defendant, who showed him two large plastic bags
about 10 yards away.  Officer Meister brought the bags back to
Elston, who identified the property in the bags as hers.

The trial court found defendant guilty of burglary.  Based
on prior burglary and residential burglary convictions, defendant
was sentenced, as a mandatory Class X offender under section 5-5-
3(c)(8), to eight years' imprisonment.

Defendant contends that he was not proven guilty of burglary
beyond a reasonable doubt because there was insufficient evidence
that he entered the common area of an apartment building.  He
also argues that his unauthorized entry was to a dwelling place
and was thus residential burglary rather than burglary.  He notes
that, at the time of the offense, burglary and residential
burglary were considered mutually exclusive offenses.  See <u>People</u>

C   216

1-02-2905

v. Childress, 158 Ill. 2d 275, 302 (1994).

In assessing the sufficiency of evidence, the relevant question is whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Pollock, 202 Ill. 2d 189, 217 (2002). It is the role of the trier of fact to determine the credibility of witnesses and the weight to give their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. People v. Tenney, 205 Ill. 2d 411, 428 (2002). It is not the function of this court to retry defendant or to substitute our judgment for that of the trier of fact regarding witness credibility or the weight of the evidence. Tenney, 205 Ill. 2d at 428. Thus, a conviction will be reversed only where the evidence is "so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." Pollock, 202 Ill. 2d at 217.

Under section 19-1 of the Criminal Code (Code), a "person commits burglary when without authority he knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft," 720 ILCS 5/19-1 (West 2002). Similarly, under Code section 19-3, one "commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the

- 4 -

1-02-2905

dwelling place of another, or any part thereof, with the intent
to commit therein a felony or theft." 720 ILCS 5/19-3 (West
2002).

Until June 1, 2001, section 19-1 provided that burglary
"shall not include *** the offense of residential burglary as
defined in Section 19-3 hereof." 720 ILCS 5/19-1 (West 2000).

> "As the defendant observes, the two offenses
> are mutually exclusive. Residential burglary
> can be committed only in dwelling places,
> while simple burglary cannot occur in a
> dwelling place." People v. Childress, 158
> Ill. 2d 275, 302 (1994).

However, in People v. Maskell, 304 Ill. App. 3d 77 (1999), where
defendant entered an apartment from the stairway and corridor of
an apartment building and removed property from the apartment,
the evidence was deemed sufficient to show that he committed both
burglary and residential burglary, and thus his burglary
conviction was affirmed. Maskell, 304 Ill. App. 3d at 84.
"Unlike Childress, *** the evidence in this case would allow a
rational trier of fact to find that defendant made two
unauthorized entries *** (1) into the building and (2) into the
apartment." Maskell, 304 Ill. App. 3d at 84.

For purposes of section 19-3, a "dwelling" is an "apartment
*** or other living quarters in which at the time of the alleged

- 5 -

C    218

1-02-2905

offense the owners or occupants actually reside or in their
absence intend within a reasonable period of time to reside."
720 ILCS 5/2-6(b) (West 2002).  A person committed residential
burglary when he entered and took items from vacant first-floor
and basement apartments of a building in which the owner lived on
the second floor and was using the unoccupied units for storage.
People v. Silva, 256 Ill. App. 3d 414, 420-21 (1993).

Here, Elston testified that she saw defendant enter and,
after three minutes in the hallway, leave her building.  Combined
with the facts that he later entered the vacant unit and removed
Elston's property and that Elston did not grant him permission to
be in the building, a reasonable person could conclude that
defendant entered a non-dwelling portion of a building without
authority and with the intent to commit theft.  As in Maskell,
the evidence is clear that defendant made two unauthorized
entries with intent to steal: into Elston's building and into the
vacant unit.  Maskell, 304 Ill. App. 3d at 84.  Indeed, if the
course of entry in Maskell -- through the common area of the
building to the dwelling unit -- constituted two entries, then
defendant's separate entries here -- into the building and out
again, then later into the vacant unit -- are even more clearly
two distinct entries and the basis of two distinct offenses.  The
fact that the vacant unit was a dwelling, and defendant's entry
thereto was residential burglary, thus did not preclude

- 6 -

C  219

1-02-2905

defendant's conviction for burglary.  There was sufficient evidence to convict defendant of burglary beyond a reasonable doubt.

Defendant also contends that the mandatory Class X sentencing provision of section 5-5-3(c)(8) violates the rights of due process and trial by jury because the State was not required to give defendant notice of its intent to sentence him as a Class X offender or required to prove his convictions, the timing or sequence of the convictions, or his age beyond a reasonable doubt to a jury.  However, this court has considered and rejected precisely this contention.  <u>People v. Smith</u>, 338 Ill. App. 3d 555, 564 (2003), citing <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 494-96, 147 L. Ed. 2d 435, 457-58, 120 S. Ct. 2348, 2365-66 (2000); <u>People v. Pittman</u>, 326 Ill. App. 3d 297, 300-01 (2001); and <u>People v. Lathon</u>, 317 Ill. App. 3d 573, 587 (2000).

Accordingly, the judgment of the circuit court is affirmed.  Affirmed.

GORDON,J., with O'MALLEY,P.J. and McBRIDE,J., concurring.

- 7 -

C  220

**David H. Norris**
*Attorney at Law*
**407 South Dearborn Street**
**Suite 1675**
**Chicago, Illinois 60605**
**312-697-0022**
**Facsimile: 312-697-0812**

October 24, 2005

Clerk of the Circuit Court of Cook County
Fifth Municipal District, Criminal Department
10220 S. 76th Ave.
Bridgeview, Illinois, 60455

Re:    People v. Charles Daniels, Case No. 0 CR 7104
       Filing of Amended Post Conviction Petition
       Return Copy Requested

Dear Sir/Madam,

Enclosed please find an original and one copy of the above referenced document for filing.  Please file stamp both documents and keep the original for your records.  Then please forward a stamped copy to me in the self address envelope contained herein.  Your anticipated cooperation is greatly appreciated.

Thank you.

Sincerely,

David H. Norris

C   221

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,       )
                                       )
          Plaintiff,                   )
                                       )
vs.                                    )       No. 00 CR 07104
                                       )
CHARLES DANIELS,                       )       Honorable Judge Thomas
                                       )       Davy, Presiding.
          Defendant.                   )

## AMENDED POST-CONVICTION PETITION

NOW COMES your Defendant, CHARLES DANIELS, by and through his

attorney, DAVID H. NORRIS, and hereby respectfully amends Defendant's original *pro*

*se* petition for post conviction relief and requests that this Honorable Court grant this

petition for post conviction relief and vacate Defendant's conviction.  In support thereof,

Defendant states the following:

1)    After a bench trial, Defendant was convicted of the burglary of Nora

      Elson's apartment building located at 8232 and 8234 South Eberhart, in

      Chicago, Illinois.

2)    Defendant was sentenced to eight years as a Class Offender.

3)    Defendant appealed to the Illinois Appellate Court and on December 22,

      2003, under docket number 02-2905, the Appellate Court affirmed

      Defendant's conviction and sentence.

4)    Defendant filed a Petition for Leave to Appeal to the Illinois Supreme

      Court and, on June 23, 2004, that Court declined to hear the appeal.

5)    Petitioner has been incarcerated since before he was sentenced in this

–1–

case and is currently housed at Hill Correctional Center.

## Factual Background

Defendant Charles Daniels was charged by information on March 10, 2000, with one count of burglary, in violation of 720 ILCS 5/19-1(a) (West 2000). (C.24-26) A bench trial before the Honorable Judge Thomas Davy commenced on June 5, 2002 and was continued to July 16, 2002. On those dates, the following testimony was adduced.

On February 12, 2000, the complainant, Nora Elston, was a 76 year old woman who lived in one of the two first floor apartments at 8232 S. Eberhart Street in Chicago. (R.115-116). She owned the building, which was a three story six-flat, and had been living there for about 15 years. (R.116) At approximately 3:40 p.m., she was at home alone. (R.117) The apartment across the hall from hers was vacant because the tenant had moved out. (R.117) Elston had been using the apartment to store some of her property. (R.117) She kept both the back and front doors locked. (R.117, 135-136) That vacant apartment was not being rehabbed, and was completely habitable. (R.125-126) Elston had planned to rent the apartment again in its present condition. (R.126)

From the apartment where she lived, Elston saw a man walk up to the front of the building and ring the bell for the vacant apartment. (R.118-119) Moments later she thought she heard a rattling at the mailbox. (R.118-119) Elston immediately called the police because she believed that individual to be "fool[ing]" with the mailbox. (R.118-119) Elston believed that the man was at the front door of her building for about three minutes. (R.128) After about 10 or 15 minutes, the Chicago Police Officer William Meister and his partner arrived. (R.128, 156-157) They checked the back yard and

C  223

looked around. (R.137, 157) At that time they also checked the door to the vacant apartment, found it locked and left because the man was gone and they could not find anything. (R.118-119, 137) After they had gone, Elston thought she heard a plastic bag being opened in the apartment across the hall, so she phoned the police again. (R.119, 128, 157)

While waiting for the police the second time, Elston saw a man proceed down the walkway of her building with a plastic bag filled with some of her belongings from the vacant apartment. (R.120, 129) She watched him walk away and decided to follow him so she could tell police where he fled to when they arrived. (R.121-122) Elston followed the man westbound down an alley just north of 83rd Street until he turned northbound in another alley. (R.130-131) She stopped following him because at one point, he was no longer carrying the plastic bag with her belongings. (R.130-131) She went back to her house to wait for police who arrived this time in about seven minutes. (R.129) The police put her in their squad car and drove around the alley where Elston had followed the man. (R.123, 132-133, 157-158) After a short time, the police and Elston located the suspect near 8240 S. Burnom. (R.124, 157-158)

When the police approached the man, he did not have any plastic bags on his person. (R.133-134) Elston testified that the plastic bags were 2 1/2 by 3 1/2 feet, and could not be secreted on one's person. (R.134-135) After the police spoke with the man, he briefly walked over to 510 W. 83rd Street, where police found two large plastic bags. (R.133-134, 159-160) Meister showed Elston the bags and she said that the items in the bags, consisting of some clothing, a clock radio, a discman, and some compact discs, were hers. (R.160-161) Meister gave Elston some of her clothing and

−3−

belongings back that day. (R.163-164)

When Elston returned to her building she made an inspection of the vacant apartment. (R.136)  The doors were still locked. (R.136)  Elston testified that she believed that all the windows had been locked, but admitted, "[o]ne of them had to be open for him to come in." (R.136)  Elston identified defendant in court as the man who she saw leave her building with her property. (R.125)

Chicago Police Detective James Carlassare, assigned to Area 2, testified regarding post-arrest events. (R.150-155)

The State then rested its case-in-chief and the defense motion for a directed finding was denied. (R.164-166).  The defense then rested. (R.166)  The trial court then announced its ruling, finding defendant guilty of burglary, and entered a verdict on the finding. (R.166-167)

At the hearing on the motion for new trial, defense counsel argued that defendant should have been convicted of residential burglary, not burglary, and reminded the court that the two were mutually exclusive charges. (R.170-172)  The State responded by arguing that the common areas of the building at issue here were not a "dwelling," but merely a building for purposes of the simple burglary statute. (R.172-173)  Furthermore, the apartment was vacant, meaning no one intended to live in the apartment within a reasonable amount of time. (R.172-173)  The State also argued that the statute had already been corrected, so that the offenses are no longer mutually exclusive.  The defense again argued that the apartment building was a residence under the statute. (R.174)

The court found that defendant made two separate unauthorized entries, one

C    2 2 5

into the apartment building and the other into the vacant apartment. (R.177-179)  The

trial court stated, "[H]ad the defendant been charged with the entry into a specific

apartment [Childress and the residential burglary statute] would still apply since there

are numerous cases that say a building is a dwelling if going to intent to be used as a

dwelling regardless of who would be living there." (R.178)  The trial court then found, "In

this particular case, the testimony of Ms. Elston was that she heard some noises at the

entryway . . . Entry was apparently made through there and through that area the

defendant then entered the particular vacant apartment. (R.178-179)  The judge then

added:

> [U]nless the evidence would be that someone entered directly into a particular
> apartment through a window or a door leading directly from that apartment, from
> outside into the apartment that as long as there is a common area hallway,
> stairway, or whatever, that entry into that building into that common area would
> sustain the charge of burglary.

(R.179)

Finding that because the defendant entered the building on his way into the apartment,

the court denied defendant's motion for a new trial and sustained the charge of

burglary. (R.177-179)      The court sentenced defendant to a Class X sentence of

eight years on the sole count of burglary based on his prior convictions. (R.182-183)

Defendant's appeal followed.  The appellate court affirmed Defendant's conviction and

sentence on December 22, 2003.  Subsequently, Defendant filed a Petition for Leave to

Appeal to the Illinois Supreme Court, but that Court declined to hear this case.

Defendant filed his *pro se* post conviction petition from Hill Correctional Center.

Petitioner then retained private counsel to supplement and/or amend his *pro se* petition.

This Honorable Court granted counsel leave to file the amended petition and a

C   226

continuance to prepare the filing.

## ARGUMENT

### PETITIONER'S TRIAL COUNSEL WAS INEFFECTIVE FOR ELICITING TESTIMONY WHICH ULTIMATELY PERMITTED THE TRIAL COURT TO FIND PETITIONER GUILTY OF THE BURGLARY AT TRIAL. LIKEWISE, APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THIS ISSUE ON DIRECT APPEAL.

Defendant was charged with the burglary of Nora Eltson's apartment building located at 8232 and 8234 South Eberhart, in Chicago, Illinois. The State's theory of the case was that Defendant entered one of the apartments on the ground floor of that building and took the belongings of Mrs. Elston. (R.117) The direct examination of Mrs. Elston by the State's Attorney assigned to the case reveals as much. (R.116-125) This contention is also supported by the fact that the State's Attorney never asked Mrs. Elston if anybody had permission or authority to enter the "common areas" of the building. Rather the State's Attorney only asked about permission or authority with respect to the vacant apartment. (R.124) During cross-examination, defense counsel elicited testimony that the unlawful entry could have included an unlawful entry into the "common areas" of the building. There was nothing in the direct examination of the complaining witness which could have been used to support such a finding.

Subsequently, the trial court ruled that there were two illegal entries, the first into the apartment building, and the second into the actual living unit on the first floor of that building. (R.176-179) The court said the entry into the actual apartment unit was a residential burglary, and that offense had never been charged. (R.176-179) The trial court then held that defendant was guilty of burglary based on his entry into the

-6-

C    227

"common areas" of building. (R.176-179) Because the trial court found Defendant guilty of the burglary of the "common areas" of the building, and it was defense counsel who supplied the trial court with the testimony regarding those "common areas," defense counsel essentially helped to prove the State's case. By proving essential elements of the State's case, defense counsel provided ineffective assistance of counsel to Defendant.

**A.    Waiver is not an issue in this case, as appellate counsel was ineffective for failing to raise this argument on direct appeal.**

The purpose of a post-conviction proceeding is to permit inquiry into constitutional issues involved in the conviction and sentence that were not, and in some cases could not have been, adjudicated previously on direct appeal. People v. Haynes, 192 Ill. 2d 437, 464, 737 N.E.2d 169 (2000). A claim that could have been presented on direct appeal, but was not, is waived. Haynes, 192 Ill. 2d at 465. By contrast, where the facts relating to the claim appear in the record but appellate counsel neglected to raise them, the application of the waiver doctrine has been relaxed. People v. Mahaffey, 194 Ill. 2d 154, 170, 742 N.E.2d 251 (2000).

In this case, the claims raised in the post-conviction petition are based on facts which were of record at the time of the direct appeal. Because Defendant's appellate counsel failed to raise, or even consider, these arguments in the direct appeal, appellate counsel was likewise constitutionally ineffective. Therefore, the claims raised in Defendant's petition were not barred by waiver. Mahaffey, 194 Ill. 2d at 170.

In order to demonstrate ineffectiveness of appellate counsel, a defendant must

show that counsel's decision not to raise an issue was objectively unreasonable and that a reasonable probability exists that the defendant would have been granted relief had the issue been raised. <u>People v. Caballero</u>, 126 Ill. 2d 248, 533 N.E.2d 1089, 1096 (1989) (applying ineffectiveness test set forth in <u>Strickland v. Washington</u> to appellate representation).

In the present case, Defendant's appellate counsel on direct appeal filed a brief which argued: 1)the burglary conviction must be reversed because there was insufficient evidence for the trial court to find beyond a reasonable doubt that defendant entered and burglarized the "common areas" of the apartment building; 2) the burglary conviction must be reversed because there was insufficient evidence for the trial court to find defendant guilty of simple burglary where the unauthorized entry was to a dwelling place, as burglary and residential burglary were mutually exclusive offenses at the time the offense in this case was committed, and 3) an issue regarding <u>Apprendi v. New Jersey</u>, which is not relevant in this post conviction petition. As detailed in the following section, however, appellate counsel failed to raise a number of meritorious issues that had the reasonable probability of securing relief for Defendant.

The acts and omissions of appellate counsel prejudiced Defendant because but for trial counsel's errors Defendant was plausibly looking at a directed verdict on the sole count of the indictment, burglary of Nora Elston's home. At least that was the case until trial counsel elicited harmful testimony which helped the State prove essential elements of its case. On direct appeal, appellate counsel would have had a better chance to obtain relief for Defendant. Now, because appellate counsel declined to raise this issue, Defendant must attempt to get relief through the post-conviction

C    229

process. The issue Defendant now raises was clearly found in the Record. Moreover, even a cursory reading of Mrs. Elston's direct examination shows that the State *could not* have meet its evidentiary burden for a burglary to the "common areas" of the building.

The State may also argue that it was trial strategy for defense counsel to ask the line of questioning which elicited the harmful testimony regarding the "common areas." This would be a specious argument. Webster's Dictionary defines "strategy" as "a careful plan or method; a clever stratagem; the art of devising or employing plans or stratagems *toward a goal*." See Webster's Ninth New Collegiate Dictionary, at 1165 (emphasis supplied). The hallmark of a trial "strategy" would be to obtain some sort of goal or relief for a defendant. And what was that relief or goal in this case on the part of defense counsel? It was assisting the State to prove the essential elements of its case. In truth, there could have been no viable strategy for defense counsel to elicit the "common areas" testimony in this case. The same holds equally true for appellate counsel for failing to raise a clearly viable issue on direct appeal, when it would have been procedurally and substantially easier to do so then.

Appellate counsel did not argue the fact that trial counsel assisted the State in proving its case against Defendant. Because this was a objectively unreasonable oversight on the part of appellate counsel, and because appellate counsel's decision or omission prejudiced Defendant, the waiver rule should not apply in this case.

C  230

**B.  Trial counsel provided ineffective assistance of counsel when, during trial, he elicited testimony which ultimately helped the State prove its case against Defendant.  This mistake was particularly egregious where the State had not elicited any testimony on the point of the unauthorized entry into the "common areas" of the building.**

Under both the United States Constitution and the Illinois Constitution, an accused has a due process right to the effective assistance of counsel in a criminal prosecution.  U.S. Const. amends. VI, XIV; Ill. Const. (1970), Art. I, § 8; People v. Leeper, 317 Ill. App. 3d 475, 740 N.E.2d 32, 38 (5th Dist. 2000).  A defendant is denied effective assistance of counsel where his attorney's performance falls below an objective standard of reasonable representation and there is a reasonable probability that the outcome of the proceedings would have been different but for the attorney's inadequate performance.  U.S. Const. Amends. VI; XIV; Ill. Const. art. I, §8 (1970); Strickland v. Washington, 466 U.S. 668, 687-88, 692-94, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); People v. Albanese, 104 Ill. 2d 504, 473 N.E.2d 1246, 1255 (1984) (adopting Strickland standard); see also People v. House, 141 Ill. 2d 323, 388, 566 N.E.2d 259 (1990); People v. Perez, 148 Ill. 2d 168, 186, 592 N.E.2d 984 (1992).

The Post-Conviction Hearing Act provides a remedy for defendants who have suffered a substantial deprivation of their constitutional rights.  725 ILCS 5/122-1 (West 2004).  There are three stages under the Act, the first of which is that the circuit court must review the petition within 90 days of its filing in order to determine whether the

C  231

petition is "frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2). After that finding, the petition moves to the second stage of the process where the State is permitted to respond. In the instant case, the Court granted leave for private counsel to file his appearance before the State could respond to the petition or file a motion to dismiss.

The purpose of the second stage of the post-conviction process is to determine whether the defendant is entitled to an evidentiary hearing on his petition. People v. Coleman, 183 Ill. 2d 366, 381, 701 N.E.2d 1063 (1998). The dismissal of the petition is warranted only when the defendant's allegations of fact, liberally construed in the defendant's favor and in light of the original trial record, fail to make a substantial showing of a violation of an important state or federal constitutional right. Coleman, 183 Ill. 2d at 381. The trial court must assume the truth of the allegations contained in the petition and the attached documentation. People v. Ward, 187 Ill. 2d 249, 255, 718 N.E.2d 117 (1999); People v. Paleologos, 345 Ill. App. 3d 700, 706, 803 N.E.2d 108 (1st Dist. 2003). Factual disputes raised by the pleadings that require determination of the truth or falsity of the supporting documents, including but not limited to affidavits and exhibits, **cannot** be made at a hearing on a motion to dismiss at the second stage, and can only be resolved by an evidentiary hearing. Coleman, 183 Ill. 2d at 381, *citing* People v. Caballero, 126 Ill. 2d 248, 259, 533 N.E.2d 1089 (1989), and People v. Wegner, 40 Ill. 2d 28, 31-32, 237 N.E.2d 486 (1968); People v. Tate, 305 Ill. App. 3d 607, 610-11, 712 N.E.2d 826 (1st Dist. 1999).

In People v. DeSimone, 9 Ill. 2d 522, 138 N.E.2d 556 (1956), the Supreme Court

C   232

decided a case where trial counsel was so incompetent, that he showed a lack of knowledge of basic criminal procedures and the rules of evidence, resulting in a complete failure to develop a defense.  Defendant does not claim that is exactly what happened at his trial, however, DeSimone is instructive.  In Defendant's case, defense counsel elicited harmful testimony during cross examination of the State's complaining witness.  Defendant does not wish to disparage trial counsel, but a mistake was made and defense counsel was the one who made it.  Defense counsel can be the most competent attorney in the jurisdiction and still make a mistake during a bench trial which helped the State prove its case.  Moreover, defense counsel's line of questioning could have been well-intentioned, but the fact remains that *but for* defense counsel eliciting the trial testimony regarding the "common areas," the trial court could not, as a matter of law, have made a finding of guilty for the burglary of those areas.

During trial, the State failed to elicit any testimony regarding Defendant's alleged entry into the "common areas" of the apartment building. (R.115-125)  Mrs. Elston's direct examination testimony is only approximately 10 pages in length.  There is nothing contained in that brief examination which supports the notion that Defendant entered into the hallway or any other "common area" of the building.  Mrs. Elston heard him ring the bell on the front porch and "fumbl[e] with the mailbox" but that is all. (R.118)  According to the direct examination, Mrs. Elston never heard or saw anybody in the hallway or "common areas" of the building past the mailboxes. (R.118-119)  Mrs. Elston called the police but the individual was one before the police arrived. (R.119)  On the way to get her mail after the police left, Mrs. Elston heard some plastic bags rattling in the apartment across from hers which she knew to be vacant. (R.119)  Later, from her

-12-

apartment window she saw the same individual as earlier walk down her front walk way and leave her property. (R.120)  That is all that was contained in the relevant portions of Mrs. Elston's testimony on direct examination.

To be sure, defense counsel was able to clear up Mrs. Elston's somewhat muddled testimony on cross-examination.  Through cross examination, we learned that Mrs. Elston was actually looking out a window when she saw the man walk up the front walkway and onto the porch before she heard the noise at the mailboxes. (R.126)  She lost sight of the man when he "came in the building" which presumably was when he entered the foyer or vestibule where the mailboxes are found. (R.127)[1]  Mrs. Elston clearly stated that she never heard him come up the stairs, and thereby, enter the hallway outside her apartment door. (R.127-128)  Then counsel elicited the following damaging testimony:

Q:     How long would you say he was in the **hallway** of your building?

A:     I'd say three minutes.

Q:     Thirty minutes?

A:     Three minutes.

(R.128; emphasis supplied)  This testimony is damaging in several ways.  First, Mrs. Elston never said that Defendant was in the hallway of her building.  The Record is

---

[1]     Although there was no testimony to this end, most mailboxes in Chicago apartment buildings are located outside or in a semi-public area; that is to say, there is usually some sort of security door past the mailboxes which stops the general public from entering the building.

devoid of any such testimony prior to defense counsel's question cited above. This question arguably puts Defendant past the security door by the mailboxes and in the "common areas" of the building. Whether defense counsel merely chose the wrong word when he used the term "hallway" is unclear. This line of questioning, incidentally, directly contradicts Mrs. Elston's testimony on direct examination where she never stated that she saw or heard anybody in the actual hallway of the apartment building. (R.118-119) Second, it undercuts the other portions of the cross examination testimony of Mrs. Elston where she states, clearly and unequivocally, that the doors to the vacant apartment were locked and that Defendant must have come in through an open window. (See e.g. "one of them had to be open for him to get in") (R.135-136)

This issue of the lock on the doors of the vacant apartment inures to the benefit of Defendant. The vacant apartment had a lock on the front door. (R.135) When the police arrived the first time, they checked the front and back door to the vacant apartment and both doors were locked. (R.137) As for the windows in the vacant apartment, they were all shut but not all locked. (R.136) How do we know this? Because Elston testified that "one of them [the windows] had to be open for him to come in." (R.136) And, incidentally, when police arrived the second time, the vacant apartment doors were still locked. (R.136) The testimony of the complaining witness was clear: who ever burglarized her vacant apartment must have come through the window. This would mean, by necessity, that the burglar circumvented the "common areas" of the building.

Based on this evidence it is unclear how this Honorable Court could have convicted Defendant of burglary of the "common areas" of the building where the

State's complaining witness clearly testified that she believed the Defendant came into the apartment through an open window—thus never even stepping foot in the "common areas." That said, *the only testimony* at all regarding the "common areas" was elicited by defense counsel not by the State.

For these and other reasons articulated in this amended post conviction petition, Defendant prays that this Honorable Court will grant an evidentiary hearing on his petition.

**C.    The damaging testimony elicited by defense counsel in this case was relevant to the State's case and non-cumulative to other testimony elicited by the State on direct examination.**

Contrary to what the State will probably argue, this testimony elicited by defense counsel was not cumulative to the State's case. "Claiming evidence is cumulative involves a determination that such evidence adds nothing to what is already before the jury." People v. Molstad, 101 Ill. 2d 128, 135, 461 N.E.2d 398 (1984). The trial court, during trial, observed defense counsel try to poke holes in the State's case based on the fact that burglary and residential burglary were mutually exclusive offenses at the time of this offense. That was a valid theory of the defense. However, defense counsel should have simply highlighted the fact that the State could not have proven Defendant guilty of a burglary of the "common areas" of the building based only on the direct examination of the complaining witness. A conviction for burglary to the "common areas" was simply not possible based on Mrs. Elston's direct examination.

−15−

Mrs. Elston did not see or hear Defendant in the hallway or anywhere beyond the mailboxes. Even when she heard the plastic bags rustling in the vacant apartment, Mrs. Elston still could not see that it was Defendant inside. The inference that Defendant was inside the apartment came from the fact that he had her belongings after Mrs. Elston saw Defendant walk down the sidewalk. It is **how** Defendant came to be in the vacant apartment that is now at issue before this Honorable Court. Since no evidence was offered to that end in the direct examination of Mrs. Elston, the testimony elicited by defense counsel on cross that damaged the defense case could not have been cumulative.

D.    **Defense counsel was also ineffective for failing to argue that the State had not proven all of the essential elements of the offense of burglary of the "common areas" of the apartment building.**

Defense counsel failed to realize that the State had not proven the essential elements of the offense of burglary of the "common areas" of the building. Defendant was charged with burglary of the "common areas" of the building. Burglary has several essential elements, for purposes of this argument, the relevant element is that the entry to the building must be "without authority." See generally, 720 ILCS 5/19-1 (West 2004); People v. Meeker, 86 Ill. App. 3d 162, 407 N.E.2d 1058 (5th Dist. 1980); People v. Baker, 59 Ill. App. 3d 100, 375 N.E.2d 176 (2nd Dist. 1978).

The State's Attorney never asked Mrs. Elston if anybody had authority to be in the "common areas" of her building. The State never asked if anybody had authority to enter those premises or to remain there. Rather the State's Attorney only asked about

-16-

C    237

permission or authority with respect to the **vacant apartment**. (R.124) This is

insufficient to prove Defendant guilty of burglary of another area of the building.

The trial court was clear in its findings of fact. The Court found that Defendant

made two separate unauthorized entries, one into the apartment building and the other

into the vacant apartment. (R.177-179) The residential burglary to the apartment was

never charged. So the testimony regarding "without authority or permission" as to the

vacant apartment is irrelevant to the offense of simple burglary to the "common areas."

The Court saw fit to divide the building into different sections in its findings of fact. If

the State decided to only charge Defendant with entry into one of those areas (the

"common areas") then the State was required to prove all essential elements of the

offense with respect that charged area.

Had the trier of fact been aware of the fact that the State failed to prove all

essential elements of the offense of burglary to the "common areas," there is a

reasonable probability that the outcome of the trial would have been different. For that

reason, both trial and appellate counsel were ineffective in failing to argue this point at

trial and on direct appeal, respectively.

E.    **Defendant's arguments in this post-conviction petition are not barred by**

      **the doctrine of *res judicata*.**

The State may choose to argue that because appellate counsel

raised similar issues regarding the charged offense of burglary, and the proof required

to sustain such a charge, that Defendant's issues are barred by the doctrine of *res*

-17-

C    238

*judicata.* The arguments and issues presented in this petition are not barred by the doctrine of *res judicata.* The doctrine of *res judicata* prevents defendant from raising claims, which have already been decided on direct appeal or in a previous post-conviction petition. People v. Jones, 191 Ill. 2d 194, 198, 730 N.E.2d 26 (2000); People v. Tenner, 206 Ill. 2d 381, 392, 794 N.E.2d 238 (2002). However, when new facts come to life or when counsel failed to raise those argument at a previous stage, such claims are not barred by *res judicata.* Statler v. Catalano, 293 Ill. App. 3d 483, 487, 691 N.E.2d 384 (5th Dist. 1997), *citing* City of Des Plaines v. The Metropolitan Sanitary District of Greater Chicago, 16 Ill. App. 3d 23, 24-25, 305 N.E.2d 639 (1st Dist. 1973).

On appeal, counsel argued that the State had not met its burden in proving Defendant guilty beyond a reasonable doubt. Such an argument, strictly speaking, is an attack on whether the State proved all of the essential elements of the offense. However, appellate counsel never made the argument with respect to the "without authority" element of the offense of burglary. In addition, Defendant is arguing that appellate counsel was ineffective for failing to raise several issues. For both of these reasons, the doctrine of *res judicata* does not apply to this petition or the issues raised therein.

C   239

## CONCLUSION

For the above reasons, Defendant's post-conviction petition makes a substantial showing of a deprivation of Defendant's constitutional right to effective assistance of counsel. Defendant prays that this Honorable Court permit this matter to proceed to an evidentiary hearing.

Respectfully submitted,

DAVID H. NORRIS
ATTORNEY FOR CHARLES DANIELS
407 S. Dearborn Street
Suite 1675
Chicago, Illinois 60605
312-697-0022

### NOTICE OF FILING

To:   A.S.A. John Haskins
      Cook County State's Attorneys Office – Post Conviction Unit
      2650 S. California Ave., Chicago, IL 60608

**PLEASE TAKE NOTICE** that on the 20th day of October, 2005, I filed with the Clerk of the Circuit Court, Fifth Municipal District, located at 10220 S. 76th Avenue, Bridgeview, Illinois, 60455, Amended Post Conviction Petition, by mail, postage prepaid.

### CERTIFICATE OF SERVICE

**PLEASE TAKE FURTHER NOTICE** that on the 20th day of October, 2005, I served a copy of the above referenced Petition to Plaintiff's counsel, Assistant State's Attorney, John Haskins, by mail, postage prepaid.

David H. Norris
Attorney for Petitioner

–20–

C   940

STATE OF ILLINOIS    )
                           ) §
COUNTY OF COOK    )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT – CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS    )
           Respondent    )
                         )
vs          )    P.C. NO. 00CR 07104
                         )    HONORABLE THOMAS DAVY
CHARLES DANIELS    )    Judge Presiding
           Defendant    )



## PEOPLES RESPONSE TO AMENDED POST-CONVICTION PETITION

Now comes the People of the State of Illinois, by and through their attorney, Richard A. Devine, State's Attorney of Cook County, through his assistant, John Haskins, and respectfully moves this Honorable Court to dismiss the petition for post-conviction relief for the following reasons:

1. The respondent incorporates the original motion to dismiss into this response.

2. In the Amended Post-Conviction Petition, the petitioner argues ineffective assistance of trial and appellate counsel's. This allegation is based on hindsight rather than counsel's perspective at the time of counsel's conduct. Petitioner's argument is based on the erroneous assumption that based on the victim Nora Elston's direct examination, the State would be unable to prove the crime of burglary.

3. The petitioner's trial attorney Dennis Sherman was aware that the petitioner Charles Daniels had given an incriminating statement to police detective James Carlassare on the evening of February 12, 2000. At the time that Mr. Sherman cross-

1

C  241

examined Ms. Elston he was aware that his client had made that incriminating statement to the police concerning the crime. This was definitely a matter of trial strategy not subject to judicial review in post-conviction cases.

4. The factual scenario in the appellate opinion, (Respondent's Exhibit 1, in the original Motion To Dismiss), is more accurate and less biased than the Petitioner's statement of facts which is self-serving.

5. In the Amended Petition the petitioner alleged that his appellate counsel was ineffective where he filed a brief in which he argued that the burglary conviction must be reversed because there was insufficient evidence for the trial court to find beyond reasonable doubt that defendant entered and burglarized the "common areas" of the apartment building.

The petitioner further alleges the acts and omissions of appellate counsel prejudiced defendant because, but for trial consul's errors, defendant was plausibly looking at a directed verdict on the sole count of the indictment, burglary of Nora Elston's home.

In presenting this argument petitioner ignores the fact that he himself had made an incriminating statement to the detective after receiving the Miranda warnings on the evening the crime was committed.

Dennis Sherman was cross-examining the victim Ms. Elston because he felt it necessary to attack her credibility.

C  242

On pg. 5 of the Appellate Court opinion <u>People v. Daniels</u>, No. 1-02-2905, the Appellate Court held:

> "Here, Elston testified that she saw defendant enter and, after three minutes in the hallway, leave her building. Combined with the facts that he later entered the vacant unit and removed Elston's property and the Elston did not grant him permission to be in the building, a reasonable person could conclude that defendant entered a non-dwelling portion of the building without authority and with the intent to commit theft."
> As in <u>Maskell</u> the evidence is clear that defendant made two unauthorized entries with intent to steal: into Elston's building and into the vacant unit. <u>Maskell</u> 304 Ill. App. 3rd at 84.

This issue is res judicata.

Since the petitioner's trial attorney was not ineffective but exercising trial tactics he was not ineffective pursuant to <u>Barfield</u> 187 Ill. App. 3d 190, 543 N.E. 2 812 (1989).

Appellate counsel was not ineffective for not raising ineffective assistance of trial counsel, since the trial counsel was not ineffective.

6.    In the case supplemental report, Detective James Carlasse star No. 21210 stated that on February 12, 2000 he interviewed the petitioner. After reading the petitioner his constitutional rights, the petitioner related he wanted to proceed with the interview. When the petitioner was asked how he gained entrance to the building, Charles Daniels told the detective that the front door was unlocked.

This entrance would have placed petitioner in the common area of the building where the burglary occurred.

Peoples Exhibit One – Case Supplemental Report July 9, 2002

3

C  243

WHEREFORE, the respondent prays that an order be entered by this Honorable Court, in dismissing the Post-Conviction Petition.

Respectfully submitted

RICHARD A. DEVINE
State's Attorney of Cook, County, IL

By: _____

John Haskins
Assistant State's Attorney

4

**PLAINTIFF'S**

**EXHIBIT ONE**

**Case Supplemental Report  July 9, 2002**
**Charles Daniels**

# CASE SUPPLEMENTARY REPORT

3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police - Bureau of Investigative Services Personnel Only)

Case Id :  723781
Sup ID :  283180 CASR301

| CLEARED CLOSED (ARREST AND PROSECUTION) | | DETECTIVE SUP. APPROVAL COMPLETE | |
|---|---|---|---|
| Last Offense Classification/Re-Classification | IUCR Code | Original Offense Classification | IUCR Code |
| BURGLARY / Unlawful Entry | 0620 | BURGLARY / Unlawful Entry | 0620 |

| Address of Occurrence | Beat of Occur | No of Victims | No of Offenders | No of Arrested |
|---|---|---|---|---|
| 8232 S EBERHART AV | 631 | 1 | 1 | 1 |

| Location Type | Location Code | Secondary Location | |
|---|---|---|---|
| Residence | 290 | | |

| Date of Occurrence | Unit Assigned | Date RO Arrived | Fire Related? | Gang Related? | Domestic Related? |
|---|---|---|---|---|---|
| 12-FEB-2000 15:40 | 0868 | 12-FEB-2000 15:45 | NO | NO | NO |

| Reporting Officer | Star No | Approving Supervisor | Star No | Primary Detective Assigned | Star No |
|---|---|---|---|---|---|
| CARLASSARE, James | 21210 | ROWLAND, Cisco | 908 | CARLASSARE, James | 21210 |
| Date Submitted | | Date Approved | | Assignment Type | |
| 10-JUL-2000 23:23 | | 12-JUL-2000 19:52 | | FIELD | |

## THIS IS A FIELD INVESTIGATION CLEARED CLOSED (ARREST AND PROSECUTION) REPORT

**VICTIM(S) :**

**ELSTON, Nora**
Female / Black / 73
RES:   8232 S Eberhart Av
Chicago IL
773-994-4933

**OFFENDER(S):**

**DANIELS, Charles**                            -- In Custody --
Male / Black / 45 Years
RES:   7624 S May St
Chicago IL
DESCRIPTION:   6'01,180,Black Hair, Brown Eyes, Medium Complexion,

**OTHER PROPERTY :**

Clothing And Play Station Ster

**LOCATION OF INCIDENT :**

8232 S Eberhart Av
Chicago IL
290 - Residence

**DATE & TIME OF INCIDENT :**

12-FEB-2000 15:40

F086890

C   246

DETECTIVE SUP. APPROVAL COMPLETE

**PERSONNEL ASSIGNED:**    Detective/Youth Investigator
CARLASSARE, James M            # 21210
312 - 747 - 8271

Reporting Officer
MEISTER, William J             # 15752      **BEAT: 0668**

**OTHER INDIVIDUALS**        **ELSTON, Nora**    ( Person Reporting Offense )
**INVOLVED:**
Female / Black
**RES:**   8232 S Eberhart Av
Chicago IL
773-994-4933

**CRIME CODES SUMMARY:**     0620 - Burglary - Unlawful Entry

**IUCR ASSOCIATIONS:**       0620 - Burglary - Unlawful Entry

ELSTON, Nora      ( Victim )
DANIELS, Charles      ( Suspect )

**REPORT DISTRIBUTIONS:**    No Distribution

**INVESTIGATIONS:**

DATE ASSIGNED:    12-Feb-00 @ 1730 hours

DATE VICTIM INTERVIEWED:  12-Feb-00 @ 1815 hours

VICTIM:    Elston,Nora F-1-73
Dob 25-Mar-26
SSN 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
8232 S.Eberhart
773/994-4933

IN CUSTODY:    Daniels,Charles M-1-45
DOB  06-Sep-54
SSN  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
IR   486907

C   247

CB   014405399
7624 S.May
773/224-4050

ARRESTING OFFICERS:   Meister,W. #15752 006
    Black,P.  #10026 006
    Kaczynski,P. #15098 006
    Hill,D.  #17676 006

DATE,TIME & LOCATION OF ARREST:  12-Feb-00 @ 1545 hours
    8245 S.Vernon

CHARGES:    720ILCS5/19-3 Burglary

COURT DATE & BRANCH:   18-Feb-00  Branch 38/2

LOCATION:    12-Feb-00 @ 1540 hours
    8234 S.Eberhart

EVIDENCE:    Inv#2304303/04 returned to owner

INVESTIGATION:    R/det was assigned this job by Area Two supervisor staff. Upon R/det's arrival
in 006 dist R/det conducted an investigation which revealed the following facts.

   R/det interviewed Victim who related that on date and time of listed incident victim heard
someone enter the hallway to the apartment building in which the victim resides. Victim could hear
the doorbell of the apartment across the hall from victim being rung. Victim knew that apartment
across the hall was unoccupied due to victim being the land lord. Victim was in the process of
renovating said apartment and had several of her personal belongings in said apartment. As
subject exited hallway victim observed subject walk to the rear of building. Victim from her rear door
observed same subject checking the door knob of rear door of apartment across the hall. When
subject could not gain entry subject walked back towards the front of the building. At this time victim
summonsed the police. Upon police arrival units toured the area with negative results. After
responding units left victim could hear movement coming from within the apartment across the hall.
At this time victim summonsed the police again. Prior to police arrival victim heard the front door of
said apartment closing. At this time victim looked out her front window and observed same subject
carrying several gray plastic trash bags and a black gym bag. Upon arrival of police arresting
officers along with victim toured area and located offender at 8245 S.Vernon. Offender was
positively identified at scene.

   At this time subject was placed into custody. Offender was in possession of a black duffle bag.
Said bag contained several items which victim identified as belonging to her. Police also located
two gray plastic bags containing misc. clothing at 510 E.83rd st. Victim also identified misc. clothing
as belonging to her. At this time subject was Mirandized and transported to 006 dist for processing.

   R/det interviewed offender at 1830 hours. Offender was read his constitutional rights from a
pre-printed card. Offender related that he understood these rights and wanted to proceed with the

C   248

DETECTIVE SUP. APPROVAL COMPLETE

interview. Subject stated in essence and not verbatim, I'm in a lot of trouble. I have a problem, I need help. I see a psychiatrist , I pay 150.00 an hour. I knew I shouldn't have gone into that apartment. I have a good job. Subject also related when asked how he gained entry that the front door was unlocked.

ASA McNamara approved felony charges at 1910 hours. This case is clear closed by arrest by prosecution.

C   249

Charles Daniels
N-63102
PO Box 1000
Taylorville, Illinois
        62568

RE: Post-Conviction # 00-CR-07104
     ~~Honorable Thomas~~ Davy
     Judge Presiding

FILED
D5 - ChgoFel - 109
APR 20 2006
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Dear Clerk: In the above-captioned matter scheduled for final Evedentiary arguments on APRIL 28th 2006, regretably I must inform the Court of the ~~fatal~~ death of Attorney: David H. Norris
407 So. Dearborn St
Suite 1675
Chicago, Illinois          312-697-0022

Respectfully, please have me writ to Court as this is a pro se matter!

IN THE CIRCUIT COURT FOR THE ____**FIRST**____JUDICIAL COURT
**CRIMINAL DIVISION   – COOK**   COUNTY, ILLINOIS

CHARLES DANIES N–63102 ,                )
  Petitioner or Plaintiff                )
           v.                            )      No._____ **P.C. # 00 CR 07104**
PEOPLE OF THE STATE OF , ILLINOIS )
  Respondent or Defendant                )      **HONORABLE THOMAS DAVY**
                                                Judge Presiding.

### PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM

Petitioner **CHARLES DANIELS**_____, makes application to the court, pursuant to Illinois Revised Statutes, ch.
110, secs. 10-101 et seq. [735 ILCS 5/10-101] to enter an Order of Habeas Corpus to Testify, and in support states
that:

1. I am the (Petitioner/Respondent or Plaintiff/Defendant) in the above captioned legal matter.
2. Said cause has been set for a (trial/hearing) on APRIL 28 , 20 06 , at 10 (ten) o'clock Am.
3. I am a prisoner committed to the care, custody and control of the Illinois Department of Corrections and
   Warden _Greg Simms_ , _Taylorville_ Correctional Center.
4. My attendance and testimony is necessary at the aforesaid (trial/hearing).
5. I am a poor person and unable to pay the expense of bringing my person to court from the place of my
   confinement. (If you have been granted leave by the court to sue or defend as a poor person, state this fact
   at this point.)

WHEREFORE, Petitioner prays that the court issue an order, pursuant to Illinois Revised Statutes, ch. 110, secs. 2-
5001 [see 735 ILCS 5/2-1501] and 10-101 et seq., directed to the said warden and the Illinois Department of
Corrections, commanding them to have said petitioner brought before the honorable court, without payment of
expenses, on _APRIL 28th_____ , 20_06_, at _9 (nine)_____ o'clock _Am_ to testify.

*Charles Daniels*
(Your Signature)

Type or print name _CHARLES DANIELS_
Register number _N–63102_
_TAYLORVILLE_ Correctional Center
Box _900 (217-824-4004)_
_Taylorville_ , Illinois _62568_
(Petitioner/Respondent), Pro Se


### VERIFICATION OF CERTIFICATION

I, _Charles Daniels_____, the undersigned, certify and state that:

1. I am the (Petitioner/Respondent) in the above captioned legal mater;
2. I have read the foregoing application and have knowledge of its contents;

and

3. Under penalties as provided by law pursuant to sec. 1-109 of the Code of Civil Procedure, I certify that the
   statements set forth in the foregoing motion and this affidavit are true and correct except as to maters
   therein stated to be on information and belief, and as to such matters I certify that I believe the same to be true.

*Charles Daniels*
(Your Signature)


Form revised 11/1/01

C 251

IN THE
CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

PEOPLE OF STATE OF Illinois )
Plaintiff )
)
)
v. )  Case No. PC # 00 CR 07104
)  HONORABLE THOMAS DAVY
)  JUDGE PRESIDING
)
CHARLES DANIELS-N63102 )
Defendant

---

## PROOF/CERTIFICATE OF SERVICE

CRIMINAL APPEAL

TO:  CLERK OF COURT          TO:  STATE'S ATTORNEY
     BRIDGEVIEW COURTHOUSE        BRIDGEVIEW COURTHOUSE
     10220 SO. 76th AVE.          10220 S. 76th AVE - ROOM 223
     BRIDGEVIEW, Illinois 60455   BRIDGEVIEW, Illinois 60455

PLEASE TAKE NOTICE that on APRIL 12, 2006, I have filed with the
U.S. Mail through the TAYLORVILLE Correctional Center the following
documents, properly addressed to the parties above: EMERGENCY WRIT AD
TESTIFICANDUM DUE TO DEATH OF ATTORNEY for APRIL 28, 2006

I further declare, under penalty of perjury, that I am the Plaintiff in the above action, that
I have read the above documents, and that the information contained therein is true and
correct. 28 USC 1746 and 18 USC 1621.

DATE: APRIL 12 2006          /s/ Charles X. Daniels
                             NAME: CHARLES DANIELS
                             IDOC#: N-63102
                             TAYLORVILLE Correctional Center
                             P.O. BOX 900
                             TAYLORVILLE, IL 62568

Form Revised 11/1/01

C  252

STATE OF ILLINOIS   )
                          )   SS
COUNTY OF COOK     )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,   )
                                  )
    Plaintiff,               )
                                  )
vs.                                )   No.  00 CR 7104
                                )
CHARLES DANIELS,          )   Honorable Judge
                                )   Davy, Presiding.
    Defendant.             )

## NOTICE OF APPEAL

Defendant hereby appeals from the following order of judgment:

Appellant's name:      CHARLES DANIELS

Appellant's address:    Reg. No. N63102
                      Taylorville Correctional Center
                      Route 29 South
                      P.O. Box 900
                      Taylorville, Illinois 62568

Appellant's attorney:   State Appellate Defender
                      203 N. LaSalle Street, 24th Floor
                      Chicago, Illinois 60601

Judgment:              Dismissal of post-conviction petition
                      without an evidentiary hearing.

Date of Judgment:       August 11, 2006

CHARLES DANIELS            by Ken Peters
Taylorville Correctional Center
Route 29 South
P.O. Box 900
Taylorville, Illinois 62568

FILED-5
2006 AUG 21 AM 10:03
CLERK OF THE CIRCUIT COURT
DOROTHY BROWN
CLERK

## NOTICE OF APPEAL

**TO: HONORABLE LISA MADIGAN**
**ATTORNEY GENERAL OF ILLINOIS**
**SPRINGFIELD, ILLINOIS 62706**

**HONORABLE RICHARD A. DEVINE**
**STATE'S ATTORNEY OF COOK COUNTY**
**DALEY CENTER- ROOM 573**
**CHICAGO, ILLINOIS 60602**

**STEVE RAVID**
**CLERK OF THE APPELLATE COURT**
**160 N. LASALLE 14TH FLOOR**
**CHICAGO, ILLINOIS 60601**

IN RE:

PEOPLE OF THE STATE OF ILLINOIS
.VS.

Daniels Charles

CASE NUMBER: 00CR 7104

YOU ARE HEREWITH NOTIFIED PURSUANT TO RULE 606E OF THE ILLINOIS
SUPREME COURT; EFFECTIVE JANUARY 1, 1967, A NOTICE OF APPEAL WAS FILED
WITH THE CLERK OF THE CIRCUIT COURT OF COOK COUNTY, CRIMINAL DIVISION,
ON 8-21-04

SUBMITTED BY: Dorothy B
        CLERK OF THE CIRCUIT COURT OF COOK COUNTY

STATE OF ILLINOIS )
                  ) SS
COOK COUNTY       )

DOROTHY BROWN, CLERK OF THE CIRCUIT OF COOK COUNTY, COUNTY
DEPARTMENT, CRIMINAL DIVISION, CERTIFY THAT THE FOREGOING NOTICE AND
COPY OF THE NOTICE OF APPEAL ATTACHED THERETO WAS SERVED UPON EACH
OF THE ABOVE NAMED PERSONS BY PERSONAL SERIVCE AND/OR BY DEPOSITING
SAME IN THE UNTIED STATES MAIL DEPOSITORY IN A SEALED ENVELOPE, FIRST
CLASS POSTAGE PRE-PAID, ADDRESSED TO THE NAMED PERSONS
8-23-04

Dorothy B
        CLERK OF THE CIRCUIT COURT OF COOK COUNTY

C  254

STATE OF ILLINOIS ) 
                  )    SS
COUNTY OF COOK    )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS, )
                                 )
     Plaintiff,                  )
                                 )
vs.                              )    No.   00 CR 7104
                                 )
CHARLES DANIELS,                 )    Honorable Judge
                                 )    Davy, Presiding.
     Defendant.                  )

## NOTICE OF APPEAL

Defendant hereby appeals from the following order of judgment:

Appellant's name:          CHARLES DANIELS

Appellant's address:       Reg. No. N63102
                           Taylorville Correctional Center
                           Route 29 South
                           P.O. Box 900
                           Taylorville, Illinois 62568

Appellant's attorney:      State Appellate Defender
                           203 N. LaSalle Street, 24th Floor
                           Chicago, Illinois 60601

Judgment:                  Dismissal of post-conviction petition
                           without an evidentiary hearing.

Date of Judgment:          August 11, 2006

                           CHARLES DANIELS    by Kim Peters
                           Taylorville Correctional Center
                           Route 29 South
                           P.O. Box 900
                           Taylorville, Illinois 62568

FILED-5
2006 AUG 21 AM 10: 03
CLERK OF THE CIRCUIT COURT

C   255

.ev. 12/6/00)  CCCR 0056

STATE OF ILLINOIS  } ss:
COUNTY OF COOK

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, in said County and State, and Keeper of the Records and Seal thereof, do hereby certify the above and foregoing to be a true, perfect and complete copy of __A ONE VOLUME RECORD CONSISTING OF THE COMMON LAW RECORD; ONLY. NO PRAECIPE HAVING BEEN FILED PURSUANT TO THE NOTICE OF APPEAL FILED IN THE APPELLATE COURT UNDER APPELLATE COURT NO.     06-2769__

in a certain cause _____ LATELY _____ pending in said Court, between The People of the State of Illinois _____ WERE _____ , Plaintiffs and CHARLES DANIELS _____ WAS _____ , Defendant.

Witness:  DOROTHY BROWN, Clerk of the court, and the Seal thereof, at Chicago In said County, __OCTOBER 24_____ , 2006

_____
Clerk

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

C    256

# Transcript of Record
# Appeal
# to

|  APPELLATE  | **Court of Illinois** |
|  FIRST      | **District** |

**Circuit Court No.** _____ 00 CR 7104 _____

**Trial Judge** _____ THOMAS M. DAVY _____

**Reviewing Court No.** _____ 06-2769 / 06-2583 _____

THE PEOPLE OF THE STATE OF ILLINOIS

06-2583   vs.

FILED
APPELLATE COURT 1st DIST.
APR 16 2007
STEVEN M. RAVID
CLERK

CHARLES DANIELS

## from
## CIRCUIT COURT
## of
## COOK COUNTY, ILLINOIS

### COUNTY DEPARTMENT, CRIMINAL DIVISION

**VOLUME ONE**
**REPORT OF PROCEEDINGS**

**DOROTHY BROWN,**
**Clerk of the Circuit Court**

Per _____ DB/SG _____
**Deputy**

(Rev. 1/17/01) CCCR 0310

EXHIBIT P

1

2    STATE OF ILLINOIS)
                      )   SS.
3    COUNTY OF COOK   )

4        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT-CRIMINAL DIVISION
5
     THE PEOPLE OF THE   )
6    STATE OF ILLINOIS,  )
                         )
7             Plaintiff,)
                         )
8        vs.             )      No. 00-CR-7104
                         )
9    CHARLES DANIELS,    )
                         )
10            Defendant.)

11

              REPORT OF PROCEEDINGS had
12
     before the Honorable THOMAS M. DAVY,
13
     heard on DECEMBER 17, 2004.
14

15            APPEARANCES:

16            HON. RICHARD A. DEVINE,
              State's Attorney of Cook County, by:
17            MR. JOHN HASKINS,
              Assistant State's Attorney,
18
                 appeared for the People;
19
              HON. EDWIN A. BURNETTE,
20            Public Defender of Cook County, by;
              MR. FREDERICK WEIL,
21            Assistant Public Defender,

22               appeared for the Defendant.

23   Jean McCarthy, C.S.R. 084-001937
     Official Court Reporter
24   10220 S. 76th Avenue
     Bridgeview, IL  60455

                      B-1

```
 1                    I N D E X

 2    REPORTER:  Jean McCarthy

 3    CASE NAME:  CHARLES DANIELS

 4    CASE NUMBER:  00-CR-7104

 5    DATE:   12-17-04

 6    PAGES:   B-1 through B-4 (Continuance)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1    JEAN M. SALERNO
     PEOPLE VS. CHARLES DANIELS
2    DATE:    3-18-05
     CASE:    00 CR 7104
3    PAGES:   C-1 through C-4

4
                              **INDEX**
5

6    CONTINUANCE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

2                                INDEX PAGE

3

4       REPORTER:  Elizabeth A. Proietti
        CASE:   People v. Charles Daniels
5       CASE NO.:  00-CR-7104
        DATE TAKEN:  6-24-05
6       PAGES:  D-1 through D-6
                  Continuance
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1                  I N D E X

 2    People vs. Charles Daniels

 3    Case No. 00 CR 7104

 4    Heard 8-26-05

 5    Before Judge Thomas M. Davy

 6    4 pgs. E-1 to E-4

 7    Continuance

 8    Reporter:  Angela Pittman-Jackson

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1                    I N D E X

2      People vs. Charles Daniels

3      Case No. 00 CR 7104

4      Heard 10-28-05

5      Before Judge Thomas M. Davy

6      5 pgs. F-1 to F-5

7      Continuance

8      Reporter:  Angela Pittman-Jackson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1
2                               _INDEX_

3    REPORTER:  MICHELLE THOMAS, C.S.R.

4    CASE:  People of the State of Illinois vs.  Charles

5    Daniels

6    CASE NO:  00 CR 7104

7    DATE:  January 27, 2006

8    PAGES:  G-1 Through G-5

9               *NO EXHIBITS/NO TESTIMONY*

10                      *   *   *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Sheri Hodorowicz

Peo.-v-CHARLES DANIELS

00 CR 7104

Date: 2-24-06

Pages: H-1 through H-8

H

## I N D E X

Date:   April 28, 2006

Pages:   I-1 through I-5

Continuance

```
 1    JEAN M. SALERNO
      PEOPLE VS. CHARLES DANIELS
 2    DATE:   5-26-06
      CASE:   00 CR 7104
 3    PAGES:  J-1 through J-4

 4                            INDEX

 5

 6    CONTINUANCE

 7                                    .

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1                       I N D E X
     REPORTER:  Jean McCarthy
2    CASE NAME:  CHARLES DANIELS
     CASE NUMBER:  00-CR-7104
3    DATE:  7-28-06
     PAGES:  K-1 through K-4 (Continuance)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1          THE CLERK:   Charles Daniels.

2          THE COURT:   This is a post-conviction petition,

3    which will be docketed.   I will appoint the Public

4    Defender's Officer to present the Petitioner.   I

5    will set this for status on March 18th.

6          MR. WEIL:   Thank you, your Honor.

7          MR. HASKINS:   Thank you.

8                        (Which were all the proceedings had

9                         at this time and date.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
1   STATE OF ILLINOIS    )

2                        )  SS.

3   COUNTY OF COOK       )

4

5        I, JEAN MC CARTHY, Official Court Reporter of

6   the Circuit Court of Cook County, Illinois, hereby

7   certify that I reported in stenographic notes the

8   proceedings had in the above-entitled matter; that I

9   thereafter caused the foregoing to be transcribed

10  into typewriting, and further certify that the

11  foregoing is a true and accurate transcript of the

12  proceedings had on this date.

13

14        _____

15        OFFICIAL COURT REPORTER
          CERTIFIED SHORTHAND REPORTER
16        No. 084-001937

17

18

19  Dated this 31st Day of
    OCTOBER, 2006.
20

21

22

23

24
```

B-4

1     STATE OF ILLINOIS)
                 )SS
2     COUNTY OF COOK   )

3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
          COUNTY DEPARTMENT-CRIMINAL DIVISION
4
     THE PEOPLE OF THE )
5     STATE OF ILLINOIS,)
          Plaintiff,)
6                )
        vs.        )   No. 00 CR 7104
7                )
     CHARLES DANIELS,  )
8          Defendant.)

9

10          REPORT OF PROCEEDINGS had at the hearing of

11    the above-entitled cause, before the Honorable

12    THOMAS M. DAVY, one of the Judges of said District,

13    on the 18th day of March, 2005.

14

15          APPEARANCES:

16          HON. RICHARD A. DEVINE,
            State's Attorney of Cook County, by:
17          MR. JOHN HASKINS,
            Assistant State's Attorney,
18            appeared for the People;

19          MR. DAVID NORRIS,
            appeared for the Defendant.
20

21

22    Jean M. Salerno
     CSR #084-002821
23    10220 S. 76th Avenue
     Bridgeview, IL  60455
24

1           THE COURT:  Charles Daniels.  Sheet 2.

2           MR. NORRIS:  Morning, your Honor.

3           THE COURT:  Morning.

4           MR. NORRIS:  David Norris on behalf of Charles

5    Daniels.  Your Honor, I will file my appearance on

6    this matter.  This was a pro se petition that the

7    Public Defender's Office was appointed on and I

8    would ask to substitute for the Public Defender's

9    Office.

10          THE COURT:  Leave is granted to file your

11   appearance, and what is the status in terms of the

12   case?

13          MR. NORRIS:  Yes, your Honor.  I spoke with --

14   you're doing the last Friday.  6-24 will be fine.

15          THE COURT:  Very well.

16          MR. NORRIS:  At that time, your Honor, we will

17   file either an amended or supplemental petition.  I

18   haven't had a chance to review it yet.

19          THE COURT:  By-agreement June 24th.

20          MR. NORRIS:  Thank you very much, your Honor.

21                        (WHEREUPON, the case was

22                        continued to 6-24-05.)

23

24

C-3

1    STATE OF ILLINOIS    )
                              )    SS
2    COUNTY OF C O O K    )

3

4                I, Jean M. Salerno, Official Shorthand

5    Reporter of the Circuit Court of Cook County, Fifth

6    Municipal District, do hereby certify that I

7    reported in shorthand the proceedings had in the

8    above-entitled cause and that I thereafter caused

9    the same to be transcribed into typewriting, which I

10    certified to be a true and correct transcript of all

11    the evidence heard.

12

13

14

15

16                                    Jean M. Salerno
                                      Official Shorthand Reporter
17                                    Circuit Court of Cook County
                                      Fifth Municipal District
18                                    Cert. No.  084-002821

19

20

21

22

23

24

C-4

```
 1     STATE OF ILLINOIS)
                       )SS
 2     COUNTY OF COOK   )

 3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
               COUNTY DEPARTMENT-CRIMINAL DIVISION
 4
       THE PEOPLE OF THE )
 5     STATE OF ILLINOIS,)
              Plaintiff,)
 6                       )
            vs.          )    No. 00-CR-7104
 7                       )
       CHARLES DANIELS,  )
 8            Defendant.)     Continuance

 9

10            REPORT OF PROCEEDINGS had at the hearing

11     of the above-entitled cause, before the Honorable

12     THOMAS M. DAVY, one of the Judges of said District,

13     on the 24th day of June, 2005.

14

15                 APPEARANCES:

16                 HON. RICHARD A. DEVINE,
                      State's Attorney of Cook County, by:
17                 MR. JOHN HASKINS,
                      Assistant State's Attorney,
18                      appeared for the People;

19                 MR. DAVID NORRIS,
                      appeared for the Defendant.
20

21

22     Elizabeth A. Proietti
       CSR #084-002544
23     10220 S. 76th Avenue
       Bridgeview, IL   60455
24
```

1          THE CLERK:  Sheet 8, Charles Daniels.

2          MR. HASKINS:  Marge.

3          MS. SANDERS:  Good morning, again, your Honor.

4     Assistant Public Defender Marge Sanders.

5          Judge, this does not appear on our list of

6     cases.  Um, have we been appointed?

7          THE COURT:  I believe so.  Or no.  Uh,

8     Mr. Daniels is represented by attorney David

9     Norris.

10         MR. HASKINS:  You know, Judge, I went through

11    Sullivan's, and I tried to reach a David Norris.

12    And the only one in Sullivan's said he didn't do

13    criminal work.  And I read the transcript and there

14    was -- okay, there was another David Norris who was

15    a witness in the case.  Uh, let me copy this.

16         THE COURT:  Okay.  All right.  He was here in

17    court on that date.  He was given leave to file his

18    appearance, and it was continued 'til today.  So

19    why don't we pass this so -- it's not a Public

20    Defender case.

21         MS. SANDERS:  Thank you, Judge.

22                         (Whereupon, the case was passed

23                          and recalled as follows:)

24         THE CLERK:  Sheet 8, Charles Daniels.

D-3

1        MR. NORRIS:  Daniels.

2        Good morning, your Honor.  David Norris,

3   N-o-r-r-i-s, on behalf of Charles Daniels.

4        Your Honor, this is a PC.  Um, we -- we asked

5   for this date earlier to file an amended or

6   supplemented petition.  It is a pro se petition

7   originally filed, as the Court is aware.  Your

8   Honor, um, I've had numerous letters from my

9   client.  I would like to review any documents

10  before I file them with the Court.

11       THE COURT:  Very well.

12       MR. NORRIS:  Because of that, I would ask

13  for -- do you -- do you -- I know you have certain

14  dates and the last --

15       THE COURT:  The last Fridays of the month.

16       MR. NORRIS:  All right.  Could we do that

17  until August, of whatever your date is for August?

18  Is Friday?

19       THE COURT:  Right, that would be the 26th.

20       MR. NORRIS:  26th.

21       THE COURT:  Right.  All right, also, uh,

22  Mr. Haskins from the State's Attorney's Office was

23  present earlier.  He usually gets here early.

24       MR. NORRIS:  Yes.

D-4

```
1           THE COURT:  He couldn't locate the right David

2     Norris, so if you want to try to track him down,

3     let him know --

4           MR. NORRIS:  Is he still in the building, do

5     you think?

6           THE COURT:  He might be in one of the other --

7           MR. NORRIS:  I'll look for him.  Very good,

8     your Honor.

9           THE COURT:  By agreement, 8-24.

10          MR. NORRIS:  Thank you, very much, your Honor.

11          COURT REPORTER:  I'm sorry, what date?

12          THE COURT:  8-24.

13          MR. NORRIS:  8-24.  Thank you, very much, your

14    Honor.

15                         (Whereupon, the case was later

16                          recalled as follows:)

17          THE COURT:  Did I give something the 24th?

18          COURT REPORTER:  Yeah, you put Charles Daniels

19    on the 24th.  You said originally the 26th.  Then

20    said the 24th.

21          THE COURT:  Okay, should be the 26th.  The

22    attorney knows it's going to be the last Friday.

23                         (Whereupon, the above-entitled

24                          cause was continued to 8-26-05.)
```

D-5

1    STATE OF ILLINOIS    )
                          )  SS
2    COUNTY OF COOK       )

3

4

5         I, Elizabeth A. Proietti, Official Shorthand

6    Reporter of the Circuit Court of Cook County,

7    Illinois, hereby certify that I reported in

8    stenographic notes the proceedings had in the

9    above-entitled cause, and that the foregoing is a

10   true and accurate transcript of the proceedings had

11   on this date.

12

13   _____

14   Elizabeth A. Proietti
     Official Shorthand Reporter
15   Circuit Court of Cook County
     No. 084-002544

16

17

18

19

20

21

22

23

24   Dated this 17th day
     of October, 2006.

D-6

```
 1    STATE OF ILLINOIS )
                        )  SS:
 2    COUNTY OF C O O K )

 3         IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                 COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
      THE PEOPLE OF THE STATE    )
 5    OF ILLINOIS,               )
                                 )
 6               Plaintiff,      )
                                 )
 7       vs.                     )  No. 00 CR 7104
                                 )
 8    CHARLES DANIELS,           )
                                 )
 9               Defendant.      )

10

11         REPORT OF PROCEEDINGS had at the hearing in

12    the above-entitled cause before the HONORABLE

13    THOMAS M. DAVY, Judge of said court, on the 26th day of

14    August, 2005.

15    PRESENT:

16    HONORABLE RICHARD A. DEVINE,
      STATE'S ATTORNEY OF COOK COUNTY, by:
17    MR. MICHAEL MC CORMICK,
      ASSISTANT STATE'S ATTORNEY,
18         appeared on behalf of the People.

19

20

21

22    Angela Pittman-Jackson
      Official Court Reporter
23    License No. 084-002305
      10220 S. 76th Avenue
24    Bridgeview, IL 60455
```

E-1

1          THE CLERK:  Sheet four.  Charles Daniels.

2          MR. MC CORMICK:  Michael McCormick, from the

3     State's Attorney's Office.

4          Mr. Norris was in court, and he agreed with my

5     partner, Mr. Haskins, for a by agreement date of

6     October 28th.

7          THE COURT:  Is that for --

8          MR. MC CORMICK:  We filed our motion to

9     dismiss.  He's going to respond, I suppose, and then we

10    can set a hearing date.

11         THE COURT:  Okay.

12         MR. MC CORMICK:  Thank you.

13         THE COURT:  October 28th.

14                    (Whereupon, the above-entitled cause

15                     was continued to 10-28-06.)

16

17

18

19

20

21

22

23

24

E-3

1          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION

2

3

4                    I, Angela Pittman-Jackson, an Official Court

5     Reporter for the Circuit Court of Cook County, County

6     Department- Criminal Division, do hereby certify that I

7     reported in shorthand the proceedings had at the hearing

8     of the above-entitled cause; that I thereafter caused the

9     foregoing to be transcribed into typewriting, which I

10    hereby certify to be a true and accurate transcript of

11    the proceedings before the Honorable THOMAS M. DAVY,

12    Judge of said court.

13

14

15

16

17                       _____
                         Official Court Reporter
18                       License No. 084-002305

19

20

21

22

23    Dated this 26th day

24    of September, 2006.

                              E-4

1    STATE OF ILLINOIS )
                       )  SS:
2    COUNTY OF C O O K )

3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION

4
     THE PEOPLE OF THE STATE    )
5    OF ILLINOIS,               )
                                )
6                   Plaintiff,  )
                                )
7        vs.                    )  No. 00 CR 7104
                                )
8    CHARLES DANIELS,           )
                                )
9                   Defendant.  )

10

11              REPORT OF PROCEEDINGS had at the hearing in

12   the above-entitled cause before the HONORABLE

13   THOMAS M. DAVY, Judge of said court, on the 28th day of

14   October, 2005.

15       PRESENT:

16       HONORABLE RICHARD A. DEVINE,
         STATE'S ATTORNEY OF COOK COUNTY, by:
17       MR. JOHN HASKINS,
         ASSISTANT STATE'S ATTORNEY,
18           appeared on behalf of the People.

19       MR. DAVID NORRIS,
             appeared on behalf of the Defendant.
20

21

22       Angela Pittman-Jackson
         Official Court Reporter
23       License No. 084-002305
         10220 S. 76th Avenue
24       Bridgeview, IL 60455

                          F-1

1              THE CLERK:  Charles Daniels.  Sheet two.

2              MR. HASKINS:  Good morning, your Honor.  For

3    the record, John Haskins, Assistant State's Attorney.

4              MR. NORRIS:  Good morning, your Honor.

5              David Norris, on behalf of the defendant or

6    petitioner rather, I guess.

7              Your Honor, we have filed a, since last time

8    up, filed an amended post-conviction petition.

9              As the Court is aware, on the last date the

10   State filed a motion to dismiss.  Rather than file two

11   responsive pleadings, I sent it to the State and

12   suggested they make one responsive pleading and then we

13   could respond to that if necessary.

14             My client is also currently doing a 12-year

15   sentence and is not contesting.  He's not prejudiced by

16   any delays in this.

17             MR. HASKINS:  If we can have January 27th, if

18   I'm going to respond, I'll respond by the first of the

19   year, and we can probably argue it on that date.

20             MR. NORRIS:  Either that or we'll reply to

21   their response on that date.

22             THE COURT:  Shall we set it for argument or

23   status on that day?

24             MR. NORRIS: We can just set it for status.

F-3

1    1-27.

2            THE COURT:  1-27-06.

3                    (Whereupon, the above-entitled cause

4                    was continued to 1-27-06.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
1              IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                  COUNTY DEPARTMENT - CRIMINAL DIVISION
2

3

4              I, Angela Pittman-Jackson, an Official Court

5     Reporter for the Circuit Court of Cook County, County

6     Department- Criminal Division, do hereby certify that I

7     reported in shorthand the proceedings had at the hearing

8     of the above-entitled cause; that I thereafter caused the

9     foregoing to be transcribed into typewriting, which I

10    hereby certify to be a true and accurate transcript of

11    the proceedings before the Honorable THOMAS M. DAVY,

12    Judge of said court.

13

14

15

16

17    _____
                  Official Court Reporter
18                License No. 084-002305

19

20

21

22

23    Dated this 27th day

24    of September, 2006.
```

F-5

```
 1   STATE OF ILLINOIS  )
                        )  SS:
 2   COUNTY OF C O O K  )

 3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
               COUNTY DEPARTMENT - CRIMINAL DIVISION
 4

 5   PEOPLE .OF THE STATE OF   )
     ILLINOIS,                 )
 6                             )
                              )
               Plaintiff,      )
 7                             )
     vs.                       )   No. 00 CR 7104
 8                             )
     CHARLES DANIELS,          )
 9                             )
               Defendant.      )
10

11        REPORT OF PROCEEDINGS had at the Hearing of

12   the above-entitled cause before the HONORABLE THOMAS M.

13   DAVY, Judge of said Court, in Room 109, at 10220 S.

14   76th Avenue, Bridgeview, Illinois, on the 27th day of

15   January 2006, at the hour of 10:00 o'clock a.m.

16        APPEARANCES:

17             HONORABLE RICHARD A. DEVINE, COOK COUNTY
               BY:  MR. JOHN HASKELL
18             Assistant State's Attorney
                    On behalf of the Plaintiff;
19
               (Not present)
20             BY:  MR. DAVID NORRIS
                    On behalf of the Defendant.
21
     MICHELLE THOMAS, C.S.R. #084-003962
22   5th Municipal District
     10220 S. 76th Avenue - Room 058
23   Bridgeview, Illinois  60455
     (708) 974-6600
24
```

1          THE CLERK:  Charles Daniels.

2          MR. HASKELL:  Good morning, Your Honor.  John

3    Haskell, Assistant State's Attorney representing the

4    State of Illinois.  Dave Norris is Mr. Daniels'

5    attorney.

6                I spoke with Mr. Norris several times

7    this week.  I filed a response from the State --

8    People's response to the amended post-conviction

9    petition.  I left an extra copy for Your Honor.  Mr.

10   Norris was asking if he could have February 24, to

11   respond or he's going to bring a common law record to

12   the clerk, and, we would like to argue it on April 28,

13   Judge, if that's available with the Court.

14         THE COURT:  February 24, then, for status.

15         MR. HASKELL:  He will be coming in prior to

16   status.

17         THE COURT:  By agreement, 2/24 for possible

18   defense reply.

19                (Which were all of the proceedings

20                 Had in this matter.)

21                      *  *  *

22

23

24

1   STATE OF ILLINOIS    )

2                        ) SS:

3   COUNTY OF C O O K    )

4

5       I, MICHELLE THOMAS, an Official Court Reporter for

6   the Circuit Court of Cook County, County Department,

7   Criminal Division, do hereby certify that I reported in

8   shorthand the proceedings had at the hearing in the

9   above-entitled cause; that I thereafter caused the

10   foregoing to be transcribed into typewriting, which I

11   hereby certify to be a true, accurate, and complete

12   transcript of the proceedings had before the HONORABLE

13   THOMAS M. DAVY, Judge of said court.

14

15                      Official Court Reporter

16                      License No.   084-003962

17

18

19

20   Dated this 15th day of October, 2006.

21

22

23

24

```
 1   STATE OF ILLINOIS )
                      )  SS.
 2   COUNTY OF C O O K )

 3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
     THE PEOPLE OF THE STATE     )
 5   OF ILLINOIS,                )
                                 )
 6              Plaintiff,       )
                                 )
 7      vs.                      )   No.  00 CR 7104
                                 )
 8                               )
                                 )
 9   CHARLES DANIELS,            )
                                 )
10              Defendant.       )

11

12              REPORT OF PROCEEDINGS had at the hearing in

13   the above-entitled cause before the HONORABLE THOMAS

14   DAVY, Judge of said Court, on the 24th day of February,

15   2006.

16   PRESENT:

17   HONORABLE RICHARD A. DEVINE,
     STATE'S ATTORNEY OF COOK COUNTY, by:
18   MR. JOHN HASKINS,
     ASSISTANT STATE'S ATTORNEY,
19        appeared on behalf of the People;

20

21

22
     Sheri Hodorowicz
23   Official Court Reporter
     Circuit Court of Cook County
24   Lic. No. 084-001901
```

1

2              THE CLERK:  Sheet two, line eight, Charles

3     Daniels.

4              MR. HASKINS:  Judge, on this case, Mr. Daniels'

5     counsel is coming in -- if you want to give the Court a

6     copy of the common law record -- last time we were here

7     we spoke to you and we are going to argue the case on

8     April 28th if that's agreeable with the Court.  He will

9     be in to drop off something for you, but he wasn't sure

10    what time.

11             THE COURT:  By Agreement, 4-28, for argument.

12

13

14

15                        (Which were all the proceedings had

16                         in the above cause for that date.)

17

18

19

20

21

22

23

24

1     STATE OF ILLINOIS  )
                              )

2     COUNTY OF C O O K  )

3

4        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

5

6        I, SHERI HODOROWICZ, an Official Court Reporter

7    for the Circuit Court of Cook County, County Department,

8    do hereby certify that I reported in shorthand the

9    proceedings had in the above-entitled cause; and that I

10   thereafter caused the foregoing to be transcribed into

11   typewriting, which I hereby certify to be a true and

12   accurate report of proceedings had in the above-entitled

13   case.

14

15

16

17                              _____

18                    Official Court Reporter

19

20   Dated this _____ day of

21   _____ 2006.

22

23

24

```
STATE OF ILLINOIS      )
                       )  SS:
COUNTY OF C O O K       )
```

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

```
THE PEOPLE OF THE          )
STATE OF ILLINOIS,         )
                           )
          Plaintiff,       )
                           )
vs.                        )   No.  00 CR 7104
                           )
CHARLES DANIELS,           )
                           )
          Defendant.       )
```

REPORT OF PROCEEDINGS  of the hearing

had before the Honorable THOMAS M. DAVY, on the 28th day

of April, 2006.

APPEARANCES:

HON. RICHARD A. DEVINE,
    State's Attorney of Cook County, by:
MS. MARY LOU NORWELL,
    Assistant State's Attorney,

            appeared for the Plaintiff;


MR. MICHAEL JAMES MC DERMOTT,

            appeared for the Defendant.


Judy A. Lucas, CSR-084-001463
Official Shorthand Reporter
10220 South 76th Avenue
Bridgeview, Illinois 60455

I-1

THE CLERK:  Charles Daniels.

MR. MC DERMOTT:  Michael James McDermott, stepping up on behalf of the attorney of record, David Norris, who represents Charles Daniels.

MS. NORWELL:  Once again, Mary Lou Norwell, Assistant State's Attorney.

THE COURT:  As far as Mr. Norris?

MR. MC DERMOTT:  He passed away the 1st or 2nd of April.

I have spoken with the family and they're going to try to remain another private attorney.

We would be asking for a thirty-day date, May 26th.

MS. NORWELL:  May 26th, we would agree to that, your Honor.

THE COURT:  Mr. Daniels has filed a petition to represent himself pro se.

MR. MC DERMOTT:  I haven't seen a motion to represent himself pro se.  I have seen two replies he has filed by mail, and I guess on that note, I looked in the file and Mr. Norris did, before he passed away, prepare the reply to the State's response to an amended PC motion to dismiss.  I was under the mistaken impression it was filed, and I didn't bring the file today.  It has been prepared.  I have seen it.  It is printed out and signed.

He has filed two replies, and there is, I think a

I-3

brief affidavit about Mr. Norris passing away, and those two motions were filed pro se, but I haven't seen any request.

In addition, there is a family member of Mr. Daniels here, who was also under the impression that Mr. Daniels would like to get a continuance to hire private counsel.

THE COURT:  Why don't I give this the May date and it can be resolved at that time.

MR. MC DERMOTT:  May 26th.

MS. NORWELL:  We would agree to that.

THE COURT:  By agreement, 5/26.

MR. MC DERMOTT:  And whoever comes will bring Mr. Norrises' reply.

THE COURT:  Mr. McDermott, you were involved in this case?

MR. MC DERMOTT:  Previously.  I am conflicted out.  I was in the Appellate Defender's office at the time.

                    (Which were all the proceedings had
                    in the above-entitled cause on this
                    date.)

I-4

STATE OF ILLINOIS    )
                     )  SS.
COUNTY OF C O O K    )

    I, Judy A. Lucas, Official

Shorthand Reporter of the Circuit Court of Cook County,

County Department-Criminal Division, do hereby certify that I

reported in shorthand the proceedings had in the above-

entitled cause, that I thereafter caused to be transcribed

into typewriting the above Report of Proceedings, which I

hereby certify is a true and correct transcript of the

proceedings before the Judge of said Court.


        *Judy A. Lucas*
       Official Shorthand Reporter
       Circuit Court of Cook County


I-5

1    STATE OF ILLINOIS)
                  )SS
2    COUNTY OF COOK   )

3      IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
          COUNTY DEPARTMENT-CRIMINAL DIVISION
4
    THE PEOPLE OF THE )
5    STATE OF ILLINOIS,)
        Plaintiff,)
6               )
       vs.        )   No. 00 CR 7104
7               )
    CHARLES DANIELS, )
8        Defendant.)

9

10         REPORT OF PROCEEDINGS had at the hearing of

11   the above-entitled cause, before the Honorable

12   THOMAS M. DAVY, one of the Judges of said District,

13   on the 26th day of May, 2006.

14

15         APPEARANCES:

16         HON. RICHARD A. DEVINE,
           State's Attorney of Cook County, by:
17        MR. JOHN HASKINS,
           Assistant State's Attorney,
18          appeared for the People;

19         MR. KEVIN PETERS,
           appeared for the Defendant.
20

21

22   Jean M. Salerno
    CSR #084-002821
23   10220 S. 76th Avenue
    Bridgeview, IL  60455
24

1          THE CLERK:  Sheet 1.  Line 15.  Charles

2     Daniels.

3          MR. PETERS:  Here.

4          MR. HASKINS:  Morning, your Honor.  John

5     Haskins for the People.

6          MR. PETERS:  Morning.  Kevin Peters, Judge.  I

7     am seeking leave to file my appearance on this P.C.

8          THE COURT:  Your name happened to come up in

9     conversation.

10         MR. PETERS:  Oh?

11         MR. HASKINS:  We reached an agreement on the

12    date if it's agreeable with the Court for argument

13    on the motion to dismiss.

14         MR. PETERS:  Correct.

15         MR. HASKINS:  July 28th a good date?

16         THE COURT:  Mr. Peters, leave will be granted

17    to file your appearance.  I will continue this then

18    by-agreement July 28th for argument.

19         MR. PETERS:  Yes.  Thank you, Judge.

20         MR. HASKINS:  Thanks, Judge.

21                        (WHEREUPON, the case was

22                        continued to 7-28-06.)

23

24


                              J-3

1    STATE OF ILLINOIS    )
                          )        SS
2    COUNTY OF C O O K    )

3

4                I, Jean M. Salerno, Official Shorthand

5    Reporter of the Circuit Court of Cook County, Fifth

6    Municipal District, do hereby certify that I

7    reported in shorthand the proceedings had in the

8    above-entitled cause and that I thereafter caused

9    the same to be transcribed into typewriting, which I

10   certified to be a true and correct transcript of all

11   the evidence heard.

12

13

14

15

16   Jean M. Salerno
     Official Shorthand Reporter
17   Circuit Court of Cook County
     Fifth Municipal District
18   Cert. No.  084-002821

19

20

21

22

23

24

J-4

```
 1

 2    STATE OF ILLINOIS)
                      )   SS.
 3    COUNTY OF COOK   )

 4       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT-CRIMINAL DIVISION
 5
      THE PEOPLE OF THE   )
 6    STATE OF ILLINOIS,  )  .
                          )
 7              Plaintiff,)
                          )
 8       vs.              )     No. 00-CR-7104
                          )
 9    CHARLES DANIELS,    )
                          )
10              Defendant.)

11

12              REPORT OF PROCEEDINGS had

      before the Honorable THOMAS M. DAVY,
13
      heard on JULY 28, 2006.
14

15              APPEARANCES:

16              HON. RICHARD A. DEVINE,
                State's Attorney of Cook County, by:
17              MR. JOEL BUIKEMA,
                Assistant State's Attorney,
18
                   appeared for the People;
19
                MR. KEVIN PETERS,
20
                   appeared for the Defendant.
21

22    Jean McCarthy, C.S.R. 084-001937
      Official Court Reporter
23    10220 S. 76th Avenue
      Bridgeview, IL  60455
24
```

K-1

1          THE CLERK:  Charles Daniels; Sheet 1.

2          MR. PETERS:  Kevin Peters on behalf of Mr.

3     Daniels.  This is a post-conviction, Judge.

4          THE COURT:  All right.  This was supposed to be

5     for argument today.

6          MR. PETERS:  Yes, but the Assistant State's

7     Attorney that was handling it-- I am sorry.  I

8     forget his name.

9          THE COURT:  Mr. Haskins?

10          MR. PETERS:  Yes.  He had called and said he

11     couldn't be here today and was going to ask-- I

12     guess I am supposed to ask for August 11th.  I

13     thought he had informed the Court of this.

14          THE COURT:  I was told he wasn't going to be

15     here.  I thought Ms. Norwell was on this case at one

16     point.  Maybe she's just filling in for Mr. Haskins.

17     That's August 11th for argument?

18          MR. PETERS:  Yes.

19          THE COURT:  Order of Court, August 11th.

20          MR. PETERS:  For the record, obviously, my

21     client is in custody.  He wishes to attend the

22     argument, and I have prepared a petition for writ of

23     habeas corpus ordering him to be brought up for the

24     argument.

                              K-3

1          THE COURT:  He wants to see the show because

2     he's not going to be saying anything?

3          MR. PETERS:  Correct.

4          THE COURT:  All right, if you want him to cheer

5     you on.

6          MR. PETERS:  I am doing it at his request and

7     his family's request.  I understand it is just for

8     argument.  He is not going to be testifying or

9     anything, but just, for the record, I am making that

10    request.

11         THE COURT:  Since it is for argument, I think I

12    will deny the request that he be brought up.

13         MR. PETERS:  Thank you.

14                    (Which were all the proceedings had

15                     at this time and date.)

16

17

18

19

20

21

22

23

24

K-4

1    STATE OF ILLINOIS      )

2                           )  SS.

3    COUNTY OF COOK         )

4

5        I, JEAN MC CARTHY, Official Court Reporter of

6    the Circuit Court of Cook County, Illinois, hereby

7    certify that I reported in stenographic notes the

8    proceedings had in the above-entitled matter; that I

9    thereafter caused the foregoing to be transcribed

10   into typewriting, and further certify that the

11   foregoing is a true and accurate transcript of the

12   proceedings had on this date.

13

14                       _____Jean M Carthy_____

15                       OFFICIAL COURT REPORTER
                         CERTIFIED SHORTHAND REPORTER
16                       No. 084-001937

17

18

19   Dated this 31st Day of
     OCTOBER, 2006.
20

21

22

23

24


                              K-5

1

2   IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
    COUNTY DEPARTMENT, CRIMINAL DIVISION

3

4 PEOPLE OF THE STATE OF  )
 ILLINOIS,       )

5            )

6    Plaintiff,  )
            )

7   -vs-      ) No. 00 CR 07104
            )

8 CHARLES DANIELS,   )
            )

9    Defendant.  )

10    REPORT OF PROCEEDINGS had in the

11 above-entitled matter before the Honorable

12 Thomas M. Davy, Judge of said court, on the

13 11th day of August, 2006, at the hour of 10:00 a.m.

14

15   PRESENT:

16

17    HON. RICHARD DEVINE,
     STATE'S ATTORNEY, COOK COUNTY,
     MR. JOHN HASKINS,

18    ASSISTANT STATE'S ATTORNEY,
      appeared on behalf of Plaintiff;

19

20

21    MR. KEVIN PETERS,
      appeared on behalf of Defendant.

22

23 Elizabeth Ciszewski, 10220 S. 76th Avenue, Bridgeview
 Illinois 60455 #84-002587

24

1          THE COURT:   Charles Daniels.

2          MR. PETERS:   Kevin Peters on behalf of the Charles

3     Daniels.

4          MR. HASKIN:    John Haskins, Assistant State's

5     Attorney, representing the People.

6          THE COURT:   This is up for argument on the --

7     basically Mr. Daniels' motion has been filed in which you

8     were adopting, I understand, Mr. Peters.

9          MR. PETERS: I'm adopting that, and I believe that

10    Mr. Norris filed an amended petition and I want to, for the

11    record, adopt any and all arguments Mr. Norris made in his

12    amended petition.

13         THE COURT:  And you will be granted leave to do

14    that as well.  And are both sides prepared to argue at this

15    point?

16         THE COURT:   Yes.

17         MR. HASKINS:  Yes, your Honor.

18         THE COURT:    And this is on the State's motion to

19    dismiss the petition, Mr. Haskins.

20         MR. HASKINS:  Yes, your Honor.  We also have a

21    response to the amended post conviction which was filed on

22    January, '06.

23         THE COURT:   Yes.  I have that one.

24         MR. HASKINS:  Your Honor, in this particular case

1   after a bench trial, the defendant, Mr. Daniels, was

2   convicted of the burglary of Nora Elston's apartment at

3   8232 and 8234 South Eberhart in Chicago.  The defendant was

4   sentenced to 8 years as a class X offender.  He was

5   convicted of the charge of burglary.  He appealed his

6   conviction.  The Appellate Court affirmed the defendant's

7   conviction and sentence.  PLA was denied.

8          Judge, the primary issue raised by the

9   petitioner in this case is ineffective assistance of the

10  petitioner's trial counsel Dennis Sherman because of his

11  cross examination of the witness, Nora Elston.

12         Judge, the State's position and that is

13  basically he had a perfect right to cross examine Ms.

14  Elston and that's a matter of trial strategy and it is not

15  subject to judicial review in post conviction petitions.

16         Mr. Sherman was aware that the petitioner,

17  Mr. Daniels, had given an incriminating statement to a

18  police detective James Carlassare on the evening of

19  February 12th, 2000.  At the time that Mr. Sherman cross

20  examined Mrs. Elston he was aware that his client had made

21  the incriminating statement to the police officer

22  concerning this crime.

23         In the amended petition, the petitioner

24  alleged that his appellate counsel was ineffective for not

1  raising ineffectiveness of trial counsel for the way he

2  cross examined Nora Elston.  The State's position is that

3  since trial counsel was not ineffective, the appellate

4  counsel would not be ineffective for not raising that

5  issue.

6          The petitioner further alleges the acts or

7  omissions of appellate counsel prejudiced this defendant in

8  but for trial counsel therein defendant was looking at a

9  directed verdict on the sole counts of the indictment.

10  Mr. Sherman, petitioner's trial counsel, was fully aware

11  that the officer could testify to the statement that Mr.

12  Daniels made to him indicating that he realized he made a

13  big mistake but he couldn't help himself when he noticed

14  that the front door of the building was open and assuming

15  that he went in the front door he would have had to go into

16  the common way.

17          The big issue in this case was the finding

18  of burglary because that was prior to the time when

19  burglary and residential burglary could have been found

20  interchangeably.

21          So basically, Judge, our position is that

22  trial counsel was not ineffective and that the Appellate

23  Court's ruling agreed that the conviction and sentence are

24  res judicata.  With that, we rest.

1           THE COURT:   Mr. Peters.

2           MR. PETERS:   Judge, it is not effective assistance

3    of counsel and everybody makes mistakes.  All of us make

4    mistakes.  And perhaps Mr. Sherman wanted to use the word

5    other than hallway when he asked the question but the fact

6    remains that he did ask the question.  It was not asked

7    under direct of Ms. Elston and the only question or the

8    only evidence before the court that put Mr. Daniels in the

9    common area was a question elicited by Mr. Sherman,  the

10   defense attorney, on cross examination in which he used the

11   word, hallway.  And again everybody makes mistakes.  We are

12   all human, and maybe he wanted to use a different word and

13   he meant to use a different word and he didn't.  That's the

14   only evidence in the record where Ms. Elston says, yes, to

15   the question put to her by Mr. Sherman in how long or

16   something along the lines, how long was he in the hallway

17   or did you see him in the hallway, and she said, yes,

18   something along those lines.  The fact is that that is the

19   only evidence in the record putting him in the hallway.

20           Additionally,  there was no question put to

21   Mrs. Elston as to authority to be in the hallway, which I

22   believe is another essential element of burglary.  That

23   cannot be effective assistance of counsel when you help the

24   State prove up a material -- two material  -- one material

1    element of the crime charged.  I think your Honor, in your

2    ruling, even posed a hypothetical that if the evidence was

3    simply that Mr. Daniels had entered through the window,

4    which Mrs. Elston's testimony was he must have entered

5    through one of the windows, that is her testimony.

6                    The police were called.  If you remember,

7    the police were called twice to this location.  The first

8    time they came, they checked the back, and they checked the

9    two doors to the apartment that was in question, and they

10   were locked.  Later she called the police a second time and

11   those two doors were still locked.  She surmised and that

12   is all that is in the record is that Mr. Daniels must have

13   entered through the apartment window, which would then make

14   it a residential burglary which he was not charged for.

15   Had Mr. Sherman not asked that particular question, it is

16   our position that a motion for directed finding may very

17   well have been sustained because there wouldn't have been

18   any evidence in the record placing Mr. Daniels in the

19   common areas of that building.

20                   So our argument is two-fold as to the

21   question that was asked by Mr. Sherman and also that there

22   was no evidence and there is no evidence in the record as

23   to authority to be in the common areas, if he was in the

24   common areas, and with that I would rest.

1          As to the Detective's statement that counsel

2     referred to, my recollection of it is that he testified

3     that Mr. Daniels said he shouldn't have gone in the

4     apartment.  There is nothing in the statement regarding the

5     common areas, as I recall the testimony, and I believe I

6     have the transcripts with me from the original trial.  I

7     can double check that.  But my recollection is -- I have

8     not reviewed this over the past couple of days.  The

9     statement was I goofed up.  I made a mistake.  I shouldn't

10    have entered the apartment.

11         Again, he does not say anything about being

12    in the common areas to the Detective.  So the Detective's

13    testimony, even though Mr. Sherman knew about it, didn't

14    put Mr. Daniels in the common area of the building, and

15    that's the whole issue as we see it before this court and

16    we ask that you grant our petition because Mr. Sherman --

17    counsel's counter-argument is that Mr. Sherman is not

18    ineffective, therefore the appellate counsel is not

19    ineffective.

20         Our position is that Mr. Sherman was

21    ineffective, and the appellate counsel did not raise the

22    issues that I'm raising and Mr. Norris raised in his

23    written petition regarding the testimony elicited by Mr.

24    Sherman and the lack of testimony about authority to be in

1  the common area, and we ask that you grant our petition.

2       THE COURT:    In reviewing the testimony of the

3  Detective, it does indicate he said he was  -- he said he

4  shouldn't have gone into that apartment.  That's my

5  recollection as to what was testified on direct examination

6  is correct.  Mr. Haskins.

7       MR. HASKINS:  Yes, your Honor. Basically, I

8  attached to the amended post conviction petition a copy of

9  that police report and although admittedly the testimony

10 was not given at the trial, it was not given because they

11 didn't have to use it after Ms. Elston testified.  But what

12 it said basically is the subject stated in essence not

13 verbatim, I'm in a lot of trouble.  I have a problem.  I

14 need help.  I see a psychiatrist.  I pay $150 an hour.  I

15 knew I shouldn't have gone into that apartment.  I have a

16 good job.

17          Subject also related when asked about how he

18 gained entry, that the front door was unlocked.  He came in

19 the front door, Judge.  The only areas that he could have

20 gone into were the common areas of the building before he

21 could get to any apartments.  So that was conceivable

22 testimony of the officer.

23       THE COURT:    But that testimony was not presented.

24 It was in the police report, but I didn't have the police

1   report.

2        MR. PETERS:  Additionally,  if I may, there are

3   many front doors in that building, I mean, and on top of

4   that, as your Honor pointed out, that testimony was not

5   elicited by either the State's Attorney or Mr. Sherman.

6        MR. HASKINS:  Your Honor, either way petitioner's

7   trial attorney Dennis Sherman, when he decided to cross

8   examine the victim in this case, that certainly is a matter

9   of trial strategy, and as such, it would not be subject to

10  judicial review on a post conviction petition and that is

11  basically what the State is resting their case on.

12              And, Judge, I have the law laid out in the

13  original post conviction petition before I filed a response

14  to the amended as far as  Bartfield, (phonetic) Strickland,

15  et cetera.

16        THE COURT:  As far as the testimony that was

17  presented in terms of the State's case in chief, the

18  testimony presented by Mr. Ronkowski dealt mostly with the

19  vacant apartment and specifically the question was asked if

20  anyone had any authority to be inside your vacant apartment

21  at that time.  There was testimony, however, presented that

22  the police had been called previously.  I believe on --

23        MR. HASKINS:  Just shortly before, one right after

24  the other, Judge, on the same date.

1          THE COURT:    Counsel, I'm looking at the

2    transcript.   "I call the police when I heard him fool with

3    the mail box."  The magic words, did you give him

4    permission or consent?  The court can certainly infer from

5    the fact that calling the police on someone that that is

6    kind of a question, when witnesses are asked, they kind of

7    usually have a confused look on their face as to why are

8    you asking me that question.   Everyone knows I didn't give

9    him permission.  I think I can certainly infer that.

10          Also, the testimony on page 9 of -- the

11    testimony of the complaining witness, and he was leaving

12    your premises, it's a point at which she saw the

13    individual, which I inferred to mean on the premises, that

14    he was not in the apartment but rather leaving from the

15    building, and I think that Mr. Sherman is not the -- based

16    on that, that it came out that she did in fact observe Mr.

17    Daniels inside the building, the common areas.  So I don't

18    think Mr. Sherman's questioning, at least in my mind as far

19    as both my review of the testimony and my recollection of

20    the testimony as it was presented, was that this was not

21    the first time that I had heard that the defendant was in

22    some place other than the vacant apartment.

23          So I don't  think there was -- Mr. Sherman

24    asking those questions would raise the type of incompetency

1   of counsel, either through mistake or, if anything, I think

2   it was simply trial tactics in terms of following up in an

3   area that has already been testified to.  At this time the

4   post conviction petition filed by the petitioner will be

5   denied.

6         MR. HASKINS:  Thank you, Judge.

7         MR. PETERS: Thank you.

8         THE COURT:  Technically, the State's motion to

9   dismiss is granted.  The petition is denied.

10            (Which were all the proceedings had.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, CRIMINAL DIVISION

I, Elizabeth Ciszewski, an official court reporter for the Circuit Court of Cook County, County Department, Municipal/Criminal Divisions, Illinois, do hereby certify that I reported in shorthand the proceedings had on the hearing in the aforementioned cause; that I thereafter caused the foregoing to be transcribed into a typewritten form, which I hereby certify to be a true and correct transcript of the proceedings had.

Official Court Reporter,

No. 084-002587

Dated this 12th day of October, 2006.

L-12